# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AF HOLDINGS LLC, | No.  1:12-cv-00048-BAH |
| Plaintiff, | **[Oral Argument Requested]** |
| v. | |
| DOES 1 – 1,058, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENAS ISSUED TO NON-PARTY INTERNET SERVICE PROVIDERS BRIGHT HOUSE NETWORKS, LLC; COX COMMUNICATIONS, INC.; SBC INTERNET SERVICES, INC. D/B/A AT&T INTERNET SERVICES; AND VERIZON ONLINE LLC**

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

RELEVANT FACTUAL BACKGROUND ...................................................................... 2

LEGAL ARGUMENT .................................................................................................... 4

I.  THE SUBPOENAS ISSUED TO THE INTERNET SERVICE PROVIDERS
    SHOULD BE QUASHED BASED ON FATAL DEFECTS IN THE
    UNDERLYING LAWSUIT AND THE UNDUE BURDEN IMPOSED ON
    THE ISPs BY THESE AND SIMILAR "MASS DOE" ACTIONS................................... 4

    A.  Applicable Legal Standards. .................................................................. 4

    B.  Personal Jurisdiction Is Lacking Over the Vast Majority of
        Subscribers for Whom Plaintiff Seeks Identifying Information. ............................ 5

    C.  Joinder of the 1,058 Subscribers Is Improper Because the
        Defendants Reside in States Throughout the Country and
        Are Alleged to Have Accessed Plaintiff's Content at Different
        Times Over a Four-Month Period. ........................................................... 9

    D.  Permitting Expedited Discovery of the Internet Service
        Providers in This Action Would Encourage Forum Shopping
        and Risk Other Ill Effects................................................................... 12

        1.  The Current Split of Authority Addressing the Proper
            Scope of BitTorrent Copyright Actions Is Likely to
            Make This Court a Destination Venue for Mass Doe
            Actions, Which Are Proliferating. ........................................... 12

        2.  The Risk of Unjust or Coerced Settlements Is Magnified
            Where, as Here, the Subscribers Reside in Distant States
            and No Restrictions Have Been Imposed Upon Plaintiff's
            Use of the Subscribers' Personal Information. ........................... 14

        3.  If, Arguendo, Plaintiff Were to Use the Information
            Sought from the ISPs to Pursue Claims Against All
            1,058 Subscribers, This Litigation Would Likely Become
            Hugely Time-Consuming and Potentially Unmanageable......................... 16

**TABLE OF CONTENTS (Cont'd)**

**Page**

II.   IN THE ALTERNATIVE, THE ISSUES PRESENTED HERE
      SHOULD BE CERTIFIED FOR APPEAL TO PERMIT FURTHER
      DEVELOPMENT OF THE LAW AND UNIFORMITY OF DECISIONS. .................. 17

CONCLUSION ........................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A. P. De Sanno & Son, Inc. v. Brown*,
  313 F.2d 898 (D.C. Cir. 1963) ........................................................................ 18

*Abex Corp. v. Maryland Casualty Co.*,
  790 F.2d 119 (D.C. Cir. 1986) ........................................................................ 13

*AF Holdings LLC v. Does 1-135*,
  No. 11-CV-03336, 2012 U.S. Dist. LEXIS 7493 (N.D. Cal. Jan. 19, 2012) ...................... 13

*AF Holdings LLC v. Does 1-96*,
  No. C-11-03335, 2011 U.S. Dist. LEXIS 134655,
  2011 WL 5864174 (N.D. Cal. Nov. 22, 2011) ....................................................... 9

* *AF Holdings LLC v. Does 1-96*,
  No. C-11-3335, 2011 U.S. Dist. LEXIS 109816,
  2011 WL 4502413 (N.D. Cal. Sept. 27, 2011) ....................................................... 13

* *AF Holdings, LLC v. Does 1-97*,
  No. C-11-03067, 2011 U.S. Dist. LEXIS 126225,
  2011 WL 5195227 (N.D. Cal. Nov. 1, 2011) ....................................................... 10, 12

*Berlin Media Art v. Does 1-654*,
  No. C-11-03770, 2011 U.S. Dist. LEXIS 120257,
  2011 WL 36383080 (N.D. Cal. Oct. 18, 2011) ....................................................... 8

*Boy Racer, Inc. v. Doe*,
  No. C-11-2329, 2011 U.S. Dist. LEXIS 132404 (N.D. Cal. Nov. 6, 2011) ...................... 11

* *Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ........................................................................ 7, 8

*Call of the Wild Movie, LLC v. Does 1-1,062*,
  770 F. Supp. 2d 332 (D.D.C. 2011) ........................................................... 9, 11

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*,
  148 F.3d 1080 (D.C. Cir. 1998) ........................................................................ 4

*CP Prods. v. Does 1-300*,
  No. 10-C-6255, 2011 U.S. Dist. LEXIS 113013,
  2011 WL 737761 (N.D. Ill. Feb. 24, 2011) ....................................................... 16

\* *DigiProtect USA Corp. v. Does 1-240,*
    No. 10 Civ. 8760, 2011 U.S. Dist. LEXIS 109464,
    2011 WL 4444666 (S.D.N.Y. Sept. 26, 2011) .............................................. 6, 8, 10

*Digital Sin, Inc. v. Does 1-5698,*
    No. C-11-04397, 2011 U.S. Dist. LEXIS 128033,
    2011 WL 5362068 (N.D. Cal. Nov. 4, 2011) .............................................. 16

*Donkeyball Movie, LLC v. Doe,*
    810 F. Supp. 2d 20 (D.D.C. May 12, 2011) .............................................. 10

*Eisel v. Secretary of Army,*
    477 F.2d 1251 1263 (D.C. Cir. 1973) .............................................. 13

\* *Exponential Biotherapies, Inc. v. Houthoff Buruma N. V.,*
    638 F. Supp. 2d 1 (D.D.C. 2009) .............................................. 5

*Gillespie v. Civiletti,*
    629 F.2d 637 (9th Cir. 1980) .............................................. 5

*Grant v. Chevron Phillips Chem. Co. L.P.,*
    309 F.3d 864 (5th Cir. 2002) .............................................. 17

*Hard Drive Prods. v. Does 1-188,*
    No. C-11-01566, 2011 U.S. Dist. LEXIS 94319,
    (N.D. Cal. Aug. 23, 2011) .............................................. 8, 15, 16

*Hard Drive Prods. v. Does 1-30,*
    No. 2:11-CV 345, 2011 U.S. Dist. LEXIS 119333,
    2011 WL 4915531 (E.D. Va. Oct. 17, 2011) .............................................. 8, 10, 15

*In re Micron Tech. Sec. Litig.,*
    264 F.R.D. 7 (D.D.C. 2010) .............................................. 4

*In re Sealed Case,*
    827 F.2d 776 (D.C. Cir. 1987) .............................................. 18

\* *K-Beech, Inc. v. Does 1-85,*
    No. 3:11-cv-469, 2011 U.S. Dist. LEXIS 124581,
    (E.D. Va. Oct. 5, 2011) .............................................. 10, 12

*Liberty Media Holdings, LLC v. BitTorrent Swarm,*
    No. 1:11-CV-21525, 2011 U.S. LEXIS 126333,
    2011 WL 5190048 (S.D. Fla. Nov. 1, 2011) .............................................. 10

*Linder v. Dep't of Defense,*
    133 F.3d 17 (D.C. Cir. 1998) .............................................. 4

*London-Sire Records, Inc. v. Doe 1,*
    542 F. Supp. 2d 153 (D. Mass. 2008) ................................................................. 16

*Lumiere v. Mae Edna Wilder, Inc.,*
    261 U.S. 174 (1923) ............................................................................................... 5

*Marquis v. Federal Deposit Ins. Corp.,*
    965 F.2d 1148 (1st Cir. 1992) ............................................................................. 18

* *McGIP, LLC v. Does 1-149,*
    No. C-11-02331, 2011 U.S. Dist. LEXIS 108109,
    2011 WL 4352110 (N.D. Cal. Sept. 16, 2011) ............................................. 11, 15

* *Millenium TGA v. Doe,*
    No. 10-C-5603, 2011 U.S. Dist. LEXIS 110135,
    (N.D. Ill. Sept. 26, 2011) .............................................................................. 6, 8, 9

*New Sensations, Inc. v. Does 1-1,474,*
    No. C-11-2770, 2011 U.S. Dist. LEXIS 140670 (N.D. Cal. Dec. 7, 2011) ............................ 8

* *Nu Image, Inc. v. Does 1-23,322,*
    799 F. Supp. 2d 34 (D.D.C. 2011) ................................................................. passim

* *On the Cheap, LLC v. Does 1-5011,*
    No. C-10-4472, 2011 U.S. Dist. LEXIS 99831,
    2011 WL 4018258 (N.D. Cal. Sept. 6, 2011) .......................................... 6, 8, 15, 17

* *Oppenheimer Fund, Inc. v. Sanders,*
    437 U.S. 340 (1978) ........................................................................................... 5, 7

*Pacific Century Int'l Ltd. v. Does 1-101,*
    No. C-11-02533, 2011 U.S. Dist. LEXIS 73837,
    2011 WL 2690142 (N.D. Cal. July 8, 2011) ...................................................... 10

*Patrick Collins, Inc. v. Does 1-2590,*
    No. C-11-2766, 2011 U.S. Dist. LEXIS 140913 (N.D. Cal. Dec. 7, 2011) ......................... 6, 8

*Penguin Group (USA), Inc. v. Am. Buddha,*
    640 F.3d 497 (2d Cir. 2011) .................................................................................. 6

*Raw Films, Inc. v. Does 1-32,*
    No. 1:11-CV-2939, 2011 U.S. Dist. LEXIS 149215,
    2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) ..................................................... 10

* *SBO Pictures, Inc. v. Does 1-87,*
    No. Civ. A 11-1962, 2012 U.S. Dist. LEXIS 6968,
    2012 WL 177865 (D.D.C. Jan. 19, 2012) ......................................................... 5, 8

*Voltage Pictures, LLC v. Does 1-5000*,
   No. Civ. A 10-0873, 2011 U.S. Dist. LEXIS 50787 (D.D.C. May 12, 2011) ........................ 11

**STATUTES**

28 U.S.C. § 1292(b) ..................................................................................................... 2, 17

28 U.S.C. § 1391(b) .......................................................................................................... 7

28 U.S.C. § 1400(a) ....................................................................................................... 7, 9

D.C. Code § 13-423 ........................................................................................................... 6

Fed. R. Civ. P. 20 .......................................................................................................... 2, 11

Fed. R. Civ. P. 20(a)(2) ................................................................................................... 10

Fed. R. Civ. P. 26 .............................................................................................................. 4

Fed. R. Civ. P. 26(b)(2) ..................................................................................................... 4

Fed. R. Civ. P. 41(a)(1) ...................................................................................................... 4

Fed. R. Civ. P. 45(c)(3) ...................................................................................................... 4

**OTHER AUTHORITIES**

Lin Ye, A Measurement Study on BitTorrent System,
   3 Int'l J. Comm, Network & Sys. Sci. 916 (2000) ........................................................ 10

## INTRODUCTION

This mass copyright infringement action is one of literally hundreds that have been filed in the last two years by Plaintiff's current counsel, seeking personally identifying information from Internet Service Providers (ISPs) for tens of thousands of the ISPs' subscribers. The number of Defendants who are targeted by Plaintiff's counsel's cases has ranged from nine to 2,925 "Does" per action. As Plaintiff's counsel recently declared in a court filing, in not a single one of these cases has *any* Defendant been served. The result is a recurring exercise in which plaintiffs apply ex parte for leave to serve subpoenas upon the ISPs, extract the ISPs' customer information, and then abandon or settle all claims—while choosing the venue for their next lawsuit based, not on the location of parties or the locus of the injury, but on the forum's perceived willingness to authorize broad discovery of the ISPs.

The ISPs respectfully submit that, on the facts of this case, the burden imposed on the ISPs by Plaintiff's subpoenas is an *undue* burden, and that the subpoenas should be quashed. Personal jurisdiction and venue do not exist in this district over the vast majority of the targeted Does, as Plaintiff can readily confirm:  Three of the moving ISPs—Cox Communications, AT&T, and Bright House Networks—do not provide residential Internet service in this district and thus have no subscribers here. Free, publicly available software used "to derive the approximate location of the IP addresses identified for each putative defendant" to within 30 miles—used by this Plaintiff and its counsel in other actions—shows that Plaintiff could limit the scope of its lawsuit without difficulty.[1] No valid reason exists for Plaintiff to seek in a single lawsuit the identifying information for many hundreds of subscribers residing outside the

---

[1] *Nu Image, Inc. v. Doe*, 799 F. Supp. 2d 34, 40 (D.D.C. 2011).

Court's jurisdiction.

In addition, the wide range of dates and times over a four-month period in which the 1,058 Does are alleged to have accessed portions of "Popular Demand" is irreconcilable with Plaintiff's assertion that joinder of all 1,058 Defendants is proper due to the "same series of transactions." The unbroken practice of Plaintiff's counsel—declining to sue by name and then serve any Defendant who could raise the severance issue—precludes consideration of joinder at a later time and weighs heavily in favor of addressing Rule 20's requirements at the outset. And the clear implications of forum-shopping, both across districts and *within this district*—by Plaintiff's counsel filing complaints that are strikingly similar to the current lawsuit and voluntarily dismissing them *vel non* based on the judge to whom a particular case is assigned, cries out for uniform treatment of "mass" Doe actions.

For the reasons discussed more fully herein, the ISPs respectfully urge the Court to quash the subpoenas. In the alternative, the ISPs request an order certifying the significant and recurring issues presented here for appeal pursuant to 28 U.S.C. § 1292(b), so that litigants, the ISPs, and the courts may move closer to uniform treatment and disposition of these many cases.

## RELEVANT FACTUAL BACKGROUND

Plaintiff AF Holdings is a limited liability company formed in the island of Nevis in the Caribbean Sea. (Compl. ¶ 9 & Ex. B thereto.) It has alleged claims for copyright infringement against 1,058 "Doe" defendants for purportedly accessing excerpts of a sexually explicit film entitled "Popular Demand." (Compl. ¶ 11.) Plaintiff's rights to the film are based on an Assignment Agreement that designates California law and provides for jurisdiction and venue for disputes between the assignor and assignee in the island of Nevis. (*Id.*, Ex. B.) Plaintiff does not allege any presence in or tie to the District of Columbia. (*See* Compl.)

2

The 1,058 Defendants are identified by their IP Address and Internet Service Provider only. (Compl. Ex. A.) Contrary to Plaintiff's allegation that "each Defendant may be found in this District" (Compl. ¶ 7), three of the moving ISPs (Cox Communications, AT&T and Bright House Networks) do not provide residential Internet service in the District of Columbia and, as such, have no subscribers in this district. (Declaration of Randall J. Cadenhead ¶ 5; Declaration of Rhonda Compton ¶ 4; Declaration of Tim Frendberg ¶¶ 2-3.) The IP Addresses for the 119 subscribers alleged to be Cox Communications' customers correspond to residents of 14 states, with a high concentration in the western United States. (Cadenhead Decl. ¶¶ 3-4.) The 59 Doe defendants that are alleged to be AT&T subscribers reside in states that include California, Illinois, Indiana, Oklahoma and Texas. (Compton Decl. ¶ 4.) The 20 targeted Bright House subscribers are located in Florida (17), Alabama (2) and California (1). (Frendberg Decl. ¶¶ 2-3.) The 188 Does that are identified as Verizon subscribers are residents of 12 different states; at most, 20 of them may be located in this district. (Declaration of Sean Moriarty ¶¶ 3-4.)

The complaint's Exhibit A identifies other ISPs that provide only regional (or local) Internet access, in areas far outside this district: *e.g.*, Alaska Communications Systems Group; Baja Broadband; Bel Air Internet; Bend Cable Communications; Buckeye Cablevision; Cincinnati Bell Telephone; Great Lakes Comnet; Guadalupe Valley Telephone Corp.; Hawaiian Telecom Services Co.; Missouri Network Alliance; Panhandle Telecommunications; Roseville Telephone Company; and SureWest Kansas Operations. (Compl. Ex. A.)

Exhibit A to Plaintiff's complaint also purports to show the dates and times on which the "infringing activity of each Defendant was observed" (Compl. ¶ 11), and reflects access at different times over a four-month period (from August 11-December 8, 2011). (*Id.* Ex. A.)

During the last two years, the ISPs have received hundreds of subpoenas in similar mass "Doe" defendant actions, seeking identifying information for many tens of thousands of subscribers. (*See, e.g.*, Cadenhead Decl. ¶ 2; Moriarty Decl. ¶ 2; Huffman Decl. ¶ 9 & Ex. L.) These subpoenas have imposed—and continue to pose—a substantial administrative burden on the ISPs. (*Id.*)

## LEGAL ARGUMENT

I. **THE SUBPOENAS ISSUED TO THE INTERNET SERVICE PROVIDERS SHOULD BE QUASHED BASED ON FATAL DEFECTS IN THE UNDERLYING LAWSUIT AND THE UNDUE BURDEN IMPOSED ON THE ISPs BY THESE AND SIMILAR "MASS DOE" ACTIONS.**

A. **Applicable Legal Standards.**

A motion to quash "must" be granted where it imposes an "undue burden" upon a non-party. Fed. R. Civ. P. 45(c)(3)(A)(iv); *see also* Fed. R. Civ. P. 26(b)(2)(C)(iii) (requiring courts to limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit"). Discovery commencing before a Rule 26 conference—including jurisdictional discovery to identify defendants—should be permitted only where "good cause" supports it. *See, e.g., Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998) (plaintiff "must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant").

Where, as here, the underlying action is procedurally defective or Defendants are not subject to suit here, any burden put upon a third-party to identify Defendants is an *undue* burden. *Nu Image, Inc. v. Doe*, 799 F. Supp. 2d 34, 37 (D.D.C. 2011) (denying motion for discovery in a similar action seeking ISPs' subscribers' identities); *see also Linder v. Dep't of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) (whether a subpoena is proper "'must be determined according to the facts of the case,' such as the party's need … and the nature and importance of the

litigation"); *In re Micron Tech. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010) ("The 'undue burden'

test requires district courts to be 'generally sensitive' to the costs imposed on third parties").[2]

**B.     Personal Jurisdiction Is Lacking Over the Vast Majority of Subscribers for Whom Plaintiff Seeks Identifying Information.**

Discovery of the identifying information of more than 1,000 subscribers through

subpoenas to the ISPs is inappropriate because the vast majority of these "Does" have no

connection to this forum and thus could not be sued here even if, *arguendo*, Plaintiff were to use

the information it seeks from the ISPs to name Defendants and then to attempt to serve them.

Personal jurisdiction in a copyright infringement action is limited by the reach of the

long-arm statute of the forum state or district.  *Lumiere v. Mae Edna Wilder, Inc.*, 261 U.S. 174,

177 (1923) (the Copyright Act does not permit nationwide service of process); *Nu Image*, 799 F.

Supp. 2d at 38 & n.4 (same); *SBO Pictures, Inc. v. Does 1-87*, 2012 U.S. Dist. LEXIS 6968,

at *3-4 (D.D.C. Jan. 19, 2012) ("The Copyright Act does not provide for the exercise of personal

jurisdiction over alleged infringers on a nationwide or other basis.  Plaintiff must therefore

predicate the court's jurisdiction over the infringers on the reach of District of Columbia law.").

The District of Columbia's long-arm statute provides, in pertinent part, that

> (a) A District of Columbia court may exercise personal
> jurisdiction over a person, who acts directly or by an agent, as to a
> claim for relief arising from the person's --

---

[2] *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352-53 & n.17 (1978) ("when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied"); *accord Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (pre-Rule 26 discovery should be denied where the court concludes that discovery "would not uncover [the defendants'] identities, or that the complaint would be dismissed on other grounds"); *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 11 (D.D.C. 2009) (plaintiff must "reasonably demonstrate[] that it can supplement its jurisdictional allegations through discovery"); additional authorities cited *post*.

> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) *causing tortious injury in the District of Columbia by an act or omission in the District of Columbia* . . .

D.C. Code § 13-423 (emphasis added).

Because copyright infringement is a tort and the Does are accused of doing nothing other than accessing portions of Plaintiff's film from their computers without authorization, the long-arm statute requires "tortious injury in the District of Columbia by an act or omission in the District of Columbia." *Nu-Image*, 799 F. Supp. 2d at 38-39 (citing *Penguin Group (USA), Inc. v. Am. Buddha*, 640 F.3d 497, 500-01 (2d Cir. 2011), which concluded, based on a virtually identical long-arm statute, that "the situs of the injury is the location of the copyright holder").[3]

Here, Plaintiff seeks nationwide discovery from non-parties to protect rights to a film assigned to a company *in the Caribbean*, for the purpose of identifying Defendants located outside the Court's jurisdiction. (Cadenhead Decl. ¶¶ 4-5; Compton Decl. ¶ 4; Frendberg Decl. ¶¶ 2-3; Moriarty Decl. ¶¶ 3-4.) In addition to the moving ISPs, the targets of discovery include regional providers—from Baja Broadband (in Mexico) to the Hawaiian Telecom Company—that do not provide Internet access in this district. (Compl. Ex. A; *compare Patrick Collins, Inc. v.*

---

[3] *See also DigiProtect USA Corp. v. Does 1-240*, 2011 U.S. Dist. LEXIS 109464, at *8-10 (S.D.N.Y. Sept. 26, 2011) (personal jurisdiction in a BitTorrent copyright action requires intentional conduct showing that defendant availed itself of the forum, which is not satisfied merely by showing that hundreds of defendants in different locations accessed the same film); *Millenium TGA v. Doe*, 2011 U.S. Dist. LEXIS 110135 (N.D. Ill. Sept. 26, 2011) (same; rejecting plaintiff's argument concerning personal jurisdiction, "the logical extension would be that everybody who used P2P software such as BitTorrent would subject themselves to jurisdiction in every state. This is a far cry from the requirement that 'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State'"; quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *On the Cheap, LLC v. Does 1-5011*, 2011 U.S. Dist. LEXIS 99831, at *1 (N.D. Cal. Sept. 6, 2011).

*Doe*, 2011 U.S. Dist. LEXIS 140913, at *8 (N.D. Cal. Dec. 7, 2011) [citing *Nu-Image* with

approval and reviewing sua sponte the publicly available data concerning physical locations

associated with IP Addresses, and dismissing claims for lack of personal jurisdiction over Doe

defendants].) In short, the inclusion of thousands of Defendants in a single copyright action does

not satisfy the demands of personal jurisdiction, and thus imposes an undue burden upon the

ISPs without a corresponding benefit to the justice system. *See, e.g., Oppenheimer Fund*, 437

U.S. at 353 n.17 ("when the purpose of a discovery request is to gather information for use in

proceedings other than the pending suit, discovery properly is denied").

In *Nu-Image*, Judge Wilkins addressed recently the good-cause requirement for

permitting discovery of non-party ISPs in mass BitTorrent actions. 799 F. Supp. 2d at 37-42.

*Nu-Image* held that requiring plaintiff to make a prima-facie evidentiary showing that all Doe

defendants are likely to reside in this district—before serving subpoenas on the ISPs—comports

with fundamental notions of fairness and does not impose any real burden on plaintiff, given the

"geolocation services that are generally available to the public to derive the approximate location

of the IP addresses identified for each putative defendant." *Id.* at 40.[4]

*Nu-Image*'s conclusion is consistent with long-established principles of personal

jurisdiction, i.e., that "there be some act by which the defendant purposefully avails itself of the

privilege of conducting activities within the forum State." *Burger King*, 471 U.S. at 475. Faced

---

[4] *Nu-Image* reconsidered the court's prior orders that had authorized discovery of the
ISPs in mass copyright actions based on plaintiffs' representations that the general venue statute,
28 U.S.C. § 1391(b), governed, rather than the specific venue statute for copyright litigation:
"[O]nce the Court realized that 28 U.S.C. § 1400(a) was the appropriate venue statute, and that it
requires that every single defendant can be 'found here,' the Court felt compelled to focus more
sharply on personal jurisdiction and the good cause standard for expedited discovery. The Court
recognizes its initial error and seeks to correct it here." *Nu-Image*, 799 F. Supp. 2d at 41 n.7.

with a proliferation of mass Doe actions and a growing body of written work discussing the

characteristics of BitTorrent file-sharing systems, other courts have reached similar

conclusions—with several of them revisiting earlier rulings that permitted broad Doe discovery.

*See, e.g., DigiProtect*, 2011 U.S. Dist. LEXIS 109464, at *8-10 ("reject[ing] DigiProtect's

argument that it has personal jurisdiction as to all 240 defendants, if any one resides in New

York… The mere fact that BitTorrent protocol and eDonkey network employ 'swarming'

capacity is insufficient to confer jurisdiction."); *Millenium TGA*, 2011 U.S. Dist. LEXIS 110135,

at *4-5 (denying request for discovery of ISPs where Plaintiff's counsel failed to show any facts

demonstrating how defendant's "infringing activities were directed towards this forum and bring

him or her within this court's jurisdiction"); *On The Cheap*, 2011 U.S. Dist. LEXIS 99831, at

*14 (explaining that the logical effect of Plaintiff's personal-jurisdiction arguments "would be

that everybody who used . . . BitTorrent would subject themselves to jurisdiction in every state,"

a result inconsistent with *Burger King*, 471 U.S. at 475, and other Supreme Court precedent).[5]

---

[5] *See also SBO Pictures*, 2012 U.S. Dist. LEXIS 6968, at *6-9 (following *Nu-Image* and denying request for discovery of ISPs); *New Sensations, Inc. v. Does 1-1,474*, 2011 U.S. Dist. LEXIS 140670, at *7-9 (N.D. Cal. Dec. 7, 2011) (citing *Nu-Image* and explaining that "[w]here Plaintiff has made no effort to determine jurisdiction, the administration of justice is not served by requiring out-of-state recipients of subpoenas to bring challenges to the subpoenas in far-flung jurisdictions"); *Hard Drive Prods. v. Does 1-188*, 2011 U.S. Dist. LEXIS 94319, at *30-40 (N.D. Cal. Aug. 23, 2011) (quashing subpoenas where Plaintiff's counsel failed to provide a sufficient showing that the Doe defendants were properly subject to suit as part of the same "swarm"; summarizing decisions that address mechanics of BitTorrent protocols); *Hard Drive Prods. v. Does 1-30*, 2011 U.S. Dist. LEXIS 119333, at *7-10 (E.D. Va. Oct. 17, 2011) (citing *Hard Drive, supra*, with approval); *Berlin Media Art v. Does 1 - 654*, 2011 U.S. Dist. LEXIS 120257, at *4-6 (N.D. Cal. Oct. 18, 2011) (denying request for discovery of the identities of Does 1-654 based on jurisdictional principles and the court's research: "with minimal effort, the Court was able to utilize one of many free and publicly available services to look up the locations affiliated with IP addresses for which Plaintiff seeks discovery"); *Patrick Collins*, 2011 U.S. Dist. LEXIS 140913, at *4-5 (explaining that "even if one or more of the unidentified defendants allegedly downloaded the file at some point during the time period in question from a

(Footnote continues on next page.)

Requiring this Plaintiff to make an evidentiary showing that the "Does" are subject to suit in this district would not take AF Holdings or its counsel by surprise:  Other courts have required AF Holdings to justify discovery of the identifying information for far fewer defendants than those alleged to be involved in this action.  *See, e.g., AF Holdings LLC v. Does 1-96*, 2011 U.S. Dist. LEXIS 134655, at *9 (N.D. Cal. Nov. 22, 2011) (requiring a prima facie showing that each defendant resides in the district and is thus subject to personal jurisdiction in California); additional cases involving plaintiff AF Holdings discussed in Section I (D), *post.*

For the same reasons that personal jurisdiction is lacking over many of the Defendants, venue is improper under the governing venue statute, 28 U.S.C. § 1400(a), which requires that all Defendants must be subject to suit in this district.  *Nu-Image*, 799 F. Supp. 2d at 37-38, 43; *see also Millenium TGA*, 2011 U.S. Dist. LEXIS 110135, *8-9 (District Judge Manning in Northern District of Illinois explaining that "the personal jurisdiction analysis is directly tied to the determination of whether venue is appropriate," and denying request for discovery and dismissing action where defendants were not located in Illinois).

For these reasons, the subpoenas issued to the ISPs should be quashed.

**C.    Joinder of the 1,058 Subscribers Is Improper Because the Defendants Reside in States Throughout the Country and Are Alleged to Have Accessed Plaintiff's Content at Different Times Over a Four-Month Period.**

The wide range of dates and times over a four-month period in which the 1,058 Does are alleged to have accessed portions of "Popular Demand" is fatally inconsistent with Plaintiff's

---

(Footnote continued from previous page.)

computer located in this District, the Court is not aware of any caselaw that suggests that it has personal jurisdiction over all 2,590 Defendants based on this connection").  But see *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 345-46 (D.D.C. 2011) (concluding that jurisdictional discovery was warranted where plaintiff had a good-faith belief for allegation that personal jurisdiction existed).

assertion that joinder of all 1,058 Defendants is proper.  (Compare Dkt. 4 and Compl. Ex. A.)

For Defendants to be part of the same "swarm," a user must have "downloaded the movie from the same website during overlapping times" with another member of the swarm. *DigiProtect*, 2011 U.S. Dist. LEXIS 109464, at *9-10 ("To participate, a user must be online at the time of a swarm."); *cf., Donkeyball Movie, LLC v. Doe*, 2011 U.S. Dist. LEXIS 50785, at *18 (D.D.C. May 12, 2011) (quoting plaintiff's declaration that swarming is possible "so long as that first seed peer is online at the time the subsequent peer").  Even assuming, *arguendo*, that the "same series of transactions" included automated file-sharing among users who are unaware of each other, it does not necessarily follow that users who may have shared excerpts of the same film days, weeks, or months apart are part of that "same series."[6]  Thus, Plaintiff's complaint does not satisfy the same-series-of-transactions test for joinder.  Fed. R. Civ. P. 20(a)(2); *see DigiProtect, supra,* and authority cited in footnote 6.

---

[6] "Downloading a work as part of a swarm does not constitute 'acting in concert' with one another, particularly when the transactions happen over a long period." *Raw Films, Inc. v. Does 1-32,* 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) (time span of more than 4 months); *Liberty Media Holdings, LLC,* 2011 WL 5190106, at *3 (S.D. Fla. Nov. 1, 2011) (same; time span of 2 months); *Liberty Media Holdings, LLC v. BitTorrent Swarm,* 2011 WL 5190048, at *2-4 (S.D. Fla. Nov. 1, 2011) (same; time span of two months); *AF Holdings, LLC v. Does,* 2011 U.S. Dist. LEXIS 126225, at *7-8 (N.D. Cal. Nov. 1, 2011) (denying request to take discovery of ISPs where "Plaintiff has not alleged that any of the ninety-seven Doe Defendants exchanged any piece of the relevant file with each other or actually acted in concert with one another"); *Pacific Century Int'l Ltd. v. Doe,* 2011 U.S. Dist. LEXIS 73837, at *12 (N.D. Cal. July 8, 2011) ("Plaintiff glosses over the fact that BitTorrent users may upload different initial files of a given work, which results in the creation of distinct swarms . . . , [and] the participants in the first swarm would not interact with those in the second swarm"; citing Lin Ye, A Measurement Study on BitTorrent System, 3 Int'l J. Comm, Network & Sys. Sci. 916, 916 (2000)); *K-Beech, Inc. v. Does 1-85,* 2011 U.S. Dist. LEXIS 124581, at *5 (E.D. Va. Oct. 5, 2011) ("The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals"); *Hard Drive Prods. v. Does 1-30,* 2011 U.S. Dist. LEXIS 119333 (E.D. Va. Oct. 17, 2011) (same).

The ISPs recognize that *Call of the Wild*, 770 F. Supp. 2d 332, reached a different conclusion—i.e., that it was premature at the pleading stage to consider misjoinder.[7] The ISPs respectfully submit that the unbroken factual pattern in hundreds of mass Doe actions filed by AF Holdings' counsel warrants revisiting that conclusion. Plaintiff's strategy in these cases,

> effectively precludes consideration of joinder issues at a later point in the proceedings. By not naming or serving a single defendant, [Plaintiff] ensures that this case will not progress beyond its infant stages and therefore, the court will never have the opportunity to evaluate joinder. Deferring a ruling on joinder, then, would "encourage[] [p]laintiffs ... to join (or misjoin) as many doe defendants as possible...."

*McGIP, LLC v. Does*, 2011 U.S. Dist. LEXIS 108109, at *10 (N.D. Cal. Sept. 16, 2011) (quoting *Arista Records, LLC v. Does*, 2008 U.S. Dist. LEXIS 90183, at *17 (N.D. Oh. Nov. 3, 2008)).

Indeed, Plaintiff's current counsel has declared that in none of the 118 multi-Doe actions filed during the last two years by the Prenda law firm (or its predecessors) has a single Defendant been served. (Huffman Decl. Ex. L.)[8] Plaintiff's counsel simply moves from court to court seeking authorization to serve subpoenas for the broadest number of subscribers—imposing ever-increasing burdens on the ISPs—without using the information gathered for the purpose of

---

[7] *See also Voltage Pictures, LLC v. Does 1-5000*, 2011 U.S. Dist. LEXIS 50787, at *42 (D.D.C. May 12, 2011) (noting that "Courts have varying thresholds for the exercise of their discretion to sever defendants in such cases").

[8] Plaintiff's counsel's declaration in *AF Holdings v. Does 1-135*, No. 5:11-cv-03336-LHK, does not mention the 60-plus additional cases in which the Prenda law firm has filed complaints against a single Doe but sought discovery for hundreds of *unnamed* "co-conspirators." (Huffman Decl. ¶¶ 7-8.) *See, e.g., First Time Videos, LLC v. Doe*, 2012 U.S. Dist. LEXIS 6292, at *9 (E.D. Cal. Jan. 19, 2012) (denying request for discovery of unnamed co-conspirators). To the ISPs' knowledge, like Plaintiff's counsel's 118 multi-Doe actions, none of these "co-conspirator" cases has been pursued past the third-party discovery stage.

litigating any case on its merits. (*See, e.g.*, Cadenhead Decl. ¶ 2; Moriarty Decl. ¶ 2.)  In these specific circumstances, filing a lawsuit against 1,000-plus Defendants will never be "beneficial to the putative defendants," nor would dismissal result in 1,000 separate lawsuits. *Call of the Wild*, 770 F. Supp. 2d at 344 (joinder is "beneficial to the putative defendants ... [where] it allows the defendants to see the defenses, if any, that other John Does have raised").  These facts weigh heavily in favor of addressing compliance with Rule 20 at the outset. *Compare McGIP*, *supra*, at *10 (in these circumstances, a threshold evaluation of joinder "is critical to ensuring compliance with the Federal Rules of Civil Procedure"); *Boy Racer, Inc. v. Doe*, 2011 U.S. Dist. LEXIS 132404, at *11-12 (N.D. Cal. Nov. 6, 2011), and authorities cited in footnote 6 above.

For these additional reasons, the ISPs urge that the subpoenas be quashed.

**D.  Permitting Expedited Discovery of the Internet Service Providers in This Action Would Encourage Forum Shopping and Risk Other Ill Effects.**

**1.  The Current Split of Authority Addressing the Proper Scope of BitTorrent Copyright Actions Is Likely to Make This Court a Destination Venue for Mass Doe Actions, Which Are Proliferating.**

Permitting Plaintiff to obtain the discovery it seeks here is overwhelmingly likely to advance two types of forum shopping, both of which appear to be increasing in frequency.

**1. District forum shopping.**  Given the dramatic rise in the number of mass Doe actions being filed nationwide, and the increasing concerns voiced by courts that "plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them,"[9] plaintiffs appear to be selecting venues based on an assessment of where they are likely to obtain the largest amount of subscriber information

---

[9] *K-Beech, Inc. v. Does*, 2011 U.S. Dist. LEXIS 124581, at *7 (E.D. Va. Oct. 5, 2011).

with the least resistance.[10]  For example, AF Holdings filed the current complaint here only after

unfavorable rulings in California district courts—which sought, by contrast, the personal

information for relatively modest numbers of Does. *See, e.g., AF Holdings*, 2011 U.S. Dist.

LEXIS 126225 (finding misjoinder where 97 defendants accessed the Internet at different times

and were not alleged to know one another or to have been collaborating in some active way);

*AF Holdings LLC v. Does 1-96*, No. C-11-3335 JSC, 2011 U.S. Dist. LEXIS 109816 (N.D. Cal.

Sept. 27, 2011) (denying leave to conduct discovery because experience with this Plaintiff's

counsel shows that the requested discovery is not "likely to lead" to identification of the actual

infringers); *cf., AF Holdings LLC v. Does 1-135*, No. 11-CV-03336, 2012 U.S. Dist. LEXIS

7493 (N.D. Cal. Jan. 19, 2012) (order to show cause to Plaintiff's current counsel for failure to

serve John Doe after obtaining his personally identifiable information).

In cases filed by Plaintiff's counsel on behalf of other right-holders to sexually explicit

films, the complaints against dozens (or hundreds) of Does appear to be migrating from federal

courts in California to Illinois, while the complaints filed during the last four months involving

more than 1,000 Does have been filed *only* in this Court.  (Huffman Decl. Ex. L.)

The burdens on the judicial system and litigants (as well as third-parties) caused by forum

shopping of this type are well-recognized. *Abex Corp. v. Maryland Casualty Co.*, 790 F.2d 119,

125 (D.C. Cir. 1986); *see also Eisel v. Secretary of Army*, 477 F.2d 1251, 1263 (D.C. Cir. 1973)

---

[10] *See* Huffman Decl. Ex. L (listing the Prenda law firm's 118 multiple-Doe actions by their filing date and forum).  Plaintiff's counsel's failure to serve a single defendant in any forum suggests strongly that "[w]henever the suggestion of a ruling on the merits of the claims appears on the horizon, the plaintiffs drop the John Doe threatening to litigate the matter in order to avoid the actual cost of litigation and an actual decision on the merits. . . . [which] indicates an improper purpose for the suits." *K-Beech*, 2011 U.S. Dist. LEXIS 124581, at *7.

("If one were permitted to establish jurisdiction by merely being before the court, a petitioner could select any forum he wished; this would be forum shopping in its most extreme form.").[11]

**2. Intra-district forum shopping.** Plaintiff's current counsel also appears to have engaged in "judge-specific" forum shopping by, in several instances, dismissing complaints voluntarily within days after they were assigned to Judge Wilkins in this district. *See, e.g., First Time Videos LLC v. Does 1-541*, No. 1:11-cv-02031-RLW (filed on Nov. 15, 2011; dismissed voluntarily on Nov. 18, 2011); *Millenium TGA, Inc. v. Does 1-939*, No. 1:11-cv-02176-RLW (filed on Dec. 7, 2011; dismissed voluntarily on Dec. 16, 2011). Each of the complaints filed by Plaintiff's counsel is a virtual carbon copy, using a revolving set of "works" and plaintiffs. *Cf.*, Fed. R. Civ. P. 41(a)(1)(B) (prohibiting plaintiffs from voluntarily dismissing and then re-filing a new action "based on or including the same claim"). The logical inference to be drawn from these dismissals is that plaintiffs are aware of the split of authority in this district and are willing to "test the waters" in search of what they perceive to be a favorable judicial assignment.

> **2.    The Risk of Unjust or Coerced Settlements Is Magnified Where, as Here, the Subscribers Reside in Distant States and No Restrictions Have Been Imposed Upon Plaintiff's Use of the Subscribers' Personal Information.**

Like the other mass Doe suits that have generated hundreds of subpoenas to the ISPs,

---

[11] Plaintiff's current law firm also appears to be manipulating the venue for discovery disputes by issuing subpoenas from the Northern District of Illinois that require production of documents at counsel's office in Chicago—even though the cases are venued in Texas or California, seek information for subscribers residing in those forum states, and where plaintiffs have counsel in the forum states. If the ISPs or Doe defendants object to the scope of a subpoena, plaintiffs require them to litigate in the Chicago-area court that issued the subpoena. *See, e.g., Pacific Century Int'l, Ltd. v. Does 1-30*, No. 4:11-cv-03035 (S.D. Tex. Nov. 16, 2011), ECF No. 10 (denying Doe defendant's motion to quash because "[t]he authority to rule on motions regarding subpoenas is vested in the court for the district from which they are issued," where plaintiff issued subpoena to the ISP from the Northern District of Illinois).

> Copyright infringement cases such as this ordinarily maintain a common arc: (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle.... Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements — a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access *en masse* to the identities of alleged infringers.

*McGIP*, 2011 U.S. Dist. LEXIS 108109, at *11 n.5 (citing *IO Group, Inc. v. Does*, 2011 U.S. Dist. LEXIS 14123 (N.D. Cal. Feb. 3, 2011)).

Plaintiff's modus operandi is to demand settlements between $2,000 and $3,000 per Defendant, placing phone calls repeatedly to their homes. *Id.*; *see also Hard Drive Prods.*, 2011 U.S. Dist. LEXIS 119333, at *9 ("This threatening behavior on behalf of Plaintiffs in the cases listed above is identical in nature to the threatening phone call made ... by John Steele [of the Prenda law firm] ... in the instant case before this Court"; decision from E.D. Va.). Plaintiff is well-aware that the cost to a subscriber that resides in Oregon or California of retaining counsel and appearing in this Court is likely to far exceed the settlement demand.

Accordingly, the dynamics are such that the "individual—whether guilty of copyright infringement or not—would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust 'settlement.'" *Hard Drive Prods.*, 2011 U.S. Dist. LEXIS 132449, at *9 (order from Northern District of California dismissing Does 2-130 and imposing ongoing obligations upon Plaintiff's counsel to

demonstrate that the discovery sought of Doe 1 is used for a proper purpose).[12]

Given the prevalence of shared (and unsecured) Internet connections in ISP subscribers' homes, it is exceedingly likely that the 1,058 Does include "not only those who allegedly committed copyright infringement—proper defendants to Plaintiff's claims—but [innocent] ISP 'Subscriber[s]' over whose internet connection the Work allegedly was downloaded." *Hard Drive Prods.*, 2011 U.S. Dist. LEXIS 132449, at *6-7; *see also London-Sire Records, Inc. v. Doe*, 542 F. Supp. 2d 153, 178-79 (D. Mass. 2008) (noting the need "for a pragmatic solution that carefully respects the anonymity of potentially innocent parties" whose Internet connections were used without authorization); *Digital Sin, Inc. v. Does 1-5698*, 2011 U.S. Dist. LEXIS 128033, at *10 (N.D. Cal. Nov. 4, 2011) ("as has been discussed by other courts in this district, the ISP subscribers may not be the individuals who infringed upon Digital Sin's copyright").

The ISPs respectfully submit that an order authorizing discovery of more than 1,000 subscribers in a single action—by a Plaintiff that has never served an individual defendant— creates an undue burden on the ISPs as well as the risk of injustice for the ISPs' subscribers.

> **3.     If, Arguendo, Plaintiff Were to Use the Information Sought from the ISPs to Pursue Claims Against All 1,058 Subscribers, This Litigation Would Likely Become Hugely Time-Consuming and Potentially Unmanageable.**

It is not surprising that none of the mass actions filed by Plaintiff's counsel during the last 24 months has proceeded to its merits:  A trial of the myriad individual defenses that would be raised by more than 1,000 subscribers would be exceedingly time-consuming. *Hard Drive*, 2011 U.S. Dist. LEXIS 132449, at *12 ("An internet-based copyright infringement case with at least

---

[12] The practice has caused at least one court to question "whether [the sexually explicit films were] produced for commercial purposes or for purposes of generating litigation and settlements." *On the Cheap*, 2011 U.S. Dist. LEXIS 99831, at *11-12 n.6.

130 defendants would prove a logistical nightmare.  It is likely that Defendants would assert different factual and legal defenses, and would identify different witnesses.  Case management and trial of 130 such claims would be inefficient, chaotic, and expensive."); *CP Prods. v. Does 1-300*, 2011 U.S. Dist. LEXIS 113013, at *1 (N.D. Ill. Feb. 24, 2011) ("As the caption of this action suggests, it is an understatement to characterize it as problematic in nature.").[13]

The very nature of these mass actions underscores that the burdens imposed on the ISPs by hundreds of requests for subscriber information is an undue burden.

## II.   IN THE ALTERNATIVE, THE ISSUES PRESENTED HERE SHOULD BE CERTIFIED FOR APPEAL TO PERMIT FURTHER DEVELOPMENT OF THE LAW AND UNIFORMITY OF DECISIONS.

If, arguendo, the Court were to deny this motion, the ISPs respectfully request that the issues presented be certified for appeal pursuant to 28 U.S.C. § 1292(b).  Certification for appeal is appropriate where, as here, the issue "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.*

To the ISPs' knowledge, no appellate court has addressed the proper scope of multi-Doe BitTorrent actions—or the standards to be applied in pre-Rule 26 requests for discovery of the Does' identities.  As the more than 180 separate lawsuits filed by Plaintiff's counsel have shown, the actions rise or fall on Plaintiffs' requests for discovery of the ISPs, and thus the *only* issue

---

[13] The defenses that likely would be raised by subscribers if they were served include lack of jurisdiction, improper venue, misjoinder, mis-identification of Defendant (based on shared Internet access, computer viruses that re-direct subscribers' computers without authorization, etc.), the First Amendment right to anonymity absent an evidentiary showing that the Defendant actually infringed Plaintiff's copyright, and issues relating to damages and entitlement to attorney's fees in light of the nature of the work. *See On the Cheap*, 2011 U.S. Dist. LEXIS 99831, at*8 (enumerating the "unique factual and legal issues that will have to be analyzed one at a time" if the thousands of individual defendants were not severed).

that has arisen is the proper scope of that discovery.  (Huffman Decl. ¶¶ 7-8 & Ex. L.)

Needless to say, the law in this area is far from uniform:  courts, litigants, and the ISPs would benefit greatly from appellate guidance in this evolving area of law and, ultimately, from uniformity in the rules to be applied to these many hundreds of cases.  *Grant v. Chevron Phillips Chem. Co. L.P.*, 309 F.3d 864, 875 (5th Cir. 2002) (issues involving an "intra-district division of authority" are particularly appropriate for interlocutory appeal); *Marquis v. Federal Deposit Ins. Corp.*, 965 F.2d 1148, 1151 (1st Cir. 1992) (jurisdictional questions of an "unsettled nature" are properly certified for appeal); *A. P. De Sanno & Son, Inc. v. Brow*n, 313 F.2d 898 (D.C. Cir. 1963) (accepting for appeal certification of order denying motion to quash service of process).

No other meaningful path to appellate review exists.  Orders on motions to quash "are not ordinarily appealable," and no ISP is likely to invite a contempt citation to create an appealable order.  *In re Sealed Case*, 827 F.2d 776, 777 (D.C. Cir. 1987).  Certification for an immediate appeal would substantially advance the interests of justice.

## CONCLUSION

For all these reasons, the subpoenas issued to the ISPs should be quashed.

In the alternative, the ISPs respectfully request that the Court issue an order certifying for appeal a ruling on this motion.

Dated:  March 2, 2012                    Respectfully submitted,

By:      /s/ Tim A. O'Brien
_____

        Deanne E. Maynard, D.C. Bar No. 432382
        Tim A. O'Brien, DC. Bar No. 484700
        Morrison & Foerster LLP
        2000 Pennsylvania Ave., NW
        Washington, D.C.  20006-1888
        Telephone:  202.887.1500
        Facsimile:  202.887.0763
        DMaynard@mofo.com

        Benjamin J. Fox
        Morrison & Foerster LLP
        555 W. 5th Street
        Los Angeles, CA  90013-1024
        Telephone:  213.892.5200
        Facsimile:  213.892.5454
        BFox@mofo.com

        Attorneys for
        Bright House Networks LLC,
        Cox Communications, Inc.,
        Verizon Online LLC

*(Signature Block Continues on Next Page)*

Dated:  March 2, 2012                Respectfully submitted,


By:    /s/ Bradley C. Weber

           Bradley C. Weber, D.C. Bar No. 983329
           Locke Lord LLP
           701 8th Street, N.W., Suite 700
           Washington, D.C. 20001
           Telephone: (202) 220-6954
           Facsimile: (214) 756-8497
           BWeber@lockelord.com

           Bart W. Huffman
           Locke Lord LLP
           100 Congress Avenue, Suite 300
           Austin, Texas  78701
           Telephone:  (512) 305-4746
           Facsimile:  (512) 391-4741
           BHuffman@lockelord.com

           Attorneys for
           SBC Internet Services, Inc.,
           d/b/a AT&T Internet Services

1159321