UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AF HOLDINGS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case : 1:12-cv-00048 |
| | ) | |
| DOES 1 – 1058, | ) | Judge : Hon. Beryl A. Howell |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
THE NONPARTIES' MOTION TO QUASH**

A group of self-described Nonparties[1] moves this Court to quash subpoenas on the
grounds of undue burden, misjoinder and lack of personal jurisdiction over as-of-yet-unidentified
and unserved defendants. When one looks beyond the Nonparties' *ad hominem* attacks and
arguments that the Nonparties have no standing to raise, the Court is left with a straightforward
analysis under Rule 45, which sets forth an exhaustive list of grounds on which a nonparty may
move to quash or modify a subpoena.

The only valid Rule 45 basis mentioned in the Nonparties' motion is undue burden.[2]
However, the Nonparties have all sworn that they already retrieved the requested information,
which belies any claim that doing so would be "unduly burdensome." [3] Rather than simply

---

[1] Bright House Networks, LLC, Cox Communications, Inc., SBC Internet Services, Inc. and Verizon
Online LLC

[2] ECF No. 8-1 at 1, 7, 13, 17; *see also* Decl. of Randall Cadenhead, ECF No. 8-3 ¶ 2 ("The subpoenas
have imposed (and continued to impose) a substantial administrative burden on Cox."); Decl. of Sean
Moriarty, ECF No. 8-9 ¶ 2 (same as to Verizon).

[3] Decl. of Randall Cadenhead, ECF No. 8-3 ¶¶ 3-4 (explaining that he identified the "mailing and billing
address for [the 110] subscribers."); Decl. of Rhonda Compton, ECF No. 8-5 ¶ 4 (explaining that she
performed a "routine search of AT&T's systems" for every fifth IP address and "determine[d] the Internet
subscriber for the listed IP address at the specified date and time . . ."); Decl. of Tim Frendberg, ECF No.

produce what is now in their hands, they have chosen the highly burdensome tactic of filing in federal court a motion to quash premised on invalid arguments rather than simply forwarding the information to Plaintiff.

The Nonparties also falsely claim[4] that Plaintiff's counsel has never named and served a defendant in a copyright infringement case. That the Nonparties would resort to making demonstrably false statements to this Court is both disturbing and revealing. Attorney Huffman's sworn declaration is particularly egregious in that conveys the false impression that Plaintiff's counsel has never named and served a defendant in BitTorrent-based copyright infringement litigation—a claim easily belied by the authority discussed *infra* at note 4. In his declaration, Attorney Huffman omits a critical prefatory clause contained in the document on which his declaration relies, "Although our records indicate that we have filed suits against individual copyright infringement defendants...." Attorney Huffman would have had to notice this clause, because it immediately preceded the clause to which he cites. This misstatement goes on to serve as the backbone of the Nonparties' argument in favor of quashing. While attorneys should be zealous advocates for their clients, attorneys also have a duty to convey truth to the Court.

---

8-7 ¶¶ 2-3 (explaining that he determined the "service address" for all 30 subscribers); Decl. of Sean Moriarty, ECF No. 8-9 ¶ 3 (explaining that he determined the "mailing or billing address for these [188] subscribers . . .").

[4] *Compare* the Nonparties' statements that "in not a single one of [Plaintiff's counsel's] cases has *any* Defendant been served" (ECF No. 8-1 at 1), that "Plaintiff's counsel simply moves from court to court seeking authorization to serve subpoenas . . . without using the information gathered for the purposes of litigating any case on its merits" (*id.* at 11-12), and that "Plaintiff's counsel's failure to serve a single defendant in any forum . . ." is improper (*id.* at 13 n 10) *with* Compl., *Achte/Neunte Boll Kino v. Michael Famula*, No. 11-0903 (N.D. Ill. Feb. 9, 2011), ECF No. 1 (naming and serving Michael Famula as a defendant); Compl., *Achte/Neunte Boll Kino v. Daniel Novello*, No. 11-0898 (N.D. Ill Feb. 9, 2011), ECF No. 1 (naming and serving Daniel Novello as a defendant); Amend. Compl., *Boy Racer, Inc. v. Philip Williamson*, No. 11-3072 (N.D. Cal. Dec. 12, 2011), ECF No. 7 (naming and serving Philip Williamson as a defendant); First Amend. Compl. *Hard Drive Productions, Inc. v. Syed Ahmed et al.*, No. 11-2828 (N.D. Ill. Oct. 25 2011), ECF No. 23 (naming and serving Syed Ahmed as a defendant).

Finally, the Nonparties request an opportunity to file an interlocutory appeal in the event of an adverse decision on their motion to quash. (ECF No. 8-1 at 17-18.) Given the defects in their arguments, the Nonparties cannot hope to succeed on their motion or on appeal. Any such effort would appear to be aimed at achieving a win through delay. As time passes subscriber information is destroyed, subscribers delete evidence from their hard drives and other critical forensic evidence disappears—all before the unknown and unidentified subscriber is on notice of Plaintiff's litigation. *See, e.g.*, Comcast Cable Law Enforcement Handbook, available at http://cryptome.org/isp-spy/comcast-spy.pdf at *10 (explaining that "Comcast currently maintains Internet Protocol address log files for a period of 180 days. If Comcast is asked to respond for information relating to an incident that occurred beyond this period, we will not have responsive information and cannot fulfill a legal request.") (last visited March 5, 2012).

The Nonparties know full well that the overwhelming majority of district courts nationwide, including this Court, do not agree with their positions and that they do not have standing to make the arguments they raise. *Virgin Records America, Inc. v. Does 1-35*, No. 05-1918, 2006 WL 1028956 at *3 (D.D.C. 2006) ("In each case, courts have rejected [the jurisdiction] argument as 'premature,' even where the Doe defendants assert that they live outside the court's jurisdiction and have minimal or no contacts with that jurisdiction.") In fact, the Nonparties fail to cite to a *single* case that holds an ISP can argue personal jurisdiction and joinder on behalf of its subscribers and succeed on a motion to quash a subpoena. (*See generally* ECF Nos. 8, 8-1.) Yet, the Nonparties claim that certifying their arguments for appeal will somehow "advance the interests of justice." (ECF No. 8-1 at 18.) This, of course, is nonsense. The only possible effects of such an interlocutory appeal are the delay and obstruction of justice.

The Nonparties will have every opportunity to file an appeal at the conclusion of this litigation and achieve their stated goal of bringing "uniformity to the rules." (*Id.*)

For the reasons described herein, Plaintiff respectfully requests the Court to deny the Nonparties' motion in its entirety and order the Nonparties to immediately comply with Plaintiff's subpoenas. Further, in order to discourage ISPs from challenging subpoenas on plainly illegitimate grounds and making false statements to the Court, Plaintiff respectfully requests the Court to shift the cost of compliance with Plaintiff's subpoenas onto the Nonparties.  Without an appropriate penalty for bad-faith challenges to subpoenas, ISPs will continue to defy orders issued by United States District Court for the District of Columbia.

## BACKGROUND

On January 11, 2012, Plaintiff AF Holdings LLC brought a copyright infringement action against unnamed defendants, alleging that the defendants illegally copied and distributed its copyrighted work to others over the Internet. (Compl., ECF No. 1.) Along with its Complaint, Plaintiff submitted a list of ISPs and IP addresses associated with the infringing activities. (Compl., Ex. A.) On January 18, 2012, Plaintiff brought a motion for expedited discovery to obtain the limited identifying information of the internet subscribers of the IP addresses associated with the infringing conduct. (Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference, ECF No. 4.)

On January 30, 2012, the Court granted Plaintiff leave to issue subpoenas *duces tecum* to various Internet service providers ("ISPs") for the production of identifying information with respect to the Internet Protocol ("IP") addresses of the putative defendants. (Order Granting Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference, ECF No. 5.) In accordance with this Order, Plaintiff issued subpoenas to various ISPs, including Bright House Networks, LLC,

Cox Communications, Inc., SBC Internet Services, Inc. and Verizon Online LLC. (*See* ECF No. 1.) On March 2, 2012, These ISPs filed a motion to quash the subpoenas issued to them by Plaintiff. (Mot. to Quash Subpoena Issued to Non-Party Internet Service Providers, ECF No. 8.)

## DISCUSSION

The Nonparties' opening argument is that the subpoenas impose an undue burden. Their next argument is that the Court lacks personal jurisdiction over the vast majority of the putative defendants in this case. Their final argument is that joinder of the putative defendants is improper. Finally, the Nonparties request certification of an adverse decision for interlocutory appeal. Interlaced in their various legal arguments is a series of *ad hominem* attacks against Plaintiff's counsel. Plaintiff addresses each of the Nonparties' arguments, their request for interlocutory certification and their *ad hominem* attacks, respectively.

## I.   LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule" or "Rules") 45, among other things, sets forth an exhaustive list of grounds on which a subpoena may be quashed or modified:

Rule 45(c)(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person—except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

## II.    THE NONPARTIES FAIL TO ESTABLISH UNDUE BURDEN

The Nonparties argue that the burden "imposed on the ISPs by Plaintiff's subpoenas is an

*undue* burden…." (ECF No. 8-1 at 1.) (emphasis in original.) The phrase "undue burden" is not

an incantation that automatically excuses the subject of a subpoena from complying with it.

Instead, a party claiming undue burden must set forth with specificity the precise nature of the

undue burden and propose alternatives for reducing it. *aaiPharma, Inc. v. Kremers Urban Dev.

Co.*, 361 F.Supp.2d 770, 771 (N.D. Ill. 2005) (denying a motion to quash a subpoena because,

*inter alia*, the parties claiming that the subpoena caused them an undue burden did "not

propose[ ] any modification to the specific topics they contend are unduly burdensome.") The

Nonparties fail completely in this regard. A review of each mention of "undue burden" in the

Nonparties' motion reveals its use in an entirely conclusory manner. (*See* ECF No. 8-1 at 1, 7,

13, 17.) Although undue burden is a valid Rule 45 basis for quashing a subpoena, successful

undue burden arguments require more than mere recitation of the phrase.

Any attempt by the Nonparties to fortify their undue burden argument would be made in

bad faith.  By the their own sworn admission, the information requested in the subpoenas is

currently sitting on the desks of Mr. Cadenhead,  Ms. Compton, Mr. Frendberg and Mr.

Moriarity. (Decl. of Randall Cadenhead, ECF No. 8-3 ¶¶ 3-4 (explaining that he identified the

"mailing and billing address for [the 110] subscribers."); Decl. of Rhonda Compton, ECF No. 8-

5 ¶ 4 (explaining that she performed a "routine search of AT&T's systems" for every fifth IP

address and "determine[d] the Internet subscriber for the listed IP address at the specified date and time . . ."); Decl. of Tim Frendberg, ECF No. 8-7 ¶¶ 2-3 (explaining that he determined the "service address" for all 30 subscribers); Decl. of Sean Moriarty, ECF No. 8-9 ¶ 3 (explaining that he determined the "mailing or billing address for these [188] subscribers . . .")). Apparently, it is an undue burden to gather subscriber data, unless the purpose for gathering it is to contest Plaintiff's subpoenas.

## III.   THE NONPARTIES' PERSONAL JURISDICTION ARGUMENT IS BASELESS

The Nonparties argue that they should not have to comply with the subpoena because "personal jurisdiction is lacking over the vast majority of subscribers for whom Plaintiff seeks identifying information." (ECF No. 8-1 at 5.) The Nonparties' sole basis for this statement appears to be a review of their subscribers' billing addresses. (*Id.* at 6-7.) Based on this review, the Nonparties claim to have unilaterally resolved the personal jurisdiction issue for the Court. The Court should reject the Nonparties' personal jurisdiction argument. First, lack of personal jurisdiction is not a valid Rule 45 basis on which to move to quash a subpoena. Second, arguments regarding personal jurisdiction are premature at this juncture of the litigation. Third, the Nonparties lack standing to raise personal jurisdiction defenses on behalf of third-party infringers. Fourth, the Nonparties' "billing address" approach to determining personal jurisdiction is erroneous.

### A.   Lack of Personal Jurisdiction is not a Valid Rule 45 Basis on Which to Move to Quash a Subpoena

Lack of personal jurisdiction is not a valid Rule 45 basis on which to move to quash a subpoena. *See* Fed. R. Civ. P. 45. Personal jurisdiction arguments do not fall on Rule 45's exhaustive list of permissible grounds for quashing or modifying a subpoena. *See id*. The Nonparties' motion to quash should be denied on this basis alone. Indeed, the Nonparties fail to

cite to a single case where an ISP successfully avoided compliance with a subpoena by arguing personal jurisdiction on behalf of third-party infringers. (*See generally* ECF No. 8-1.)

### B.  Personal Jurisdiction Arguments are Premature

Until named and served infringers appear and raise proper motions pursuant to Rule 12(b)(2), the Court must defer the personal jurisdiction question. *See Anger v. Revco Drug Co.*, 791 F.2d 956 (D.C. Cir. 1986) ("[T]he Federal Rules of Civil Procedure indicate that personal jurisdiction is a matter to be raised by motion or responsive pleading, not by the court *sua sponte*.") Indeed, until the infringers are at least identified, the Court will have no means to assess jurisdictional defenses and a proper adjudication of this issue will be impossible to make. *First Time Videos, LLC v. Does 1–76*, No 11 C 3831, 2011 WL 3586245, at \*5 (N.D. Ill. Aug. 16, 2011) (Bucklo, J.) ("I lack sufficient information for evaluating … jurisdictional defenses.")

Plaintiff is not required to "prove" personal jurisdiction at this stage of the litigation. It is well-established that personal jurisdiction does not even have to be pled. *See, e.g., Hagen v. U-Haul Co. of Tenn.*, 613 F. Supp. 2d 986, 1001 (W.D. Tenn. 2009) ("The burden of establishing the existence of personal jurisdiction lies with the party asserting such jurisdiction, i.e. the plaintiff. Although, a plaintiff is only required to meet this burden when challenged by a motion under Rule 12(b)(2) …."); *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474-75 (D. Del. 1995) (noting Rule 8 does not require plaintiffs to state grounds on which personal jurisdiction is alleged and that the plaintiff's pleading burden changes once the defendant challenges personal jurisdiction). Federal Rule of Civil Procedure 8(a)(2) requires only "a short plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

At this stage of the litigation, no infringer has been named or served with process. Accordingly, the Court is not exercising jurisdiction over any infringer and discussion of personal jurisdiction is premature. The Court has previously issued an authoritative decision on this issue. *Call of the Wild Movie, LLC v. Does 1–1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011). The Court's decision followed and developed existing persuasive authority. *See, e.g.*, *Arista Records, LLC v. Does 1–19*, 551 F. Supp. 2d 1, 11 (D.D.C. 2008) (Kollar-Kotelly, J.); *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 & n.7, 180–81 (D. Mass. 2008); *Sony Music Entm't, Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 567–68 (S.D.N.Y. 2004).

Furthermore, the Court's decision in *Call of the Wild* has been repeatedly reaffirmed by the Court, as well as by the Court's colleagues within the District Court for the District of Columbia. *See, e.g.*, Order, *Imperial Enters. Inc. v. Does 1–3,145*, No. 11-529 (RBW) (D.D.C. Aug. 30, 2011), ECF No. 43 at *3–5, 8 (Walton, J.); *W. Coast Prod., Inc. v. Does 1–5,829*, No. 11-57 (CKK), 2011 WL 2292239, at *5 (D.D.C. June 10, 2011) (Kollar-Kotelly, J.); *Donkeyball Movie, LLC v. Does 1–171*, No. 10-1520 (BAH), ____ F. Supp. 2d ____, 2011 WL 1807452, at *4–9 (D.D.C. May 12, 2011) (Howell, J.); *Voltage Pictures, LLC v. Does 1–5.000*, No. 10-0873 (BAH), ____ F. Supp. 2d. ____, 2011 WL 1807438, at *4–9 (D.D.C. May 12, 2011) (Howell, J.)

Similarly, the *Call of the Wild* decision has influenced federal courts across the nation, which have affirmed and followed its principles and reasoning. Order Den. Doe Defs.' Mot. to Quash, *Hard Drive Productions, Inc. v. Does 1-118*, No. 11-1567 (N.D. Cal. Nov. 8, 2011), ECF No. 28 at 3:22–4:8 ("[A] court cannot assess whether personal jurisdiction exists over a particular defendant until the defendant has been identified."); Order, *Hard Drive Productions, Inc. v. Does 1-31*, No. 11-22206 (S.D. Fla. Oct. 24, 2011), ECF No. 25 at 5 (finding personal

jurisdiction argument "unavailing and premature" because "it remains unclear whether this individual is a party to the litigation" and "the Court lacks sufficient information at this stage of the proceedings"); Order, *Hard Drive Productions, Inc. v. John Does 1–44*, No. 11-2828 (N.D. Ill. Aug. 9, 2011), ECF No. 15 at 2 (Holderman, C.J.) ("[Movant] has not yet been named as a defendant in this case, nor has he been served with process pursuant to Rule 4. Unless and until [movant] has been officially brought into this case, the question of personal jurisdiction remains unripe for resolution by the court.")

### C. The Nonparties Lack Standing to Raise Personal Jurisdiction Defenses on Behalf of Third-Party Infringers

The Nonparties have no colorable basis for claiming standing to challenge the Court's exercise of personal jurisdiction over third-party infringers, who will have their own opportunity to raise or waive a personal jurisdiction defense at the appropriate stage of the litigation. The Nonparties fail to cite to any authority that would suggest that the Nonparties have standing to raise jurisdictional defenses on behalf of third-party infringers. (*See generally* ECF No. 8-1.) Just as the Nonparties would lack standing to represent third-party infringers at the trial stage, so too do they lack standing to assert defenses on behalf of subscribers at the identification stage.

### D. The Nonparties' "Billing Address" Approach to Determining Personal Jurisdiction is Erroneous

The foundation of the Nonparties' personal jurisdiction arguments is that their unilateral review of the billing addresses of their subscribers suggests that many of their subscribers do not reside in the District of Columbia. However, a suggestion that the billing address of a subscriber has a material bearing on whether a court may exercise jurisdiction over an infringer is erroneous for three reasons. First, an infringer can consent to the Court's jurisdiction. Second, the link between a subscriber's billing address and an infringer's amenability to service of process in the

District of Columbia is tenuous. Third, the infringers' identities are relevant regardless of

whether they are ultimately named in this litigation.

### 1. An infringer can consent to the Court's jurisdiction

An infringer can consent to the Court's jurisdiction. Even if a subscriber's billing address

was a dispositive indicator of whether the Court could exercise personal jurisdiction over an

infringer—and it certainly is not—the infringer could nevertheless elect to waive the defense or

assert the defense in a collateral proceeding. A defendant who:

> receives a complaint and summons from a court in another
> jurisdiction and believes she is not subject to that court's
> jurisdiction … has several alternatives available to her. First, she
> may ignore the complaint and summons and then, if a default
> judgment is issued against her, may challenge the issuing court's
> jurisdiction in a collateral proceeding (presumably closer to home
> or other assets) when the plaintiff seeks to enforce the judgment.
> Second, she may voluntarily waive any lack of personal
> jurisdiction and submit to the district court's jurisdiction. Third,
> she may appear in the distant court for the limited purpose of
> deciding the jurisdictional issue.

*Ellis v. Fortune Seas Ltd.*, 175 F.R.D. 308, 311 (S.D. Ind. 1997). The benefits of waiving a

meritorious personal jurisdiction defense include joining a collective defense and enjoying "the

benefit of seeing what defenses, if any, other defendants may assert to avoid liability." *First Time*

*Videos, LLC v. Does 1–500*, No. 10 C 6254, ____ F. Supp. 2d. ____, 2011 WL 3498227, at *9

(N.D. Ill. Aug. 9, 2011). In addition, an individual who defers a personal jurisdiction challenge to

a collateral proceeding would enjoy the tactical advantage of reviewing the results of the

litigation before deciding whether to mount a collateral defense. The Nonparties should not be

allowed to usurp the litigation prerogatives of actual parties.

### 2. The link between a subscriber's billing address and an infringer's amenability to service of process in the District of Columbia is tenuous

The link between a subscriber's billing address and an infringer's amenability to service of process in the District of Columbia is tenuous. The only information conveyed by a subscriber's billing address is where the subscriber receives their bill. A subscriber's billing address does not state who in the subscriber's household committed the infringement. For example, perhaps a subscriber's roommate committed the infringement. Further, a subscriber's billing address does not say whether the infringer lives in or travels to the District of Columbia, conducts business in the District of Columbia, has agents in the District of Columbia, participated in a civil conspiracy with residents of the District of Columbia or engaged in any of the numerous alternate grounds for making an infringer amenable to service of process in the District of Columbia. *See* D.C. Code § 13-423 (2007) (long-arm statute).

### 3. The infringers' identities are relevant regardless of whether they are ultimately named in this litigation

The infringers' identities are relevant regardless of whether they are ultimately named as defendants in this litigation. First, the infringers' testimony can be used to prove liability of the named and served defendants. Second, the infringers' testimony can be used to establish damages for the named and served defendants under a theory of contributory infringement. *See Liberty Media Holdings, LLC v. Does 1-62*, No. 11-CV-575-MMA-NLS, 2011 WL 6934460 (S.D. Cal. Dec. 30, 2011) ("Defendant's conduct constitutes contributory infringement of Plaintiffs copyright in addition to direct infringement under 17 U.S.C. § 501.") Finally, the infringers' identities may be used to establish class membership should Plaintiff amend its complaint to include class allegations. *See* Class Action Complaint, *Openmind Solutions, Inc. v.*

*Does 1-2,925*, 3:11-cv-00092 (S.D. Ill. Feb. 2, 2011). The mere potential lack of personal

jurisdiction does not destroy the relevance of the subscribers' identities.

## IV.    THE NONPARTIES' MISJOINDER ARGUMENT IS BASELESS

The Nonparties argue they should not have to comply with Plaintiff's subpoenas because

joinder is improper. (ECF No. 8-1 at 9-12.) The Court should reject the Nonparties' joinder

argument. First, misjoinder is not a valid Rule 45 basis on which to move to quash a subpoena.

Second, joinder is proper at this procedural juncture. Third, the Nonparties lack standing to raise

misjoinder on behalf of third-party infringers.

### A.  Misjoinder is not a Valid Rule 45 Basis on Which to Move to Quash a Subpoena

Misjoinder is not a valid Rule 45 basis on which to move to quash a subpoena. *See* Fed.

R. Civ. P. 45. Misjoinder arguments do not fall within Rule 45's exhaustive list of permissible

grounds for quashing or modifying a subpoena. *See id.* The Nonparties' motion to quash should

be denied on this basis alone. The Nonparties fail to cite to a single case where an ISP

successfully avoided compliance with a subpoena by arguing misjoinder on behalf of third-party

infringers. (*See generally* ECF No. 8-1.)

### B.  Joinder is Proper at This Procedural Juncture

The Nonparties misjoinder objection is unavailing because at this procedural juncture,

joinder of the putative defendants is proper. First, Plaintiff has satisfied the requirements for the

permissive joinder of the putative defendants under Rule 20 for this stage of the litigation.

Specifically, Plaintiff alleged that the putative defendants used the BitTorrent file-sharing

protocol to illegally distribute its copyrighted work. (Compl. ¶ 3.) Further, Plaintiff alleged that

the BitTorrent file-sharing protocol "makes every downloader also an uploader of the illegally

transferred file(s)." (Compl. ¶ 5.) In this District and nationwide, courts have determined similar

allegations to establish a logical relationship between claims against putative defendants in BitTorrent-based copyright infringement litigation. *See, e.g.*, Order, *Imperial Enters. Inc. v. Does 1–3,145*, No. 11-529 (RBW) (D.D.C. Aug. 30, 2011), ECF No. 43 at *3–5, 8 (Walton, J.); *W. Coast Prod., Inc. v. Does 1–5,829*, No. 11-57 (CKK), 2011 WL 2292239, at *5 (D.D.C. June 10, 2011) (Kollar-Kotelly, J.); *Donkeyball Movie, LLC v. Does 1–171*, No. 10-1520 (BAH), ____ F. Supp. 2d ____, 2011 WL 1807452, at *4–9 (D.D.C. May 12, 2011) (Howell, J.); *Voltage Pictures, LLC v. Does 1–5.000*, No. 10-0873 (BAH), ____ F. Supp. 2d. ____, 2011 WL 1807438, at *4–9 (D.D.C. May 12, 2011) (Howell, J.); *Call of the Wild Movie, LLC v. Does 1– 1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011); *see also, e.g.* Order, *AF Holdings v. Does 1-162*,  No. 11-23036 (S.D. Fla. Feb. 14, 2012), ECF No. 27 at 6 ("If and when the Doe Defendants are identified and served with the Complaint, the issue of misjoinder may again be raised, to the extent necessary, based upon the actual parties involved at that point in time. Only then will the Court have at hand all that it needs to know to make a legally correct ruling."); *Patrick Collins, Inc. v. John Does 1–15*, No. 11-cv-02164, 2012 WL 415436, at *2–4 (D. Colo. Feb. 8, 2012) (Arguello, J.) (sustaining joinder and citing *Call of the Wild*); *Patrick Collins, Inc. v. Does 1–22*, No. 11-cv-01772-AW, 2011 WL 5439005, at *2–4 (D. Md. Nov. 8, 2011) (sustaining joinder and citing *Call of the Wild*); *Patrick Collins, Inc. v. Does 1–2,590*, No. C 11-2766 MEJ, 2011 WL 4407172, at *4–7 (N.D. Cal. Sept. 22, 2011) (James, J.) (sustaining joinder and citing *Call of the Wild*); *First Time Videos, LLC v. Does 1–76*, No 11 C 3831, 2011 WL 3586245, at *4 (N.D. Ill. Aug. 16, 2011) (Bucklo, J.) (collecting cases and concluding that "[t]he overwhelming majority of courts" have denied motions to sever "prior to discovery"); *First Time Videos, LLC v. Does 1–500*, No. 10 C 6254, ____ F. Supp. 2d. ____, 2011 WL 3498227, at *9–11 (N.D. Ill. Aug. 9, 2011) (Castillo, J.).

Further, Plaintiff alleges common questions of law and fact. For instance, Plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyright in the movie at issue and the infringement of the exclusive rights reserved to Plaintiff as the copyright holder. (*See generally* Compl.) Finally, joinder of the putative defendants at this stage of the litigation does not prejudice any party or cause needless delay. To the contrary, "joinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants." *Call of the Wild*, 770 F. Supp. 2d at 345; *see also First Time Videos, LLC v. Does 1–500*, No. 10 C 6254, ____ F. Supp. 2d. ____, 2011 WL 3498227, at *9–11 (N.D. Ill. Aug. 9, 2011) ("[J]oined defendants enjoy the benefit of seeing what defenses, if any, other defendants may assert to avoid liability.")[5]

The joinder cases cited by the Nonparties rely—either directly or through a chain of authority—on the same series of cases: *Laface Records, LLC v. Does 1-38*, 2008 U.S. Dist. LEXIS 14544 (E.D.N.C. 2008), *BMG Music v. Does 1-4*, 2006 U.S. Dist. LEXIS 53237, No. 06-01579 (N.D. Cal. 2006), *Interscope Records v. Does 1-25*, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. 2004), and *Twentieth Century Fox Film Corp., et al., v. Does 1-12*, No. 04-04862 (N.D. Cal. Nov. 16, 2004). These cases are often cited when challenging joinder in BitTorrent copyright infringement lawsuits, but all share a similar distinguishing factor from Plaintiff's case. The plaintiffs in these cases did not allege any collaboration among the defendants, much less

---

[5] As this Court and other courts have noted, joinder at the identification stage of BitTorrent-based copyright infringement litigation avoids the issue of severing individuals from themselves. In cases such as this, it is common for multiple IP addresses to be associated with a single individual. *See*, *e.g.*, *First Time Videos, LLC, v. Does 1-28*, 11-2982 (N.D. Ill. Sept. 26, 2011), ECF No. 15 (where all 28 IP address involved in the case turned out to be associated with a single individual). Had the court there severed that case before the plaintiff had completed early discovery, Plaintiff would have unwittingly filed 28 separate copyright infringement actions against the same anonymous individual. No plausible argument can be made that severance would have been appropriate in this example.

infringement of the *same copyrighted work*. For example, in *BMG*, Doe #2 was alleged to have infringed on recordings by MC Lyte, LL Cool J, Mariah Carey and Busta Rhymes, while Doe #3 was alleged to have infringed on recordings by Ideal, Kelly Price, Mary J. Blige, Pink, SWV and Usher—no overlap whatsoever. Complaint for Copyright Infringement, Exhibit A, *BMG Music*, No. 3:06-cv-01579, ECF No. 1 (alleging only that the defendants committed violations of the same law by the same means.). Further, the copyrights to the various recordings were held by a variety of recording companies. *Id*. This factual background stands in stark contrast to Plaintiff's pleading where it is alleged that Defendants violated a *single* copyright work, belonging to a *single* Plaintiff, and that the infringers *actually interacted with each other* in a single BitTorrent swarm. (ECF No. 1.) The Court should continue to recognize the difference between the cases cited by the Nonparties and the decisions of the overwhelming majority of district courts nationwide.

The Nonparties take issue with the fact that infringement by the Doe Defendants took place "over a four-month period" of time. (ECF No. 8-1 at 9-10.) However, this temporal concern does not defeat the "transaction or occurrence" element of the legal standard for assessing the propriety of permissive joinder. To aid in their application of the "transaction or occurrence test," courts look to how the test is applied in other provisions of the Federal Rules, such as Rule 13(a). *Mosley v. General Motors Corporation*, 497 F.2d 1330, 1332-33 (8th Cir. 1974). The Supreme Court states that the meaning of "transaction", as used in Rule 13(a), "may comprehend a series of many occurrences, depending not so much upon the immediateness of their own connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926). Accordingly, "Rule 20 would permit all reasonably related claims by or against different parties to be tried in a single proceeding. Absolute identity of all events is

unnecessary." *Mosley*, 497 F.2d at 1333. Participation in a single swarm establishes this logical

relationship. *See Patrick Collins, Inc. v. Does 1-2,590*, No. 11-02766, 2011 WL 3740487 *6

(N.D. Cal. Aug. 24, 2011) ("[T]he Court finds that Plaintiff has at least presented a reasonable

basis to argue that the BitTorrent protocol functions in such a way that peers in a single swarm

downloading or uploading a piece of the same seed file may fall within the definition of "same

transaction, occurrence, or series of transactions or occurrences" for purposes of Rule

20(a)(1)(A)).

### C.  The Nonparties Lack Standing to Argue Misjoinder on Behalf of Third-Party Infringers

The Nonparties have no colorable basis for claiming standing to argue misjoinder on

behalf of third-party infringers, who will have their own opportunity to contest the propriety of

joinder at the appropriate stage of the litigation. Once again, the Nonparties fail to cite to any

authority that would suggest that the Nonparties have standing to argue misjoinder on behalf of

third-party infringers. (*See generally* ECF No. 8-1.)

### V.  THE NONPARTIES' REQUEST FOR INTERLOCUTORY CERTIFICATION MUST BE DENIED

The Nonparties argue that if "the Court were to deny this motion, the ISPs respectfully

request that the issues presented be certified for appeal pursuant to 28 U.S.C. § 1292(b)." (ECF

No. 8-1 at 17-18.) A certification for interlocutory appeal may be granted only if the order: 1)

involves a controlling question of law, 2) there is substantial ground for difference of opinion,

and 3) an immediate appeal may materially advance the ultimate termination of the litigation. 28

U.S.C. § 1292(b). The Nonparties cannot meet any of these elements. First, the Nonparties

motion does not involve "a controlling issue of law." The issues raised by the Nonparties are not

"controlling" because the resolution of whether the ISPs have standing to raise personal

jurisdiction and joinder arguments on behalf of their subscribers has no bearing on whether the subscribers are liable for copyright infringement.

Second, there is no "substantial ground for a difference of opinion" in the issues raised by the Nonparties. Plaintiff is not aware of and the Nonparties do not cite to (*see generally* ECF No. 8-1), any authority that holds that nonparties have standing to raise personal jurisdiction and joinder arguments on behalf of parties to the litigation.

Third, an interlocutory appeal will not "materially advance the ultimate termination of the litigation." In fact, it will only delay it. And as explained above, *see* discussion *supra*, p. 3, any delay in providing Plaintiff with the information it seeks may ultimately preclude Plaintiff from maintaining this current litigation to protect its copyrighted work. The Nonparties' motion for interlocutory appeal should be denied as they have failed to establish any of the statutory requirements for bringing it.

## VI.   THE NONPARTIES' *AD HOMINEM* ATTACKS AGAINST PLAINTIFF'S COUNSEL ARE NOT A BASIS FOR QUASHING THE SUBPOENAS

The Nonparties devote substantial portions of their brief to impugning Plaintiff's counsel. Their demonstrably false statements have no relevance to the black letter law regarding Rule 45. This is an unfortunate effort to draw the Court's attention away from the obvious defects of their motion to quash.

Perhaps the most unsettling aspect of the Nonparties' brief is that the backbone of their motion—the argument that Plantiff's counsel has never actually named and served a copyright infringement defendant—is simply untrue.  A cursory review of PACER would have alerted them to this fact.  It is hard to believe that learned counsel would fail to conduct even a primitive level of due diligence regarding its clients' arguments. Plaintiff trusts that Attorney Huffman will

either amend his declaration, or explain to this Court during oral argument his basis for the false statements in his sworn declaration.

Also, Attorney Huffman states under oath that Plaintiff AF Holdings acted as a law firm and dismissed two cases in this District. (Huffman Decl. 3.) Plaintiff is not a law firm—and is confident that Attorney Huffman's declaration, which was submitted under the penalty of perjury, cannot withstand basic scrutiny—although Attorney Huffman is certainly free to meet this challenge. In addition, AF Holdings has no relationship of any kind to the plaintiffs in the two cases described in Attorney Huffman's sworn declaration, namely First Time Videos LLC and Millenium TGA, Inc. That Attorney Huffman would, under the penalty of perjury, falsely describe Plaintiff as acting as counsel[6] for other copyright holders is troubling.

Of other concern, but consistent with the meme of "blame the victim", opposing counsel goes to great lengths to gratuitously insert such salacious references as "sexually explicit" into the Nonparties' brief for no apparent legally-grounded reason.  Opposing counsel repeatedly emphasizes (to the point of italicizing) "Caribbean Sea" when referring to Plaintiff's domicile, inferring some form of second-class status for companies domiciled outside the United States.

The Nonparties accuse Plaintiff of settling with some of the infringers early in litigation. Public policy, of course, favors settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005); *accord Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts."); *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982) (noting "the paramount policy of encouraging settlements"). Despite having no role in the underlying case, the Nonparties attempt to control how the actual parties conduct litigation, going so far as to move this Court to penalize copyright

---

[6] It is worth noting that accusing Plaintiff of engaging in the unauthorized practice of law is tantamount to falsely accusing a person of committing a crime. Plaintiff is reviewing its options for legal recourse regarding Attorney Huffman's false claims.

holders for resolving claims without burdening the federal courts.[7] This attempt should be rejected.

## CONCLUSION

The Nonparties' undue burden argument is rebutted by the very fact that they have already collected the information sought in Plaintiff's subpoenas. Compliance at this juncture requires little more than the cost of a stamp. Plaintiff respectfully requests that this Court take notice when considering Plaintiff's cost-shifting request that rather than simply complying with Plaintiff's subpoena, the ISP's collected the exact information requested in Plaintiff's subpoenas and sent the information to their attorneys to use in fighting the Court's order.  Had these ISP's instead sent that same information to Plaintiff's counsel, Plaintiff would have avoided substantial legal fees and been able to much sooner address the irreparable harm that Plaintiff is currently suffering.

Respectfully submitted,

AF Holdings LLC

**DATED**: March 6, 2012

By: /s/ Paul A. Duffy
Paul A. Duffy, Esq. (D.C. Bar Number: IL0014)
Prenda Law Inc.
161 N. Clark St., Suite 3200
Chicago, IL 60601
Telephone: (312) 880-9160
Facsimile:  (312) 893-5677
E-mail: paduffy@wefightpiracy.com
*Counsel for the Plaintiff*

---

[7] Many of the infringers are represented by experienced counsel. In these settlements, the Nonparties would have this Court interfere in arms-length negations, which are presumed as a matter of law to be fair and reasonable to both sides. *Charter Commc'ns, Inc. Sec. Litig.*, MDL No. 1506, 2005 WL 4045741, at *5 (E.D. Mo. June 30, 2005); *see also Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001) ("[A] settlement that is the product of arm's-length negotiations conducted by experienced counsel is presumed to be fair and reasonable.")

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 6, 2012, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system.

  /s/ Paul A. Duffy        
PAUL A. DUFFY
