**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AF HOLDINGS LLC,

               Plaintiff,

    v.

DOES 1-1058,

               Defendants.

Case No. 1:12-cv-00048 (BAH)

Judge: Hon. Beryl A. Howell

**BRIEF OF AMICI CURIAE ELECTRONIC FRONTIER FOUNDATION, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, AND AMERICAN CIVIL LIBERTIES UNION OF THE NATION'S CAPITAL IN SUPPORT OF MOTION TO QUASH SUBPOENAS ISSUED TO NON-PARTY INTERNET SERVICE PROVIDERS**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.   The Large And Growing Problem of Mass Copyright Litigation ...........................................2

II.  Plaintiff Has Not and Cannot Demonstrate Personal Jurisdiction Over Most Of The
     Defendants ...............................................................................................................4

     A.   Jurisdictional Discovery Requires A Good Faith Basis ............................................5

     B.   Almost All Of The Does Are Located Outside This District, And Plaintiff Could
          Easily Have Determined This Before Filing Suit .......................................................6

     C.   Under Controlling Law, the Use of BitTorrent Does Not Confer Nationwide
          Jurisdiction ................................................................................................7

     D.   Plaintiff's New Jurisdictional Arguments are Specious ...........................................11

III. Venue Is Improper As To Most Of The Defendants .............................................................12

IV.  Plaintiff Has Improperly Joined Thousands of Individual Defendants Based on Entirely
     Disparate Alleged Acts .............................................................................................13

     A.   Federal Courts Are Increasingly Rejecting Attempts at Mass Joinder ........................13

     B.   Plaintiff Has Not Established a Concert of Action Among Defendants .......................15

     C.   Mass Joinder Unfairly Prejudices Defendants, And The Joinder Issue Should Be
          Considered Now ............................................................................................16

V.   Plaintiff Has Not Met Its Burden Under the First Amendment .............................................17

     A.   BitTorrent Users Have A Right To Engage In Anonymous Speech ...........................17

     B.   Plaintiffs Request for Discovery Cannot Survive First Amendment Scrutiny ............19

VI.  If The Court Declines To Quash The Subpoenas, Immediate Appeal Is Appropriate .........19

CONCLUSION .......................................................................................................................22

### INTRODUCTION

Amici the Electronic Frontier Foundation, the American Civil Liberties Union Foundation, and the American Civil Liberties Union of the Nation's Capital urge this Court to grant the Motion to Quash the subpoenas issued by plaintiff AF Holdings to several non-party Internet service providers (ISPs), or, if the motion is denied, to certify an immediate interlocutory appeal.

Amici submit this brief because they are deeply concerned that the subpoenas in question are fundamentally improper, and to make the Court aware of the relevant legal and factual context of this case. For example, while the ISPs have shown, based on their own internal records, that the vast majority of the Does in this case do not reside in the District of Columbia and are not subject to personal jurisdiction or proper venue here, this brief details how AF Holdings could easily have determined as much prior to filing this lawsuit. Inexpensive geolocation technology can likely identify the physical location of the computer associated with an Internet Protocol address with very high accuracy. If AF Holdings had used such a service before filing suit, it would have learned exactly what the ISP movants have confirmed – approximately 20 of the 1,058 Doe Defendants "are found in this District." AF Holdings therefore should never have included the overwhelming majority of the IP addresses in this lawsuit, much less asked this Court to authorize discovery of information related to those IP addresses.

AF Holdings' improper joinder of 1,058 defendants in a single action also weighs in favor of quashing the subpoenas. As explained below, this issue is ripe for consideration because the due process problems inherent in mass joinder under the circumstances of this case are clear from the Complaint and the Motion for Early Discovery, and will not change if and when defendants are served. *If* defendants are served, they will *already* have been prejudiced by the mass joinder.

In addition, those who use the Internet to communicate have a qualified First Amendment right to engage in anonymous speech that should not be abrogated without an appropriate

balancing of interests by the Court, *before* any speaker's identifying information is disclosed. Because AF Holdings has demonstrated that this balance weighs in its favor, the company should not be able to obtain the requested identifying information.

Should the Court deny the Motion, the prevalence of lawsuits such as this one, and the divergent approaches taken by judges within this District and around the country, favor certifying that decision for immediate appellate review under 28 U.S.C. § 1292(b). Appellate review of these subpoenas would also help to curb the forum shopping that is endemic to litigation of this type. For example, AF Holdings' counsel has on at least three occasions dismissed similar mass copyright suits immediately after they were assigned to judges who had issued unfavorable threshold rulings in similar cases.

For these reasons, Amici urge the Court to quash the subpoenas to the ISPs, or, in the alternative, to certify an immediate appeal.

## ARGUMENT

## I.    The Large And Growing Problem of Mass Copyright Litigation

This case is one of hundreds of similar mass lawsuits in which copyright owners have sued John Doe defendants from all over the country, alleging copyright infringement of pornographic works. These cases do not appear to be filed with the intention of litigating them. Instead, the plaintiffs (and their counsel) apparently hope to take advantage of the threat of an award of statutory damages and attorney's fees, the ignorance of those sued about their potential defenses, and the stigma that is associated with downloading pornographic movies, to induce defendants into settling for a payment of roughly $2,000 to $3,000 each – far less than the cost of defending even a straightforward suit. Indeed, AF Holdings' own counsel, Prenda Law, Inc., has filed at least 118 copyright infringement cases in federal court against multiple joined John Doe defendants, but has not served the defendants in any of these cases.[1]

---

[1] A member of plaintiff's counsel's firm listed 118 cases in response to the court's request for "[a] list of the BitTorrent copyright infringement cases involving multiple joined John Doe Defendants filed [by] Plaintiff's counsel's law firm or predecessor firm in federal

Many plaintiffs in these lawsuits appear to believe that they are permitted to engage in something called "identification discovery," namely, subpoenas to ISPs for the identities of their subscribers, in *any* court in this country, without *any* consideration of the court's jurisdiction and *regardless* of what use plaintiff intends to make of the information.   Plaintiff's Statement of Good Cause in Response to the Court's Feb. 13, 2012 Order at 12-13, *West Coast Prods*., *Inc. v. Does 1-1434,* No. 1:11-cv-55-JEB-JMF  (D.D.C. Feb. 16, 2012), ECF No. 21 (RJN Ex. R at 12). No statute, rule, or decision permits "identification discovery," as distinct from jurisdictional discovery.

Many of these plaintiffs, including AF Holdings, apparently also believe they may use the identities of the ISPs' subscribers for purposes other than litigation.  *See* Memorandum of Points and Authorities in Opposition to the Nonparties' Motion to Quash, at 11, *AF Holdings LLC v. Does 1-1058*, No. 1:12-cv-00048 (D.DC. Mar. 6, 2012), ECF No. 13 ("The infringers' identities are relevant regardless of whether they are ultimately named in this litigation."). Letters sent by plaintiff's counsel (or its predecessor firm, Steel Hansmeier, PLLC) to subscribers identified in suits like this one illustrate the true purpose to which this information will be put: targeting ISP subscribers and encouraging them to settle regardless of who, if anyone, used the ISP account to infringe copyright.  One such letter, filed as an exhibit to a complaint in another action, suggests misleadingly that the account owner "may be held legally responsible" for "settlement fees" regardless of who infringed, and goes on to encourage the account owner to "make this go away" by "paying the settlement fee."  Ex. A to Complaint, *Seth Abrams v. Hard Drive Productions, Inc., and Does 1-50*, No. 3:12-cv-01006 JCS (N.D. Cal. Feb. 28, 2012), RJN Ex. N.

In the increasingly common case where courts have imposed a deadline upon plaintiffs to name and serve actual defendants, plaintiffs, including AF Holdings, often simply dismiss an

---

court."  *See* Declaration of Charles E. Piehl in Response to Minute Order at 4, *AF Holdings LLC v. Does 1-135*, No. 5:11-cv-03336  (N.D. Cal. Feb. 24, 2012) (RJN Ex. R).  The document stated that the firm had served defendants in other cases, but did not identify those cases.

action once the ISPs have responded to subpoenas and the defendants are identified.   For example, in *AF Holdings, LLC v. Does 1-1,140*, after granting leave to issue subpoenas to ISPs, Judge Walton ordered plaintiff to name and serve defendants by March 9, 2012.  *See* Plaintiff's Notice of Voluntary Dismissal at 2, No. 1:11-cv-01274 (D.D.C. Feb. 29, 2012), ECF No. 34. Instead of doing so, plaintiff dismissed the case, "[r]ather than prematurely initiate litigation against individuals who may ultimately wish to resolve Plaintiff's claims via settlement."  *Id.* The clear implication is that AF Holdings decided to seek to avoid naming and serving any defendant, and, instead, to continue to pursue settlements *without* the court's scrutiny.

AF Holdings' actions and those of its counsel illustrate that Amici's fears, expressed to this Court over one year ago,[2] were well-founded: allowing discovery to proceed despite the due process problems inherent in mass copyright litigation can lead to abuses that will not likely be remedied at a later stage.

The Court need not blind itself to these circumstances.  Instead, it can and should apply clear existing caselaw concerning jurisdictional discovery, venue, joinder, and First Amendment balancing detailed below.  Doing so at an early stage will not prejudice AF Holdings, but it will discourage discovery abuses and ensure that defendants' constitutional rights are protected.

## II.     Plaintiff Has Not and Cannot Demonstrate Personal Jurisdiction Over Most Of The Defendants

In its Complaint, AF Holdings has offered two theories for the Court's exercise of personal jurisdiction over the defendants:  first, that "each Defendant may be found in this District," and second (in the alternative) that "a substantial part of the acts of infringement complained of herein occurred in this District" because the acts "occurred in every jurisdiction in the United States, including this one." Compl. ¶ 7.  AF Holdings has not demonstrated a good

---

[2] Amicus Brief, American Civil Liberties Union, American Civil Liberties Union of the Nation's Capital, and Public Citizen, *Call of the Wild Movie v. Does 1-331*, No. 1:10-cv-00455-BAH (D.D.C. Jan. 3, 2011), ECF No. 18.

faith basis for either allegation for the vast majority of the putative defendants, nor has it offered a reasonable showing that discovery will allow it to do so.

### A.    Jurisdictional Discovery Requires A Good Faith Basis

AF Holdings insists that it need not even plead, much less prove, that this Court has personal jurisdiction at this juncture. Memorandum in Opposition to Motion to Quash Subpoenas Issued To Non-Parties ("Opp. Br.") at 8. AF Holdings is wrong.  The Due Process Clause imposes on every plaintiff the burden of establishing personal jurisdiction.  As a matter of fundamental fairness, no defendant should be forced to have his rights and obligations determined in a jurisdiction with which he has had no contact.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945). Accordingly, jurisdictional discovery is granted only where the requesting party can support "at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998).  *See also Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.,* 638 F. Supp. 2d 1, 11 (D.D.C. 2009) (while as a general matter discovery should be "freely permitted," jurisdictional discovery is justified only if the plaintiff "reasonably demonstrates that it can supplement its jurisdictional allegations through discovery").   "Mere conjecture or speculation" will not suffice.  *FC Inv. Grp. LC v. IFX Mkts. Ltd.,* 529 F.3d 1087, 1094 (D.C. Cir. 2008).

As explained in more detail in the ISPs' brief, ISP Memo at 2-4, AF Holdings' own evidence – the 1,058 IP addresses from which it seeks to identify defendants – shows that it does *not* have a good faith basis for jurisdictional discovery, and that it will *not* be able to supplement its jurisdictional allegations as to all but a few of the defendants.  Moreover, considering the very real danger of coercive settlements in this and similar cases, and evidence suggesting that hundreds of such settlements have already occurred, AF Holdings' lack of good faith is not a mere technicality that is likely to be remedied at a later stage of litigation.  While AF Holdings would prefer that the Court avert its eyes from the jurisdictional problem, "jurisdiction is always

an antecedent question" that must be addressed first in a federal court.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)*; see also Al–Zahrani v. Rodriguez*, No. 10–5393,2012 WL 539370 at *2 (D.C. Cir. Feb. 21, 2012)   (explaining that district court erred in addressing whether complaint stated a claim without first determining whether it had jurisdiction).

### B.    Almost All Of The Does Are Located Outside This District, And Plaintiff Could Easily Have Determined This Before Filing Suit

In a federal copyright action, personal jurisdiction over defendants must be established under District of Columbia law, as the Copyright Act provides no other basis for personal jurisdiction.  *Patrick Collins v. Does 1-72*, 2012 WL 177864, *3 (Jan. 19, 2012) (slip op.). Under D.C. law, jurisdiction may be established by showing that (1) the defendant is domiciled in the District, or (2) the defendant "acts directly or by an agent, as to a claim for relief arising from the person's … causing tortious injury in the District of Columbia by an act or omission in the District of Columbia."   D.C. Code §§ 13-422, 13-423 (2001).   Plaintiff cannot establish jurisdiction over the vast majority of defendants under either of these theories.

As to domicile, the movant ISPs have shown definitively that all but about twenty of the 1,058 Does in this case do not reside in the District of Columbia.  ISP Memo at 2-4.  This is the very same information that plaintiffs would learn if the ISPs were to comply with the subpoenas. Because these Does do not reside in the District, there can be no personal jurisdiction over them in this Court based on domicile.

AF Holdings could have learned these very same facts without discovery and before filing suit by, among other things, using geolocation services to identify where the computers associated with the 1,058 IP addresses were likely located.   These geolocation services are available for a small fee, and there is no reason plaintiff could not have relied on them as part of its duty to establish a good faith belief that the defendants could be sued in this Court.   For example, Neustar IP Intelligence (formerly called Quova) provides an on-demand geolocation

service for $8 per 1,000 addresses.[3] This service was audited independently by PriceWaterhouseCoopers in 2011 and found to be between 95.5% and 96.1% accurate at identifying in which U.S. state a given IP address is located.[4] Even where geolocation using current technology does not identify the correct state, it is likely accurate to within one city away from a user's actual location. *Nu Image*, 799 F. Supp. 2d at 40-41.

Applying the Neustar service to the IP addresses identified in Exhibit A to the Complaint reveals nearly the same location information provided by the ISPs from their records. Schoen Decl. ¶¶ 25, 28. In short, for far less than the cost of filing a civil complaint, AF Holdings could have learned – before filing suit – exactly what the ISPs have now confirmed: only a trivial number of the putative defendants reside in this District. Whatever the definition of "good faith" under *Caribbean Broadcasting*, it cannot be satisfied by the mere assertion, "on information and belief" that all defendants are "found in this district," when a party could easily have determined that all but a few defendants likely are not so found, and named as defendants only those whom geolocation shows to be in or near the District of Columbia.[5] Good faith cannot be premised on willful blindness.

### C. Under Controlling Law, the Use of BitTorrent Does Not Confer Nationwide Jurisdiction

AF Holdings alternatively asserts that the Court has personal jurisdiction over the Defendants because the alleged acts of copyright infringement "occurred in every jurisdiction in the United States, including this one." Compl. at ¶ 7. This theory is equally specious.

---

[3] *See* "Buy Neustar On Demand," https://buy.quova.com/
[4] *See* Report of Independent Auditors, http://www.quova.com/wp-content/uploads/2012/01/pwc-report-2010.pdf
[5] The availability of likely accurate and inexpensive geolocation services further supports Judge Wilkins's conclusion that plaintiffs should not be permitted to use this Court's authority "solely to obtain information that will be used in another lawsuit in a different venue." *Nu Image*, 799 F. Supp. 2d at 41 (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 430, 352 n.17 (1978). AF Holdings can obtain the same information without abusing this Court's jurisdiction or taxing its resources.

Under the District of Columbia long-arm statute, copyright claims are considered a species of tort claim for purposes of jurisdiction. *Nu Image*, 799 F. Supp 2d at 38. *See also Costello Publishing Company v. Rotelle*, 670 F.2d 1035, 1043 (D.C. Cir. 1981). For such claims, personal jurisdiction over non-residents must be based on "tortious injury in the District of Columbia." *Nu Image*, 799 F. Supp. 2d at 38; D.C. Code § 13-423. The situs of an injury can be either where the plaintiff resides or the "location of the original events that caused the injury." *Nu Image,* 799 F. Supp. 2d at 39 (citing *Helmer v. Doletskaya*, 393 F.3d 201, 208 (D.C. Cir. 2004)). AF Holdings is based in the Caribbean island of Nevis. Compl. ¶ 9. Therefore, long-arm jurisdiction over defendants must be based on the location of the original events that caused the alleged infringement.

It is well-settled that "a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received." *ALS Scan, Inc. v. Digital Service Consultants*, 293 F.3d 707, 714 (4th Cir. 2002); *see also Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 347 (2011) (finding the prospect of universal jurisdiction based on mere placement of information on the Internet "troubling"). In *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000), for example, the Court of Appeals for the District of Columbia rejected a similarly expansive theory of jurisdiction. The plaintiff had argued that although the defendants had no physical contacts with the District of Columbia, they had "entered into an agreement outside of the District with an eye toward attracting Internet users in the District to their websites . . . and thereby draw advertisers away from [plaintiff]." *Id.* at 1349. The court noted that there was no evidence of financial harm to the plaintiff in the District of Columbia and squarely rejected the notion that the ability of a District of Columbia resident to access and use a website was sufficient to establish personal jurisdiction over the operator of the site:

> When stripped to its core, GTE's theory of jurisdiction rests on the claim that, because the defendants have acted to maximize usage of their websites in the District, mere accessibility of the defendants' websites establishes the necessary "minimum contacts" with this forum. . . . This theory simply cannot hold water.

Indeed, under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country. We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction. The Due Process Clause exists, in part, to give "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp.*, 444 U.S. at 297. In the context of the Internet, GTE's expansive theory of personal jurisdiction would shred these constitutional assurances out of practical existence. Our sister circuits have not accepted such an approach, and neither shall we.

*Id.* at 1350; *see also Sinclair*, 596 F. Supp. 2d at 133 (fact that defendants' statements posted on the Internet can be downloaded and viewed in the District of Columbia were insufficient to establish personal jurisdiction).

That the material in question was allegedly shared via BitTorrent does not change the analysis. BitTorrent is no different from other protocols used to place material on the Internet, including the familiar HTTP protocol that delivers Web pages, which also "may touch multiple jurisdictions to effectuate the download of a single copyrighted work." *Call of the Wild*, 770 F. Supp. 2d at 347. One who operates a Web server to place information on the Internet makes indirect use of computers in potentially many jurisdictions to route information over the Internet to one who requests it using a browser. *See* Schoen Decl. ¶¶ 5-8. These intermediary computers respond to the downloader's request automatically, with no volitional conduct on the part of their owners other than connecting their computers to the Internet. *Id.* Neither the owner of the initial Web server nor the person browsing can predict where these intermediaries are located, and the intermediaries involved in any given transaction change over time as traffic conditions change on the Internet. *Id.* If the participation of a shifting constellation of computers in multiple states to effectuate a download were enough to confer personal jurisdiction in any of those states on the person who made the material available for download in the first place, then any use of the Internet would create universal personal jurisdiction, the "troubling" result that courts have repeatedly rejected.

The BitTorrent protocol allows an individual to distribute a digital file of any kind to others. *See generally* Schoen Decl. ¶¶ 4-12. The transfer of a file does not occur until one person posts a file on the Internet and another person requests a download of that file. As Judge Wilkins observed, when a person downloads a digital file using BitTorrent in violation of the copyright in that file, the "original event" causing the copyright infringement is the initiation of the download, which occurs at the accused infringer's location. *Nu Image*, 799 F. Supp. 2d at 39-40. While other computers in other locations *may* participate in a BitTorrent download by supplying a small part of the downloaded file, this happens *automatically* at the request of the downloader, without any deliberate action by the other users. In this important sense, using BitTorrent is no different from using the Web, or other means of sending data over the Internet using intermediaries. For that reason, the statutory due process concerns are the same for BitTorrent users as for "general Internet access." *See Call of the Wild Movie, LLCv. Does 1-1,062*, 770 F. Supp. 2d 332, 347 (D.D.C. 2011). Thus, the mere use of BitTorrent cannot be held to create personal jurisdiction in every district where a BitTorrent "peer" might be located, because those locations are unpredictable and normally invisible to the user and do not change the situs of the injury to a copyright holder. *See Helmer*, 393 F. 3d at 208 (citing *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)) ("[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff.")*; see also* Schoen Decl. ¶¶ 9, 20.

In several recent cases, other courts in this District have denied permission to issue subpoenas for the identities of alleged copyright infringers under facts that are strikingly similar to this case. *See, e.g. Nu Image*, 799 F. Supp. 2d at 34; Memorandum Opinion, *People Pictures, LLC v. Grp. of Participants in Filesharing Swarm Identified by Hash: 43F4CFD05C115EE5887F680B0-CA73B1BA18B434A*, Case No. 11-cv-1968, 2011 WL 6758462 (D.D.C. Dec. 23, 2011) (RJN Ex. L); *Patrick Collins,* 2012 WL 177864; Memorandum Opinion, *Exquisite Multimedia Inc. v. Does 1-336,* Case No. 11-1976 (RWR/JMF), ECF 7 (RJN Ex. K); Memorandum Opinion, *Axel Braun Prods v. Does 1-2823*, No 11-56 (EGS/JMF), ECF

23 (RJN Ex. M); *but see, e.g., Call of the Wild Movie,* 770 F. Supp. 2d; Order, *Imperial Enters. Inc. v. Does 1-3145*, No. 11-529 (D.D.C. Aug. 30, 2011). In those cases, as in this one, the plaintiff sought to issue subpoenas to ISPs for the identities of numerous alleged infringers located throughout the country based on their use of the BitTorrent protocol. In each case, the court declined to find a plausible basis for personal jurisdiction in the nature of the BitTorrent protocol and the mere conjecture that some intermediaries who facilitated a defendant's alleged infringing download may have been located in this District. The same result should follow here.

Moreover, the D.C. Circuit has held that *sua sponte* dismissal based on lack of personal jurisdiction before a claim has been served on the defendant is appropriate where, as here, the plaintiff has had an opportunity to demonstrate that the Court has personal jurisdiction over the defendants. *Buchanan v. Manley*, 145 F.3d 386, 388 (D.C. Cir. 1998). While the dismissal might normally follow briefing on an order to show cause, in this case AF Holdings has had ample opportunity to support jurisdiction via its response to the underlying motion to quash. It has failed to do so and, as in *Buchanan,* this case appears "clearly to have been brought in the wrong court." *Id*. The Court should not only grant the motion to quash, it should dismiss the case against all of the Does and relieve them of the burden of further improper litigation in this district.

### D.  Plaintiff's New Jurisdictional Arguments are Specious

In its opposition, AF Holdings offers three untenable claims in a last-ditch attempt to cure its jurisdictional defects. First, it insists that jurisdiction is proper because an "infringer" can consent to jurisdiction. Opp. Br. at 11. Of course she can — that says nothing about whether AF Holdings has offered a good faith basis for jurisdiction at the outset, as it is required to do.

Second, AF Holdings speculates that a subscriber who does not reside in this District might be subject to jurisdiction because she *might* have various types of contacts with the District of Columbia. Opp. Br. at 12. Under controlling precedent, however, "mere conjecture or speculation" is not enough to justify jurisdictional discovery. *FC Inv. Grp.,* 529 F.3d at 1094. Indeed, if such sheer speculation sufficed, anyone could be sued in any court in the nation, and

forced to retain counsel to bring the dispute to the proper arena.  Due process does not permit that type of burden-shifting.

Third, AF Holdings asserts that it should be able to obtain the identities of all Does because the information might be used to elicit testimony that could bear on the activities of some of the Does.  Opp. Br. at 12-13.  Again, this is sheer speculation.  Further, those arguments truly are premature.  If AF Holdings wishes early discovery into the identities of Does who will simply be witnesses, it must do so via separate motion, or via a properly issued subpoena after A Rule 26 conference has occurred.

### III.   <u>Venue Is Improper As To Most Of The Defendants</u>

AF Holdings has asserted that venue is proper under either 28 U.S.C. § 1391(b), the general venue statute, or § 1400(a), the specific statute for copyright claims.  Compl. ¶ 7.  In fact, in a case such as this where the only claim is for copyright infringement, *only* the copyright-specific venue statute applies.  *See Lumiere v. Mae Edna Walker, Inc.*, 261 U.S. 174, 176 (1923); *Time, Inc. v. Manning*, 366 F.2d 690, 696 (5th Cir. 1966); *Goldberg v. Cameron*, 482 F. Supp. 2d. 1136, 1143 (N.D. Cal. 2007).

Under § 1400(a), the only applicable venue statute, venue is proper only as to defendants who "reside[] or may be found" in this District.  As discussed above, this applies to only a small portion of the putative defendants, and AF Holdings could easily have determined this before filing suit.

Requiring individuals from across the country to litigate in this District — beginning with a motion to quash a subpoena for their identifying information — creates exactly the sort of hardship and unfairness that the venue requirement exists to prevent.  It would require the individuals urgently to secure counsel far from home, where they are unlikely to have contacts. In this case the hardship is very clear, as the cost of securing counsel is likely more than the cost of settlement and possibly even more than the cost of judgment if the Defendant lost in the litigation entirely.  It is, again, no answer to say that defendants do not bear this cost until they are formally named in a suit. Once the Does are identified in response to a subpoena they are

pressured to settle before ever being formally named and must then retain counsel or settle without counsel.

## IV.   Plaintiff Has Improperly Joined Thousands of Individual Defendants Based on Entirely Disparate Alleged Acts

Rule 20 of the Federal Rules of Civil Procedure ("Rule 20") allows for joinder of defendants when two conditions are met. First, a plaintiff must demonstrate that its "right to relief is asserted against [defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2). Second, "any question of law or fact *common to all defendants* [must] arise in the action." *Id.* (emphasis added). Even if these requirements are satisfied, a "court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice . . . ." Fed. R. Civ. P. 20(b).

Here, AF Holdings has not shown, and cannot show, that joinder of 1,058 Doe Defendants is appropriate or otherwise complies with the Federal Rules of Civil Procedure. *See IO Grp., Inc. v. Does 1-435*, No. 10-4382, 2011 WL 445043, at *6 (N.D. Cal. Feb. 3, 2011) ("filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for"). The misjoinder of over 1,000 putative defendants widely separated in time and geography is another defect in AF Holdings' case that makes injustice to the putative defendants even more probable if discovery proceeds. Thus, it is an independent ground for quashing the subpoenas as an exercise of this Court's authority to limit discovery.

### A.   Federal Courts Are Increasingly Rejecting Attempts at Mass Joinder

The current wave of mass copyright litigation began in this District. Some judges in this District determined, at that time, that consideration of misjoinder was premature. *See, e.g., Achte/Neunte*, 736 F. Supp. 2d at 212. AF Holdings' Opposition on this point consists, in large part, of citations to those decisions (and a few others that have relied on the same analysis). Opp. Br. at 14-15. Amici recognize that, in other cases, this Court has concurred in that initial

determination. However, amici urge the Court to revisit its previous conclusions, keeping in mind the growing weight of authority finding that these mass copyright suits may deny individual justice to those caught up in a plaintiff's indiscriminate driftnet. *See IO Grp.*, 2011 WL 445043, at *5 ("[T]he allegations that defendants simply used the same peer-to-peer network to download plaintiff's work . . . is insufficient to allow plaintiff to litigate against hundreds of different Doe defendants in one action.") (RJN Ex. G); Order Severing Does 2-3,120; Quashing Subpoenas; and Dismissing All Pending Motions as Moot, *LFP Internet Grp. LLC v. Does 1-3,120*, No. 10-2095 (N.D. Tex. Feb. 10, 2011) (quashing subpoenas, holding that Plaintiff did not show that the defendants were "in any way related to each other, or that they acted in concert or as a group in their allegedly offending actions") (RJN, Ex. F); Order, *West Coast Prods. v. Does 1-2010*, No. 10-0093 (N.D.W.Va. Dec. 16, 2010) (RJN, Ex. A).

These orders, disapproving of joining large numbers of defendants in a single action under Rule 20, follow a pattern that began as early as 2004. *See, e.g.*, *BMG Music v. Does 1-203*, No. 04-0650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); *LaFace Records, LLC v. Does 1-38*, No. 07-0298, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008) (severing a lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same networks); *BMG Music v. Does 1-4*, No. 06-1579, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006) (severing, *sua sponte*, multiple defendants in action where the only connection between them was allegation they used same ISP to conduct copyright infringement); Order, *UMG Recordings, Inc. v. Does 1-51*, No. 04-0704 (W.D. Tex. Nov. 17, 2004) (RJN, Ex. B) (dismissing without prejudice all but the first of 254 defendants accused of unauthorized music file-sharing); Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous Administrative Request Pursuant to Local Rule 7-10(b) for Leave to Take Discovery Prior to Rule 26 Conference, *Twentieth Century Fox Film Corp. v. Does 1-12*, No. 04-4862 (N.D. Cal. Nov. 16, 2004) (RJN, Ex. C) (permitting discovery to identify first of twelve Doe defendants but staying case against remaining Does until plaintiff could demonstrate proper joinder).

14

**B.      Plaintiff Has Not Established a Concert of Action Among Defendants**

Persons "may be joined in one action as defendants if any right to relief is asserted . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2).  "The first prong, the 'same transaction' requirement, refers to similarity in the factual background of a claim." *Coughlin v. Rogers,* 130 F.3d 1348, 1350 (9th Cir. 1997).  The "same transaction" requirement is generally evaluated on a case-by-case basis.  *See Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).  "No hard and fast rules have been established under [Rule 20]."  *Id*.  "However, merely committing the same type of violation in the same way does not link defendants together for the purposes of joinder." *LaFace Records*, 2008 WL 544992, at *2.

The Complaint alleges that various Doe Defendants infringed AF Holdings' work over a period of nearly four months, from August 11 to December 8, 2011.  Compl., Ex. A.  AF Holdings offers no explanation for how these different alleged infringers could have worked "in concert" when the alleged infringement occurred during entirely separate time frames.  *See* Schoen Decl. ¶¶ 10-17.  In fact, AF Holdings fails to connect any two putative defendants, alleging only that they committed the same type of violation in the same way.  *See id*. (explaining BitTorrent protocols and addressing likelihood of relationship between particular Defendants based on use of BitTorrent).  Here, as in *LFP Internet Group*, "the copyright infringement claim against each Defendant is based on the individual acts of each Defendant," not on a common transaction or occurrence.  *See* RJN Ex. F at 3-4 (finding "that Defendants' alleged use of the BitTorrent software system to commit copyright infringement is, without more, insufficient for permissive joinder under Rule 20").

The same is true even where, as here, a plaintiff alleges infringement of the same copyrighted work.  *See* Order Severing Doe Defs. and Dismissing Claims 4, *Pacific Century Int'l, Ltd. v. Does 1-101*, (N.D. Cal. July 8, 2011) (No. 11-2533), 2011 WL 2690142 at *3 ("That BitTorrent users have downloaded the same copyrighted work does not, therefore, evidence that they have acted together to obtain it.").  In *Pacific Century,* Magistrate Judge Ryu explained:

> BitTorrent users may upload different initial files of a given work, which results in the creation of distinct swarms. *See* Lin Ye *et al.*, *A Measurement Study on BitTorrent System,* 3 Int'l J. Comm, Network & Sys. Sci 916, 916 (2000); *see also* Ankur Patel, Comment, *BitTorrent Beware: Legitimizing BitTorrent Against Secondary Copyright Liability,* 10 Appalachian J.L. 117, 119 (2011). . . . [For example], a second initial "seeder" may not enjoy television shows in low definition and instead decide to upload a high definition file of the same episode for distribution.  Notably, because of the differences between the first, low definition file and the second, high definition file, the participants in the first swarm would not interact with those in the second swarm.

*Id*. (internal citations omitted).

In sum, on the facts alleged, AF Holdings cannot satisfy the concert of action requirement for joinder under Rule 20.

### C.    Mass Joinder Unfairly Prejudices Defendants, And The Joinder Issue Should Be Considered Now

Even if a plaintiff meets the requirements for permissive joinder under Rule 20(a), courts have broad discretion to refuse joinder or to sever a case in order "to protect a party against embarrassment, delay, expense, or other prejudice . . . ." Fed. R. Civ. P. 20(b).  *See also Coleman v. Quaker Oats*, 232 F.3d 1271, 1296 (9th Cir. 2000) (explaining that permissive joinder must "comport with the principles of fundamental fairness").

Joining hundreds of unrelated defendants in one lawsuit will, of course, make litigation less expensive, as it allows a plaintiff to avoid the separate filing fees required for individual cases and enables its counsel to avoid travel, but cost-efficiency does not justify ignoring well-established joinder principles.[6]  Here, joinder raises serious questions of individual fairness and individual justice, not to mention procedural headaches for the Court that will not result in judicial economy.

---

[6] Other courts considering joinder in mass copyright infringement cases have favored individual fairness over efficiency.  *See, e.g.*, General Order, *UMG Recordings, Inc. v. Does 1-51*, No. 04-0704 (W.D. Tex. Nov. 17, 2004) (RJN, Ex. B) (ordering severance of 254 defendants in four cases, noting that "filing fees for the recent four cases totaled $600, whereas the filing fees for 254 separate cases would have been $38,100").

While joinder can theoretically be challenged by defendants after they are formally named and served with a complaint, the recent conduct of AF Holdings and its counsel suggests that this is unlikely to happen.  *See* RJN Ex. Q (plaintiff's counsel's statement that it has not served any defendants in 118 cases).  And if defendants were to be formally named and served, the fundamental unfairness of joinder would remain.  Moreover, the Court has all the facts it needs to decide whether mass joinder is appropriate.  The issue can and should be addressed now.

**V.      Plaintiff Has Not Met Its Burden Under the First Amendment**

**A.      BitTorrent Users Have A Right To Engage In Anonymous Speech**

As this Court has recognized, BitTorrent users have a First Amendment right to engage in anonymous speech.  *See Call of the Wild Movie,* 770 F. Supp. 2d 333 at 350*; see also Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004) ("[T]he use of P2P file copying networks to download, distribute or make sound recordings available qualifies as speech entitled to First Amendment protection."); *In re Verizon Internet Servs. Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C. 2003), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003).

Although this Court recognized that right, it concluded that the First Amendment right did not preclude early discovery in another mass copyright lawsuit. *Call of the Wild Movie, LLC,* 770 F. Supp. 2d at 350. Amici urge the Court to reconsider the standard it applied in that case, *i.e.*, the one set forth in *Sony Music Entm't v. Does 1-407*, 326 F. Supp. 2d at 564-65. Because the First Amendment protects anonymous speech and association, courts must "be vigilant . . . [and] guard against undue hindrances to . . . the exchange of ideas." *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 192 (1999).  Efforts to use the power of the courts to pierce anonymous speech are subject to a qualified privilege which a court must consider before authorizing discovery.[7]  *See, e.g.*, *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987)

---

[7] A court order, even if granted to a private party, is state action and hence subject to constitutional limitations.  *See, e.g.*, *New York Times v. Sullivan*, 376 U.S. 254, 265 (1964); *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948).

(citing *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977)) ("[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure.").

The conduct at issue in this case is expressive, and fully protected by the First Amendment, regardless of whether it is core political speech or BitTorrent speech.  Therefore, plaintiff should be required to meet the more stringent standard set forth in the leading case, *Dendrite Int'l v. Doe*, 775 A.2d 756, 760-61 (N.J. Super. Ct. App. Div. 2001), which has been applied by courts in this District in *Sinclair v. TubeSockTedD,* 596 F. Supp. 2d 128 (D.D.C. 2009), and many other courts across the country.

Following *Dendrite*, in order to overcome a defendant's right to engage in anonymous Internet speech, a plaintiff should:

1)   make reasonable efforts to notify the accused Internet user of the pendency of the identification proceeding and explain how to present a defense;

2)   set forth the exact actions of each Doe defendant that constitute actionable cause;

3)   allege all elements of the cause of action and introduce *prima facie* evidence for each Doe defendant sufficient to survive a motion for summary judgment; and

4)   "balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed."[8]

*Dendrite*, 775 A.2d at 760-61.  The *Dendrite* test accurately and cogently protects the First Amendment interests of anonymous speakers, including the defendants here.  The weakness of AF Holdings' prima facie assertions of personal jurisdiction means that First Amendment concerns weigh more strongly here in favor of quashing the subpoenas.

---

[8] How "core" the speech at issue here is to the First Amendment is relevant only to this aspect of the balancing test.

As a practical matter, however, AF Holdings has made no attempt to meet any First Amendment standard.  The subpoenas should be quashed on this ground alone.

### B.      Plaintiffs Request for Discovery Cannot Survive First Amendment Scrutiny

If AF Holdings *had* attempted to meet the *Dendrite* test, it would have failed.  For example, in order to unmask anonymous defendants, a plaintiff must present specific evidence for each defendant.  At minimum, a plaintiff must present "competent evidence" regarding the investigative process that forms the basis for its allegations.  Because this information must be readily available to the plaintiff, providing it as part of its prima facie showing is not unduly burdensome.  *See Dendrite*, 775 A.2d at 772; *see also Sinclair v. TubeSockTedD,* 596 F. Supp. 2d 128, 131 (D.D.C. 2009); *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 164 (D. Mass 2008); *Doe 1 v. Individuals*, 561 F. Supp. 2d 249, 254 (D. Conn. 2008); *Highfields Capital Mgmt., L.P.*, 385 F. Supp. 2d at 974; *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004).

In this case, AF Holdings has not provided sufficient prima facie evidence that any Doe Defendant infringed plaintiff's copyright.  The company merely submitted a list of IP addresses and dates, and claimed that the IP addresses were "observed" to be associated with "infringing activity."  Complaint ¶ 11.   AF Holdings offers no further evidence to support this conclusory assertion, nor details about its investigation or what exactly it "observed." Thus, AF Holdings is asking the Court simply to accept the company's word that its allegations are based on an investigation conducted in a way that confirms actual copyright infringement.  Given the harm that can come from a false or erroneous accusation, this Court should require more.  *See generally* Schoen Decl. at ¶ 24 (describing flaws in standard methods for locating alleged copyright infringers).

### VI.   <u>If The Court Declines To Quash The Subpoenas, Immediate Appeal Is Appropriate</u>

If the Court denies this motion, amici join the ISP movants in requesting that the Court certify the question for immediate appeal pursuant to 28 U.S.C. § 1292(b).  That statute provides that a trial judge may certify an immediate appeal from any order that "involves a controlling

question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id*.

An order denying the motion to quash involves a controlling issue of law because its resolution on appeal could "materially affect the outcome of the litigation in district court." *In re Cement Antitrust Litig.,* 673 F2d 1020, 1026 (9th Cir. 1982) (staying proceeding pending arbitration involves controlling issues of law). If the appeals court determines that joinder of all 1,058 Defendants was improper, many of the putative defendants would be severed. If the appeals court finds that personal jurisdiction is lacking, the defendants will be dismissed. Both scenarios materially affect the outcome.

There are substantial grounds for differences of opinion because various district courts, as well as judges within this District, have come to different conclusions on both jurisdiction and joinder. *Compare Call of the Wild Movie, LLC v. Does 1–1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011) *with Nu Image, Inc. v. Does 1-23,322*, 799 F.Supp.2d 34 (D.D.C. 2011); *CP Productions, Inc. v. Does 1-300*, 2011 WL 737761 (N.D. Ill. 2011); *On The Cheap, LLC v. Does 1-5011*, 2011 WL 4018258 (N.D. Cal. 2011); *Hard Drive Prods., Inc. v. Does 1-188,* 809 F.Supp.2d 1150 (N.D. Cal. 2011).

Implicitly recognizing that there are substantial arguments concerning jurisdiction and joinder, AF Holdings attempts to distract the Court by complaining about the movants' standing. Opp. Br. at 10, 17. Yet AF Holdings concedes, as it must, that an ISP has standing to quash a subpoena that imposes an undue burden on it. *Id*. at 1. Moreover, courts have found that ISPs do have standing to assert the rights of their users. *See In re Subpoena Duces Tecum to America Online, Inc*., 2000 WL 1210372 (Va. Cir. Ct. 2000), *rev'd on other grounds, AOL v. Anonymous Publicly Traded Co.*, 261 Va. 350, 542 S.E.2d 377 (Va. 2001)) (standing to assert First Amendment rights).

Finally, an immediate appeal may materially advance the ultimate termination of the litigation. First, as noted above, a successful appeal will terminate the litigation with respect to

mis-joined defendants and those defendants over whom there is no jurisdiction. Indeed, it is well-recognized that an order that did not dismiss a defendant for lack of personal jurisdiction can be certified for appeal. *See e.g. Tuazon v. RJ Reynolds Tobacco Co.*, 433 F. 3d 1163, 1168 (9th Cir. 2006). The rule should be no different when a plaintiff attempts to impose an undue burden based on a claim without jurisdiction.

Second, a ruling here will materially advance the litigation because the requested discovery is the essence of the case. As AF Holdings concedes, the intent is to settle the cases quickly, without litigation. Opp. Br. at 19-20. It does not dispute that the sexually explicit nature of the material allegedly downloaded illegally pressures defendants to settle, meaning that denial of immediate review would practically render impossible any review whatsoever. Indeed, review is even more critical, since the ISPs' brief suggests that "no ISP is likely to invite a contempt citation to create an appealable order." ISP Memo at 18.

Immediate appellate review will encourage a uniformity of approach to discovery in mass copyright suits, which in turn would help to curb forum shopping by plaintiffs such as AF Holdings. That danger is high here, as AF Holdings' counsel has — on at least three occasions — filed mass copyright lawsuits only to dismiss them as soon as they are assigned to particular judges who have issued adverse rulings in the past: forum-shopping of a very specific nature. Court dockets in the Northern District of Illinois and in this Court reflect the following:

- On November 15, 2011, plaintiff's counsel filed *First Time Videos v. Does 1-541*, No. 1:11-cv-02031 (D.D.C.). The case was assigned to Judge Wilkins, who had denied early discovery in the *Nu Image* case, 799 F. Supp. 2d 34. The plaintiff unilaterally dismissed the case three days after filing it. Docket, *First Time Videos LLC v. Does 1-541*, No. 1:11-cv-02031 RLW (D.D.C. Nov. 18, 2011) (RJN Ex. J).

- *Millenium TGA, Inc. v. Does 1-939*, No. 1:11-cv-02176, was filed by plaintiff's counsel on December 7, 2011, and again assigned to Judge Wilkins. The plaintiff dismissed the case on December 16, 2011. Docket, *Millennium TGA Inc. v. Does 1-939*, No. 1:11-cv-02176 RLW (D.D.C. Dec. 16, 2011) (RJN Ex. P).

- In *CP Productions v. Does 1-300*, No. 1:10-cv-06255 (N.D. Ill.), on Feb. 7, 2011, Judge Shadur dismissed a mass copyright suit filed by a member of plaintiff's

counsel's law firm, ruling that "it is an understatement to characterize [the suit] as problematic in nature" and that it "plainly has the potential to perpetrate the type of abuse identified in the most recent motion to quash."  Memorandum Order, *CP Productions, Inc. v. Does 1-300*, No. 1:10-cv-06255 (N.D. Ill. Feb. 7, 2011) (RJN Ex. I). On December 21, 2011, plaintiff's counsel in this case filed another action, *First Time Videos LLC v. Does 1 – 43*, 1:11-cv-09066, (N.D. Ill.).  The case was assigned to Judge Shadur, and within *one day* of filing, the plaintiff, again, unilaterally dismissed the case. Docket, *First Time Videos v. Does 1-43*, No. 1:11-cv-09066-MIS (N.D. Ill. Jan. 22, 2011) (RJN Ex. O).

Appellate review of the issues raised in this Motion to Quash would help discourage this type of gamesmanship.

## CONCLUSION

While a rightful copyright owner may certainly seek legal redress for alleged infringement, this plaintiff has failed to comply with fundamental due process.  Subpoenas to the ISPs are *not* required to show what AF Holdings could have determined readily and inexpensively before filing suit, namely that it *cannot* maintain an action against approximately 1,038 of the 1,058 Doe defendants in this Court, and should never have included them.  Nor will the subpoenas and identification of the defendants cure the fundamental venue and joinder problems of this lawsuit.  The Court should exercise its supervisory role over discovery to quash the subpoenas and prevent these due process problems from arising.  If it chooses not to do so, given the importance of the issues raised here and the wide divergence of opinion both in this District and around the country, as well as the likelihood that appellate review would result in the termination of the litigation due to the fundamental due process violations upon which it is premised, amici urge the Court to certify this matter for immediate appeal.


Dated: March 13, 2012             ELECTRONIC FRONTIER FOUNDATION

                                  _____/s/ Mitchell L. Stoltz_____
                                  MITCHELL L. STOLTZ (DC Bar No. 978149)
                                  mitch@eff.org
                                  CORYNNE MCSHERRY
                                  corynne@eff.org
                                  KURT OPSAHL
                                  kurt@eff.org
                                  ELECTRONIC FRONTIER FOUNDATION

454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Amicus
ELECTRONIC FRONTIER FOUNDATION

ARTHUR B. SPITZER (DC Bar No. 235960)
artspitzer@gmail.com
AMERICAN CIVIL LIBERTIES UNION OF THE
NATION'S CAPITAL
4301 Connecticut Avenue, N.W., Suite 434
Washington, D.C. 20008
Telephone: (202) 457-0800
Facsimile: (202) 457-0805

Attorney for Amicus
AMERICAN CIVIL LIBERTIES UNION OF THE
NATION'S CAPITAL

ADEN J. FINE (D.C. Bar No. 485703)
afine@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
Facsimile: (212) 607-3318
www.aclu.org

Attorney for Amicus:
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 13, 2012, I caused a true copy of the foregoing to be served upon the following individuals by U.S. First Class Mail, postage prepaid:

Paul A. Duffy
PRENDA LAW INC.
161 N. Clark Street, Suite 3200
Chicago, IL 60601
Tel : (312) 880-9160
Fax: (312) 893-5677
Email: paduffy@wefightpiracy.com
Attorney for Plaintiff AF HOLDINGS LLC

Timothy A. O'Brien
MORRISON & FOERSTER
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 887-1500
Email: tobrien@mofo.com

Attorney for Interested Parties
COX COMMUNICATIONS, INC.,
VERIZON ONLINE LLC, and
BRIGHT HOUSE NETWORKS LLC

Bradley C. Weber
LOCKE LORD LLP
2200 Ross Avenue
Dallas, TX 75201-6776
Tel: (214) 749-8000
Email: bweber@lockelord.com

Attorney for Interested Party
SBC INTERNET SERVICES, INC.
*doing business as* AT&T INTERNET
SERVICES

John David Seiver
DAVIS WRIGHT TREMAINE, LLP
1919 Pennsylvania Avenue, N.W., Suite 800
Washington, DC 20006
Tel: (202) 973-4200
Email: johnseiver@dwt.com

Leslie Gallagher Moylan
DAVIS WRIGHT TREMAINE, LLP
1919 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006-3402
Tel: (202) 973-4216
Email: lesliemoylan@dwt.com

Attorneys for Interested Party
COMCAST CABLE COMMUNICATIONS
LLC

Thomas P. Hartnett
THE LAW OFFICEOF THOMAS P.
HARTNETT
1310 Pennsylvania Avenue, SE
Washington, DC 20003
Tel: (202) 966-0066
Email: thartnett@tphatt.com

Attorney for Interested Party
ANDREW FIGNAR, JR.


_____/s/ Mitchell L. Stoltz_____
MITCHELL L. STOLTZ