**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AF HOLDINGS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-00048 (BAH) |
| | ) | |
| v. | ) | Judge: Hon. Beryl A. Howell |
| | ) | |
| DOES 1-1,058, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**REQUEST FOR JUDICIAL NOTICE OF ELECTRONIC FRONTIER FOUNDATION, AMERICAN CIVIL LIBERTIES UNION FOUNDATION AND AMERICAN CIVIL LIBERTIES UNION OF THE NATION'S CAPITAL IN SUPPORT OF MOTION FOR LEAVE TO FILE BRIEF AMICUS CURIAE IN SUPPORT OF MOTION TO QUASH SUBPOENAS ISSUED TO NON-PARTY INTERNET SERVICE PROVIDERS**

Pursuant to Federal Rule of Evidence 201 and the authorities cited below, the Electronic Frontier Foundation, American Civil Liberties Union Foundation and American Civil Liberties Union of the Nation's Capitol hereby request that this Court take judicial notice of the following materials:

- Order, *West Coast Productions v. Does 1-2010*, No. 3:10-cv-00093 (N.D.W. Va., Dec. 16, 2010), attached hereto as **Exhibit A**.  In this Order, as well as virtually identical Orders issued in five other "mass copyright" lawsuits—each alleging a single count of copyright infringement of the same work—the court found that all defendants except Doe 1 were improperly joined; severed those defendants from the action; and quashed subpoenas seeking identifying information for those defendants.  *See Combat Zone, Inc., v. Does 1-245*, No. 3:10-cv-00096 (N.D.W. Va. Dec. 16, 2010); *Combat Zone, Inc., v. Does 1-1,037*, No. 3:10-cv-00095 (N.D.W. Va. Dec. 16, 2010); *Patrick Collins, Inc., v. Does 1-118*, No. 3:10-cv-00092 (N.D.W. Va. Dec. 16, 2010); *Patrick Collins, Inc., v. Does 1-281*, No. 3:10-cv-00091 (N.D.W. Va. Dec. 16, 2010); *Third World Media, LLC, v. Does 1-1,243*, No. 3:10-cv-00090 (N.D.W. Va. Dec. 16, 2010).

- Order, *In re cases filed by Recording Companies*, filed in *Fonovisa, Inc. v. Does 1-41*, No. 04-cv-00550, *Atl. Recording Corp. v. Does 1-151*, No. 04-cv-00636, *Elektra Entm't Group, Inc. v. Does 1-11*, No. 04-cv-00703; and *UMG Recordings, Inc. v. Does 1-51*, No.   04-cv-00704   (W.D.   Tex.   Nov.   17,   2004),   *available   at* http://www.txwd.uscourts.gov/ rules/stdord/Austin/recording_111704.pdf and attached hereto as **Exhibit B**.

- Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous Administrative Request Pursuant to Local Rule 7-10(b) for Leave to Take Discovery Prior to Rule 26

Conference, *Twentieth Century Fox Film Corp. v. Does 1-12*, No. 04-cv-04862 (N.D. Cal Nov. 16, 2004), appending *In the Matter of DIRECTV, INC., Cases pending in the Northern District of California,* No. 02-cv-5912 (N.D. Cal. July 26, 2004), attached hereto as **Exhibit C**.

- Order, *VPR Internationale v. Does 1-1017*, No. 11-cv-2068 (C.D. Ill. Apr. 29, 2011), Dkt. 15, General Order, attached hereto as **Exhibit D**.

- Standing Order, *In Re: Copyright Infringement Cases With Doe Defendants Related to Civil Action Number 04-1239*, No. 2:04-cv-00650, (E.D. Pa. January 21, 2005) Dkt. 17, attached hereto as **Exhibit E**.

- Order Severing Does 2-3,120; Quashing Subpoenas; and Dismissing All Pending Motions as Moot, *LFP Internet Group, LLC v. Does 1-3,120*, No. 3:10-cv-02095 (N.D. Tex. Feb. 10, 2011), attached hereto as **Exhibit F**.  In this Order, as well as virtually identical Orders issued in thirteen other "mass copyright" lawsuits—each alleging a single count of copyright infringement of the same work—the court found that all defendants except Doe 1 were improperly joined; severed those defendants from the action; and quashed subpoenas seeking identifying information for those defendants. *See Lucas Entm't, Inc. v. Does 1-65*, No. 3:10-cv-01407 (N.D. Tex. Feb. 10, 2011); *Lucas Entm't, Inc. v. Does 1-185*, No. 3:10-cv-01537 (N.D. Tex. Feb. 10, 2011); *VCX Ltd., Inc. v. Does 1-113*, No. 3:10-cv-01702 (N.D. Tex. Feb. 10, 2011); *LFP Internet Group, LLC v. Does 1-635*, No. 3:10-cv-01863 (N.D. Tex. Feb. 10, 2011); *LFP Internet Group, LLC v. Does 1-319*, No. 3:10-cv-02094 (N.D. Tex. Feb. 10, 2011); *LFP Internet Group, LLC v. Does 1-1,106*, No. 3:10-cv-02096 (N.D. Tex. Feb. 10, 2011); *LFP Internet Group, LLC v. Does 1-2,619*, No. 3:10-cv-02139 (N.D. Tex. Feb. 10, 2011);

*Harmony Films Ltd. v. Does 1-739*, No. 3:10-cv-02412 (N.D. Tex. Feb. 10, 2011); *Adult Source Media v. Does 1-247*, No. 3:10-cv-02605 (N.D. Tex. Feb. 10, 2011); *D & E Media, LLC v. Does 1-258*, No. 3:11-cv-00001 (N.D. Tex. Feb. 10, 2011); *Serious Bidness, LLC v. Does 1-10*, No. 3:11-cv-00002 (N.D. Tex. Feb. 10, 2011); *Steve Hardeman, LLC v. Does 1-168*, No. 3:11-cv-00056 (N.D. Tex. Feb. 10, 2011); *FUNimation Entm't v. DOES 1-1,337*, No. 3:11-cv-00147 (N.D. Tex. Feb. 10, 2011).

- Order Severing Doe 1 and Dismissing Claims Against Does 2-435 Without Prejudice; Modifying Discovery Order, *IO Group, Inc. v. Does 1-435*, No. 3:10-cv-04382 (N.D. Cal. Jan. 10, 2011), attached hereto as **Exhibit G**.

- Memorandum Opinion, *Patrick Collins, Inc. v. Does 1-72*, No. 1:11-cv-00058-RMU-JMF (D.D.C. Jan. 23, 2012), attached hereto as **Exhibit H**.

- Memorandum Order, *CP Productions, Inc. v. Does 1-300*, No. 1:10-cv-06255 (N.D. Ill. Feb. 7, 2011), attached hereto as **Exhibit I**.

- Docket, *First Time Videos LLC v. Does 1-541*, No. 1:11-cv-02031 RLW (D.D.C. Nov. 18, 2011), attached hereto as **Exhibit J**.

- Memorandum Opinion, *Exquisite Multimedia, Inc. v. Does 1-336*, No. 1:11-cv-01976 RWR-JMF (D.D.C. Jan. 23, 2012), Memorandum Opinion attached hereto as **Exhibit K**.

- Memorandum Opinion, *People Pictures, LLC v. Group of Participants in Filesharing Swarm Identified by Hash: 43F4CFD05C115EE5887F680B0-CA73B1BA18B434A*, No. 1:11-cv-01968 JEB-JMF (D.D.C. Dec. 23, 2011), Memorandum Opinion attached hereto as **Exhibit L**.

- Memorandum Opinion, *Axel Braun Productions v. Does 1-2,823*, No. 1:11-cv-00056 EGS-JMF (D.D.C. Jan. 23, 2012), attached hereto as **Exhibit M**.

- Complaint, *Seth Abrams v. Hard Drive Productions, Inc., and Does 1-50*, No. 3:12-cv-01006 JCS (N.D. Cal. Feb. 28, 2012), attached hereto as **Exhibit N**.

- Docket, *First Time Videos v. Does 1-43*, No. 1:11-cv-09066-MIS (N.D. Ill. Jan. 22, 2011), attached hereto as **Exhibit O**.

- Docket, *Millennium TGA Inc. v. Does 1-939*, No. 1:11-cv-02176 RLW (D.D.C. Dec. 16, 2011), attached hereto as **Exhibit P**.

- Plaintiff's Statement of Good Cause in Response to the Court's February 3, 2012 Order, *West Coast Productions, Inc. v. Does 1-1,434*, No. 1:11-cv-00055 JEB-JMF (D.D.C. Feb. 16, 2012), attached hereto as **Exhibit Q**.

- Declaration of Charles E. Piehl, *AF Holdings LLC v. Does 1-135*, No. 5:11-cv-03336-LHK (N.D. Cal. Feb. 24, 2012), attached hereto as **Exhibit R**.

This request is made in connection with Amici's brief in support of the Motion To Quash Subpoenas Issued To Non-Party Internet Service Providers.

A district court may take judicial notice of facts that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see also Fletcher v. Evening Star Newspaper Co.*, 133 F.2d 395, 395 (D.C. Cir. 1942) ("it is settled law that the court may take judicial notice of other cases including the same subject matter").  Furthermore, the Federal Rules of Evidence *require* a court to take judicial notice of a matter "if requested by a party and

4

supplied with the necessary information." Fed. R. Evid. 201(d); *see also In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-CV-1014, 2004 U.S. Dist. LEXIS 13255, at * 2 (E.D. Pa. July 12, 2004).

Exhibits A-R are all documents filed in United States Federal District Courts. It is well established that a court may take judicial notice of matters of public record. *See Bebchick v. Washington Metro. Area Transit Comm'n*, 485 F.2d 858, 880 (D.C. Cir. 1973) ("matters of public record . . . [are] well within the range of judicial notice); *In re Estate of Barfield*, 736 A.2d 991, 996 (D.C. 1999) ("the trial court is entitled to take judicial notice of matters of public record"). Specifically, federal courts may take judicial notice of proceedings in other courts, both within and outside of the federal judicial system, if those proceedings have a direct relation to matters at issue. *Allen v. City of Los Angeles*, 92 F.3d 842 (9th Cir. 1992).

These documents are offered to show how courts around the nation have handled issues of jurisdiction, joinder and free speech rights in analogous cases. Thus, they are appropriate subject matter for judicial notice pursuant to Federal Rule of Evidence 201(b)(2).

For the foregoing reasons, the Court may properly consider Exhibits A-R as it reviews Amici's brief.

Dated: March 13, 2012                    ELECTRONIC FRONTIER FOUNDATION

                                    _____/s/ Mitchell L. Stoltz_____
                                    MITCHELL L. STOLTZ (DC Bar No. 978149)
                                    mitch@eff.org
                                    CORYNNE MCSHERRY
                                    corynne@eff.org
                                    KURT OPSAHL
                                    kurt@eff.org
                                    ELECTRONIC FRONTIER FOUNDATION
                                    454 Shotwell Street
                                    San Francisco, CA 94110
                                    Telephone: (415) 436-9333
                                    Facsimile: (415) 436-9993

                                    Attorneys for Amicus
                                    ELECTRONIC FRONTIER FOUNDATION

ARTHUR B. SPITZER (DC Bar No. 235960)
artspitzer@gmail.com
AMERICAN CIVIL LIBERTIES UNION OF THE
NATION'S CAPITAL
4301 Connecticut Avenue, N.W., Suite 434
Washington, D.C. 20008
Telephone: (202) 457-0800
Facsimile: (202) 457-0805

Attorney for Amicus
AMERICAN CIVIL LIBERTIES UNION OF THE
NATION'S CAPITAL

ADEN J. FINE (D.C. Bar No. 485703)
afine@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
Facsimile: (212) 607-3318
www.aclu.org

Attorney for Amicus:
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 13, 2012, I caused a true copy of the foregoing to be served upon the following individuals by U.S. First Class Mail, postage prepaid:

Paul A. Duffy
PRENDA LAW INC.
161 N. Clark Street, Suite 3200
Chicago, IL 60601
Tel : (312) 880-9160
Fax: (312) 893-5677
Email: paduffy@wefightpiracy.com
Attorney for Plaintiff AF HOLDINGS LLC

Timothy A. O'Brien
MORRISON & FOERSTER
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 887-1500
Email: tobrien@mofo.com

Attorney for Interested Parties
COX COMMUNICATIONS, INC.,
VERIZON ONLINE LLC, and
BRIGHT HOUSE NETWORKS LLC

Bradley C. Weber
LOCKE LORD LLP
2200 Ross Avenue
Dallas, TX 75201-6776
Tel: (214) 749-8000
Email: bweber@lockelord.com

Attorney for Interested Party
SBC INTERNET SERVICES, INC.
*doing business as* AT&T INTERNET

SERVICES

John David Seiver
DAVIS WRIGHT TREMAINE, LLP
1919 Pennsylvania Avenue, N.W., Suite 800
Washington, DC 20006
Tel: (202) 973-4200
Email: johnseiver@dwt.com

Leslie Gallagher Moylan
DAVIS WRIGHT TREMAINE, LLP
1919 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006-3402
Tel: (202) 973-4216
Email: lesliemoylan@dwt.com

Attorneys for Interested Party
COMCAST CABLE COMMUNICATIONS
LLC

Thomas P. Hartnett
THE LAW OFFICEOF THOMAS P.
HARTNETT
1310 Pennsylvania Avenue, SE
Washington, DC 20003
Tel: (202) 966-0066
Email: thartnett@tphatt.com

Attorney for Interested Party
ANDREW FIGNAR, JR.

_____/s/ Mitchell L. Stoltz_____
MITCHELL L. STOLTZ

# Exhibit A

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**


**WEST COAST PRODUCTIONS, INC.,**

      Plaintiff,

**v.**                                      **CIVIL ACTION NO.  3:10-CV-93
(BAILEY)**

**DOES 1-2010,**

      Defendants.

<u>**ORDER**</u>

Plaintiff West Coast Productions, Inc. is the alleged owner of the copyright of the hardcore pornographic film "Bomb Ass White Booty 14."  The plaintiff brought this suit for copyright infringement against John Does 1-2010, individuals who allegedly illegally downloaded and distributed "Bomb Ass White Booty 14."  When the suit was filed, the plaintiff did not know the names of the alleged infringers, but had identified the Internet Protocol ("IP") addresses of the computers associated with the infringement.  To discover the actual names of the Doe defendants in this case, the plaintiff subpoenaed the Internet Service Providers ("ISPs") who provide service to the identified IP addresses, and the ISPs gave notice to their customers of the subpoena.

Upon inspection of the Complaint [Doc. 1] in the above-captioned case, however, this Court now finds that the Doe defendants have been improperly joined.  For the reasons outlined below, the Court finds that all defendants except Doe 1 should be **SEVERED** from this action.

1

**DISCUSSION**

## I.    Applicable Joinder

Federal Rule 20(a)(2) of Civil Procedure allows a plaintiff to join multiple defendants in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

To remedy improperly joined parties, the court should not dismiss the action outright, but "the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  The court may act upon motion by a party or *sua sponte*.  Id.

## II.    Analysis

In its Complaint, the plaintiff appears to allege that joinder is based upon the Does' use of some of the same ISPs and some of the same peer-to-peer ("P2P") networks to infringe the same copyright.  (See [Doc. 1] at ¶¶ 3-5).  "However, merely committing the same type of violation in the same way does not link defendants together for purposes of joinder."  ***Laface Records, LLC, v. Does 1-38***, 2008 WL 544992, *2 (E.D. N.C. Feb. 27, 2008).

Moreover, several courts agree that where there is no allegation that multiple defendants have acted in concert, joinder is improper.  *See **BMG Music v. Does 1-4***, 2006 U.S. Dist. LEXIS 53237, *5-6 (N.D. Cal. July 31, 2006) (*sua sponte* severing multiple defendant in action where only connection between them was allegation they used same ISP to conduct copyright infringement); ***Interscope Records v. Does 1-25***, 2004 U.S. Dist.

2

LEXIS 27782, *19 (M.D. Fla. Apr. 1, 2004 (magistrate judge recommended *sua sponte* severance of multiple defendants in action where only connection between them was allegation they used same ISP and P2P network to conduct copyright infringement). Accordingly, this Court finds that the defendants' alleged use of some of the same ISPs and P2P networks to commit copyright infringement is, without more, insufficient for permissive joinder under Rule 20.[1]

Further evidence of misjoinder is found in the undeniable fact that each defendant will also likely have a different defense. One district court finding improper joinder explained it this way:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed.

*BMG Music v. Does 1-203*, 2004 WL 953888, *1 (E.D. Pa. Apr. 2, 2004).

For this reason also, the Court finds joinder in this case improper. However, insofar as Rule 21 states that misjoinder of parties is not a ground for dismissing an action, this Court will not dismiss the Doe defendants. Instead, following Rule 21, this Court chooses the route of severance. In fact, this Court will sever all Doe defendants except Doe 1. *See BMG Music v. Does 1-203*, 2004 WL 953888 (E.D. Pa. Apr. 2, 2004) (upon motion for reconsideration, court upheld its *sua sponte* order of severance of all but one Doe defendant). Because all claims except Doe 1, whose ISP is AT&T WorldNet Services, will

---

[1]In fact, in this case the plaintiff alleges that nineteen (19) ISPs were used. (See [Doc. 1-1]. This allegation makes the propriety of joinder even more tenuous.

3

be severed from this action, the subpoenas served in this action pertaining to any other Doe defendant are no longer valid.

## CONCLUSION

For the foregoing reasons, the Court finds that:

1. All defendants except Doe 1 are hereby **SEVERED** from this action;

2. The subpoenas served on AT&T WorldNet Services, Charter Communications, Clearwire Corporation, Comcast Cable, Cox Communications, EarthLink, Frontier Communications, Insight Communications Company, Optimum Online, Qwest Communications, RCN Corporation, Road Runner, Road Runner Business, Sprint, Sprint PCS, Time Warner Telecom, Verizon Internet Services, WideOpenWest, and Windstream Communications are hereby **QUASHED** as to the severed defendants, Does 2-2010. In this regard, the plaintiff **SHALL NOTIFY** the recipients of these subpoenas that said subpoenas have been quashed.

3. Plaintiff West Coast Productions, Inc. **MAY**, within thirty (30) days, file individual amended complaints[2] and submit filing fees for those defendants against whom they wish to proceed;

4. Upon election to proceed, Plaintiff's Counsel **SHALL SUBMIT** to the Clerk of the

---

[2]These amended complaints shall proceed only against Does with IP addresses of computers located within the State of West Virginia. According to testimony presented to the Court, there is a publicly-available website that allows the plaintiff to determine the physical location of each Doe's computer at the time of the alleged copyright infringements. Specifically, Craig Goldberg, who supervises Time Warner Cable, Inc.'s subpoena compliance team, testified that the physical location of any IP address can be determined from a simple Google search. (Nov. 30, 2010, Hearing Transcript, at 21-26). Moreover, it appears to the Court that the search for Does from West Virginia can be narrowed by eliminating the Does with ISPs that do not provide internet service within the State.

Court filing fees for each of the amended complaints against John Does 2-2010, which cases shall be assigned separate civil action numbers;

5.  Civil Action No. 3:10-CV-93 **SHALL BE** assigned to John Doe No. 1 as an individual defendant. The actions against all other defendants will be deemed to have been filed as of September 24, 2010, the date of the filing of the original Complaint; and

6.  The pending motion **[Doc. 7]**, as well as any filings that can be construed as motions, in Civil Action No. 3:10-CV-93 are hereby **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record and mail a certified copy to each interested party of record.

**DATED**: December 16, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

5

# Exhibit B

# Exhibit B

FILED
AUSTIN DIVISION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS** 2004 NO 17  PM 4: 30
**AUSTIN DIVISION**

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE

BY:_____

DEPUTY

| | § | |
| **IN RE:** | § | |
| | § | **GENERAL ORDER** |
| **CASES FILED BY** | § | |
| **RECORDING COMPANIES** | § | |

## ORDER

A consortium of recording companies have filed several recent lawsuits in this Court, alleging that numerous unnamed defendants ("Does") have violated federal copyright laws by downloading music from an "online media distribution system." (See attached list of cases.) Each of these cases names multiple defendants, with as many as 151 "Does" being named in one of the actions. The recent cases actually encompass 254 defendants. It appears that the Plaintiffs may intend to file future suits as well. There are no allegations in any of the cases that the defendants are in any way related to each other, or that they acted in concert or as a group in their allegedly offending actions.

With regard to joinder of claims, the Federal Rules of Civil Procedure provide that multiple parties:

> may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a). There is no allegation in the recently-filed cases that the claims against the joined defendants "arise out of the same transaction, occurrence or series of transactions or occurrences." The claim against each defendant is individual, based on individual acts of each

defendant, and, if proven, will result in unique damage claims. The defendants are not properly joined under Rule 20.

Moreover, there are practical reasons supporting severing the claims against the defendants. The filing fees for the recent four cases totaled $600, whereas the filing fees for 254 separate cases would have been $38,100. That is a considerable loss of revenue to the public coffers. Moreover, the closing of one 151-defendant case  is treated as a single case for statistical purposes, when in fact each defendant should be treated as a single case for such purposes, given that the claim against each defendant is    separate.

Because these four suits are in actuality 254 separate lawsuits, the Court *sua sponte* will dismiss without prejudice all but the first defendant in each case. Plaintiffs will be permitted to refile against the other defendants separately, upon the payment of the appropriate filing fee. In addition, Plaintiffs are ordered to file any future cases of this nature against one defendant at a time, and may not join defendants for their convenience.

IT IS SO ORDERED, this /7 day of November, 2004.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

2

## List of cases

1.  *Fonovisa, Inc. et al. v. Does 1-41*; No. A-04-CA-550 LY

2.  *Atlantic Recording Corporation, et al. v. Does 1-151*; No. A-04-CA-636 SS

3.  *Elektra Entertainment Group, Inc., et al. v. Does 1-11*; No. A-04-CA-703 LY

4.  *UMG Recordings, Inc., et al. v. Does 1-51*; No. A-04-CA-704 LY

# Exhibit C

# Exhibit C

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  TWENTIETH CENTURY FOX FILM                No. C 04-04862 WHA
    CORPORATION, a Delaware corporation;
12  COLUMBIA PICTURES INDUSTRIES, INC., a      **ORDER GRANTING IN PART AND**
    Delaware corporation; PARAMOUNT           **DENYING IN PART PLAINTIFFS'**
13  PICTURES, CORPORATION, a Delaware          **MISCELLANEOUS ADMINISTRATIVE**
    corporation; WARNER BROS.                  **REQUEST PURSUANT TO LOCAL RULE**
14  ENTERTAINMENT, INC., a Delaware            **7-10(b) FOR LEAVE TO TAKE**
    corporation; COLUMBIA TRISTAR HOME        **DISCOVERY PRIOR TO RULE 26**
15  ENTERTAINMENT, INC., a Delaware            **CONFERENCE**
    corporation; and NEW LINE PRODUCTIONS,
16  INC., a Delaware corporation,

17          Plaintiffs,

18    v.

19  DOES 1-12,

20          Defendants.
    _____/
21

22

23          The application to take early discovery is granted, but only as to Doe 1.  The reason is that this

24  case appears to present the same problem as the so-called "DirectTV" cases.  There, Judge Ware was

25  eventually assigned 20 lawsuits, each involving multiple defendants.  There, each of the multiple defendants

26  (in each action) were accused of illegally intercepting encrypted satellite communications.  There, Judge

27  Ware held that the joinder of unrelated defendants violated FRCP 20 since, although the basic claim was

28  similar, the claims arose out of different transactions or occurrences.  So too here — at least on the surface

of the papers submitted.  Such joinder may be an attempt to circumvent the filing fees by grouping

defendants into arbitrarily-joined actions but it could nonetheless appear improper under Rule 20.  A copy

of Judge Ware's order in the DirectTV cases is appended.

Consequently, until plaintiffs can show that this case should be treated differently, it will be stayed

as to Does 2-12 and prosecuted as to Doe 1.  Early discovery as to Doe 1 is now allowed, good cause

having been shown.  Plaintiffs may seek the identity of Doe 1 (but only Doe 1) from Pacific Bell Internet.

**IT IS SO ORDERED.**

Dated: November 16, 2004.

_/s/William Alsup_

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

2

# Exhibit D

# Exhibit D

**E-FILED**
Friday, 29 April, 2011  09:02:53 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| VPR INTERNATIONALE, | ) | |
| | ) | |
| Plaintiff, | ) | 11-2068 |
| | ) | |
| v. | ) | |
| | ) | |
| DOES 1 - 1017, individually and as | ) | |
| representatives of a class, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

The plaintiff, VPR Internationale, is a Montreal, Quebec-based producer of adult entertainment content.  VPR has filed this complaint against 1,017 Doe defendants identified only by Internet Protocol ("IP") address.  VPR alleges that these defendants have distributed adult videos in violation of VPR's copyrights. To determine the identity of the 1,017 alleged copyright infringers, VPR filed an *ex parte* motion for expedited discovery so that it could immediately serve subpoenas on Internet service providers ("ISPs") to determine the subscriber and location associated with each IP address.  The court denied the motion for expedited discovery [9].  VPR filed an *ex parte* motion for reconsideration, which was denied on March 22, 2011, by text order.

VPR has now filed a motion to certify for interlocutory review the court's denial of its motion for expedited discovery.  VPR seeks certification for one controlling question of law:

> Defendants' identifies are unknown to the Plaintiff.  Instead, each Defendant is associated with an Internet Protocol (IP) address.  Internet Service Providers (ISPs) know identity and contact information associated with each IP address.  Is the Plaintiff to entitled to discover this information by serving ISPs with subpoenas *duces tecum* under Fed. R. Civ. P. 45?

Fed. R. Civ. P. 26(d)(1) prohibits a party from "seek[ing] discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."  In this case, VPR may seek expedited discovery only by court order.

Arguing in favor of certification, VPR directs the court's attention to its motion for reconsideration.  In its memorandum, VPR concedes that the relief sought falls outside traditional adversarial procedure, and states that there is no legal basis to name the ISP providers as defendants.  VPR compares the Doe defendants' IP addresses to "records of *who* rented *which* car at a busy car rental agency, in that IP addresses are like cars "leased by subscribers. If a

1

plaintiff was injured by a rental car, the plaintiff can discover the information on who leased the car from the agency by specifying the license plate of the offending vehicle and the date and time when the injury occurred.  Without access to the agency's records, all the plaintiff has is the identity of the rental agency, but not who was driving the rental car."  The comparison is not apt. The rental agency owns the car and is a potential defendant, so the adversarial process would yield the driver's information.  And such information is not necessarily confidential; accident reports and police records may also identify the driver.

In this case, not a single one of the plaintiff's 1,017 potential adversaries has been identified.  There is no adversarial process yet.  Moreover, VPR ignores the fact that IP subscribers are not necessarily copyright infringers.  Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid.  Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material.  Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections  (including a secure connection from the State University of New York).  *See* Carolyn Thompson, *Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/

The list of IP addresses attached to VPR's complaint suggests, in at least some instances, a similar disconnect between IP subscriber and copyright infringer.  The ISPs include a number of universities, such as Carnegie Mellon, Columbia, and the University of Minnesota, as well as corporations and utility companies. Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect, as illustrated in the MSNBC article.  The infringer might be the subscriber, someone in the subscriber's  household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.

VPR argues that, if served with a subpoena, the ISPs are required by law to notify each targeted subscriber and the Does may then move the court to quash the subpoenas.  The potential filing of a motion to quash is no reason to abandon the adversarial process.  As VPR points out, *ex parte* motions for expedited discovery have been granted in similar cases in other districts; among the thousands of Does in those cases, relatively few motions to quash have been filed.  In at least one case, counsel[1] has sought leave to amend the complaint to add more Doe defendants. *See Lightspeed Media Corp. v. Does 1 - 100*, Case No. 1:10-cv-05604, d/e 16 (N.D. Ill.) (seeking leave to add Does 101 - 1000 as defendants).  In *Hard Drive Productions, Inc. v. Does 1 - 1000*, counsel sought leave to dismiss more than 100 Doe defendants, stating that some of the Does had "reached a mutually satisfactory resolution of their differences" with the plaintiff.  *Hard Drive,*

---

[1] VPR is represented by John Steele, Esq.  Steele represents other adult entertainment producers in cases now (or recently) pending in the Northern and Southern Districts of Illinois.

Case No. 1:10-cv-05606, d/e 33 (N.D. Ill.).[2]   Orin Kerr, a professor at George Washington University Law School, noted that whether you're guilty or not, "you look like a suspect."[3] Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong?  The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case.

In its order denying the motion for expedited discovery, the court noted that until at least one person is served, the court lacks personal jurisdiction over anyone. The court has no jurisdiction over any of the Does at this time; the imprimatur of this court will not be used to advance a "fishing expedition by means of a perversion of the purpose and intent" of class actions.  Order, d/e 9.

The motion to certify for interlocutory review [14] is denied.

Entered this 29th day of April, 2011.

**\s\Harold. A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

---

[2] In *Lightspeed*, only one defendant has been named and his case severed; the ISP subpoenas have been quashed, the other Does are dismissed, and Steele has been ordered to notify the Does that they are no longer potential defendants in the case. *See* Case No. 1:10-cv-05604, d/e 57 (N.D. Ill.).

[3] MSNBC article, p. 2.

3

# Exhibit E

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| IN RE: COPYRIGHT INFRINGEMENT | : | |
| CASES WITH DOE DEFENDANTS | : | CIVIL ACTION |
| RELATED TO CIVIL ACTION | : | NO. |
| NUMBER 04-1239 | : | |
| | : | |

**<u>STANDING ORDER</u>**

**AND NOW**, this 21st day of January, 2005, for the purposes of consistency and in congruence with the Court's October 13, 2004 Order granting Plaintiffs Motion for Leave to Take Immediate Discovery in <u>Elektra Entertainment Group, Inc. v. Does 1-6</u>, No. Civ.A.04-1241, [Doc. #14], as amended by Order dated October 25, 2004 [Doc. #15], the Court issues the following Standing Order to apply to all current and future copyright infringement actions having "Doe" defendants filed in the Eastern District of Pennsylvania that are related to Civil Action Numbers 04-1239 and 04-1241 and that have been or will be assigned for pre-trial administrative purposes to the undersigned. It is hereby **ORDERED** as follows:

1.  Plaintiffs may take immediate discovery on each respective Doe Defendant's Internet Service Provider ("ISP") to obtain the identity of the Doe Defendant by serving a Rule 45 subpoena that seeks information sufficient to identify the Doe Defendant, including name, address, telephone number, e-mail address, and Media Access Control addresses for each Defendant.

2.  Plaintiffs may use the information obtained by this Rule 45 subpoena solely for the purpose of protecting Plaintiffs' rights under the Copyright Act.

3.  Plaintiffs shall attach the Court Directed Notice Regarding Issuance of Subpoena, a copy of which is attached to this Order, to the aforementioned Rule 45 subpoena.

The Rule 45 subpoena shall instruct the ISP to distribute a copy of said notice to each Doe Defendant within seven days of service of the subpoena.

4.      With respect to cable ISPs, this ruling further authorizes disclosure of information pursuant to 47 U.S.C. § 551(c)(2)(B).

5.      Any future notices to any Defendant in these cases must be pre-approved by the Court.

It is further **ORDERED** that the Clerk of Court shall place this Standing Order on the dockets of all current and future copyright infringement actions having "Doe" defendants filed in the Eastern District of Pennsylvania that have been or will be assigned for pre-trial administrative purposes to the undersigned.

It is so **ORDERED**.

BY THE COURT:

/s/ Cynthia M. Rufe

_____

**CYNTHIA M. RUFE,  J.**

# Exhibit F

# Exhibit F



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

FEB 1 0 2011

CLERK, U.S. DISTRICT COURT
By _____
Deputy

LFP INTERNET GROUP LLC,
    Plaintiff,

v.

DOES 1-3,120,
    Defendants,

§
§
§
§
§
§
§
§
§

Civil No. 10-cv-2095-F

## ORDER SEVERING DOES 2-3,120; QUASHING SUBPOENAS; AND DISMISSING ALL PENDING MOTIONS AS MOOT

Plaintiff, LFP Internet Group, LLC, filed its Original Complaint on October 17, 2010, against Does 1-3,120 alleging copyright infringement of the motion picture, "This Ain't Avatar XXX," via the internet. When Plaintiff filed the suit it did not know the names of the alleged infringers, but had identified the Internet Protocol ("IP") addresses assigned to each Defendant by his or her Internet Service Provider ("ISP"). To discover the actual names of the Doe Defendants in this case, Plaintiff filed a Motion for Leave to Take Discovery Prior to Rule 26(f) Conference, which the Court granted. *See* Docket No. 8. Plaintiff subpoenaed the ISPs who provide service to the identified IP addresses seeking information sufficient to identify each Doe Defendant, including their names, current (and permanent) addresses, telephone numbers, email addresses, and Media Access Control addresses. This case was transferred to this Court on January 26, 2011. *See* Docket No. 40.

Upon inspection of Plaintiff's Complaint, the Court finds that Doe Defendants 2-3, 120 have been improperly joined. For the reasons stated below, the Court finds that all Defendants except Doe 1 should be SEVERED from this action.

## DISCUSSION

In its Complaint, Plaintiff alleges that "Defendants collectively participated, via the internet, in the unlawful reproduction and distribution of Plaintiff's copyrighted motion picture, '*This Ain't Avatar XXX,*' by means of file transfer technology called, BitTorrent." Docket No. 1 at 1-2. According to the Complaint, the BitTorrent software allows a user to log onto a private website, select a reference file containing the desired movie, and load that reference file onto a computer program designed to read such files. After the reference file is loaded, the BitTorrent program is able to employ the BitTorrent protocol to initiate simultaneous connection to hundreds of other users possessing and "sharing" copies of the digital media in the reference file, in this case, Plaintiff's motion picture. The program then coordinates the copying of the film to the user's computer from the other users "sharing" the film. As the film is being copied to the user's computer, the downloaded pieces are immediately made available to other users seeking to obtain the file. Plaintiff alleges that this is how each Defendant simultaneously reproduced and/or distributed the motion picture.

However, there are no allegations in Plaintiff's Complaint that the Defendants are in any way related to each other, or that they acted in concert or as a group in their allegedly offending actions. The Complaint only alleges that "each Defendant, without the permission

2

or consent of the Plaintiff, has used, and continues to use, BitTorrent software to reproduce

and/or distribute Plaintiff's motion picture to hundreds of other BitTorrent users." Docket

No. 1 at 5. The Federal Rules of Civil Procedure provide that multiple parties may be joined

in one action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20 (a)(2).

Plaintiff makes no allegation in this case that the claims against the joined defendants

"arise out of the same transaction, occurrence, or series of transactions or occurrences."

Instead, it seems that the copyright infringement claim against each Defendant is based on

the individual acts of each Defendant. Plaintiff only alleges in its Complaint that each

defendant uses the same method for committing the infringement, but "merely committing

the same type of violation in the same way does not link defendants together for purposes of

joinder." *West Coast Prods., Inc. v. Does 1-535*, No. 3:10-CV-94 (N.D. W. Va. Dec. 16,

2010) (order severing all defendants from action except Doe 1) (quoting *Laface Records,*

*LLC v. Does 1-38*, 2008 WL 544992, *2 (E.D.N.C. Feb. 27, 2008)).

In fact, several courts agree that where there is no allegation that multiple defendants

have acted in concert, joinder is improper. *See, e.g. Fonovisa Inc. et al. v. Does 1-41*, No.

A-04-CA-550-LY (W.D. Tex. Nov. 17, 2004) (*sua sponte* dismissing without prejudice all

but the first defendant in several cases filed by recording companies against numerous Does accused of violating federal copyright laws by downloading music from an "online media distribution system"); *BMG Music v. Does 1-4*, 2006 U.S. Dist. LEXIS 53237, *5-6 (N.D. Cal. July 31, 2006) (*sua sponte* severing multiple defendants in action where only connection between them was allegation they used same ISP to conduct copyright infringement). Accordingly, the Court finds that Defendants' alleged use of the BitTorrent software system to commit copyright infringement is, without more, insufficient for permissive joinder under Rule 20.

Additionally, permissive joinder is improper in this case because each Defendant will also likely have a different defense. Another district court finding improper joinder explained it this way:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed.

*West Coast Prods., Inc.,* No. 3:10-CV-94 (quoting *BMG Music v. Does 1-203*, 2004 WL 953888, *1 (E.D. Pa. Apr. 2, 2004)). Therefore, the Court finds joinder of Defendants 2-3,120 in this case improper.

However, Federal Rule of Civil Procedure 21 states that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R.

4

Civ. P. 21. Accordingly, the Court will sever all Defendants from this case except Doe 1.

Because all claims except Doe 1 will be severed from this action, the subpoenas served in this

action pertaining to any other Defendant's ISP are no longer valid. Additionally, the Court

is of the opinion that the subpoena served pertaining to Doe 1 should be quashed pending this

Court's determination as to whether an attorney ad litem should be appointed to protect

Doe 1's interests.

## CONCLUSION

For the forgoing reasons, the Court ORDERS that:

(1) All Defendants except Doe 1 are hereby SEVERED from this action;

(2) The subpoenas served on the ISPs listed in Exhibit A of Plaintiff's Complaint

(Docket No. 1-1) are hereby QUASHED as to all Defendants, Does 1-3,120. Plaintiff

SHALL IMMEDIATELY NOTIFY the recipients of these subpoenas that said subpoenas

have been quashed;

(3) Within 30 days from the date of this order, Plaintiff may file individual complaints

against those Does whom they wish to proceed. Upon election to proceed, Plaintiff shall

submit to the Clerk of the Court filing fees for each of the complaints against those Does

whom Plaintiff wishes to proceed. Such cases will be assigned separate civil action numbers

and placed on this Court's docket;

(4) Civil Action No. 3:10-cv-2095-F shall be assigned to Doe No. 1 as an individual

defendant. The actions filed within 30 days of this Order against any other Doe Defendant

severed from this case, will be deemed to have been filed as of October 17, 2010, the date of the filing of the original Complaint;

(5) The pending Motion to Quash (Docket No. 24), as well as any filings that can be construed as motions, in Civil Action No. 3:10-cv-2095-F are hereby DENIED AS MOOT. The Court DENIES WITHOUT PREJUDICE Plaintiff's Motion to Compel (Docket No. 41). because there does not appear to be any objections filed by Doe 1, who is now the only Defendant in this case, the Court is of the opinion the Motion to Compel is now moot, however, Plaintiff is free to re-file the Motion to Compel if necessary; and

(6) The Clerk is directed to transmit copies of this Order to counsel of record and mail a certified copy to each interested party of record.

It is so Ordered.

Signed this 10 day of February, 2011.

Royal Furgeson
Senior United States District Judge

# Exhibit G

# Exhibit G

**United States District Court**
For the Northern District of California

1

2

3

4

5 IN THE UNITED STATES DISTRICT COURT

6 FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8 IO GROUP, INC.,                 No. C 10-04382 SI

9         Plaintiff,            **ORDER SEVERING DOE 1 AND DISMISSING CLAIMS AGAINST DOES 2 - 435 WITHOUT PREJUDICE; MODIFYING DISCOVERY ORDER**

10    v.

11 DOES 1 - 435,

12         Defendant.                 /

13

14       Plaintiff filed this copyright infringement case on September 28, 2010, alleging that 435 "Doe"

15 defendants illegally reproduced, distributed and publicly shared copies of plaintiff's copyright protected

16 works on a peer-to-peer network, "eDonkey 2000." Complaint ¶ 1. Plaintiff identified the IP addresses

17 associated with each of the Does, as well as the particular registered work or works each Doe defendant

18 allegedly reproduced on eDonkey2000 and the date of that reproduction. *Id.*, ¶¶ 22 - 456. On October

19 8, 2010, plaintiff moved the Court for permission to take early discovery, specifically to issue a

20 subpoena to internet service provider Comcast Internet in order to identify the name, address, e-mail

21 address and telephone number of the subscribers associated with the identified IP addresses. On

22 October 15, 2010, Magistrate Judge Ryu granted the motion for early discovery, but required Comcast

23 to provide each subscriber identified with notice of the subpoena and sufficient time to object to the

24 discovery and/or move to quash the subpoena before releasing the information to plaintiff. Docket No.

25 9.

26       After a subscriber, J.W., moved to quash the subpoena,[1] Judge Ryu severed J.W.'s claims from

27 _____

28      [1]   J.W. also moved for a protective order and to dismiss the claims for lack of personal jurisdiction. *See* docket Nos. 11-13.

United States District Court
For the Northern District of California

this case.[2] In light of the high likelihood that at least one of the hundreds of other Doe defendants will decline to consent to the jurisdiction of a magistrate judge, Judge Ryu ordered that this action – the claims against the remaining Doe defendants – be reassigned to an Article III judge. Docket No. 28. At that time, Judge Ryu also denied plaintiff's motion to extend the deadline for service on the Doe defendants due to Comcast's inability to identify all of the Doe defendants before May 31, 2011.

This case was subsequently reassigned to the undersigned Judge. The complaint presents similar allegations to another case presently before this Judge, *IO Group, Inc. v. Does 1 - 19*, Case No. 10-3851. That case also asserted copyright infringement claims against 19 Doe defendants who allegedly reproduced one or more of plaintiff's works on eDonkey2000. After this Court granted plaintiff leave to serve early discovery in Earthlink, Inc., this Court considered a motion to quash filed by a subscriber, "Doe Defendant 4." *See* Case No. 10-3851, Docket No. 23. In ruling on that motion, the Court found that plaintiff had improperly joined Does 1 through 19. December 7, 2010 Order at 4-6. The Court held that the complaint lacked any specific factual allegations to support plaintiff's claims that the Doe defendants conspired or otherwise acted in concert. *Id.* at 5. Instead, the only specific factual allegations were that the Doe defendants used the same peer-to-peer network to reproduce plaintiff's works on different dates. Those allegations, however, were insufficient as a matter of law to support joinder and allow plaintiff to benefit from filing one, as opposed to many, lawsuits. *Id.* at 5. In so ruling, the Court relied on other cases where courts, faced with similarly deficient allegations, *sua sponte* severed the claims of the misjoined defendants and dismissed the severed defendants. *Id.* at 5 (citing *Laface Records, LLC v. Does 1 - 38*, 2008 U.S. Dist. LEXIS 14544 (E.D.N.C. Feb. 27, 2008); *Interscope Records v. Does 1-25*, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004); *BMG Music v. Does*, 2006 U.S. Dist. LEXIS 53237, No. 06-01579 (Patel, J.) (N.D. Cal. July 31, 2006); *Twentieth Century Fox Film Corp. v. Does* 1-12, No. C 04-04862 WHA (N.D. Cal. Nov. 16, 2004) (Alsup, J.)).

This complaint suffers from the same defects the Court identified in *IO Group, Inc. v. Does 1-19.* There are no facts to support the assertion that defendants conspired with each other to reproduce plaintiff's works on eDonkey 2000 and the allegations that defendants simply used the same peer-to-

---

[2] The claims against J.W will proceed before Judge Ryu as No. C 10-5821 DMR.

2

United States District Court
For the Northern District of California

peer network to download plaintiff's works – on many different days at many different times – is insufficient to allow plaintiff to litigate against hundreds of different Doe defendants in one action.

As such, the Court HEREBY Orders that Does 2 through 435 are SEVERED and DISMISSED from this action. Plaintiff can refile separate complaints against Doe defendants 2 through 435 within twenty (20) days from the date of this Order. If plaintiff files new complaints within twenty (20) days, such actions shall be deemed a continuation of the original action for purposes of the statute of limitations.

In light of the severance and dismissal, the Order authorizing early discovery and the issuance of a subpoena on Comcast is now overbroad. Docket No. 9. As such, the Court's October 15, 2010 Order is HEREBY modified to allow discovery only as to Doe 1 (*see* Complaint ¶ 22), and is stayed in all other respects. Plaintiff is hereby ORDERED to serve a copy of this Order on Comcast within two days of its issuance. After such service, Comcast shall not disclose any further information regarding Does 2 through 435 absent further order of this Court. This Order is without prejudice to plaintiff seeking discovery to identify each severed Doe, if and when plaintiff files new complaints against the individual Does. Relatedly, this Order does not prevent plaintiff from using the information already disclosed by Comcast, for example, to file new lawsuits identifying former Doe defendants by name or other identifying information.

**IT IS SO ORDERED.**

Dated: January 10, 2011

_____
SUSAN ILLSTON
United States District Judge

3

# Exhibit H

# Exhibit H

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**PATRICK COLLINS, INC.,**

     **Plaintiff,**

         **v.**                          **Civil Action No. 11-58 (RMU/JMF)**

**DOES 1-72,**

     **Defendants.**

## MEMORANDUM OPINION

This case was referred to me for full case management. Currently pending and ready for resolution is plaintiff's <u>Motion for Leave to Take *Additional* Discovery Prior to Rule 26(f) Conference; Memorandum of Points and Authorities in Support Thereof</u> [#16].

Plaintiff, Patrick Collins, Inc., is the owner of the copyright for the motion picture "Massive Asses 5". <u>Complaint for Copyright Infringement</u> [#1] ¶5. According to plaintiff, numerous individuals illegally downloaded and distributed its film over the Internet, in violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*[1] <u>Id.</u> ¶¶1, 3. At the time the law suit was filed, plaintiff did not know the identities of these individuals. <u>Id.</u> ¶17. Plaintiff did, however, know the Internet Protocol ("IP") address of the computers associated with the alleged infringers. <u>Id.</u>

On June 28, 2011, this Court granted plaintiff's first motion for leave to take discovery prior to the Rule 26(f) conference. <u>See</u> <u>Memorandum Order</u> [#12]. In its current motion, plaintiff seeks to conduct more of the same. [#16] at 1-5.

---

[1] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

Since the Court issued its <u>Memorandum Order</u> in June of 2011, it has had an opportunity to reconsider the issue and has now concluded that such early, wide-ranging discovery is, for the following reasons, not warranted.

Plaintiff seeks what is in essence jurisdictional discovery. Pursuant to Rule 26 of the Federal Rules of Civil Procedure, although "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," they may do so "when authorized . . . by court order." Fed. R. Civ. P. 26(f). Such authorization, however, must be based on a showing of "good cause". Fed. R. Civ. P. 26(d)(1). "[I]n order to get jurisdictional discovery[,] a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." <u>Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC</u>, 148 F.3d 1080, 1090 (D.C. Cir. 1998). Furthermore, it is well within the court's purview under Rule 26 to impose reasonable limitations on discovery when "the burden or expense of the proposed discovery outweighs its likely benefit". Fed. R. Civ. P. 26(b)(2)(c). <u>See also</u> <u>Linder v. Dep't of Def.</u>, 133 F.3d 17, 24 (D.C. Cir. 1998) ("Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation.") (internal citation omitted); <u>In re Micron Tech., Inc. Sec. Litig.</u>, 264 F.R.D. 7, 9 (D.D.C. 2010) ("The 'undue burden' test requires district courts to be 'generally sensitive' to the costs imposed on third parties . . .") (internal quotations omitted); <u>N.C. Right to Life, Inc. v. Leake</u>, 231 F.R.D. 49, 51 (D.D.C. 2005) ("While quashing a subpoena goes against courts' general preference for a broad scope of discovery . . . limiting discovery is appropriate when the burden of providing the documents outweighs the need for it.").

2

Plaintiff's cause of action, tortious copyright infringement,[2] is brought under a federal statute, the Copyright Act. The Copyright Act does not provide for the exercise of personal jurisdiction over alleged infringers on a nationwide or other basis. Plaintiff must therefore predicate the court's jurisdiction over the infringers on the reach of District of Columbia law. It first provides for the exercise of personal jurisdiction over a person domiciled in the District of Columbia as to "any claim for relief." D.C. Code § 13-422 (2001). The so-called "long arm" provision of the personal jurisdiction statute provides, in pertinent part, as follows:

> (a)     A District of Columbia court may exercise personal
>          jurisdiction over a person, who acts directly or by an agent,
>          as to a claim for relief arising from the person's - -
>
>                          * * *
>
> (3)     causing tortious injury in the District of Columbia
>          by an act or omission in the District of Columbia;

D.C. Code § 13-423 (2001).

Thus, unless the infringer is domiciled in the District of Columbia, the question presented is where the infringement occurred and whether it occurred in the District of Columbia.

In Nu Image, Judge Wilkins considered this very question and followed the approach taken by the D.C. Circuit in Helmer v. Dolestskaya, 393 F.3d. 201 (D.C. Cir. 2004). Nu Image, 2011 WL 3240562, at *3. In Helmer, plaintiff, a U.S. citizen, brought suit against his former girlfriend, a Russian citizen, for fraud and breach of contract. Helmer, 393 F.3d. at 203. Specifically, plaintiff claimed that the defendant failed to reimburse him for real and personal

---

[2] "It is well settled in this jurisdiction [the District of Columbia Circuit] that a claim for copyright infringement sounds in tort." Nu Image, Inc. v. Does 1-23,322, — F. Supp. 2d —, 2011 WL 3240562, at *8, n.3 (D.D.C. 2011) (citing Stabilisierungsfonds Fur Wein v. Kaiser, 647 F.2d 200, 207 (D.C. Cir. 1981)).

property acquired while they were living together in Moscow. Id.  The court of appeals upheld

the lower court's finding that the injury occurred outside of the District of Columbia:

> The district court ruled that although [defendant] fraudulently
> concealed her personal background during her visit to the District
> of Columbia, the fraud did not cause injury here because [plaintiff]
> was not "physically present" in the District of Columbia when
> [defendant] incurred the credit card charges, when [plaintiff] paid
> the credit card charges, when [plaintiff] purchased the apartment,
> or when [defendant] registered the apartment in her own name.

Id. at 208.

As a result, the court of appeals held that, because plaintiff failed to demonstrate that

defendant's fraud caused him injury in the District of Columbia, the court could not exercise

personal jurisdiction over her as to that count. Id. at 209.

In Nu Image, Judge Wilkins ultimately concluded that it was difficult to see how

defendants living outside of the District of Columbia could have caused plaintiff tortious injury

within the District of Columbia when they downloaded plaintiff's film. Nu Image, 2011 WL

3240562, at *4.  To that end, Judge Wilkins therefore held that discovery prior to the Rule 26(f)

conference was warranted if "the Court finds that the Plaintiff has a good faith basis to believe a

putative defendant may be a District of Columbia resident if a geolocation service places his/her

IP address within the District of Columbia, or within a city located within 30 miles of the

District of Columbia." Id.  Thus, Judge Wilkins denied the plaintiff's motion for expedited

discovery as to all defendants and indicated instead that he would only entertain a motion for

expedited discovery on the ISPs to "obtain identifying information only for IP addresses that

Plaintiff has a good faith basis to believe are reasonably likely to correspond to internet accounts

located in the District of Columbia." Id. at *6.

4

In the case at bar, the issue is where the situs of the injury is with respect to the simultaneous uploading and downloading of copyrighted material from the Internet. According to plaintiff, the illegal infringement took place as follows:

> The initial file-provider intentionally elects to share a file with a torrent network. This initial file contains Plaintiff's entire copyrighted work and is called a "seed." Other peers on the network connect to the seek file to download the file wherein the download creates a free digital co[p]y of Plaintiff's copyrighted film. As yet additional peers request the same file each additional user becomes a part of the network from where the file can be downloaded. However, unlike a traditional peer-to-peer network, each new file downloader is receiving a different piece of the data from each host user in the swarm who has already downloaded the file that together comprises the whole. The effect of this technology makes every downloader also an uploader of the illegally transferred file(s). This means that every "node" or peer user who has a copy of the infringing copyrighted material on a torrent network must necessarily also be a source of download for that infringing file.

[#1] ¶13.

Irrespective of whether the injury is viewed to be the uploading of the movie, the downloading of the movie, or both, the focus would be on the physical location of the computers bearing the unique IP addresses plaintiff claims were involved in the unauthorized distribution of its film. For non-resident defendants, that would most likely be outside of the District of Columbia, unless it were shown that they were visiting the District of Columbia at the time of the alleged infringement.

As concluded by Judge Wilkins in <u>Nu Image</u>, this Court cannot see how it could exercise personal jurisdiction over non-District of Columbia residents under the current facts. The Court, therefore, will order plaintiff to show cause why it should assert jurisdiction over the person of each John Doe defendant unless it has a good faith belief that that person is domiciled in the

5

District of Columbia which, as Judge Wilkins found, may be premised on "utilizing geolocation services that are generally available to the public to derive the approximate location of the IP addresses identified for each putative defendant." <u>Nu Image</u>, 2011 WL 3240562, at *4.

Finally, the statutory requirements as to venue under the Copyright Act provide additional and equally insurmountable obstacles to this lawsuit remaining in this Court. Venue is governed exclusively by 28 U.S.C. § 1400, which states the following: "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Thus, plaintiff will also have to convince me that venue would be proper in this Court.

An <u>Order</u> accompanies this <u>Memorandum Opinion</u>.

**SO ORDERED.**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

# Exhibit I

# Exhibit I

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CP PRODUCTIONS, INC.,            )
                                 )
                Plaintiff,       )
                                 )
        v.                       )        No.  10 C 6255
                                 )
DOES 1-300,                      )
                                 )
                Defendants.      )

MEMORANDUM ORDER

As the caption of this action suggests, it is an
understatement to characterize it as problematic in nature.  It
was filed more than four months ago (on September 29, 2010), so
that the time prescribed for service on each of the 300 anonymous
putative defendants under Fed. R. Civ. P. ("Rule") 4(m) has
expired.  Moreover, the few developments that have taken place
since the action's filing--most recently a motion to quash filed
by one of the "Doe" defendants--tend to confirm that this lawsuit
is not an appropriate vehicle for the accomplishment of the goal
stated in Complaint ¶1:

> This action has been filed by Plaintiff to combat the
> willful and intentional infringement of its copyrighted
> creative works and includes a civil claim for copyright
> infringement.  Defendants, whose names Plaintiff
> expects to ascertain during discovery, illegally
> reproduced and distributed Plaintiff's copyrighted
> creative works via computer networks and upon
> information and belief continue to do the same.

Instead the course of action chosen by counsel for CP
Productions, Inc. plainly has the potential to perpetrate the
type of abuse identified in the most recent motion to quash and,

indeed, the motion to quash filed earlier by a Tennessee lawyer who lists herself as "Attorney for Doe 300."

Accordingly this Court complies with the mandate of Rule 4(m) by dismissing this action without prejudice against <u>all</u> defendants. Counsel for CP Productions, Inc. is notified that no motion for reconsideration of this order will be entertained in the absence of an appropriate showing of justification for such reconsideration.[1]

_____

Milton I. Shadur
Senior United States District Judge

Date: February 7, 2011

---

[1] This order of dismissal moots the current motion to quash (Dkt. 25), which is therefore denied on that basis.

2

# Exhibit J

# Exhibit J

CLOSED, TYPE–E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:11–cv–02031–RLW

FIRST TIME VIDEOS LLC v. DOES
Assigned to: Judge Robert L. Wilkins
Cause: 17:101 Copyright Infringement

Date Filed: 11/15/2011
Date Terminated: 01/31/2012
Jury Demand: None
Nature of Suit: 820 Copyright
Jurisdiction: Federal Question

**Plaintiff**

**FIRST TIME VIDEOS LLC**

represented by **Paul A. Duffy**
PRENDA LAW INC.
161 N. Clark Street
Suite 3200
Chicago, IL 60601
(312) 880–9160
Fax: (312) 893–5677
Email: paduffy@wefightpiracy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DOES**
*1–541*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/15/2011 | 1 | COMPLAINT against DOES ( Filing fee $ 350, receipt number 4616043803) filed by FIRST TIME VIDEOS LLC. (Attachments: # 1 Civil Cover Sheet)(jf, ) (Entered: 11/18/2011) |
| 11/15/2011 | | SUMMONS Not Issued as to DOES (jf, ) (Entered: 11/18/2011) |
| 11/15/2011 | 2 | LCvR 7.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests NONE by FIRST TIME VIDEOS LLC (jf, ) (Entered: 11/18/2011) |
| 11/18/2011 | 3 | NOTICE of Voluntary Dismissal by FIRST TIME VIDEOS LLC (Duffy, Paul) (Entered: 11/18/2011) |

# Exhibit K

# Exhibit K

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**EXQUISITE MULTIMEDIA, INC.,**

      **Plaintiff,**

           **v.**                    **Civil Action No. 11-1976 (RWR/JMF)**

**DOES 1-336,**

      **Defendants.**

## MEMORANDUM OPINION

This case was referred to me for full case management. Currently pending and ready for resolution is plaintiff's <u>Motion for Leave to Take Discovery Prior to Rule 26(f) Conference</u> [#3]. Plaintiff, Exquisite Multimedia, Inc., is the owner of the copyright for the motion picture "Supergirl XXX An Extreme Comixxx Parody". <u>Complaint for Copyright Infringement</u> [#1] ¶8. According to plaintiff, numerous individuals illegally downloaded and distributed its film over the Internet, in violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*[1] <u>Id.</u> ¶¶1, 3. At the time the law suit was filed, plaintiff did not know the identities of these individuals. <u>Id.</u> ¶7. Plaintiff did, however, know the Internet Protocol ("IP") address of the computers associated with the alleged infringers. <u>Id.</u>

In its current motion, plaintiff seeks to conduct expedited discovery prior to the Rule 26(f)[2] conference so that it may learn the identity of these individuals. [#3-1] at 2. Specifically, plaintiff seeks leave to serve Rule 45 subpoenas on the various Internet Service Providers ("ISP") associated with the previously identified IP addresses, in order to obtain "the true name,

---

[1] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

[2] Fed. R. Civ. P. 26(f).

address, telephone number, e-mail address and Media Access Control ("MAC") address of the

Defendant to whom the ISP issued an IP address." Id. In addition, if the ISP identifies an

intermediary ISP as the entity providing online services, plaintiff seeks leave to serve the

subpoena on that ISP. Id.

Plaintiff therefore seeks what is in essence jurisdictional discovery. Pursuant to Rule 26

of the Federal Rules of Civil Procedure, although "[a] party may not seek discovery from any

source before the parties have conferred as required by Rule 26(f)," they may do so "when

authorized . . . by court order." Fed. R. Civ. P. 26(f). Such authorization, however, must be

based on a showing of "good cause". Fed. R. Civ. P. 26(d)(1). "[I]n order to get jurisdictional

discovery[,] a plaintiff must have at least a good faith belief that such discovery will enable it to

show that the court has personal jurisdiction over the defendant." Caribbean Broad. Sys. Ltd. v.

Cable & Wireless PLC, 148 F.3d 1080, 1090 (D.C. Cir. 1998). Furthermore, it is well within the

court's purview under Rule 26 to impose reasonable limitations on discovery when "the burden

or expense of the proposed discovery outweighs its likely benefit". Fed. R. Civ. P. 26(b)(2)(c).

See also Linder v. Dep't of Def., 133 F.3d 17, 24 (D.C. Cir. 1998) ("Whether a burdensome

subpoena is reasonable 'must be determined according to the facts of the case,' such as the

party's need for the documents and the nature and importance of the litigation.") (internal

citation omitted); In re Micron Tech., Inc. Sec. Litig., 264 F.R.D. 7, 9 (D.D.C. 2010) ("The

'undue burden' test requires district courts to be 'generally sensitive' to the costs imposed on

third parties . . .") (internal quotations omitted); N.C. Right to Life, Inc. v. Leake, 231 F.R.D. 49,

51 (D.D.C. 2005) ("While quashing a subpoena goes against courts' general preference for a

broad scope of discovery . . . limiting discovery is appropriate when the burden of providing the documents outweighs the need for it.").

Plaintiff's cause of action, tortious copyright infringement,[3] is brought under a federal statute, the Copyright Act. The Copyright Act does not provide for the exercise of personal jurisdiction over alleged infringers on a nationwide or other basis. Plaintiff must therefore predicate the court's jurisdiction over the infringers on the reach of District of Columbia law. It first provides for the exercise of personal jurisdiction over a person domiciled in the District of Columbia as to "any claim for relief." D.C. Code § 13-422 (2001). The so-called "long arm" provision of the personal jurisdiction statute provides, in pertinent part, as follows:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's - -
>
>        * * *
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

D.C. Code § 13-423 (2001).

Thus, unless the infringer is domiciled in the District of Columbia, the question presented is where the infringement occurred and whether it occurred in the District of Columbia.

In Nu Image, Judge Wilkins considered this very question and followed the approach taken by the D.C. Circuit in Helmer v. Dolestskaya, 393 F.3d 201 (D.C. Cir. 2004). Nu Image, 2011 WL 3240562, at *3. In Helmer, plaintiff, a U.S. citizen, brought suit against his former

---

[3] "It is well settled in this jurisdiction [the District of Columbia Circuit] that a claim for copyright infringement sounds in tort." Nu Image, Inc. v. Does 1-23,322, — F. Supp. 2d —, 2011 WL 3240562, at *8, n.3 (D.D.C. 2011) (citing Stabilisierungsfonds Fur Wein v. Kaiser, 647 F.2d 200, 207 (D.C. Cir. 1981)).

3

girlfriend, a Russian citizen, for fraud and breach of contract. Helmer, 393 F.3d at 203.

Specifically, plaintiff claimed that the defendant failed to reimburse him for real and personal

property acquired while they were living together in Moscow. Id.  The court of appeals upheld

the lower court's finding that the injury occurred outside of the District of Columbia:

> The district court ruled that although [defendant] fraudulently
> concealed her personal background during her visit to the District
> of Columbia, the fraud did not cause injury here because [plaintiff]
> was not "physically present" in the District of Columbia when
> [defendant] incurred the credit card charges, when [plaintiff] paid
> the credit card charges, when [plaintiff] purchased the apartment,
> or when [defendant] registered the apartment in her own name.

Id. at 208.

As a result, the court of appeals held that, because plaintiff failed to demonstrate that

defendant's fraud caused him injury in the District of Columbia, the court could not exercise

personal jurisdiction over her as to that count. Id. at 209.

In Nu Image, Judge Wilkins ultimately concluded that it was difficult to see how

defendants living outside of the District of Columbia could have caused plaintiff tortious injury

within the District of Columbia when they downloaded plaintiff's film. Nu Image, 2011 WL

3240562, at *4.  To that end, Judge Wilkins therefore held that discovery prior to the Rule 26(f)

conference was warranted if "the Court finds that the Plaintiff has a good faith basis to believe a

putative defendant may be a District of Columbia resident if a geolocation service places his/her

IP address within the District of Columbia, or within a city located within 30 miles of the

District of Columbia." Id.  Thus, Judge Wilkins denied the plaintiff's motion for expedited

discovery as to all defendants and indicated instead that he would only entertain a motion for

expedited discovery on the ISPs to "obtain identifying information only for IP addresses that

Plaintiff has a good faith basis to believe are reasonably likely to correspond to internet accounts located in the District of Columbia." Id. at *6.

In the case at bar, the issue is where the situs of the injury is with respect to the simultaneous uploading and downloading of copyrighted material from the Internet. According to plaintiff, the illegal infringement took place as follows:

> The torrent protocol makes home computers with low bandwidth capable of participating in large data transfers across so-called "Peer-to-Peer" (P2P) networks. The first file-provider decides to share a file ("seed") with a torrent network. Then other users ("peers") within the network connect to the seed file for downloading. As additional peers request the same file, they become part of the same network. Unlike a traditional P2P network, each new peer receives a different piece of the data from each peer who has already downloaded the file. This system of multiple pieces of data coming from peers is called a "swarm." As a result, every downloader is also an uploader of the illegally transferred file and is simultaneously taking copyrighted material through many ISPs in numerous jurisdictions around the country.

[#1] ¶9.

Irrespective of whether the injury is viewed to be the uploading of the movie, the downloading of the movie, or both, the focus would be on the physical location of the computers bearing the unique IP addresses plaintiff claims were involved in the unauthorized distribution of its film. For non-resident defendants, that would most likely be outside of the District of Columbia, unless it were shown that they were visiting the District of Columbia at the time of the alleged infringement.

In this case, plaintiff claims that "[b]y using geo-location techonology, [it] has attempted to assure that the IP addresses are likely within the geographic location of the Court." [#1] ¶14.

5

Although plaintiff supports this claim with a <u>Verification</u>[4] from plaintiff's counsel and a

<u>Declaration</u>[5] from Jon Nicolini, the Vice President of Technology for Copyright Enforcement

Group, LLC ("CEG"), plaintiff fails to state with specificity what it believes to be the

"geographic location of the Court" nor does it provide any information as to the geographic

regions served by the various ISPs (Verizon Internet Services, Comcast Cable, and Cox

Communications) identified in its pleadings as having provided service to the alleged infringers.

The Court, therefore, will order plaintiff to briefly supplement its showing regarding its good

faith belief that the IP addresses identified by plaintiff belong to persons who are domiciled in

the District of Columbia and that the ISPs identified by plaintiff serve the District of Columbia.

Finally, the statutory requirements as to venue under the Copyright Act provide

additional and equally insurmountable obstacles to this lawsuit remaining in this Court.  Venue

is governed exclusively by 28 U.S.C. § 1400, which states the following: "Civil actions, suits, or

proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask

works or designs may be instituted in the district in which the defendant or his agent resides or

may be found." 28 U.S.C. § 1400(a).  Thus, plaintiff will also have to convince me that venue

would be proper in this Court.

An <u>Order</u> accompanies this <u>Memorandum Opinion</u>.

**SO ORDERED.**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

_____

[4] [#1] at 12-14.

[5] [#1-2].

6

# Exhibit L

# Exhibit L

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**PEOPLE PICTURES, LLC,**

     **Plaintiff,**

         **v.**                             **Civil Action No. 11-1968 (JEB/JMF)**

**GROUP OF PARTICIPANTS IN
FILESHARING SWARM IDENTIFIED
BY HASH:
43F4CFD05C115EE5887F680B0-
CA73B1BA18B434A,**

     **Defendants.**

## MEMORANDUM OPINION

This case was referred to me for full case management.  Currently pending and ready for resolution is plaintiff's <u>Motion for Leave to Take Expedited Discovery</u> [#4].

Plaintiff, People Pictures, LLC, is the owner of the copyright for the motion picture "The People I've Slept With".  <u>Plaintiff's Original Complaint</u> [#1] ¶1.  According to plaintiff, numerous individuals illegally downloaded and distributed its film over the Internet, in violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (2010).[1]  <u>Id.</u> ¶¶4, 8.  At the time the law suit was filed, plaintiff did not know the identities of these individuals.  <u>Id.</u> ¶2.  Plaintiff did, however, know the Internet Protocol ("IP") address of the computers associated with the alleged infringers.  <u>Id.</u>

In its current motion, plaintiff seeks to conduct expedited discovery [prior to the Rule 26(f)[2]] conference so that it may learn the identity of these individuals and thereafter amend its

---

[1] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

[2] Fed. R. Civ. P. 26(f).

complaint to reflect the same. [#1] at 2.  Specifically, plaintiff seeks leave to serve Rule 45

subpoenas on the various Internet Service Providers ("ISP") associated with the previously

identified IP addresses, in order to obtain "the true name, address, telephone number, e-mail

address and Media Access Control ("MAC") address of each subscriber that it has identified to

date and those it identifies in the future during the course of this litigation." Id.  In addition, if

the ISP identifies an intermediary ISP as the entity providing online services, plaintiff seeks

leave to serve the subpoena on that ISP. Id.

  Plaintiff therefore seeks what is in essence jurisdictional discovery.  Pursuant to Rule 26

of the Federal Rules of Civil Procedure, although "[a] party may not seek discovery from any

source before the parties have conferred as required by Rule 26(f)," they may do so "when

authorized . . . by court order." Fed. R. Civ. P. 26(f).  Such authorization, however, must be

based on a showing of "good cause". Fed. R. Civ. P. 26(d)(1).  "[I]n order to get jurisdictional

discovery[,] a plaintiff must have at least a good faith belief that such discovery will enable it to

show that the court has personal jurisdiction over the defendant." Caribbean Broad. Sys. Ltd. v.

Cable & Wireless PLC, 148 F.3d 1080, 1090 (D.C. Cir. 1998).  Furthermore, it is well within the

court's purview under Rule 26 to impose reasonable limitations on discovery when "the burden

or expense of the proposed discovery outweighs its likely benefit". Fed. R. Civ. P. 26(b)(2)(c).

See also Linder v. Dep't of Def., 133 F.3d 17, 24 (D.C. Cir. 1998) ("Whether a burdensome

subpoena is reasonable 'must be determined according to the facts of the case,' such as the

party's need for the documents and the nature and importance of the litigation.") (internal

quotation omitted); In re Micron Tech., Inc. Sec. Litig., 264 F.R.D. 7, 9 (D.D.C. 2010) ("The

'undue burden' test requires district courts to be 'generally sensitive' to the costs imposed on

third parties . . .") (internal quotations omitted); <u>N.C. Right to Life, Inc. v. Leake</u>, 231 F.R.D. 49, 51 (D.D.C. 2005) ("While quashing a subpoena goes against courts' general preference for a broad scope of discovery . . . limiting discovery is appropriate when the burden of providing the documents outweighs the need for it.").

     Plaintiff's cause of action, tortious copyright infringement,[3] is brought under a federal statute, the Copyright Act. The Copyright Act does not provide for the exercise of personal jurisdiction over alleged infringers on a nationwide or other basis. Plaintiff must therefore predicate the court's jurisdiction over the infringers on the reach of District of Columbia law. It first provides for the exercise of personal jurisdiction over a person domiciled in the District of Columbia as to "any claim for relief." D.C. Code § 13-422 (2001). The so-called "long arm" provision of the personal jurisdiction statute provides, in pertinent part, as follows:

> (a)    A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's - -
>
>               * * *
>
> (3)    causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

D.C. Code § 13-423 (2001).

     Thus, unless the infringer is domiciled in the District of Columbia, the question presented is where the infringement occurred and whether it occurred in the District of Columbia.

---

[3] "It is well settled in this jurisdiction [the District of Columbia Circuit] that a claim for copyright infringement sounds in tort." <u>Nu Image, Inc. v. Does 1-23,322</u>, — F. Supp. 2d —, 2011 WL 3240562, at *8, n.3 (D.D.C. 2011) (citing <u>Stabilisierungsfonds Fur Wein v. Kaiser</u>, 647 F.2d 200, 207 (D.C. Cir. 1981)).

In Nu Image, Judge Wilkins considered this very question and followed the approach

taken by the D.C. Circuit in Helmer v. Dolestskaya, 393 F.3d. 201 (D.C. Cir. 2004). Nu Image,

2011 WL 3240562, at *3.  In Helmer, plaintiff, a U.S. citizen, brought suit against his former

girlfriend, a Russian citizen, for fraud and breach of contract. Helmer, 393 F.3d. at 203.

Specifically, plaintiff claimed that the defendant failed to reimburse him for real and personal

property acquired while they were living together in Moscow. Id.  The court of appeals upheld

the lower court's finding that the injury occurred outside of the District of Columbia:

> The district court ruled that although [defendant] fraudulently
> concealed her personal background during her visit to the District
> of Columbia, the fraud did not cause injury here because [plaintiff]
> was not "physically present" in the District of Columbia when
> [defendant] incurred the credit card charges, when [plaintiff] paid
> the credit card charges, when [plaintiff] purchased the apartment,
> or when [defendant] registered the apartment in her own name.

Id. at 208.

As a result, the court of appeals held that, because plaintiff failed to demonstrate that

defendant's fraud caused him injury in the District of Columbia, the court could not exercise

personal jurisdiction over her as to that count. Id. at 209.

In Nu Image, Judge Wilkins ultimately concluded that it was difficult to see how

defendants living outside of the District of Columbia could have caused plaintiff tortious injury

within the District of Columbia when they downloaded plaintiff's film. Nu Image, 2011 WL

3240562, at *4.  To that end, Judge Wilkins therefore held that discovery prior to the Rule 26(f)

conference was warranted if "the Court finds that the Plaintiff has a good faith basis to believe a

putative defendant may be a District of Columbia resident if a geolocation service places his/her

IP address within the District of Columbia, or within a city located within 30 miles of the

4

District of Columbia." Id.  Thus, Judge Wilkins denied the plaintiff's motion for expedited

discovery as to all defendants and indicated instead that he would only entertain a motion for

expedited discovery on the ISPs to "obtain identifying information only for IP addresses that

Plaintiff has a good faith basis to believe are reasonably likely to correspond to internet accounts

located in the District of Columbia." Id. at *6.

     In the case at bar, the issue is where the situs of the injury is with respect to the

simultaneous uploading and downloading of copyrighted material from the Internet.  According

to plaintiff, the illegal infringement took place as follows:

> Over a period of four weeks, from March 23, 2011 to April 22,
> 2011, Defendants, working together via the internet, all sought out
> and obtained a reference file called a ".torrent" file named for
> Plaintiff's motion picture.  This file contained a unique key, known
> as a hash, and various other data, that was then used by Defendants
> to connect to one another in a BitTorrent filesharing swarm.  The
> .torrent file and corresponding swarm in this case were named for
> Plaintiff's file, "*The People I've Slept With*" and were created for
> the express purpose of obtaining unauthorized copies of this film.
> Using any of a variety of BitTorrent programs, each defendant
> connected to this specific swarm that was "sharing" Plaintiff's
> motion picture and each then began downloading Plaintiff's film,
> piece by piece, from other members in the group *simultaneously*.
> Every piece of the film that Defendants successfully downloaded
> was then made instantly available to new members joining the
> group and, if requested by the new members, those pieces were
> uploaded to them, typically in a matter of only minutes.

[#1] ¶12 (emphasis in original).

     Irrespective of whether the injury is viewed to be the uploading of the movie, the

downloading of the movie, or both, the focus would be on the physical location of the computers

bearing the unique IP addresses plaintiff claims were involved in the unauthorized distribution of

its film.  See [#4] at 3-4.  For non-resident defendants, that would most likely be outside of the

District of Columbia, unless it were shown that they were visiting the District of Columbia at the time of the alleged infringement.

As concluded by Judge Wilkins in <u>Nu Image</u>, this Court cannot see how it could exercise personal jurisdiction over non-District of Columbia residents under the current facts. The Court, therefore, will order plaintiff to show cause why it should assert jurisdiction over the person of each John Doe defendant unless it has a good faith belief that that person is domiciled in the District of Columbia which, as Judge Wilkins found, may be premised on "utilizing geolocation services that are generally available to the public to derive the approximate location of the IP addresses identified for each putative defendant." <u>Nu Image</u>, 2011 WL 3240562, at *4.

Finally, the statutory requirements as to venue under the Copyright Act provide additional and equally insurmountable obstacles to this lawsuit remaining in this Court. Venue is governed exclusively by 28 U.S.C. § 1400, which states the following: "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Thus, plaintiff will also have to convince me that venue would be proper in this Court.

An <u>Order</u> accompanies this <u>Memorandum Opinion</u>.

**SO ORDERED.**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

# Exhibit M

# Exhibit M

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**AXEL BRAUN PRODUCTIONS,**

     **Plaintiff,**

        **v.**               **Civil Action No. 11-56 (EGS/JMF)**

**DOES 1-2,823,**

     **Defendants.**

## MEMORANDUM OPINION

This case was referred to me for full case management. Currently pending and ready for resolution is plaintiff's Motion for Leave to Take *Additional* Discovery Prior to Rule 26(f) Conference; Memorandum of Points and Authorities in Support Thereof [#14].

Plaintiff, Axel Braun Productions, is the owner of the copyright for the motion picture "Batman XXX: A Porn Parody". Complaint for Copyright Infringement [#1] ¶5. According to plaintiff, numerous individuals illegally downloaded and distributed its film over the Internet, in violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*[1] Id. ¶¶1, 3. At the time the law suit was filed, plaintiff did not know the identities of these individuals. Id. ¶17. Plaintiff did, however, know the Internet Protocol ("IP") address of the computers associated with the alleged infringers. Id.

On June 29, 2011, this Court granted plaintiff's first motion for leave to take discovery prior to the Rule 26(f) conference. See Memorandum Order [#12]. In its current motion, plaintiff seeks to conduct more of the same. [#14] at 1-5.

---

[1] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

Since the Court issued its <u>Memorandum Order</u> in June of 2011, it has had an opportunity to reconsider the issue and has now concluded that such early, wide-ranging discovery is, for the following reasons, not warranted.

Plaintiff seeks what is in essence jurisdictional discovery. Pursuant to Rule 26 of the Federal Rules of Civil Procedure, although "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," they may do so "when authorized . . . by court order." Fed. R. Civ. P. 26(f). Such authorization, however, must be based on a showing of "good cause". Fed. R. Civ. P. 26(d)(1). "[I]n order to get jurisdictional discovery[,] a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." <u>Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC</u>, 148 F.3d 1080, 1090 (D.C. Cir. 1998). Furthermore, it is well within the court's purview under Rule 26 to impose reasonable limitations on discovery when "the burden or expense of the proposed discovery outweighs its likely benefit". Fed. R. Civ. P. 26(b)(2)(c). <u>See also</u> <u>Linder v. Dep't of Def.</u>, 133 F.3d 17, 24 (D.C. Cir. 1998) ("Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation.") (internal citation omitted); <u>In re Micron Tech., Inc. Sec. Litig.</u>, 264 F.R.D. 7, 9 (D.D.C. 2010) ("The 'undue burden' test requires district courts to be 'generally sensitive' to the costs imposed on third parties . . .") (internal quotations omitted); <u>N.C. Right to Life, Inc. v. Leake</u>, 231 F.R.D. 49, 51 (D.D.C. 2005) ("While quashing a subpoena goes against courts' general preference for a broad scope of discovery . . . limiting discovery is appropriate when the burden of providing the documents outweighs the need for it.").

Plaintiff's cause of action, tortious copyright infringement,[2] is brought under a federal statute, the Copyright Act. The Copyright Act does not provide for the exercise of personal jurisdiction over alleged infringers on a nationwide or other basis. Plaintiff must therefore predicate the court's jurisdiction over the infringers on the reach of District of Columbia law. It first provides for the exercise of personal jurisdiction over a person domiciled in the District of Columbia as to "any claim for relief." D.C. Code § 13-422 (2001). The so-called "long arm" provision of the personal jurisdiction statute provides, in pertinent part, as follows:

> (a)    A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's - -

* * *

> (3)    causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

D.C. Code § 13-423 (2001).

Thus, unless the infringer is domiciled in the District of Columbia, the question presented is where the infringement occurred and whether it occurred in the District of Columbia.

In Nu Image, Judge Wilkins considered this very question and followed the approach taken by the D.C. Circuit in Helmer v. Dolestskaya, 393 F.3d. 201 (D.C. Cir. 2004). Nu Image, 2011 WL 3240562, at *3. In Helmer, plaintiff, a U.S. citizen, brought suit against his former girlfriend, a Russian citizen, for fraud and breach of contract. Helmer, 393 F.3d. at 203. Specifically, plaintiff claimed that the defendant failed to reimburse him for real and personal

---

[2] "It is well settled in this jurisdiction [the District of Columbia Circuit] that a claim for copyright infringement sounds in tort." Nu Image, Inc. v. Does 1-23,322, — F. Supp. 2d —, 2011 WL 3240562, at *8, n.3 (D.D.C. 2011) (citing Stabilisierungsfonds Fur Wein v. Kaiser, 647 F.2d 200, 207 (D.C. Cir. 1981)).

3

property acquired while they were living together in Moscow. Id. The court of appeals upheld the lower court's finding that the injury occurred outside of the District of Columbia:

> The district court ruled that although [defendant] fraudulently concealed her personal background during her visit to the District of Columbia, the fraud did not cause injury here because [plaintiff] was not "physically present" in the District of Columbia when [defendant] incurred the credit card charges, when [plaintiff] paid the credit card charges, when [plaintiff] purchased the apartment, or when [defendant] registered the apartment in her own name.

Id. at 208.

As a result, the court of appeals held that, because plaintiff failed to demonstrate that defendant's fraud caused him injury in the District of Columbia, the court could not exercise personal jurisdiction over her as to that count. Id. at 209.

In Nu Image, Judge Wilkins ultimately concluded that it was difficult to see how defendants living outside of the District of Columbia could have caused plaintiff tortious injury within the District of Columbia when they downloaded plaintiff's film. Nu Image, 2011 WL 3240562, at *4. To that end, Judge Wilkins therefore held that discovery prior to the Rule 26(f) conference was warranted if "the Court finds that the Plaintiff has a good faith basis to believe a putative defendant may be a District of Columbia resident if a geolocation service places his/her IP address within the District of Columbia, or within a city located within 30 miles of the District of Columbia." Id. Thus, Judge Wilkins denied the plaintiff's motion for expedited discovery as to all defendants and indicated instead that he would only entertain a motion for expedited discovery on the ISPs to "obtain identifying information only for IP addresses that Plaintiff has a good faith basis to believe are reasonably likely to correspond to internet accounts located in the District of Columbia." Id. at *6.

4

In the case at bar, the issue is where the situs of the injury is with respect to the simultaneous uploading and downloading of copyrighted material from the Internet. According to plaintiff, the illegal infringement took place as follows:

> The initial file-provider intentionally elects to share a file with a torrent network. This initial file contains Plaintiff's entire copyrighted work and is called a "seed." Other peers on the network connect to the seek file to download the file wherein the download creates a free digital co[p]y of Plaintiff's copyrighted film. As yet additional peers request the same file each additional user becomes a part of the network from where the file can be downloaded. However, unlike a traditional peer-to-peer network, each new file downloader is receiving a different piece of the data from each host user in the swarm who has already downloaded the file that together comprises the whole. The effect of this technology makes every downloader also an uploader of the illegally transferred file(s). This means that every "node" or peer user who has a copy of the infringing copyrighted material on a torrent network must necessarily also be a source of download for that infringing file.

[#1] ¶13.

Irrespective of whether the injury is viewed to be the uploading of the movie, the downloading of the movie, or both, the focus would be on the physical location of the computers bearing the unique IP addresses plaintiff claims were involved in the unauthorized distribution of its film. For non-resident defendants, that would most likely be outside of the District of Columbia, unless it were shown that they were visiting the District of Columbia at the time of the alleged infringement.

As concluded by Judge Wilkins in <u>Nu Image</u>, this Court cannot see how it could exercise personal jurisdiction over non-District of Columbia residents under the current facts. The Court, therefore, will order plaintiff to show cause why it should assert jurisdiction over the person of each John Doe defendant unless it has a good faith belief that that person is domiciled in the

District of Columbia which, as Judge Wilkins found, may be premised on "utilizing geolocation services that are generally available to the public to derive the approximate location of the IP addresses identified for each putative defendant." <u>Nu Image</u>, 2011 WL 3240562, at *4.

Finally, the statutory requirements as to venue under the Copyright Act provide additional and equally insurmountable obstacles to this lawsuit remaining in this Court. Venue is governed exclusively by 28 U.S.C. § 1400, which states the following: "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Thus, plaintiff will also have to convince me that venue would be proper in this Court.

An <u>Order</u> accompanies this <u>Memorandum Opinion</u>.

**SO ORDERED.**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

# Exhibit N

# Exhibit N

Aaron K. McClellan - 197185
amcclellan@mpbf.com
Steven W. Yuen - 230768
syuen@mpbf.com
MURPHY, PEARSON, BRADLEY & FEENEY
88 Kearny Street, 10th Floor
San Francisco, CA 94108-5530
Tel:    (415) 788-1900
Fax:   (415) 393-8087

Attorneys for Plaintiff
SETH ABRAHAMS

E-filing

**FILED**
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
FEB 2 8 2012

JCS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

Case No.:   CV 12 1006

| SETH ABRAHAMS, | |
|---|---|
| Plaintiff, | **PLAINTIFF'S COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| HARD DRIVE PRODUCTIONS, INC., AND DOES 1-50, | |
| Defendants. | |

## I.    INTRODUCTION

1.    This is a civil action seeking declaratory relief based upon the improper past and continuing conduct of defendants Hard Drive Productions, Inc. (hereafter "Hard Drive") and Does 1-50 in harassing plaintiff and others like him to settle baseless and unfounded claims of purported infringement of Hard Drive's purported copyrighted works.

## II.    PARTIES

2.    Plaintiff Seth Abrahams is an individual over the age of 18 residing in the County of Alameda, California.

3.    Plaintiff is informed and believes, and thereon alleges that Hard Drive is an Arizona Corporation whose principal place of residence is in Maricopa County, and which does business worldwide including in the State of California, County of Alameda.

1      4.      The true names and capacities of defendants named as Does 1 through 50 are presently

2  unknown to plaintiff.

3      5.      Plaintiff will amend this complaint setting forth the true names and capacities of these

4  fictitious defendants when they are ascertained.

5      6.      Plaintiff is informed and believes, and thereon alleges that each of the fictitious

6  defendants have participated in the acts alleged in this complaint to have been done by the named

7  defendant.

8      7.      Plaintiff is informed and believes, and thereon alleges that, at all relevant times, each

9  defendant, whether named or fictitious, was the alter ego, agent, and/or employee of each of the other

10  defendant, and in doing the things alleged to have been done in the complaint, acted within the scope

11  of such agency and/or employment, and/or ratified the acts of the other.

12  ### III.    JURISDICTION

13      8.      This action arises under the copyright laws of the United States, 17 U.S.C. sections 101

14  et seq.

15      9.      The court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. sections

16  1331 and 1338, and the Declaratory Judgment Act codified at 28 U.S.C. sections 2201 and 2202.

17      10.     This court has personal jurisdiction over Hard Drive because it has submitted itself to

18  the jurisdiction of this court by filing an action on November 21, 2011, action number C 11-05634

19  PJH, and which is related to this action.

20      11.     Due to Hard Drive's filing of prior action number C 11-01567 LB and its present action

21  number C 11-05634 PJH, its threats and notices of lawsuits and settlement demands to plaintiff, and its

22  conduct within this district, it has created an actual and continuing controversy within the court's

23  jurisdiction such that the court needs to declare the rights and other legal relations of plaintiff who is

24  seeking such declarations from the court.

25  ### IV.    VENUE

26      12.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. section

27  1400(a) as Hard Drive has claimed that plaintiff infringed its purported copyrighted work by

28  downloading such works, and being responsible for such downloads where he resides.

PLAINTIFF'S COMPLAINT
PAGE 2

13. Venue is also proper in the Northern District of California as Hard Drive has consented to the venue of this court by filing action number C 11-05634 PJH in this district, its threats and notices of lawsuits and settlement demands to plaintiff, and by its conduct within this district which has created an actual and continuing controversy such that the court needs to declare the rights and other legal relations of plaintiff who is seeking such declarations from the court, and which is related to this action.

## V. INTRADISTRICT ASSIGNMENT

14. Assignment of this action to the Oakland Division is proper as Hard Drive's present action number of C 11-05634 PJH is assigned to the Honorable Phyllis J. Hamilton in the Oakland Division per the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California (hereafter "Civil L.R.") 3-3(c) and 3-12.

## VI. FACTUAL ALLEGATIONS

### A. Hard Drive's Prior Lawsuit

15. On March 31, 2011, Hard Drive filed a complaint for copyright infringement which was assigned case number C 11-01567 LB (hereafter "prior action").

16. Based on Hard Drive's consent to proceed before a U.S. Magistrate Judge, the prior action was assigned to the Honorable Laurel Beeler.

17. In this prior action, Hard Drive failed to comply with Civil L.R. 3-16(b)(1) by failing to disclose "any persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities other than the parties themselves known by the party to have either: (i) a financial interest (of any kind) in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding."

18. Instead on March 31, 2011, Hard Drive violated Civil L.R. 3.16(b) by purposefully limiting and qualifying its disclosure to only state that Hard Drive does not have a parent corporation that owns 10% or more of its stock, and that there are no known persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities that may have a personal or affiliated financial interest in the subject matter or controversy.

///

19. Plaintiff is informed and believes, and thereon alleges that Hard Drive reported in its 2011 annual report received on or about January 28, 2011 by the Arizona Secretary of State that Paul Pilcher owns more than 20% of any class of shares issued by Hard Drive, or having more than a 20% beneficial interest in Hard Drive, information which is publicly available electronically from the Arizona Secretary of State at http://starpas.azcc.gov/scripts/cgiip.exe/WService=wsbroker1/names-detail.p?name-id=11235797&type=CORPORATION.

20. In this prior action, Hard Drive sued 118 anonymous doe defendants by improperly joining them in one action without taking into account the requirements of 28 U.S.C. section 1400(a) which requires that a defendant in a copyright infringement action may only be sued in the district where the defendant or his or her agent resides or may be found.

21. Plaintiff is informed and believes, and thereon alleges that Hard Drive improperly joined multiple defendants in one action to avoid paying the $350 filing fee for each action had Hard Drive properly filed separate actions for each defendant.

22. Plaintiff is informed and believes, and thereon alleges that Hard Drive improperly joined multiple defendants in one action to avoid having any cases dismissed due to failure to prosecute by failing to pay the $350 filing fee for each separate defendant.

23. Hard Drive improperly received the benefits and services of the court without paying the requisite filing fee of $350 for each separate action against each defendant.

24. Hard Drive's allegation that copyright infringement associated with plaintiff's Internet Protocol (IP) Address occurred on March 21, 2011 is before the work's registration date of November 18, 2011, and more than 3 months after the date of first publication on March 4, 2011.

25. In this prior action, Hard Drive alleged that it owned the purported copyright to an adult video entitled "Amateur Allure – Samantha Saint" (hereafter "work") which is purportedly registered with the United States Copyright Office.

26. Plaintiff is informed and believes, and thereon alleges that Hard Drive represented to the U.S. Copyright Office that the work was first published on March 4, 2011.

27. Plaintiff is informed and believes, and thereon alleges that the work was registered on November 18, 2011.

28. In the prior action, Hard Drive alleged that it was entitled to recover statutory damages and attorneys' fees per 17 U.S.C. section 504(c) as stated in its complaint at paragraph 31, and in its prayer for relief at paragraph 4.

29. A party is not entitled to recover statutory damages and attorneys' fees under 17 U.S.C. section 504(c) if the alleged infringement of copyright commenced before the effective date of its registration, unless such registration is made within three months after the first publication of the work per 17 U.S.C. section 412.

30. Hard Drive is not entitled to recover statutory damages and attorneys' fees.

31. After filing its prior action, Hard Drive then applied ex parte for expedited discovery seeking the names, addresses, and telephone numbers of the account holders whose IP addresses resolved to them.

32. Plaintiff is informed and believes, and thereon alleges that Hard Drive had entered into an agreement with a third party private investigator, who is unlicensed under California law but yet is required to be licensed, to log IP addresses that were allegedly transmitting Hard Drive's work via BitTorrent.

33. A BitTorrent tracker is a computer server.

34. A BitTorrent tracker is required to initiate any download of the work.

35. Plaintiff is informed and believes, and thereon alleges that Hard Drive gave the right to distribute the work to its unlicensed private investigator, otherwise it would not have been able to log the IP addresses.

36. Plaintiff is informed and believes, and thereon alleges that Hard Drive knew of the IP addresses of the BitTorrent trackers that were being used to distribute the work.

37. Plaintiff is informed and believes, and thereon alleges that Hard Drive never issued any Digital Millennium Copyright Act ("D.M.C.A.") takedown notices to the owners and/or operators of the BitTorrent trackers that were being used distribute the work.

38. Plaintiff is informed and believes, and thereon alleges that Hard Drive never issued any D.M.C.A. takedown notices to the owners and/or operators of the BitTorrent trackers, because it and/or its agents were using them as honeypots so that they could continue to log IP addresses.

PLAINTIFF'S COMPLAINT
PAGE 5

39. Plaintiff is informed and believes, and thereon alleges that Hard Drive knew it could make more money by allowing its work to continue to be distributed instead of shutting down the BitTorrent trackers.

40. Contrary to Hard Drive's allegation that venue under 28 U.S.C. section 1391(b) governs copyright infringement actions, it does not; only section 1400(a) governs venue in copyright infringement actions per the Supreme Court's holding in <u>Schnell v. Peter Eckrich & Sons, Inc.</u> (1961) 365 U.S. 260, 262-263.

41. The <u>Schnell</u> court's analysis of venue in section 1400(b) for patent infringement actions should likewise be applied for venue in copyright infringement actions under section 1400(a).

42. Plaintiff did not move to quash Hard Drive's subpoena issued to his internet service provider ("ISP").

43. Plaintiff's ISP released his name, address, and telephone number to Hard Drive.

44. After receipt of plaintiff's name, address, and telephone number, Hard Drive transmitted a letter demanding that he settle for $3,400. (Exhibit A at p.2, ¶ 3.) A true and correct copy of this letter is attached hereto as Exhibit A.

45. In Hard Drive's settlement demand letter, it threatened plaintiff with a lawsuit. (Exhibit A at p.1, ¶ 5.)

46. In Hard Drive's settlement demand letter, it notified plaintiff to act promptly by settling to avoid being named as a defendant in the lawsuit.

47. In Hard Drive's settlement demand letter, it notified plaintiff that he was liable for copyright infringement by merely having an unsecured wireless network/router even though plaintiff did not download the work, did not tell anyone else to download the work, and did not know anyone was using his internet service to download the work. (Exhibit A at p.4, ¶¶ 12-13.)

48. Along with its settlement demand letter, Hard Drive also transmitted a memo of law to plaintiff. A true and correct copy of this memo is attached hereto as Exhibit B.

49. In its memo of law, Hard Drive notified plaintiff that he is liable for copyright infringement by simply being the account holder on his ISP account. (Exhibit B at p.3, ¶ 5.)

///

50. In Hard Drive's settlement demand letter, it notified plaintiff that he may be liable for statutory damages of up to $150,000. (Exhibit A at p.2, ¶ 1.)

51. Plaintiff is informed and believes, and thereon alleges that Hard Drive's prior action complaint along with the settlement demand letter and memo of law were designed to threaten, notify, intimidate, and to coerce plaintiff into paying the settlement demand of $3,400, especially when confronted with the statutory damages figure of $150,000.

52. Plaintiff is informed and believes, and thereon alleges that Hard Drive's prior action complaint coupled with the settlement demand letter and memo of law were designed to threaten, notify, intimidate, and to coerce plaintiff into paying the settlement demand of $3,400 as it would be more expensive for him to retain an attorney to defend himself against the baseless and unfounded allegations.

53. Plaintiff is informed and believes, and thereon alleges that no facts existed for Hard Drive to represent, either in its prior action complaint or in its settlement demand letter, to plaintiff that Hard Drive was entitled to recover any statutory damages award given that the alleged infringement occurred on March 21, 2011 which is before the work's registration date of November 18, 2011, and more than 3 months after the date of first publication on March 4, 2011.

54. Plaintiff is informed and believes, and thereon alleges that Hard Drive's communications transmitted to plaintiff were designed to threaten, notify, intimidate, and to coerce him into settling the case despite the absence of any facts supporting liability against him.

55. Hard Drive's conduct here is no different than the Trevor Law Group, LLP's conduct when the People of the State of California sued the Trevor Law Group, LLP and other persons for abusive improper practices relating to unfounded and baseless Business and Professions Code section 17200 claims.

56. On January 19, 2012, Hard Drive dismissed its prior action without prejudice.

///

///

///

PLAINTIFF'S COMPLAINT
PAGE 7

57.     Plaintiff is informed and believes that Hard Drive dismissed its prior action as it could not and did not want to address the issues and questions that the court had with the prior action, that it no longer wanted to proceed before a magistrate judge despite providing its prior consent, and that it also did not want to be sanctioned for failing to prosecute the case and for misjoining all anonymous doe defendants.

### B.     Hard Drive's Present Lawsuit

58.     On November 21, 2011, Hard Drive filed a complaint for copyright infringement against a single John Doe defendant which was initially assigned case number C 11-05634 JCS (hereafter "present action"), and which was subsequently reassigned to the Honorable Phyllis J. Hamilton.

59.     In the present action, Hard Drive failed to comply with Civil L.R. 3-16(b)(1) by failing to disclose "any persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities other than the parties themselves known by the party to have either: (i) a financial interest (of any kind) in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding."

60.     Instead on November 21, 2011, Hard Drive violated Civil L.R. 3.16(b) by purposefully limiting and qualifying its disclosure to only state that Hard Drive does not have a parent corporation that owns 10% or more of its stock, and that there are no known persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities that may have a personal or affiliated financial interest in the subject matter or controversy

61.     Despite the fact that Hard Drive knew that the prior action was still pending, and that the present action was related to the prior action, Hard Drive failed to comply with Civil L.R. 3-8(c) which requires the refiling party to file a motion to consider whether cases should be related pursuant to Civil L.R. 3-12 so that the judge originally assigned to the action which had been dismissed should have the refiled case transferred to him or to her to avoid the unduly burdensome duplication of labor and expense.

///

///

PLAINTIFF'S COMPLAINT
PAGE 8

62.    Plaintiff is informed and believes, and thereon alleges that Hard Drive filed the present action, because it no longer wanted a magistrate judge to decide the case despite consenting to a magistrate judge in the prior pending and related action; Hard Drive's conduct was designed to improperly withdraw its prior consent to a magistrate judge.

63.    Plaintiff is informed and believes, and thereon alleges that Hard Drive purposefully failed to comply with Civil L.R. 3-3(c), because the previously assigned judge, the Honorable Laurel Beeler was likely to make rulings adverse to Hard Drive given its failure to prosecute the case.

64.    In the present action, Hard Drive alleged that it was entitled to recover statutory damages and attorneys' fees per 17 U.S.C. section 504(c) as stated in its complaint at paragraph 31, and in its prayer for relief at paragraph 2.

65.    Again, Hard Drive is not entitled to recover statutory damages and attorneys' fees, because Hard Drive claimed that the alleged infringement occurred on March 21, 2011 which is before the work's registration date of November 18, 2011, and more than 3 months after the date of first publication on March 4, 2011.

66.    On October 19, 2011, Hard Drive transmitted a settlement demand letter to plaintiff that it would be in his beneficial interest to settle Hard Drive's allegations of copyright infringement to avoid the expense of further litigation. A true and correct copy of the letter is attached as Exhibit C.

67.    Along with Hard Drive's settlement demand letter, Hard Drive transmitted a letter to plaintiff to preserve all evidence else be faced with spoliation sanctions. A true and correct copy of the letter is attached as Exhibit D.

68.    Plaintiff is informed and believes, and thereon alleges that as late as January 11, 2012, Hard Drive represented to the public that he was one of its agents "Top 25 Pirates." A true and correct copy of this redacted defamatory statement is attached hereto as Exhibit E at page 1. Plaintiff denies this unfounded and baseless defamatory allegation.

69.    Plaintiff is informed and believes, and thereon alleges that as late as January 12, 2012, Hard Drive's represented to the public that he was one of its agents "Top Pirates." (Exhibit E at p.2) Plaintiff denies this unfounded and baseless defamatory allegation.

///

70.    Plaintiff is informed and believes, and thereon alleges that Hard Drive's prior and present action complaint along with its threats and notices of lawsuits, memo of law of plaintiff's alleged absolute liability, settlement demands, and defamatory allegations were designed to threaten, notify, intimidate, embarrass, shame, and to coerce plaintiff into paying the settlement demand of $3,400 especially when confronted with a statutory damages figure of $150,000.

71.    On January 6, 2012, Hard Drive applied ex parte to take on an expedited basis the deposition of plaintiff who was not named as a defendant in Hard Drive's present action.

72.    Plaintiff is informed and believes, and thereon alleges that despite Hard Drive's erroneous position that plaintiff is vicariously liable for any acts or conduct occurring through his internet account, it purposely avoided naming plaintiff for the purposes of obtaining ex parte discovery in the present action on an expedited basis to prevent him from properly defending himself as a party against the baseless and unfounded allegations, and to cause him to incur attorneys' fees in defending himself at deposition to force him to settle.

73.    Hard Drive's tactics were improper as plaintiff had notified it that:  (1) he did not download the work, and (2) he did not know who downloaded the work.

74.    In response, Hard Drive's rejected plaintiff's statements of non-liability.

75.    Plaintiff is informed and believes, and thereon alleges that the acts and conduct of Hard Drive and its agents or employees as described herein were unlawful and/or improper, and are no different from the Trevor Law Group, LLP's conduct.

### C.    Hard Drive's Work is Not Copyrightable

76.    Article I, Section 8, Clause 8 of the United States Constitution, known as the Copyright Clause, empowers the United States Congress: "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

77.    Thus, copyright is authorized only for works which promote the progress of science and the useful arts.

///

///

1      78.    Horizontal Stare Decisis or Circuit law binds all courts within a particular circuit,

2 including the court of appeals itself. (Hart v. Massanari (9th Cir. 2001) 266 F.3d 1155, 1171—"[T]he

3 first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also

4 future panels of the court of appeals…. Once a panel resolves an issue in a precedential opinion, the

5 matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme

6 Court" or "unless Congress changes the law.")

7      79.    Early Circuit law in California held that obscene works did not promote the progress of

8 science and the useful arts, and thus cannot be protected by copyright.

9      80.    Subsequent non-en banc decisions by the Ninth Circuit failed to follow this prior circuit

10 decision in California.

11      81.    Given the absence of any subsequent en-banc Ninth Circuit decisions, Supreme Court

12 precedent, or changes in the Constitution that copyright is authorized for works which does not

13 promote the progress of science and the useful arts, the subsequent Ninth Circuit decisions are void

14 and do not constitute binding precedent.

15      82.    Hard Drive's work does not promote the progress of science.

16      83.    Hard Drive's work does not promote the useful arts.

17      84.    Hard Drive has judicially admitted that its work is adult pornography.

18      85.    Hard Drive's work depicts obscene material.

19      86.    Plaintiff is informed and believes, and thereon alleges that to create the work, Hard

20 Drive and its agents and/or its employees violated laws which prohibited pimping, pandering,

21 solicitation and prostitution, including any claims of conspiracy.

22      87.    Hard Drive's work depicts criminal acts and/or conduct.

23      88.    Hard Drive's work is not copyrightable.

24 **VII.**    **FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF AND/OR JUDGMENT**
**THAT PLAINTIFF IS NOT LIABLE TO HARD DRIVE FOR COPYRIGHT**

25 **INFRINGEMENT AGAINST ALL DEFENDANTS**

26      89.    Plaintiff realleges and incorporates by reference as though fully stated here, paragraphs

27 1 to 88.

28 ///

PLAINTIFF'S COMPLAINT
PAGE 11

90. Although Hard Drive in its present action denies that it does not know if plaintiff is liable to it for copyright infringement, in extra-judicial communications, Hard Drive's position is completely the opposite—that plaintiff is liable to Hard Drive.

91. On or about June 30, 2011, Hard Drive, through its agent transmitted a letter to plaintiff which is attached hereto as Exhibit A.

92. In its letter, Hard Drive notified plaintiff that to avoid being named as a defendant in a copyright infringement action, he had to pay $3,400 to settle Hard Drive's claims. (Exhibit A at p.2, ¶ 3.)

93. In its letter, Hard Drive threatened plaintiff with a lawsuit. (Exhibit A at p.1, ¶ 5.)

94. Along with the settlement demand letter, Hard Drive transmitted a memo of law to plaintiff notifying him that he was absolutely and vicariously liable for copyright infringement simply by being the account holder of his ISP account. (Exhibit B at p.3, ¶ 5.)

95. In Hard Drive's memo of law, its position is that the account holder is liable for copyright infringement committed by any person who uses the account holder's internet access.

96. As late as January 11 and 12, 2012, Hard Drive gave notice to the public and plaintiff that plaintiff was one of its agents' "Top 25 Pirates" and "Top Pirates."

97. Hard Drive's present action, in which it allegedly denies that it does not know who infringed its work is false and mere pretext given its extra-judicial actions, conduct, and communications threatening lawsuits, and demanding settlements from plaintiff as alleged herein.

98. Plaintiff is informed and believes, and thereon alleges that Hard Drive is purposefully avoiding naming plaintiff so that it can improperly conduct expedited ex parte discovery upon plaintiff to preclude him from defending himself against Hard Drive's baseless and unfounded allegations.

99. Plaintiff is informed and believes, and thereon alleges that Hard Drive is purposefully conducting expedited ex parte discovery upon plaintiff in order to threaten, intimidate, and to coerce plaintiff into settling with Hard Drive.

100. As alleged in Hard Drive's present action, and based upon its actions and conduct as described herein, plaintiff denies that he is liable to Hard Drive for copyright infringement.

///

1    101.    Based on all the information stated herein, an actual and continuing controversy exists
2    between plaintiff and Hard Drive such that plaintiff needs the court to declare the rights between the
3    parties.

4    102.    Wherefore, plaintiff prays for the following relief.

## VIII.    PRAYER FOR RELIEF

6    Plaintiff seeks relief as follows:

7    103.    That the court issue an order declaring that plaintiff is not liable to Hard Drive for
8    copyright infringement, and/or he has not infringed Hard Drive's copyrights, if any;

9    104.    That the court issue an order declaring that Hard Drive's work is not copyrightable
10   and/or to strike its copyright registration as the work does not promote the progress of science and the
11   useful arts as required by the U.S. Constitution, including but not limited to the fact that the work is
12   obscene, was created by unlawful conduct and depicts unlawful activity, and that Hard Drive, its
13   owners, agents, and/or employees have engaged in unlawful activity and/or conduct such as pimping,
14   pandering, solicitation, and prostitution, including conspiracy to commit such acts.

15   105.    That the court issue an order declaring that Hard Drive has not mitigated damages,
16   including but not limited to being based upon the doctrines of estoppel and laches, and due to its
17   failure to issue D.M.C.A. take down notices to the BitTorrent trackers, and by continuing to allow
18   these BitTorrent trackers to continue to exist so that Hard Drive can continue to improperly demand
19   more settlements from non-liable defendants.

20   106.    That the court issue an order declaring that Hard Drive is not entitled to recover
21   statutory damages and attorneys' fees;

22   107.    That the court issue an order declaring that no infringement has occurred given that
23   Hard Drive had authorized its work to be distributed by its non-California and unlicensed private
24   investigators, who are in violation of California Business and Professions Code sections 7520 and
25   7521 while they were distributing and participating in the distribution of the work, and/or that Hard
26   Drive is guilty of unclean hands due to its and/or its agents' operation and use of honeypots and/or the
27   use of a third-party's services as honeypots;

28   ///

PLAINTIFF'S COMPLAINT
PAGE 13

108.     That the court issue an order declaring that Hard Drive, its agents, and/or employees have unlawfully and improperly demanded settlements unsupported by facts and law which constitute copyright misuse, and which constitute a violation of California Business and Professions code section 17200;

109.     That plaintiff be awarded his costs and attorneys' fees as provided by law, including but not limited to U.S.C. section 505;

110.     That the court enter judgment in favor of plaintiff, and against Hard Drive and any other named defendants; and

111.     For such other and further relief as the court deems just and proper.

## IX.     DEMAND FOR JURY TRIAL

112.     Plaintiff demands a jury trial for all issues triable by jury.

DATED: February 28, 2012

MURPHY, PEARSON, BRADLEY & FEENEY

By _____
     Steven W. Yuen
     Attorneys for Plaintiff
     SETH ABRAHAMS

SWY.20368057.doc

PLAINTIFF'S COMPLAINT
PAGE 14



# Steele | Hansmeier, PLLC

*A leading anti-piracy law firm*

June 30, 2011

**VIA U.S. MAIL**
Seth Abrahams
731 Catalina Dr
Livermore, CA 94550

> **Re:** **Hard Drive Productions Inc. v. Does 1-118**
> **Case No. 4:11-cv-01567-LB, Ref #5997**

Dear Mr. Abrahams:

Steele | Hansmeier, PLLC has been retained by Hard Drive Productions, Inc to pursue legal action against people who illegally downloaded their copyrighted content (i.e., "digital pirates"). Digital piracy is a very serious problem for adult content producers, such as our client, who depend on revenues to sustain their businesses and pay their employees.

On March 21, 2011 at 6:13:44 PM (UTC), our agents observed the IP address with which you are associated illegally downloading and sharing with others via the BitTorrent protocol the following copyrighted file(s):

> **Amateur Allure - Samantha Saint**
>
> *The ISP you were connected to: Comcast Cable*
>
> *Your IP Address you were assigned during your illegal activity: 98.248.90.217*

We have received a subpoena return from your ISP confirming that you are indeed the person that was associated with the IP address that was performing the illegal downloading of our client's content listed above on the exact date(s) listed above.

On March 31, 2011 we filed a lawsuit in United States Federal Court in the Northern District of California against several anonymous digital pirates (Case No. 4:11-cv-01567-LB). Under the Federal Rules of Civil Procedure, our lawsuit against you personally will not commence until we serve you with a Complaint, which we are prepared to do if our settlement efforts fail. While it is too late to undo the illegal file sharing associated with your IP address, we have prepared an offer to enable our client to recover damages for the harm caused by the illegal downloading and to allow both parties to avoid the expense of a lawsuit.

Under the Copyright Law of the United States, copyright owners may recover up to $150,000 in statutory damages (in cases where statutory damages are applicable, which may or may not be the case here) per infringing file plus attorney's fees in cases, whereas here, infringement was willful. In it least one case where the Copyright Law has been applied to digital piracy and statutory damages were applicable, juries have awarded over $20,000 per pirated file. During the RIAA's well-publicized campaign against digital music piracy, over 30,000 people nationwide settled their cases for amounts ranging from an average of $3,000 to $12,000. More recently, on December 22, 2010, a case in which a defendant was accused of illegally downloading 6 works via BitTorrent, a settlement was reached for $250,000.

In light of these factors, we believe that providing you with an opportunity to avoid litigation by working out a settlement with us, versus the costs of attorneys' fees and the uncertainty associated with jury verdicts, is very reasonable and in good faith.

In exchange for a comprehensive release of all legal claims in this matter, which will enable you to avoid becoming a named Defendant in our lawsuit, our firm is authorized to accept the sum of **$3,400.00** as full settlement for the claims. This offer will expire on **July 1, 2011 at 4:00 p.m.** **CST**. If you reject our settlement offers, we expect to serve you with a Complaint and commence litigation.

To reiterate: if you act promptly you will avoid being named as a Defendant in the lawsuit. You may pay the settlement amount by:

    (a)    Mailing a check or money order payable to "Steele Hansmeier Trust Account" to Steele | Hansmeier, PLLC, 161 N Clark Street #4700, Chicago, Illinois 60601; or

    (b)    Completing and mailing/faxing the payment authorization to Steele | Hansmeier, PLLC, 161 N Clark Street #4700, Chicago, Illinois 60601, Facsimile: (312) 893-5677.

Be sure to reference your case number and your "Ref#" on your method of payment. Regardless of your payment method, once we have processed the settlement, we will mail you your signed Release as confirmation that your payment has been processed and that you have been released from the lawsuit.

Please consider this letter to constitute formal notice that until and unless we are able to settle our client's claim against you, we demand that you not delete any files from your computer or any other computers under your control or in your possession. If forced to proceed against you in a lawsuit, we will have a computer forensic expert inspect these computers in an effort to locate the subject content and to determine if you have deleted any content. If in the course of litigation the forensic computer evidence suggests that you deleted media files, our client will amend its complaint to add a "spoliation of evidence" claim against you. Be advised that if we prevail on this additional claim, the court could award monetary sanctions, evidentiary sanctions and reasonable attorneys' fees. If you are unfamiliar with the nature of this claim in this context, please consult an attorney.

We strongly encourage you to consult with an attorney to review your rights in connection with this matter. Although we have endeavored to provide you with accurate information, our interests are directly adverse to yours and you should not rely on the information provided in this letter for assessing your position in this case. Only an attorney who represents you can be relied upon for a comprehensive analysis of our client's claim against you.

*Legal Correspondence – Settlement Purposes Only – Not Admissible Under FRE 408*

Enclosed, please find a Frequently Asked Questions sheet, a payment authorization form and a sample of the Release that you will receive. We look forward to resolving our client's claim against you in an amicable fashion, through settlement.

Sincerely,


John L. Steele
Attorney and Counselor at Law

Enclosures

# FREQUENTLY ASKED QUESTIONS

**Q:** **Why did I receive this letter?**

    A: You received this letter because copyright infringement involving your Internet account was detected by our agents.

**Q:** **What are the benefits of settling?**

    A: The benefits of settling include avoiding the time and expense of litigation and associated risks.

**Q:** **Will I remain anonymous if I settle?**

    A: Yes, you will remain anonymous if you settle.

**Q:** **Has my privacy been violated?**

    A: No. A copyright infringement was detected over the public Internet or a Peer-to-Peer (P2P) Network involving your internet connection.

**Q:** **I haven't infringed on a copyright, why did I receive a notice?**

    A: If you are unfamiliar with the content, we normally find that the infringement was the result of a spouse, child, roommate, employee, or business associate uploading, downloading or otherwise sharing or displaying the copyright protected material over your internet connection. Infringements can also result from an unsecured wireless network. In any of these scenarios the Internet Service Provider (ISP) account holder may be held legally responsible for the infringement(s) and settlement fees.

**Q:** **What if I have an unsecured wireless network/router?**

    A: The Internet Service Provider (ISP) account holder is responsible for securing the connection and may be legally responsible for any infringement(s) that result from an unsecured wireless network/router. This 'defense' has been raised in many criminal matters regarding such crimes as child pornography, and the courts have generally rejected this defense. As far as we are aware, this defense has never been successfully argued, in multiple contexts, including child pornography and civil copyright infringements actions.

*Legal Correspondence – Settlement Purposes Only – Not Admissible Under FRE 408*

**Q:** **What if I own a business and an employee infringed o n a copyright?**

**A:** The Internet Service Provider (ISP) account holder may be responsible for securing the connection a nd may be legally responsible for any infringement(s) that occur. We normally find that business owners pass on out-of-pocket costs to the employee that was responsible for the infringement(s).

**Q:** **Will this go away if I just remove the file(s) from my computer(s)?**

**A:** No. In fact, removing the file(s) associated with your case(s) is a breach o f your obligation to preserve electronic ev idence.

**Q:** **How do I know that the IP Address listed in the notice is mine and not a fake?**

**A:** The notice, IP Address, and associated account holder have all been correlated by your Internet Service P rovider (ISP) a third party organization that is not associated with us.

**Q:** **How do I make this go away?**

**A:** Paying the settlement fee will immediately release you from liability and close the case.

**Q:** **How do I know that you are legally autho rized act on behalf of the copyright owner?**

**A:** If you wish to receive additi onal information proving that we are legally authoriz ed to act on behalf of the copyright owner(s) please contact us.

**Q:** **Do I need to hire an attorney?**

**A:** The decision to hire an attorney is completely up to you. We cannot give you legal advice, but speaking with an attorney is generally highly advisable. In some cases the settlement offered by us is significantly lower than the costs associated with hiring an attorney.

**Q:** **Why are copyright lawsuits normally filed?**

**A:** Copyright owners file lawsuits because they have no other way to recover revenues lost to di gital piracy.

*Legal Correspondence – Settlement Purposes Only – Not Admissible Under FRE 408*

# Steele | Hansmeier, PLLC
*A leading anti-piracy law firm*

## PAYMENT AUTHORIZATION

I hereby authorize Steele | Hansmeier, PLLC to withdraw funds from the bank account or credit card listed below for the settlement amount and legal issue referred to on my Release and herein below.

**Case Name and Ref#:** _____

**PAYOR INFORMATION**

Payor's Name: _____

Billing Address: _____

_____

Telephone Number: _____

Signature: _____    Date: _____

---

**PAYMENT INFORMATION**

Payment amount:    $_____

Name on Bank Account / Credit Card: _____

**If paying via bank account:**

Type of Account:    Checking / Savings

Routing Number: _____    Account Number: _____

**If paying via credit card:**

Card Number: _____    Exp. Date: _____

Card Type:    ☐ Master Card    ☐ Visa ☐ AmEx    ☐ Discover

CID Number: _____ (this is the last three digits on the back of your Master Card, Visa, or Discover Card, or the four digit number in the upper right corner on the front of your AmEx)

---

**Fax or mail this authorization to:**

Steele | Hansmeier, PLLC.
161 N. Clark Street, Suite 4700
Chicago, IL 60601

Fax: (312) 893-5677

Fax: 312.893.5677    |    161 N. Clark St. 4700, Chicago, IL 60601    |    Tel: 312.880.9160

www.wefightpiracy.com

# RELEASE

**Company: Hard Drive Productions, Inc.**
**IN RE: *Hard Drive Productions, Inc. v. Does 1-1000*, Case # 1:10-cv-05606**

**Settlement Purposes Only -**
**Inadmissible Under FRE 408**

BE IT KNOWN, that Steele | Hansmeier, PLLC on behalf of the Company named above, (hereinafter referred to as "Releasor"), for and in consideration of the sum of Two Thousand Nine Hundred ($2,900.00) Dollars, and other valuable consideration received from or on behalf of _____, (hereinafter referred to as "Releasee"), provided that Releasee's payment in full in the amount of $2,900.00 is received by Releasor within seven calendar days from the date of this release and such payment is made with no chargebacks, cancellations or revocations, does hereby remise, release, acquit, satisfy, and forever discharge the said Releasee, of and from all manner of actions, causes of action, suits, debts, covenants, contracts, controversies, agreements, promises, claims, and demands regarding the lawsuit referred to as *Hard Drive Productions, Inc. v. Does 1-1000*, **Northern District of Illinois Federal Case Number 1:10-cv-05606**, or any claim related to any act Releasor alleges that Releasee may or may not have done, which said Releasor ever had, now has, or which any personal representative, successor, heir or assign of said Releasor, hereafter can, shall or may have, against said Releasee, by reason of any matter, cause or thing whatsoever, from the beginning of time to the date of this instrument. In consideration for foregoing release and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Releasee hereby releases Releasor, Steele | Hansmeier, PLLC., Media Copyright Group, LLC., and the owners and operators of the foregoing entities from all manner of actions, causes of action, suits, debts, covenants, contracts, controversies, agreements, promises, claims and demands arising from or relating to the aforementioned lawsuit or any claim related to any act Releasor alleges that Releasee may or may not have done, which said Releasee ever had, now has, or which any heir, successor or assign of Releasee can, shall or may have against Releasor. Releasor and Releasee both agree that the terms of this agreement shall forever remain confidential, and both parties agree that they shall not discuss this agreement. Releasor specifically agrees to not disclose information it may have regarding Releasee, the litigation described herein, or any settlement discussions entered into between the parties unless ordered to do so by a valid court order or by permission of Releasee.

Written and Executed this _____ day of _____, 2011.

"RELEASOR"

_John L. Steele (signature)_

_____
John L. Steele, Esq.
Representative of Steele | Hansmeier, PLLC.
On behalf of Hard Drive Productions, Inc.



**For Public Distribution**

# Memo

**Re:** An Assessment of the Open Wireless Defense

---

## Introduction

We have been asked to prepare a memorandum on the viability of the Open Wireless Defense in the context of civil copyright infringement claims.

## Background

The Open Wireless Defense is often considered by defense counsel on behalf of clients accused of illegally downloading copyrighted works via a wireless computer network. In short, the Open Wireless Defense is a claim that a third party surreptitiously accessed a defendant's unsecured wireless network and illegally downloaded a plaintiff's copyrighted works.

## Summary

Based on an extensive review of applicable case law and secondary materials, we conclude that the Open Wireless Defense has never been successfully used by a defendant to escape liability for claims of direct or indirect copyright infringement. First, proving that a given wireless network was unsecured on a past date has proven to be prohibitively difficult, not to mention expose a defendant to liability for spoliation of evidence. Second, the defense has been rejected by the courts in every context in which it has been raised. Finally, the defense does not trump the "willful blindness" doctrine in the indirect copyright infringement context.

## Discussion

We begin our discussion by describing the logistical difficulty of proving the Open Wireless Defense. Then, we discuss the treatment the Open Wireless Defense has received in the courts. Finally, we analyze the "willful blindness" doctrine as it relates to indirect copyright infringement and the Open Wireless Defense.

### Proving the Open Wireless Defense

As its name implies, a key element of the Open Wireless Defense is that a defendant's wireless network lacked an authentication scheme (and was thus accessible by third parties within signal range) on the date that infringing activity was observed on the defendant's network. According to our technical consultants, it is extremely challenging to prove that a given network was unsecured on a past date – even if a defendant refrained from destroying all applicable network traffic logs. First, most network traffic logs cannot distinguish between authorized and unauthorized traffic. Second, even if a log is able to so distinguish, it is often the case that BitTorrent packets are encrypted and thus not subject to

# Exhibit B

ready analysis. Finally, the cost of decrypting such packets and analyzing network traffic logs in preparation of litigation is often cost prohibitive.

In addition, although the vast majority of wireless routers are capable of logging network traffic, few individuals bother to enable that feature – even after they are notified of impending litigation. **Because of this, the instant such individuals raise the Open Wireless Defense, they invite a spoliation of evidence claim.** Courts have not hesitated to penalize copyright infringement defendants for their failure to retain evidence. *See Arista Records v. Tschirhart*, No. SA-05-CA-372-OG, 241 F.R.D. 462, 466 (W.D. Tex. Aug. 23, 2006). "In this case, defendant's conduct shows such blatant contempt for this Court and a fundamental disregard for the judicial process that her behavior can only be adequately sanctioned with a default judgment. No lesser sanction will adequately punish this behavior and adequately deter its repetition in other cases."

Rather than wade into the morass of the Open Wireless Defense, courts often simply prevent a defendant from raising it. *See Interscope Records v. Leadbetter*, No. 03 CV 4465 (DGT/RML), 2007 WL 1217705, at *8 n.8 (W.D. Wash. 2007); *Capitol Records Inc. v. Thomas-Rasset*, No. 06-1497 (MJD/RLE), 2009 WL 1664468, at *7 (D. Minn. June 11, 2009);

## The Open Wireless Defense in the Courts

The Open Wireless Defense arises most frequently on motions to suppress evidence based on lack of probable cause. For example, in *United States v. Perez*, 484 F.3d 775 (5th Cir. 2007), a woman reported receiving an internet message containing child pornography from an individual with the Yahoo ID, "famcple." The police contacted the FBI, and a subpoena to Yahoo!, Inc. revealed that on the date the child pornography was sent, the transmitting computer used IP address 24.27.21.6. Through a second subpoena to an internet service provider, the FBI determined that the account holder associated with the IP address was Perez. A search warrant was obtained to search Perez's residence, and child pornography was found. Perez objected to the search warrant, arguing that mere association between an IP address and a physical address is insufficient to establish probable cause. He argued that because his wireless network was unsecured, other individuals could have connected to the Internet through his router and, consequently, used his IP address. **The Fifth Circuit flatly rejected Perez's argument, stating that "through it was possible that the transmissions originated outside of the residence to which the IP address was assigned, it remained likely that the source of the transmissions was inside that residence."** *Id.* at 740 (emphasis added).

In general, federal courts routinely deny motions to suppress based on an open wireless argument, holding that there was probable cause to search and seize defendant's computers. *See, e.g., United States v. Carter*, 549 F. Supp. 2d 1257, 1268-69 (D. Nev. 2008) ("[T]he Court agrees that ... there would still have remained a likelihood or fair probability that the transmission emanated from the subscriber's place of residence and that evidence of child pornography would be found at that location."; *United States v. Merz*, 2009 WL 1183771, at *5 (E.D. Pa. May 4, 2009) ("The court also concludes there was a sufficient connection between the IP address ... and the physical location to which the IP address was linked to establish probable cause to search the physical location."). *See also, United States v. Massey*, No. 4:09CR506-DJS, 2009 WL 3762322 (E.D. Mo. Nov. 10 2009); *United States v. Hibble*, No. CR 05-1410 TUC DCB (HCE), 2006 WL 2620349 (D. Ariz. Sept. 11, 2006).

The Open Wireless Defense has also been raised by defendants in civil copyright infringement actions. In *Arista Records, Inc. v. Musemeci*, the defense arose on a motion to vacate summary judgment. No. 03 CV 4465, 2007 WL 3124545, at *5 (E.D.N.Y. Sept. 18, 2007). **The court concluded that the defendant's claim that an unsecured wireless router at his residence could have been used by an outside party to commit the alleged infringing activity was not a meritorious defense and denied the motion.** *Id.* In *Capitol Records, Inc. v. Thomas-Rasset*, the court excluded expert testimony on the Open Wireless Defense because the defendants were unable to offer sufficient evidence in its support. No. No. 06-1497 (MJD/RLE), 2009 WL 1664468, at *7 (D. Minn. June 11,

02

2009). In *Interscope Records v. Leadbetter*, the Open Wireless Defense was similarly excluded. No. 03 CV 4465 (DGT) (RML), 2007 WL 1217705, at *8 n.8 (W.D.Wash. 2007).

### Secondary Liability and the "Willful Blindness" Doctrine

The unlikely defendant who escapes liability for direct copyright infringement vis-à-vis the Open Wireless Defense will nevertheless have to contend with liability for contributory copyright infringement. Contributory infringement occurs when a party who, with knowledge of the infringing activity, induces causes, or materially contributes to the infringing conduct of another. *Metro-Goldwyn Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005); *Gershwin Pub. Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).

A defense counsel's first instinct is to allege that a client is innocent where a client had no actual knowledge that the conduct it engaged in (i.e. providing internet access to copyright infringers) constituted contributory infringement. Before advancing those claims, however, an attorney would be well advised to take a close look at the conduct for which persons engaging in infringing activity have been held responsible. Because the typical wireless router is readily capable of logging traffic, a defendant cannot escape liability by claiming they never made the effort to analyze such traffic. Willful blindness is knowledge. *In re Aimster Copyright Litigation*, 334 F.3d 643, 654 (7th Cir. 2003); *Deep v. Recording Industry Ass'n of America, Inc.*, 540 U.S. 1107 (2004).

Thus, an internet account holder who maintains a wireless network and fails to monitor the traffic on the network is liable for contributory copyright infringement. *Id.* Copyright law may lead to harsh results, but it nevertheless is the law.

### Conclusion

The Open Wireless Defense is not viable. First, from a technical standpoint it is extremely challenging to establish that a wireless network was unsecured on a past date and if the related evidence has not been preserved then a defendant may be subject to liability for spoliation of evidence upon raising the defense. Second, it has never been successfully used to avoid liability for direct copyright infringement in any court in the United States. Finally, even if it were established that a third party used an account holder's internet account to illegally download copyright content, the account holder would not be able to escape liability for contributory copyright infringement.

● Page 3

C

# Steele Hansmeier PLLC

Intellectual Property Law Firm

38 MILLER
AVENUE, #263
MILL VALLLEY
CALIFORNIA,
94941
P: 415.325.5900
BLGIBBS@WEFIGHTPIRACY.COM

October 19, 2011

**_Informal Settlement Letter_**

**_Via Email (mcb@hemispheres.pro, mcb@postmodern.com)_**

> **Re:** **Case No. 4:11-cv-01566**
> **Client: Seth Abrahams**

Dear Mr. Berch:

> The purpose of this letter is to request a conference with you to discuss possible settlement of the copyright infringement relating to the above-named client. We feel like this would be a great opportunity to come to a mutually beneficial agreement and avoid the expense and time of further litigation.

We are aware that the Court may order the parties to participate in one or more pretrial conferences in order to facilitate settlement under the Federal Rules of Civil Procedure 16(a)(5). We feel, however, that the Court would appreciate our proactive attempt to solve this dispute amicably without the intervention of the Court.

We would like to meet and confer with you as soon as possible. We anticipate the meeting taking approximately one hour. Please contact our offices at the number above to set up a conference.

We thank you for your cooperation and look forward to hearing from you.

Sincerely,

Brett L. Gibbs, Esq.

BLG/gfy

# Exhibit C

# Exhibit O

# Exhibit O

AO279,FINNEGAN,TERMED

# United States District Court
## Northern District of Illinois – CM/ECF LIVE, Ver 5.0.3 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:11–cv–09066

First Time Videos LLC v. Does 1 – 43
Assigned to: Honorable Milton I. Shadur
Demand: $100,000
Cause: 17:101 Copyright Infringement

Date Filed: 12/21/2011
Date Terminated: 12/22/2011
Jury Demand: Plaintiff
Nature of Suit: 820 Copyright
Jurisdiction: Federal Question

**Plaintiff**

**First Time Videos LLC**                    represented by    **Paul A. Duffy**
Prenda Law
161 North Clark Street
Suite 3200
Chicago, IL 60601
(312) 952–6136
Email: pduffy@duffygroup.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**John Does 1 – 43**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/21/2011 | 1 | COMPLAINT filed by First Time Videos LLC; Jury Demand. Filing fee $ 350, receipt number 0752–6679978. (Attachments: # 1 Exhibit)(Duffy, Paul) (Entered: 12/21/2011) |
| 12/21/2011 | 2 | CIVIL Cover Sheet (Duffy, Paul) (Entered: 12/21/2011) |
| 12/21/2011 |  | CASE ASSIGNED to the Honorable Milton I. Shadur. Designated as Magistrate Judge the Honorable Sheila M. Finnegan. (nsf, ) (Entered: 12/21/2011) |
| 12/21/2011 | 3 | ATTORNEY Appearance for Plaintiff First Time Videos LLC by Paul A. Duffy (Duffy, Paul) (Entered: 12/21/2011) |
| 12/21/2011 | 4 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by First Time Videos LLC (Duffy, Paul) (Entered: 12/21/2011) |
| 12/21/2011 | 5 | NOTICE of Voluntary Dismissal by First Time Videos LLC *of Action Without Prejudice* (Duffy, Paul) (Entered: 12/21/2011) |
| 12/22/2011 | 6 | MINUTE entry before Honorable Milton I. Shadur:Civil case terminated. This action is hereby dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(1). Mailed notice (srn, ) (Entered: 12/22/2011) |
| 12/22/2011 | 7 | MAILED copyright report to Registrar, Washington DC. (vcf, ) (Entered: 12/22/2011) |

# Exhibit P

# Exhibit P

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:11–cv–02176–RLW

MILLENNIUM TGA INC. v. DOES
Assigned to: Judge Robert L. Wilkins
Cause: 17:101 Copyright Infringement

Date Filed: 12/07/2011
Date Terminated: 12/19/2011
Jury Demand: None
Nature of Suit: 820 Copyright
Jurisdiction: Federal Question

**Plaintiff**

**MILLENNIUM TGA INC.**

represented by **Paul A. Duffy**
PRENDA LAW INC.
161 N. Clark Street
Suite 3200
Chicago, IL 60601
(312) 880–9160
Fax: (312) 893–5677
Email: paduffy@wefightpiracy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DOES**
*1 – 939*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/07/2011 | 1 | COMPLAINT against DOES ( Filing fee $ 350, receipt number 4616044436) filed by MILLENNIUM TGA INC.. (Attachments: # 1 Civil Cover Sheet)(jf, ) (Entered: 12/13/2011) |
| 12/07/2011 |   | SUMMONS Not Issued as to DOES 1–939 (jf, ) (Entered: 12/13/2011) |
| 12/07/2011 | 2 | LCvR 7.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests NONE by MILLENNIUM TGA INC. (jf, ) (Entered: 12/13/2011) |
| 12/16/2011 | 3 | NOTICE of Voluntary Dismissal by All Plaintiffs (Duffy, Paul) (Entered: 12/16/2011) |

# Exhibit Q

# Exhibit Q

## U.S. DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| West Coast Productions, Inc. | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number 1:11-cv-55-JEB-JMF |
| | ) |
| DOES 1 – 1434, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

### PLAINTIFF'S STATEMENT OF GOOD CAUSE
### IN RESPONSE TO THE COURT'S FEBRUARY 3, 2012 ORDER

Plaintiff, by and through counsel, hereby responds to the Court's Order ("Order") dated February 3, 2012, requiring that Plaintiff show cause as to the bases upon which this Court may exercise personal jurisdiction and venue, and in furtherance hereof respectfully states as follows:

### I.    INTRODUCTION

Plaintiff is a film-maker and motion picture copyright holder who filed its Complaint to stop various unidentified Defendants ("Does" or "Doe Defendants") from copying and distributing to others over the Internet unauthorized copies (files) of the motion pictures for which Plaintiff holds the exclusive copyright.  Using so-called "peer-to-peer" ("P2P") file "swapping" networks, Doe Defendants' infringements allow them and untold others unlawfully to obtain and distribute for free the copyrighted Motion Picture that Plaintiff invested substantial sums of money to obtain the copyright, licensing, and distribution rights.

1

Plaintiff sued Defendants as "Doe" Defendants because Defendants committed their infringements using on-line pseudonyms ("user names" or "network names"), not their true names. However, Plaintiff was able to identify potential Defendants by a unique Internet Protocol ("IP") address assigned to each Doe Defendant by his/her Internet Service Provider ("ISP") on the date and at the time of the Doe Defendant's infringing activity. At the time it filed its original Complaint, Plaintiff had been able to identify at least several IP addresses for the Doe Defendants, which Plaintiff included as Exhibit A to its Complaint (Dkt. 1). On June 28, 2011, this Court granted Plaintiff's initial motion for leave to take discovery prior to the Rule 26(f) conference. See Memorandum Order (Dkt. 11). Thus, by its Order dated June 28, 2011, the Court granted the Plaintiff leave to serve the requested subpoenas on the relevant ISPs. Paragraph 1 of the Conclusion to the Court's June 28, 2011 Memorandum Order provides: "Plaintiff may forthwith serve Rule 45 subpoenas on the ISPs identified in [#1-1], seeking the individual's name, current and permanent address, telephone number, e-mail address, and MAC." Id. This Court further recognized:

> Courts in this Circuit have readily granted motions to take leave prior to the Rule 26(f) conference in the context of this type of copyright infringement action **for the simple fact that without the information, plaintiff cannot name any defendants and the case cannot proceed any further**.

Id. (emphasis added) (citing Cornered, Inc. v. Does 102177, No. 10-CV-1476, 2010 WL 4259605, at *1 (D.D.C. Oct. 22, 2010); Worldwide Film Entertainment, LLC v. Does 1-749, No. 10-CV-38, 2010 WL 2011306, at *1 (D.D.C. May 20, 2010); G2 Productions, LLC v. Does 1-83, No. 10-CV-41, 2010 WL 253336, at *1 (D.D.C. Jan. 21, 2010).

Plaintiff continued its infringement monitoring efforts because the infringement of Plaintiff's Motion Picture was on-going and continuing. Through this continued monitoring, Plaintiff identified additional Doe Defendants that had infringed Plaintiff's Motion Picture. Accordingly, Plaintiff subsequently filed its First Amended Complaint (Dkt. 13). Contemporaneous therewith, Plaintiff filed a Motion for Leave to Take Discovery (Dkt. 14) with respect to those Doe Defendants referenced in the First Amended Complaint. On February 3, 2012 the Court denied Plaintiff's Motion for Leave to Take Additional Discovery. (Dkt. 19 Memorandum Opinion and Dkt. 20 Order). By its February 3, 2012 Order, the Court also directed that Plaintiff:

> [S]how cause in writing by February 17, 2012, why this Court can assert jurisdiction over any defendant (a) who is not domiciled in the District of Columbia, or (b) as to whom plaintiff lacks a good faith basis to assert that he or she committed the act that is the premise of the plaintiff's claim for relief in the District of Columbia, and why venue is proper unless the defendant resides in the District of Columbia.

Order (Dkt. 20).

## II.    DISCUSSION

### A.  BACKGROUND

To date, Plaintiff has only been able to identify the Doe Defendants by their Internet Protocol ("IP") address and the date and time of alleged infringement. The only way that Plaintiff can determine Defendants' actual identities is from the various non-party ISPs to which Doe Defendants subscribe and from which Doe Defendants obtain internet access. However, Plaintiff cannot obtain this discovery without first filing a lawsuit against the anonymous Doe Defendants.

Currently, Plaintiff has limited information about all putative Doe Defendants, and accordingly has moved this Court for discovery prior to the Rule 26(f) conference in

order to learn more about each of the putative defendants. Once Plaintiff amasses enough

evidence to allow it to name the Does as defendants, and if and when challenges to

jurisdiction and venue are raised by actual named defendants at the appropriate time

pursuant Rule 12 of the Federal Rules of Civil Procedure, Plaintiff would properly have a

burden to present a *prima facie* case supporting personal jurisdiction and venue.

The Court's February 3, 2012 Order denying discovery is tantamount to a sua

sponte dismissal for lack of personal jurisdiction and venue because, as a direct

consequence thereof, the Plaintiff's claims will forever be foreclosed since Plaintiff has

no other reasonable means to identify the Doe Defendants, especially in light of the short

time ISPs retain data relevant to the infringements. See June 28, 2011 Order, Dkt. 11

(this Court recognizing "without the information, plaintiff cannot name any defendants

and the case cannot proceed any further"); see also Digital Sin, Inc. v. Doe, 2012 U.S.

Dist. LEXIS 10803 (S.D.N.Y. Jan. 30, 2012) ("Indeed, in all of the opinions and rulings

in similar cases around the country, the Court has found no indication that the plaintiffs

have any reasonable alternative to these subpoenas to obtain the identities of the alleged

infringers. Thus, without granting Plaintiff's request, the defendants cannot be identified

or served and the litigation cannot proceed. Additionally, expedited discovery is

necessary to prevent the requested data from being lost forever as part of routine

deletions by the ISPs."); Call of the Wild Movie, LLC v. Does 1-1,062, 770 F.Supp.2d

332, 352-53 (D.D.C. 2011) (recognizing Plaintiff's critical need for identifying

information from the ISPs and that Plaintiff has no other means of obtaining such

information).

4

B.  FEDERAL RULES DO NOT CONTEMPLATE APPLICATION OF
PERSONAL JURISDICTION AND VENUE ANALYSES PRIOR
TO THE TIME DEFENDANTS ARE NAMED AND CHALLENGE
JURISDICTION AND/OR VENUE.

A plaintiff is not required to plead the basis for personal jurisdiction over any

defendant in the complaint.  Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474 (D. Del.

1995).  Lack of personal jurisdiction and venue represent defenses that, similar to

affirmative defenses, can be waived if not properly raised.  See Fed. R. Civ. P. 12(h)(1).

Only after a defendant raises the defense of lack of personal jurisdiction, "the general rule

is that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts."

First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1378 (D.C. Cir. 1988).

Here, a responsive pleading is not yet required of any Doe Defendant because no

deadline to appear and defend has even started.  In short, no Doe Defendant has been

haled into this Court to defend against Plaintiff's claims.  Once named and served, and

only then, Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure would permit

any named defendant to move to dismiss for lack of personal jurisdiction and/or venue.

The plain language of the Federal Rules of Civil Procedure contemplates that a

defendant can only respond to a complaint when that defendant has been named as a

party and after a summons has been issued and served on a defendant (or service is

waived by the defendant).  For example, Rule 4 states that a summons must "*name* the

court and the parties" and "be directed to the defendant."  Fed. R. Civ. P. Rule 4(a)(1)(A)

and (B) (emphasis added).

Only then can the provisions of the Federal Rules of Civil Procedure, such as

when a defendant must file a responsive pleading or motion, take effect.  Therein, one of

the things the summons must do is advise the defendant of the obligation to "appear and

defend" and state the time the defendant has for doing so, whether after being served with the summons or by waiving service.  See Fed. R. Civ. P. Rule 4(a)(1)(D).  The timeframe in which a defendant has to "appear and defend" therefore does not start until, at the earliest, a summons specifically names the defendant and is directed to that defendant.[1]

In a similar case in the U.S. District Court for the District of Columbia, Judge Kollar-Kotelly stated:

> Plaintiff has yet to formally identify any of the John Doe Defendants named in the Complaint or serve them with process. Although the movants generally assume that they will be named as defendants once their contact information is turned over to Plaintiff by their ISP, the Court cannot automatically draw that conclusion. If, as many movants have asserted, their internet accounts were used by third parties to unlawfully infringe Plaintiff's copyrighted film, then it is those third parties, rather than the movants themselves, who should properly be named as defendants. Until Plaintiff formally names and serves each defendant, the Court cannot be certain whether any of the movants will be compelled to defend this action as parties.

West Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. 9, 14 (D.D.C. 2011).

Therefore, an analysis of personal jurisdiction and venue at this stage of the case would improperly presuppose that all of the Doe Defendants will be named and served and that all Doe Defendants will contest personal jurisdiction and venue.

---

[1] While the Federal Rules of Civil Procedure do not explicitly define "party," the plain language of multiple provisions suggests that a person is only a party to a case when that person is identified and specified by name in the case.  For example, Fed. R. Civ. P. Rule 17 states that an "action must be prosecuted in the name of the real party in interest," and Fed. R. Civ. P. Rule 5 contemplates service of papers on "every party" wherein the general provisions for service contemplate that the party's identity must be known (See Fed. R. Civ. P. Rule 5(b)(2)).

## C. PRIOR RULINGS HAVE HELD THAT CONSIDERATION OF PERSONAL JURISDICTION AND VENUE IS PREMATURE.

Numerous courts across several jurisdictions, including this one, have considered the proper time at which a Court should analyze personal jurisdiction and venue. In this District, many Doe defendants and several amici, including the American Civil Liberties Union, the Electronic Frontier Foundation and Public Citizen, have recently argued in favor of the proposition that application of jurisdictional and venue analyses are appropriate at the time a Plaintiff requests expedited discovery in advance of a Rule 26(f) conference. This Court, and courts across numerous jurisdictions, have routinely rejected such arguments as "premature."[2] This is true even in cases where Doe defendants have asserted that they lived outside of a court's jurisdiction and had minimal or no contacts with that jurisdiction. See, e.g., Call of the Wild Movie, LLC v. Does 1-1,062, 770 F.Supp.2d 332 (D.D.C. 2011); West Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. 9 (D.D.C. 2011); Elektra Entm't Group, Inc. v. Does 1-9, 2004 U.S. Dist. LEXIS 23560, Civ. No. 04-2289(RWS), 2004 WL 2095581, at *5 (S.D.N.Y. Sept. 8, 2004); Motown Record Co., L.P. v. Does 1-252, Civ. No. 04-439(WBH), at 3 (N.D. Ga. Aug. 16, 2004); Sony Music Entm't Inc. v. Does 1-40, 326 F. Supp. 2d 556, 567-68 (S.D.N.Y. 2004): UMG Recordings v. Does 1-199, Civ. No. 04-0093(CKK), at 2 (D.D.C. Mar. 10, 2004).

---

[2] Nu Image, Inc. v. Does 1-23,322, 799 F.Supp.2d 34 (D.D.C. July 29, 2011) is the notable exception, however Nu Image interestingly fails to even acknowledge the prior precedent of this District bearing on the issue of identification discovery as sought by Plaintiff here, including those rendered by Judges Howell and Kollar-Kotelly in the two months immediately preceding the issuance of the Nu Image ruling. Rather, the outlier decision in this District rendered in Nu Image, Inc. v. Does 1-23,322, 799 F.Supp.2d 34 (D.D.C. July 29, 2011) applies an analysis that should be applied only at least two steps forward in litigation at a point in which actual defendants have been named and have also challenged personal jurisdiction and/or venue through a Rule 12 motion.

These rulings, that such considerations are "premature," are premised upon the notable fact that a court has no authority to render a ruling on the matters of personal jurisdiction or venue prior to the time a particular defendant has actually been named. See Sony Music Entm't Inc., 326 F. Supp. 2d at 567-68 (holding that "without identifying information sought by plaintiffs in the [ISP] subpoena, it would be difficult to assess properly the existence of personal jurisdiction over the Doe defendants"). Importantly, the D.C. Circuit has emphasized this point – "before the complaint has been served and a response received, the court is not positioned to determine conclusively whether personal jurisdiction exists." Anger v. Revco Drug Co., 791 F.2d 956, 958 (D.C. Cir. 1986) (per curiam); see also Virgin Records Am., Inc. v. John Does 1-35, 2006 U.S. Dist. LEXIS 20651 Civ. No. 05-1918 (CKK) (D.D.C., Jan. 11, 2006) ("Given this general rule – *which applies even when a plaintiff knows a defendant's identity* – it would be illogical to deny Plaintiffs the opportunity to obtain the most basic identifying information that they seek in their subpoena to third-party [ISP] Verizon, Defendant Doe # 18's ISP.") (emphasis added).[3]

Judge Howell considered these issues in Call of the Wild Movie, LLC v. Does 1-1,062, 770 F.Supp.2d 332, 351 (D.D.C. 2011)[4], an opinion relating to three cases with a total of 5583 Doe defendants. In that case, ISP Time Warner Cable sought to quash the

---

[3] In Anger v. Revco, 791 F.2d 956 (D.C. Cir. 1986) (per curiam), the court stated that a district court may not *sua sponte* dismiss a complaint for lack of personal jurisdiction or venue. Id. at 958, fn. 3.

[4] Judge Howell issued one Memorandum Opinion for three separate cases: Call of the Wild Movie, LLC v. Does 1-1,062, Case No. 10-455; Maverick Entertainment Group, Inc. v. Does 1-4,350, Case No. 10-569; Donkeyball Movie, LLC v. Does 1-171, Case No. 10-1520.

subpoenas seeking information about the Doe defendants' identities. Three putative

defendants whose identities were disclosed, and amici Electronic Frontier Foundation,

Public Citizen, American Civil Liberties Union Foundation, and American Civil Liberties

Union of the Nation's Capital, supported Time Warner Cable's motion to quash,

challenging, among other things, personal jurisdiction over doe defendants that likely

resided outside of the District. Judge Howell's well-reasoned analysis is directly

applicable here. Judge Howell concluded:

> **To be clear, at this stage in the proceedings, the plaintiff is engaged in discovery to identify the proper defendants to be named in this lawsuit,** including whether the exercise of jurisdiction over each potential defendant is proper. **If and when the putative defendants are ultimately named in this lawsuit, the defendants will have the opportunity to file appropriate motions challenging the Court's jurisdiction**, and the Court will be able to evaluate personal jurisdiction defenses and consider dismissal. Until that time, however, dismissal under Rule 12(b)(2) is inappropriate.

Call of the Wild Movie, LLC v. Smith, 274 F.R.D. 334, 345 (2011) (emphasis added);

see also Call of the Wild Movie, LLC v. Does 1-1,062, 770 F.Supp.2d 332, 345-347

(2011) ("Given that the defendants have yet to be identified, the Court believes that

evaluating the defendants' jurisdictional defenses at this procedural juncture is

premature.").

Judge Kollar-Kotelly also recently came to the same conclusion in denying

multiple Doe Defendants' motions to quash subpoenas or dismiss them from a similar

case in West Coast Productions, Inc. v. John Does 1-5829, Case No. 11-57, Doc. No. 125

at pp. 9-11 (D.D.C. June 10, 2011). Judge Kollar-Kotelly concluded:

> **Until Plaintiff formally names and serves each defendant, the Court cannot be certain whether any of the movants will be compelled to defend this action as parties**. Therefore, it is premature to evaluate their jurisdictional defenses. Furthermore, even assuming that the movants

will ultimately be named as defendants, they will have the opportunity to assert their jurisdictional defenses once they are served with process, either in their answers or in pre-answer motions to dismiss. **Until that time, the Court finds their arguments to be premature.**

West Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. at 14-15 (emphasis added).

The analyses of Judges Howell and Kollar-Kotelly stand in stark contrast to that of Judge Wilkins in Nu Image, Inc. v. Does 1-23,322, 799 F.Supp.2d 34 (D.D.C. July 29, 2011) . The new Nu Image analysis applied by Judge Wilkins is inapposite to the issues currently before the Court as that analysis is properly conducted only after personal jurisdiction and venue become ripe for consideration. Nu Image wholly ignores the prior rulings in this District that have considered the same issues and applies an analysis of personal jurisdiction and venue as if defendants have (i) been named and (ii) have raised these issues under Rule 12(b). Of course these issues have not been raised by any defendant as no defendant has yet to be named or served.[5] Thus, it is wholly premature to apply either of the two alternative "situs of injury" tests as applied in Nu Image. West Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. at 14 ("before the complaint has been served and a response received, the court is not positioned to determine conclusively whether personal jurisdiction exists") quoting Anger v. Revco Drug Co., 791 F.2d 956, 958 (D.C. Cir. 1986) (per curiam)).

Such analysis may well be appropriate after the fictitious Doe Defendants have actually been named as defendants. Such analysis before any defendant is actually named is merely an exercise in the hypothetical as no Doe has actually been haled into

---

[5] This Court recognized that no defendants have yet been named in its June 28 Order, Dkt. 11, stating "without the information, plaintiff cannot name any defendants and the case cannot proceed any further."

10

this Court, and no information is currently known about any of the fictitious Doe Defendants other than their IP addresses.[6] Certainly, there are many possible scenarios under which the exercise of jurisdiction would be appropriate for certain of the Doe Defendants.

The personal jurisdiction and venue analysis applied in Nu Image highlights how it is easy to misapply the relevant standards for the different stages of a case. The standard articulated in Nu Image is completely inapplicable at this stage of the case. Again, no fictitious Doe Defendant has been named or served, and none are being haled into this Court. There is no requirement that Plaintiff plead the basis for personal jurisdiction over any defendant in the Complaint, and there is certainly no requirement that the Plaintiff establish personal jurisdiction over any Doe Defendant at this stage. *If* personal jurisdiction is challenged, a "colorable" or "not frivolous" standard for obtaining jurisdictional discovery applies, which requires some showing that discovery is needed or likely to be useful. However, that showing is significantly lower than the *prima facie* showing of jurisdiction, which requires the plaintiff "to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." See Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997). Nu Image wholly fails to recognize that Plaintiff bears gradually escalating burdens at different stages of litigation. Judge Kollar-Kotelly explained as follows in West Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. at 14:

---

[6] As explained in laborious detail in the well-reasoned opinions made after significant briefing by those plaintiffs (and amici in Call of the Wild), Judges Howell and Kollar-Kotelly both determined that it is premature to consider the issues of personal jurisdiction and venue at this stage of the proceedings.

Once a defendant raises the defense of lack of personal jurisdiction, "the general rule is that a plaintiff must make a prima facie showing of the pertinent jurisdictional facts." *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C.Cir.1988). To meet this burden, the plaintiff will normally be afforded the opportunity to engage in discovery relating to jurisdictional facts. *See GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C.Cir.2000) ("[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."). "Therefore, before the complaint has been served and a response received, the court is not positioned to determine conclusively whether personal jurisdiction exists." *Anger v. Revco Drug Co.*, 791 F.2d 956, 958 (D.C.Cir.1986) (per curiam).

Here, the Court's refusal to allow the Plaintiff to proceed with the requested discovery is tantamount to a sua sponte dismissal pursuant to Rule 12 inasmuch as Plaintiff has no other way to identify the putative Doe Defendants. See Digital Sin, Inc. v. Doe, 2012 U.S. Dist. LEXIS 10803 (S.D.N.Y. Jan. 30, 2012)("without granting Plaintiff's request [for expedited discovery], the defendants cannot be identified or served and the litigation cannot proceed. Additionally, expedited discovery is necessary to prevent the requested data from being lost forever as part of routine deletions by the ISPs.").

## D. PLAINTIFF SEEKS IDENTIFICATION DISCOVERY.

It is well-accepted that a qualified right to jurisdictional discovery exists, see, e.g., Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.13, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978). However, Plaintiff here does not seek "jurisdictional discovery" in the traditional sense as it is not yet facing a jurisdictional challenge by any named defendant.[7] Rather, Plaintiff seeks only narrow and precisely focused *identification*

---

[7] The entire premise of Judge Wilkins' ruling was that "Plaintiff argues that its motion is akin to a request for jurisdictional discovery." Nu Image, Inc. v. Does 1-23,322, 799

discovery. That is, Plaintiff seeks discovery to identify the proper defendants to be named in this action.

The posture of this case is at least a step removed from the point at which jurisdictional discovery is typically requested. This is an atypical scenario because Plaintiff does not know the true identities of defendants who may later be named parties to this case. Therefore, Plaintiff has requested a precise and narrowly tailored form of discovery preliminary to a jurisdictional challenge – "identification discovery" – the purpose of which is merely to identify proper defendants to this action. This Court has repeatedly recognized the existence of a right to identification discovery in similar circumstances. See, e.g., Call of the Wild Movie, LLC v. Does 1-1,062, 770 F.Supp.2d 332, 351 (D.D.C. 2011); West Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. 9 (D.D.C. 2011); Virgin Records Am., Inc. v. John Does 1-35, 2006 U.S. Dist. LEXIS 20651 Civ. No. 05-1918 (CKK) (D.D.C., Jan. 11, 2006); UMG Recordings v. Does 1-199, Civ. No. 04-0093(CKK), at 2 (D.D.C. Mar. 10, 2004).

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, . . . ." Discovery is not limited to the merits of a case, as it is available to ascertain the facts bearing on issues such as jurisdiction or venue. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.13, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978).

---

F.Supp.2d at 36. That was not true in that case and is not true in this case. As shown herein, Plaintiff is seeking identification discovery, not jurisdictional discovery.

In the District of Columbia, a plaintiff need not make out a *prima facie* case of jurisdiction before obtaining discovery. Diamond Chem. Co. v. Atofina Chems., Inc., 268 F.Supp.2d 1, 15 (D.D.C. 2003) (Kollar-Kotelly, J.), (citing In re Vitamins Antitrust Litig., 94 F.Supp.2d 26, 35 (D.D.C. 2000); GTE New Media Servs., Inc. v. BellSouth Corp., 339 U.S. App. D.C. 332, 199 F.3d 1343, 1352 (D.C. Cir. 2000) (where court permitted jurisdictional discovery although it could not "tell whether jurisdictional discovery will help to sort out" the jurisdictional issues in the case)). Here, the effect of the Court's February 3 Order runs directly counter to the foregoing precedent of this District, and also directly contradicts rulings in similar cases by Judges Howell and Kollar-Kotelly in cases nearly identical to this one rendered within the past year. See Call of the Wild Movie, LLC v. Does 1-1,062, 770 F.Supp.2d 332, 351 (D.D.C. 2011); West Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. 9 (D.D.C. 2011).

Courts consider the following factors when granting motions for expedited discovery to identify anonymous Internet users: (1) whether the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) all previous steps taken by the plaintiff to identify the Doe Defendant; and (3) whether the plaintiff's suit could withstand a motion to dismiss. Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999); see also Rocker Mgmt. LLC v. John Does, No. 03-MC-33 2003 WL 22149380, *1-2, (N.D. Cal. 2003) (applying Seescandy.com standard to identify persons who posted libelous statements on Yahoo! message board; denying request for expedited discovery where the postings in question were not libelous). Plaintiff here is able to demonstrate each one of these factors.

Here, Plaintiff has shown that it can identify the Doe Defendants with sufficient specificity such that the Court can determine that the Doe Defendants are real persons or entities who could be sued in federal court, and Plaintiff has documented the previous steps taken to identify the Doe Defendants.  As more fully set out in Plaintiff's Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference (see Dkt. 3 and 3-1), Plaintiff identified the unique IP address for each Doe Defendant, along with the date and time of alleged infringement and ISP that provided Internet access to each Defendant and assigned the unique IP address to the Doe Defendant, from information provided to it by Excubitor USA, Inc ("Excubitor").  This information was obtained by Excubitor's proprietary tracing software program to trace the IP address for each Doe Defendant, as detailed in the declaration of Matthias Schroeder Padewet (Dkt. 3-2).

Additionally, Plaintiff has made a *prima facie* case of copyright infringement in this case.  For the Plaintiff to establish a *prima facie* claim of copyright infringement, it must demonstrate: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.  Feist Pub'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

Plaintiff alleges that it is the "holder of the pertinent exclusive rights infringed by Defendants" and cite to the copyright certificate issued by the Registrar of Copyrights. (Dkt 1 (Complaint) at ¶ ¶16, 37) Plaintiff further asserts that the Doe Defendants violated the Plaintiff's exclusive rights of reproduction and distribution when they, "without the permission or consent of Plaintiff, has used, or continues to use, an online media distribution system to reproduce and distribute to the public the Copyrighted Motion Picture."  Id. at ¶ 39.  Plaintiff supports these allegations by supplying the date and time

that the alleged infringement occurred, along with the declaration from Matthias

Schroeder Padewet describing the process by which the Doe Defendants' infringement

was observed, recorded, and verified. (See Dkt. 3-2).

Accordingly, Plaintiff has appropriately pled a *prima facie* claim of copyright

infringement against the Doe Defendants wherein Plaintiff's suit can withstand a motion

to dismiss. Sony Music Entm't, Inc. v. Does 1-40, 326 F. Supp. 2d at 565 (stating that

plaintiffs made concrete showing of a prima facie claim of copyright infringement by

alleging valid ownership of copyrights and "that each defendant, without plaintiffs'

consent, 'used, and continues to use an online media distribution system to download,

distribute to the public, and/or make available for distribution to others' certain of the

copyrighted recordings"); see also Call of the Wild Movie, LLC v. Does 1-1,062, 770

F.Supp.2d at 351-352 (same).[8]

Lastly, Plaintiff's discovery requests are narrowly tailored to obtain the

information Plaintiff needs to prosecute this lawsuit. Plaintiff is only seeking limited

information sufficient to identify the Doe Defendant, i.e. the Doe Defendants' name,

current and permanent address, telephone number, e-mail address, and Media Access

---

[8] In Columbia Ins. Co. v. seescandy.com, 185 F.R.D. 579 (N.D. Cal. 1999) that court
stated that a plaintiff need only show that its allegations amount to a legal cause of action,
i.e. that a complaint can withstand a motion to dismiss for failure to state a claim upon
which relief can be granted (Fed. R. Civ. P. Rule 12(b)(6)) and not necessarily that
Plaintiff will eventually be able to overcome all types of motions to dismiss. 185 F.R.D.
at 579-580. In Sony Music Entm't Inc. v. Does 1-40, 326 F. Supp. 2d 556 (S.D.N.Y.
2004), that court summarized this requirement as a plaintiff having to make "a concrete
showing of a prima facie claim of actionable harm." Id. at 564-565 (citing Columbia Ins.
Co. v. seescandy.com, 185 F.R.D. at 579-581). Further, in addressing Columbia Ins. Co.
v. seescandy.com, this Court has stated that "[t]he court did not indicate that Plaintiff had
to make an 'evidentiary showing' as Defendant represents in the present matter." Arista
Records LLC v. Does 1–19, 551 F.Supp.2d 1, 6 fn. 5 (D.D.C.) (Kollar-Kotelly, J.).

Control address, and Plaintiffs will only use that information in this lawsuit. Further, Plaintiff has no other means to obtain the Doe Defendants' identifying information other than compelling the information from ISPs. Without this information from the ISPs, Plaintiff cannot name and serve those whom they allege to have infringed upon the copyright. The Doe Defendants' identifying information is therefore critical to the Plaintiff's case.

Although Nu Image does not cite or acknowledge the prior precedent on these issues in this District, Nu Image does in a single paragraph address and summarily dispose of the plaintiff's arguments as to jurisdiction and venue without any substantive analysis as follows:

> Plaintiff argues that because lack of venue and personal jurisdiction are waivable defenses, the Court should not consider those issues in deciding whether to allow the requested discovery. Plaintiff's argument ignores the well-settled rule that all discovery requires a showing of *good cause*; indeed our Circuit requires such a showing for jurisdictional discovery . . . .

Nu Image at 41-42 (emphasis added). Plaintiff does not deny that there exists an initial requisite showing requirement of *good cause*, however Plaintiff respectfully submits that it has shown good cause to obtain the requested discovery. Nu Image, unlike Call of the Wild and West Coast, does not speak to the parameters of what constitutes *good cause* at this stage of the litigation. Call of the Wild and West Coast make clear after careful analysis that good cause for the discovery sought at this stage of litigation is a standard considerably lower than a *prima facie* showing of personal jurisdiction as Nu Image would seemingly require. The prior precedent in this District, as recognized previously by this Court in this very case, is that good cause for discovery at this stage of a case is established "in the context of this type of copyright infringement action [by a showing of]

17

the simple fact that without the information, plaintiff cannot name any defendants and the case cannot proceed any further." June 28, 2011 Order (Dkt. 11) citing Cornered, Inc. v. Does 102177, No. 10-CV-1476, 2010 WL 4259605, at *1 (D.D.C.Oct. 22, 2010); Worldwide Film Entertainment, LLC v. Does 1-749, No. 10-CV-38, 2010 WL2011306, at *1 (D.D.C. May 20, 2010); G2 Productions, LLC v. Does 1-83, No. 10-CV-41, 2010 WL 253336, at *1 (D.D.C. Jan. 21, 2010); see also Call of the Wild at 345  (recognizing that courts have allowed for a discovery period within which to gather evidence to support jurisdiction even when the record before the court is "plainly inadequate").  Call of the Wild specifically held:  "In such cases [where contacts with the jurisdiction are unclear] a party is entitled to pursue 'precisely focused discovery aimed at addressing matters relating to personal jurisdiction.'" Id. at 346 (quoting GTE New Media Services, Inc., 199 F.3d at 1351-52).  This is a case in which Does' contacts with the jurisdiction are unclear, Plaintiff has demonstrated this, as recognized by this Court in its June 28 Order (Dkt. 11).  Accordingly, Plaintiff has met the low burden of good cause applicable at this stage of the case for the discovery that it seeks in order to identify the proper party defendants to this action.


### E.  GEOLOCATION TOOLS ARE INACCURATE AND DO NOT ESTABLISH JURISDICTION.

The Order also raises the matter of utilization of geolocation tools as a means by which to determine which Doe Defendants may be domiciled within the District of Columbia without receiving identifying information from the ISPs.  The idea that geolocation tools would be sufficient to identify all Doe Defendants over which this Court may ultimately exercise jurisdiction and venue presupposes that physical location

of each Doe is a necessary and essential predicate for the exercise of jurisdiction over each Doe. However, that is not the case, and as explained above, it is premature to delve into the issues of personal jurisdiction and venue until named defendants choose to raise those issues on their own accord. Notwithstanding the issue of prematurity, the notion that Plaintiff lacks a sufficient good faith basis for personal jurisdiction or venue in this Court absent reliance on the results found by use of a geolocation tool is simply not true, and has been rejected.

The exact same argument and technique has been specifically rejected in numerous cases. In Sony v. Does 1-40 the plaintiffs opposed this technique and stated that "the geographical designations fall 'far short' of 100 percent accuracy and are 'often extremely inaccurate.'" Sony v. Does 1-40, 326 F. Supp. 2d at 567. The court went on to state that "[a]ssuming personal jurisdiction were proper to consider at this juncture, the techniques suggested by amici, at best, suggest the mere 'likelihood' that a number of defendants are located outside of New York. This, however, does not resolve whether personal jurisdiction would be proper." Id. at 567-568.

Judge Howell rejected the same argument: "[g]iven that these lookup tools are not completely accurate, this does not resolve the question of whether personal jurisdiction would be proper. Ultimately, the Court would still be unable to properly evaluate jurisdictional arguments until the putative defendants are properly identified and named." Call of the Wild Movie, LLC v. Does 1-1,062, 770 F.Supp.2d at 347.

Therein, Judge Howell rejected the exact same argument that those similar plaintiffs did not have a "good faith" basis to assert personal jurisdiction over the putative defendants. In addition to rejecting the geolocation argument, Judge Howell also found

19

that identification of a Doe Defendant's location via geolocation tools does not conclusively establish a lack of personal jurisdiction. See id. (stating that "the nature of the BitTorrent technology enables every user of the file-sharing protocol to access copyrighted material from other peers, who may be located in multiple jurisdictions 'around the country,' including this one"). Overall, Judge Howell rejected the exact same argument that those similar plaintiffs did not have a "good faith" basis to assert personal jurisdiction over the putative defendants.

Therefore, the notion that Plaintiff knows or could know the exact location of every Doe Defendant is simply not true. Further, even if geolocation techniques were accurate enough to determine the location of an IP address, that would not end the personal jurisdiction or venue analyses even if it were not premature to consider those issues at this point in the case. Overall, it is premature for the Court to make any decision related to personal jurisdiction or venue until after Plaintiff obtains the information from the ISPs and names a particular Doe Defendant.

While Plaintiff recognizes that some courts in other jurisdictions have expressed concerns regarding personal jurisdiction and venue, the analyses of those rulings are flawed, unpersuasive, and clearly in the minority. See Patrick Collins, Inc. v. Does 1-2,590, 2011 U.S. Dist. LEXIS 140913, *3-6, No. C-11-2766 (N.D. Cal. December 7, 2011) and Nu Image, Inc. v. Does 1-23,322, 799 F.Supp.2d 34 (D.D.C. July 29, 2011).

In Patrick Collins, Inc. v. Does 1-2,590, the District Court for the Northern District of California did not provide any information on what geolocation tools it used or any substantiation of their reliability. Therein, that court never addressed the concerns raised in Sony v. Does 1-40 (326 F. Supp. 2d at 567-568) or Call of the Wild Movie, LLC

20

v. Does 1-1,062 (770 F.Supp.2d at 347) about the inaccuracies of these techniques, as

admitted by the proponents of such techniques.[9]

 Also, those rulings have incomplete or flawed analysis reaching the conclusion

that the location of a doe defendant outside of the jurisdiction, as determined by

geolocation techniques, establishes a lack of good faith on the part of the plaintiffs for

personal jurisdiction.[10] Judge Howell specifically addressed this issue:

>  Amici raise the prospect that the consequence of this theory is that
> any Internet user may be haled into court in any jurisdiction in the country
> for any online activity. Transcript of Mot. Hearing at 34–35, *Call of the*

---

[9] For example, the Nu Image, Inc. v. Does 1-23,322 ruling recognizes that the geolocation tools are not 100% accurate and thereby sets an arbitrary 30-mile radius. 799 F.Supp.2d. at 41.

[10] For example, the Nu Image, Inc. v. Does 1-23,322 ruling made certain assumptions and ignored certain allegations that led to its conclusion that the court can not have jurisdiction of a defendant who resides outside of the jurisdiction. As one example, that ruling assumed that "a defendant must first download the file (or at least initiate the download) before he can upload or become a source of download for that infringing file." 799 F.Supp.2d. at 41. While that may be true for a majority of the Doe Defendants, it ignores the allegations related to the initial, or "seed," file that may have been placed in the torrent platform via other methods (such as a Doe Defendant converting a DVD of Plaintiff's film to an electronic version). The ruling also ignores the distinction between the two exclusive rights in copyright that are being infringed when it concludes that the "'triggering event' must be a defendant's download of the copyrighted material because the download is the 'original event' that caused the injury" and that the "situs of injury under this analysis will be where the download took place—the location of the putative defendant and his or her computer." 799 F.Supp.2d. at 41. Plaintiff has alleged illegal reproduction and distribution of their copyrighted work. [See Doc. No. 1 (Complaint), ¶ 12] The ruling ignores the allegation that a separate and distinct copyright infringement, and thus distinct injury to Plaintiff, originates when a Doe Defendant uploads/distributes to another Doe Defendant, regardless of what download/reproduction occurred by that Doe Defendant. In that scenario under the ruling's analysis, the "original event" may be an upload/distribution targeted at a Doe Defendant in this district, making the "situs of injury" in this district, i.e. where the distribution was completed and where Plaintiff's claim for infringement then accrued. Further, the ruling does not take into account situations in which the Doe Defendants could have infringed Plaintiff's movie via their IP addresses even though they were not physically present in their residence, such as accessing their home network remotely.

21

> *Wild Movie LLC v. Does 1–1,063*, No. 10–cv–455 (Mar. 1, 2011) ("If merely placing information online were enough to establish personal jurisdiction in the District or anyplace their information could be obtained and downloaded and accessed, the limits on personal jurisdiction would be abolished."). While that broad prospect would indeed be troubling, that is not the situation here. *See generally GTE New Media Servs.*, 199 F.3d at 1350 ("[T]he advent of advanced technology, say, as with the Internet, should [not] vitiate long-held and inviolate principles of federal court jurisdiction."). The allegations in the Complaints in *Wild*, *Maverick* and *Donkeyball* do not involve general Internet access, but specific use of a file-sharing protocol that may touch multiple jurisdictions to effectuate a download of a single copyrighted work. Moreover, so far, no putative defendant has been named or "haled" before this Court. The plaintiffs in each case will be able to proceed only against those named defendants over whom this Court has personal jurisdiction.

Call of the Wild Movie, LLC v. Does 1-1,062, 770 F.Supp.2d at 347.

Additionally, those rulings fail to adequately address the legal burdens placed on

the relative parties during the different stages of a case.  As stated by Judge Kollar-

Kotelly:

> Lack of personal jurisdiction is a threshold defense that is waived unless a defendant raises it in an answer or pre-answer motion. Fed.R.Civ.P. 12(b), (h)(1). Accordingly, the plaintiff is not required to plead the basis for personal jurisdiction over any defendant in the complaint. *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D.Del.1995). Once a defendant raises the defense of lack of personal jurisdiction, "the general rule is that a plaintiff must make a prima facie showing of the pertinent jurisdictional facts." *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C.Cir.1988). To meet this burden, the plaintiff will normally be afforded the opportunity to engage in discovery relating to jurisdictional facts. *See GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C.Cir.2000) ("[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."). "Therefore, before the complaint has been served and a response received, the court is not positioned to determine conclusively whether personal jurisdiction exists." *Anger v. Revco Drug Co.*, 791 F.2d 956, 958 (D.C.Cir.1986) (per curiam).

West Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. at 14.

Here, the attempt to conclusively determine personal jurisdiction and venue at this stage of the case highlights how it is easy to misapply the relevant standards for the different stages of a case. Again, the Doe Defendants have not been named and served and are not being haled into this Court. There is no requirement that Plaintiff plead the basis for personal jurisdiction over any defendant in the complaint, and there is certainly no requirement that the Plaintiff establish personal jurisdiction or venue over the Doe Defendants with evidence.[11]

### III. CONCLUSION

As fully set forth in Plaintiff's original Motion for Leave to Take Discovery, which was granted by the Court, courts have routinely allowed discovery to identify "Doe" defendants in cases almost identical to this one.

Plaintiff has shown good cause for obtaining information related to all of the Doe Defendants from the non-party ISPs, especially considering that the ISPs typically retain user activity logs containing the information sought for only a limited period of time before erasing the data. Therefore, the Court should at least allow Plaintiff the opportunity to conduct discovery and obtain evidence to prove the copyright infringement and irreparable harm in this case.

---

[11] The analysis in the Patrick Collins, Inc. v. Does 1-2,590 case further evidences the fatal flaw of certain courts failing to consider the procedural posture of a case. There, that court based its decision on finding there was no justification for "dragging into a[] [California] federal court, on a wholesale basis, a host of unnamed defendants over whom person jurisdiction clearly does not exist." 2011 U.S. Dist. LEXIS 140913, *4 (citing CP Productions, Inc. v. Does 1-300, 2011 WL 737761, at *1 (N.D. Ill. Feb. 24, 2011)). Here, Plaintiff has not "dragged" anyone into the jurisdiction of the Court yet, as it has not named any particular Doe Defendant.

**DATED**:  February 16, 2012

Respectfully submitted,

West Coast Productions, Inc.

By Counsel

By:

/s/_____

Ellis L. Bennett, Bar #479059
Dunlap Grubb & Weaver, PLLC
199 Liberty Street, SW
Leesburg, VA 20175
ebennett@dglegal.com
703-777-7319 (telephone)
703-777-3656 (fax)

# Exhibit R

# Exhibit R

1  Brett L. Gibbs, Esq. (SBN 251000)
   Prenda Law Inc.
2  38 Miller Avenue, #263
   Mill Valley, CA 94941
3  415-325-5900
   blgibbs@wefightpiracy.com
4  *Attorney for Plaintiff*

5              IN THE UNITED STATES DISTRICT COURT FOR THE

6                    NORTHERN DISTRICT OF CALIFORNIA

7                            SAN JOSE DIVISION

8  AF HOLDINGS LLC,                    )
                                       )
9              Plaintiff,              )     **No.  5:11-CV-03336-LHK**
                                       )
10        v.                           )
                                       )
11 DOES 1-135,                         )     **DECLARATION OF CHARLES E. PIEHL**
                                       )
12             Defendants.             )
                                       )
13 _____ )

14   **DECLARATION OF CHARLES E. PIEHL IN RESPONSE TO MINUTE ORDER**

15        I, Charles E. Piehl, declare as follows:

16        1.     I am the custodian of records for Prenda Law Inc.

17        2.     On February 23, 2012, the Court ordered the filing of this declaration.

18        3.     On information and belief, the attached Exhibit A accurately reflects the records kept

19 by Prenda Law Inc. as of February 24, 2012.

20        4.     I declare under penalty of perjury that the foregoing is true and correct based on my

21 own personal knowledge, except for those matters stated on information and belief, and those

22 matters I believe to be true. If called upon to testify, I can and will competently testify as set forth

23 above.

24

25     **DATED:  February 24, 2012**

26

27                              By:  _____

28

# EXHIBIT A

1)    The date that Plaintiff's counsel served subpoenas on each ISP and the date the ISP responded.

| ISP | Issued | Response |
|---|---|---|
| Advanced Colocation | 8/5/11 | |
| Covad Communications Co. | 8/5/11 | |
| AT&T Internet Services | 8/5/11 | 11/15/11 |
| Color Broadband | 8/5/11 | 8/18/11 |
| Sonic | 8/5/11 | |
| Charter Communications | 8/5/11 | 11/15/11 |
| Comcast Cable Communications | 8/5/11 | 10/10/11 |
| Frontier Communications of America | 8/5/11 | |
| Sprint PCS | 8/5/11 | |
| Unwired Broadband | 8/5/11 | 8/18/11 |
| Black Oak Computers | 8/5/11 | 9/26/11 |
| Wave Broadband | 8/5/11 | 10/24/11 |
| Clearwire US | 8/5/11 | |
| Verizon Online | 8/5/11 | |
| Surewest Broadband | 8/5/11 | |
| Cox Communications | 8/5/11 | 11/28/11 |

2)    The IP addresses for which Plaintiff's counsel has made a settlement offer and how that offer was communicated, e.g. by mail, phone, or email.  The movants (for motions to quash) and objectors to whom Plaintiff's counsel has made a settlement offer and how that offer was communicated.

| Status | IP | Status | IP | Status | IP |
|---|---|---|---|---|---|
| USMail | 67.121.209.48 | USMail | 71.202.113.106 | USMail | 98.208.108.119 |
| USMail | 66.215.158.202 | USMail | 76.127.112.56 | USMail | 98.182.27.239 |
| USMail | 68.101.114.52 | USMail | 24.6.249.176 | USMail | 98.207.248.39 |
| USMail | 68.113.62.22 | USMail | 67.166.151.220 | USMail | 98.234.59.149 |
| USMail | 67.181.128.221 | USMail | 67.180.246.80 | USMail | 24.4.119.18 |
| USMail | 69.107.102.11 | USMail | 76.14.29.230 | USMail | 24.6.73.58 |
| USMail | 64.203.113.177 | USMail | 76.254.41.180 | USMail | 174.65.129.8 |
| USMail | 67.161.66.97 | USMail | 24.23.6.73 | USMail | 76.126.155.41 |
| USMail | 69.108.96.77 | USMail | 71.198.194.113 | USMail | 76.126.66.211 |
| USMail | 99.183.240.55 | USMail | 72.211.231.103 | USMail | 71.204.161.2 |
| USMail | 98.210.25.174 | USMail | 72.197.231.3 | USMail | 76.200.129.112 |
| USMail | 98.207.38.44 | USMail | 24.4.144.239 | USMail | 70.181.85.58 |
| USMail | 68.4.128.139 | USMail | 71.198.158.39 | USMail | 71.202.249.178 |
| USMail | 68.5.188.159 | USMail | 72.220.42.29 | USMail | 74.213.246.188 |
| USMail | 69.227.70.219 | USMail | 76.230.233.239 | USMail | 98.192.186.87 |
| USMail | 69.107.91.219 | USMail | 24.23.222.237 | USMail | 99.183.242.47 |
| USMail | 76.20.11.145 | USMail | 209.237.232.57 | USMail | 98.176.78.121 |
| USMail | 71.195.97.154 | USMail | 108.81.168.247 | USMail | 99.24.161.31 |
| USMail | 72.220.176.44 | USMail | 24.180.49.171 | USMail | 98.234.38.72 |
| USMail | 76.126.36.154 | USMail | 24.5.38.201 | USMail | 98.210.218.152 |
| USMail | 76.103.48.164 | USMail | 98.207.183.169 | USMail | 98.238.203.2 |
| USMail | 24.5.13.184 | USMail | 24.205.30.192 | USMail | 99.183.243.142 |
| USMail | 68.127.118.133 | USMail | 67.180.56.26 | USMail | 98.176.15.188 |
| USMail | 68.5.122.173 | USMail | 68.126.204.146 | USMail | 98.248.213.208 |
| USMail | 68.7.130.203 | USMail | 68.111.244.226 | USMail | 99.41.79.188 |
| USMail | 68.8.57.53 | USMail | 68.105.66.166 | USMail | 67.169.107.114 |
| | | USMail | 72.197.43.207 | USMail | 67.187.248.194 |

*In cases where a motion to quash was filed.*

| Status | IP |
|---|---|
| USMail | 71.139.12.128 |

USMail  71.83.208.158

**3)**     **A list of ISPs not complying with Magistrate Judge Lloyd's expedited discovery order, and for which IP addresses the ISP is not complying.  Include the reason, if any, given by the ISP for not complying.**

| ISP | IP Addresses | Reason |
| --- | --- | --- |
| Advanced Colocation | ALL | None provided |
| Black Oak Computers | 66.160.133.102 | Two Subpoenas issued, one completed, the other no response, no reason provided |
| Clearwire US | ALL | None provided |
| Covad Communications Co. | ALL | None provided |
| Frontier Communications of America | ALL | None provided |
| Sonic | ALL | None provided |
| Sprint PCS | ALL | None provided |
| Surewest Broadband | ALL | None provided |
| Verizon Online | ALL | None provided |

**4)**     **A list of ISPs not complying with a subpoena, and for which IP addresses the ISP is not complying.  Include the reason, if any, given by the ISP for not complying.**

| ISP | IP Addresses | Reason |
| --- | --- | --- |
| Advanced Colocation | ALL | None provided |
| Black Oak Computers | 66.160.133.102 | Two Subpoenas issued, one completed, the other no response, no reason provided |
| Clearwire US | ALL | None provided |
| Covad Communications Co. | ALL | None provided |
| Frontier Communications of America | ALL | None provided |
| Sonic | ALL | None provided |
| Sprint PCS | ALL | None provided |
| Surewest Broadband | 0 | None provided |
| Verizon Online | 0 | None provided |

**5)**     **A list of the ISPs for which there is a pending motion to quash.**
AT&T, COMCAST, CHARTER & COX

**6)**     **Whether, when, and by what means Plaintiff's counsel has contacted John Doe 134, the movant in ECF No. 25.**
Plaintiff's counsel has not attempted to contact the unidentified individual referred to by the Court as "John Doe 134."

**7)**     **Whether, when, and by what means Plaintiff's counsel has contacted or attempted to contact Messrs. Ferlito and Smith.**
Plaintiff's counsel attempted to contact Mr Ferlito by U.S mail.  Plaintiff's counsel attempted to contact Mr. Smith by U.S. mail.

**8)**     **A list of the IP addresses for which Plaintiff's counsel received subpoena returns and whether the ISP provided all the categories of information requested by the subpoena.  If the ISP did not provide all categories of information, identify which categories of information were not provided.**

| IP Address | Missing | IP Address | Missing | IP Address | Missing |
| --- | --- | --- | --- | --- | --- |
| | | | email | 76.200.129.112 | Phone, email |
| 68.126.204.146 | Phone, email | 69.107.91.219 | Phone, email | 76.254.41.180 | Phone, email |
| 68.127.118.133 | Phone, email | 69.108.96.77 | Phone | | |
| | | 69.227.70.219 | Phone | 99.183.240.55 | Phone, email |
| 69.107.102.11 | Phone, | 71.139.12.128 | Email | | |

| | | | | | |
|---|---|---|---|---|---|
| 99.183.242.47 | Phone, email | 24.5.13.184 | Email | 76.126.66.211 | Email |
| 99.183.243.142 | Phone, email | 67.161.66.97 | Email | 98.192.186.87 | Email |
| | | 67.166.151.220 | Email | 98.207.248.39 | Email |
| 99.24.161.31 | Phone, email | 67.169.107.114 | Email | 98.208.108.119 | Email |
| | | 67.180.56.26 | Email | 98.210.218.152 | Email |
| 99.41.79.188 | Phone | 67.181.128.221 | Email | 98.210.25.174 | Email |
| 209.237.232.57 | Phone | 67.187.248.194 | Email | 98.234.128.170 | Email |
| 68.113.62.22 | Email | 71.198.158.39 | Email | 98.234.38.72 | Email |
| 74.213.246.188 | Email | 71.202.113.106 | Email | 98.234.59.149 | Email |
| 24.23.222.237 | Email | 71.202.249.178 | Email | 98.248.213.208 | Email |
| 24.23.6.73 | Email | 76.103.48.164 | Email | 68.101.114.52 | Email |
| 24.4.144.239 | Email | 76.126.155.41 | Email | 72.197.231.3 | Phone, email |
| | | 76.126.36.154 | Email | | |

**9)** A list of the BitTorrent copyright infringement cases involving multiple joined John Doe Defendants filed Plaintiff's counsel's law firm or predecessor firm in federal court. Identify the case by name, case number, court, and filing date. For each case, indicate how many Doe Defendants were actually served.

Although our records indicate that we have filed suits against individual copyright infringement defendants, our records indicate that no defendants have been served in the below-listed cases.

| Case Name | Case Number | Court | Filing date |
|---|---|---|---|
| Lightspeed Media Corporation v. Does 1-9 | 4:11-cv-02261 | ND CA | 5/6/11 |
| MCGIP, LLC v. Does 1-9 | 3:11-cv-02262 | ND CA | 5/6/11 |
| CP Productions, Inc. v. Does 1-300 | 1:10-cv-06255 | ND IL | 9/29/10 |
| Future Blue, Inc. v. Does 1-300 | 1:10-cv-06256 | ND IL | 9/29/11 |
| First Time Videos LLC v. Does 1-500 | 1:10-cv-06254 | ND IL | 9/29/11 |
| Hard Drive Productions, Inc.v. Does 1-100 | 1:10-cv-05606 | ND IL | 9/2/10 |
| Lightspeed Media Corporation v. Does 1-100 | 1:10-cv-05604 | ND IL | 9/2/10 |
| Millennium TGA, Inc. v. Does 1-100 | 1:10-cv-05603 | ND IL | 9/2/10 |
| In the Matter Of a Petitition By Ingenuity13 LLC | 2:11-mc-00084 | ED CA | 10/28/11 |
| Pacific Century International Ltd, v. Does 1-101 | 4:11-cv-02533 | ND CA | 5/25/11 |
| Boy Racer Inc. v. Does 1-10 | 1:11-cv-00592 | SD OH | 8/26/11 |
| Hard Drive Productions, Inc. v. Does 1-10 | 1:11-cv-02980 | ND IL | 5/4/11 |
| Boy Racer Inc. v. Does 1-10 | 3:11-cv-00492 | WD KY | 8/31/11 |
| CP Productions, Inc. v. Does 1-12 | 3:11-cv-02259 | ND CA | 5/6/11 |
| Hard Drive Productions, Inc. v. Does 1-11 | 1:11-cv-23033 | SD FL | 8/23/11 |
| Hard Drive Productions, Inc. v. Does 1-12 | 1:11-cv-00595 | SD OH | 8/26/11 |
| MCGIP, LLC v. Does 1-14 | 1:11-cv-02887 | ND IL | 4/29/11 |
| CP Productions, Inc. v. Does 1-14 | 1:11-cv-22204 | SD FL | 6/17/11 |
| Hard Drive Productions, Inc. v. Does 1-14 | 1:11-cv-02981 | ND IL | 5/4/11 |
| Pacific Century International LTD v. Does 1-14 | 1:11-cv-03118 | ND IL | 5/10/11 |
| Boy Racer Inc. v. Does 1-17 | 1:11-cv-05416 | ND IL | 8/10/11 |
| MCGIP, LLC v. Does 1-316 | 1:10-cv-06677 | ND IL | 10/15/10 |
| Hard Drive Productions, Inv. v. Does 1-16 | 1:11-cv-23064 | SD FL | 8/25/11 |
| Hard Drive Productions, Inc. v. Does 1-16 | 1:11-cv-03108 | ND IL | 5/10/11 |
| VPR Internationale v. Does 1-17 | 4:11-cv-01494 | ND CA | 3/28/11 |
| First Time Videos LLC v. Does 1-18 | 4:11-cv-00069 | SD IN | 6/14/11 |
| MCGIP, LLC v. Does 1-17 | 3:11-cv-50062 | ND IL | 3/9/11 |
| Boy Racer Inc. v. Does 1-17 | 1:11-cv-03097 | ND IL | 5/9/11 |
| VPR International v. Does 1-1017 | 2:11-cv-02068 | ND IL | 3/8/11 |
| Hard Drive Productions, Inc. v. Does 1-118 | 4:11-cv-01567 | ND CA | 3/3/11 |
| Hard Drive Productions, Inv. v. Does 1-18 | 1:11-cv-23032 | SD FL | 8/23/11 |

| | | | |
|---|---|---|---|
| MCGIP, LLC v. Does 1-18 | 3:11-cv-01495 | ND CA | 3/28/11 |
| Pink Lotus Entertainment LLC v. Does 1-20 | 1:11-cv-03048 | ND IL | 5/6/11 |
| MCGIP, LLC v. Does 1-20 | 1:11-cv-04486 | ND IL | 7/1/11 |
| Millennium TGA, inc. v. Does 1-21 | 3:11-cv-02258 | ND CA | 5/6/11 |
| MCGIP, LLC v. Does 1-21 | 4:11-cv-01783 | ND CA | 4/12/11 |
| Hard Drive Productions, Inc. v. Does 1-21 | 4:11-cv-00059 | SD IN | 5/20/11 |
| Hard Drive Productions, Inv. v. Does 1-20 | 1:11-cv-22208 | SD FL | 6/17/11 |
| AF Holdings LLC v. Does 1-20 | 3:11-cv-00491 | WD KY | 8/31/11 |
| Millennium TGA, inc. v. Does 1-21 | 5:11-cv-01739 | ND CA | 4/8/11 |
| Boy Racer Inc. v. Does 1-23 | 4:11-cv-00070 | SD IN | 6/14/11 |
| First Time Videos LLC v. Does 1-23 | 1:11-cv-05417 | ND IL | 8/10/11 |
| Boy Racer Inc. V. Does 1-22 | 1:11-cv-02984 | ND IL | 5/4/11 |
| MCGIP, LLC v. Does 1-24 | 1:11-cv-04488 | ND IL | 7/1/11 |
| Hard Drive Productions Inc. v. Does 1-25 | 1:11-cv-03864 | ND IL | 6/7/11 |
| Openmind Solutions, Inc. v. Does 1-2,925 | 3:11-cv-00092 | SD IL | 2/2/11 |
| MCGIP, LLC v. Does 1-24 | 1:11-cv-02985 | ND IL | 5/4/11 |
| Hard Drive Productions, Inc. v. Does 1-24 | 1:11-cv-02829 | ND IL | 4/27/11 |
| MCGIP LLC v. Does 1-26 | 5:11-cv-03679 | ND CA | 7/27/11 |
| Hard Drive Productions, Inc. v. Does 1-27 | 1:11-cv-03863 | ND IL | 6/7/11 |
| First Time Videos LLC v. Does 1-27 | 1:11-cv-02890 | ND IL | 4/29/11 |
| Pacific Century International Ltd, v. Does 1-129 | 5:11-cv-03681 | ND CA | 7/27/11 |
| First Time Videos LLC  v. Does 1-28 | 1:11-cv-02982 | ND IL | 5/4/11 |
| MCGIP LLC v. Does 1-30 | 5:11-cv-03680 | ND CA | 7/27/11 |
| Hard Drive Productions, Inv. v. Does 1-130 | 4:11-cv-03826 | ND CA | 8/3/11 |
| AF Holdings LLC v. Does 1-29 | 0:11-cv-01794 | D MN | 7/6/11 |
| Hard Drive Productions, Inc. v. Does 1-30 | 1:11-cv-22102 | SD FL | 6/9/11 |
| Pacific century International LTD v. Does 1-31 | 1:11-cv-09064 | ND IL | 12/21/11 |
| Hard Drive Productions, Inv. v. Does 1-33 | 4:11-cv-03827 | ND CA | 8/3/11 |
| Hard Drive Productions, Inv. v. Does 1-32 | 1:11-cv-22206 | SD FL | 6/17/11 |
| MCGIP, LLC v. Does 1-32 | 1:11-cv-22210 | SD FL | 6/17/11 |
| Pacific Century International LTD v. Does 1-34 | 1:11-cv-03857 | ND IL | 6/7/11 |
| Hard Drive Productions, Inc. v. Does 1-35 | 1:11-cv-03866 | ND IL | 6/7/11 |
| Boy Racer Inc v. Does 1-34 | 1:11-cv-23035 | SD FL | 8/23/11 |
| AF Holdings LLC v. Does 1-135 | 4:11-cv-03336 | ND CA | 7/7/11 |
| Bubble Gum Productions, LLC v. Does 1-37 | 1:12-cv-00595 | ND IL | 1/26/12 |
| First Time Videos LLC  v. Does 1-37 | 4:11-cv-01675 | ND CA | 4/6/11 |
| Openmind Solutions, Inc. v. Does 1-39 | 3:11-cv-03311 | ND CA | 7/6/11 |
| First Time Videos LLC v. Does 1-541 | 1:11-cv-02031-RLW | DC | 11/15/11 |
| Hard Drive Productions, Inc. v. Does 1-42 | 3:11-cv-01956 | ND CA | 4/22/11 |
| First Time Videos LLC v. Does 1-43 | 1:11-cv-09066 | ND IL | 12/21/11 |
| MCGIP, LLC v. Does 1-44 | 1:11-cv-03098 | ND IL | 5/9/11 |
| Pacific Century International LTD v. Does 1-44 | 1:11-cv-04825 | ND IL | 7/18/11 |
| Hard Drive Productions, Inc. v. Does 1-44 | 1:11-cv-02828 | ND IL | 4/27/11 |
| Pink Lotus Entertainment LLC v. Does 1-46 | 5:11-cv-02263 | ND CA | 5/6/11 |
| First Time Videos LLC v. Does 1-46 | 3:11-cv-03822 | ND CA | 8/3/11 |
| Hard Drive Productions, Inc v. Does 1-46 | 3:11-cv-01959 | ND CA | 4/22/11 |
| Pacific Century International, LTD v. Does 1-48 | 3:11-cv-03823 | ND CA | 8/3/11 |
| Hard Drive Productions, Inc. v. Does 1-48 | 3:11-cv-01957 | ND CA | 4/22/11 |
| Hard Drive Productions, Inc. v. Does 1-48 | 1:11-cv-09062 | ND IL | 12/21/11 |
| MCGIP, LLC v. Does 1-49 | 5:11-cv-01801 | ND CA | 4/13/11 |
| MCGIP, LLC v. Does 1-149 | 4:11-cv-02331 | ND CA | 5/11/11 |
| Hard Drive Productions, Inc. v. Does 1-51 | 1:11-cv-05414 | ND IL | 8/10/11 |
| Boy Racer Inc v. Does 2-52 | 5:11-cv-02834 | ND CA | 6/14/11 |
| Boy Racer Inc. v. Does 1-52 | 5:11-cv-02329 | ND CA | 5/11/11 |
| Hard Drive Productions, Inc. v. Does 1-53 | 3:11-cv-02330 | ND CA | 5/11/11 |
| Pink Lotus Entertainment LLC v. John Does 1-53 | 1:11-cv-22103 | SD FL | 6/9/11 |

| | | | |
|---|---|---|---|
| MCGIP LLC v. Does 1-55 | 3:11-cv-03312 | ND CA | 7/6/11 |
| Hard Drive Productions, Inv. v. Does 1-55 | 1:11-cv-02798 | ND IL | 4/27/11 |
| Hard Drive Productions, Inc. v. Does 1-58 | 4:11-cv-02537 | ND CA | 5/25/11 |
| AF Holdings LLC v. Does 1-1,058 | 1:12-cv-00048 | DC | 1/11/12 |
| Boy Racer Inc v. Does 1-60 | 3:11-cv-01738 | ND CA | 4/8/11 |
| AF Holdings LLC v. Does 1-62 | 1:11-cv-00593 | SD OH | 8/26/11 |
| AF Holdings LLC v. Does 1-162 | 1:11-cv-23036 | SD FL | 8/23/11 |
| First Time Videos LLC v. Does 1-63 | 1:11-cv-03837 | ND IL | 6/6/11 |
| MCGIP, LLC v. Does 1-1,164 | 1:10-cv-07675 | ND IL | 12/2/10 |
| Hard Drive Productions, Inv. v. Does 1-166 | 5:11-cv-03682 | ND CA | 7/27/11 |
| Openmind Solutions, Inc. v. Does 1-565 | 1:11-cv-01883 | DC | 10/25/11 |
| Hard Drive Productions, Inc.v. Does 1-66 | 5:11-cv-03005 | ND CA | 6/17/11 |
| Boy Racer Inc v. Does 2-71 | 5:11-cv-02833 | ND CA | 6/14/11 |
| Boy Racer Inc. v. Does 1-71 | 5:11-cv-01958 | ND CA | 4/22/11 |
| Heartbreaker Productions, Inc. v. Does 1-71 | 1:11-cv-02860 | ND IL | 4/28/11 |
| Boy Racer Inc. v. Does 1-73 | 3:11-cv-02534 | ND CA | 5/25/11 |
| First Time Videos LLC v. Does 1-76 | 1:11-cv-03831 | ND IL | 6/6/11 |
| Hard Drive Productions, Inc. v. Does 1-80 | 5:11-cv-02535 | ND CA | 5/25/11 |
| Bubble Gum Productions, LLC v. Does 1-80 | 1:12-cv-20367 | SD FL | 1/30/12 |
| Hard Drive Productions, Inv. v. Does 1-84 | 5:11-cv-03648 | ND CA | 7/26/11 |
| Pacific Century International LTD v. Does 1-87 | 3:11-cv-02915 | ND CA | 6/14/11 |
| First Time Videos LLC v. Does 1-186 | 3:11-cv-03310 | ND CA | 7/6/11 |
| Hard Drive Productions, Inc v. Does 1-87 | 3:11-cv-02333 | ND CA | 5/11/11 |
| Hard Drive Productions, Inc v. Does 1-188 | 3:11-cv-01566 | ND CA | 3/31/11 |
| Hard Drive Productions, Inc v. Does 1-87 | 5:11-cv-03004 | ND CA | 6/17/11 |
| Hard Drive Productions, Inv. v. Does 1-90 | 5:11-cv-03825 | ND CA | 8/3/11 |
| First Time Videos LLC v. Does 1-294 | 3:11-cv-02916 | ND CA | 6/14/11 |
| Hard Drive Productions, Inv. v. Does 1-1,495 | 1:11-cv-01741 | DC | 9/27/11 |
| AF Holdings LLC v. Does 1-96 | 3:11-cv-03335 | ND CA | 7/7/11 |
| AF Holdings LLC v. Does 1-97 | 4:11-cv-03067 | ND CA | 6/21/11 |
| Boy Racer Inc. v. Does 1-98 | 3:11-cv-02536 | ND CA | 5/25/11 |