**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AF HOLDINGS LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case : 1:12-cv-00048** |
| | ) | |
| DOES 1 – 1058, | ) | **Judge : Hon. Beryl A. Howell** |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO BRIEF OF *AMICUS CURIAE* ELECTRONIC FRONTIER FOUNDATION

The *Amicus Curiae* Electronic Frontier Foundation, joined by the American Civil Liberties Union of the Nation's Capital and the American Civil Liberties Union (collectively the "EFF"), ask this Court to grant a motion to quash filed by certain nonparty Internet service providers ("ISPs"). (ECF No. 24.) Just as the ISPs, the EFF does not discuss, much less analyze, the legal standard for quashing a nonparty subpoena. (*See generally id.*) Indeed, the phrase "undue burden" appears only twice in the EFF's entire twenty-two page brief. (*Id.*) Instead, the EFF simply revisits the same worn arguments regarding personal jurisdiction, joinder and the First Amendment that it has been raising since as far back as 2004. *Compare* Memorandum of Amici Curiae, *Sony Music Entertainment, Inc. et al., v. Does 1-40*, No. 04-00473 (S.D.N.Y. Apr. 7, 2004) *with* Brief of Amici Curiae, ECF No. 24. If these arguments had intrinsic merit, the EFF would long ago have been able to put them to rest. Plaintiff responds to each of the EFF's arguments in their respective order of appearance.

## ARGUMENT

### I.    The EFF's Disdain for Copyright Infringement Litigation

The EFF urges the Court to quash Plaintiff's subpoenas on the grounds that there is a large and growing problem of mass copyright litigation.  (ECF No. 24 at 2.) This argument suggests its own rebuttal. Without a large and growing problem of copyright infringement, there could not be an increasing level of copyright infringement litigation. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 928–29 (2005) (citing the concern that "digital distribution of copyrighted material threatens copyright holders as never before.") There is nothing inherently wrong with copyright infringement litigation—except, of course, from the perspective of the infringer.

The EFF's core concern with so-called mass copyright litigation appears to be the prospect of unfair settlements. (ECF No. 24 at 2-4.) However, the EFF's purported indicia of unfair settlements, namely "the threat of an award of statutory damages and attorney's fees, the ignorance of those sued about their potential defenses, and the stigma that is associated with downloading pornographic movies" are independent of the number of Doe Defendants in a given suit. (*Id.*)

A more fundamental problem with the EFF's indicia, though, is that they are unsubstantiated. For example, the EFF's portrayal of the Doe Defendants as "ignorant" is both patronizing and baseless. Court dockets nationwide are replete with examples of Doe Defendants retaining counsel and asserting their rights. *See, e.g., Call of the Wild Movie, LLC v. Does 1-1,062*, No. 10-455 (D.D.C. 2011), ECF No. 32, 33, 51 (filing of motions to quash by Doe Defendants represented by counsel); *Seth Abrahams v. Hard Drive Productions, et al.*, No. 12-1006 (N.D. Cal. Feb. 28, 2012), ECF No. 1 (bringing declaratory judgment action); *Boy Racer v. John Does 1-34*, No. 11-23035 (S.D. Fla. Jan. 17, 2012), ECF No. 13 (filing of motions to

dismiss, to sever, for a protective order and to quash by an attorney for a putative defendant); *Hard Drive Productions, Inc. v. Does 1-55*, No. 11-2798 (N.D. Ill. Oct. 19, 2011), ECF No. 25 (filing of motion to compel brought by attorney regarding copyright registration); *Third Degree Films, Inc. v. John Does 1-259*, No. 11-570 (N.D. Fla. Feb. 16, 2012), ECF No. 27-1 (notice brought by an attorney regarding a copyright attorney's unauthorized practice of law, resulting in the stay of 27 copyright infringement cases cases). The adversary process is alive and well in BitTorrent-related copyright infringement lawsuits.

Moreover, the Doe Defendants can hardly be described as "ignorant." Take, for instance, Seth Abrahams, the (former) Doe Defendant identified in the EFF's brief. (ECF No. 24 at 3.) Mr. Abrahams' online resume paints a picture of an individual who is anything but "ignorant." Seth Jay Abrahams—Resume, http://www.postmodern.com/~sja/resume.html (last visited Mar. 21, 2012). His work experience includes developing UNIX device drivers for the advanced telecommunications program at Lawrence Livermore National Laboratory, developing and maintaining a Fibre Channel device driver for the Hewlett-Packard Corporation and managing the RAS and Diagnostic group for Sun Microsystems. (*Id.*) In response to a copyright lawsuit, Mr. Abrahams retained counsel and is now actively litigating Plaintiff's claims. *Seth Abrahams v. Hard Drive Productions, et al.*, No. 12-1006 (N.D. Cal. Feb. 28, 2012). Mr. Abrahams is an obvious counterfactual to the EFF's "ignorant" Doe portrayal.

It bears mentioning that the EFF's interests are not aligned with those of the Doe Defendants. A Doe Defendant who is guilty of a meritorious copyright infringement claim has a strong incentive to resolve the claims quickly and inexpensively. It is easy for the EFF to second-guess private settlements when it is not the one faced with defending a copyright infringement lawsuit. Plaintiff wonders if the Doe Defendants appreciate the EFF's efforts to have Plaintiff put

them through a trial instead of resolving the claim at the outset. (ECF No. 24 at 4.) Plaintiff also wonders if the Doe Defendants appreciate the EFF's suggestion that Plaintiff is settling its claim for an unfairly low amount of money. (*Id.* at 2.) The EFF's hollow claims of unfair settlements are contradicted by reference to court dockets nationwide and the EFF's own examples.

## II.   <u>Personal Jurisdiction</u>

Plaintiff responds to the EFF's personal jurisdiction arguments in their respective order of appearance in the EFF's memorandum of points and authorities.

### A.  Plaintiff is not required to plead personal jurisdiction.

The EFF begins by arguing that Plaintiff is required to establish in its complaint that this Court has personal jurisdiction over the putative defendants. (ECF No. 24 at 5.) ("AF Holdings insists that it need not even plead, much less prove, that this Court has personal jurisdiction at this juncture. AF Holdings is wrong.") For such an emphatic statement, one would expect citations to supporting authority. The EFF does not provide any. (*Id.*) On the contrary, the U.S. Court of Appeals for the District of Columbia has spoken directly on this issue. *See Caribbean Broadcasting System v. Cable & Wireless*, 148 F.3d 1080, 1090 (D.C. Cir. 1998) ("To be sure, [the plaintiff] had no obligation to make specific allegations relevant to personal jurisdiction in its complaint because lack of personal jurisdiction is an affirmative defense and so must be raised by the defendant. . . . [Plaintiff's] obligation to make some allegations relating to personal jurisdiction arose, therefore, only after [the defendant] had filed its motion to dismiss and supporting affidavit.") It is hard to believe that the EFF is unaware of this decision, as they cite to it in their brief—for the opposite proposition, however. (ECF No. 24 at 5, 7.)

The EFF next argues, "[t]he Due Process Clause imposes on every plaintiff the burden of establishing personal jurisdiction." (ECF No. 24 at 5.) Once again, the EFF does not provide

supporting authority. (*Id.*) Nor does the EFF specify which Due Process Clause they are referring to: the Due Process Clause of the Fifth Amendment or the Due Process Clause of the Fourteenth Amendment. (*Id.*) The EFF's subsequent citations to *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980) and *International Shoe Co. v. Washington,* 326 U.S. 310 (1945), both of which were decided under the Fourteenth Amendment, suggest that the EFF is arguing that that Due Process Clause of the Fourteenth Amendment imposes a personal jurisdiction pleading requirement. Even if this were true—and it certainly is not—it would not matter here because in federal question cases, such as copyright infringement suits it is the Fifth Amendment (not Fourteenth Amendment) Due Process Clause that controls. *See Stabilisierungsfonds Fur Wein et al. v. Kaisar Stuhl Wine Distributors Pty. Ltd., et al,* 647 F.2d 200 (D.D.C. 1981) ("In United States jurisprudence, the outer boundaries of a court's authority to proceed against a particular person or entity is set for federal tribunals by the due process clause of the Fifth Amendment and for the state courts by the due process clause of the Fourteenth Amendment.")

The EFF then switches gears and states that "jurisdictional discovery is granted only where the requesting party can support 'at least a good faith belief that discovery will enable it to show that the court has personal jurisdiction over the defendant.'" (ECF No. 24 at 5.) While the EFF correctly states the legal standard for jurisdictional discovery, it misses the salient point: Plaintiff is not requesting jurisdictional discovery. Requests for jurisdictional discovery are made in response to motions to dismiss for lack of personal jurisdiction brought by named and served defendants. Fed. R. Civ. P. 12(b); *see also Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998).

Unsurprisingly, each of the cases cited by the EFF in support of its jurisdictional discovery argument involve requests by plaintiffs for discovery to aid in responding to motions

to dismiss for lack of personal jurisdiction brought by named and served defendants. *Id.* ("CBS's obligation to make some allegations relating to personal jurisdiction arose, therefore, only after CCC [the defendant] had filed its motion to dismiss and supporting affidavit."); *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.,* 638 F. Supp. 2d 1, 5-6 (D.D.C. 2009) (denying a jurisdictional discovery request that was brought as a result of the defendant properly moving to dismiss the plaintiff's complaint for lack of personal jurisdiction); *FC Inv. Grp. LC v. IFX Mkts. Ltd.,* 529 F.3d 1087, 1089-91 (D.C. Cir. 2008) (affirming the denial of a jurisdictional discovery request that was brought as a result of the defendant properly moving to dismiss the plaintiff's claim for lack of personal jurisdiction). Because no motion to dismiss the case for lack of personal jurisdiction has been brought by a Defendant in the present case, Plaintiff is not required to support its personal jurisdiction claims through jurisdictional discovery. The EFF's arguments based on jurisdictional discovery are, therefore, moot.

Finally, the EFF encourages the Court to raise the issue of personal jurisdiction *sua sponte*. (ECF No. 24 at 5-6.) However, this Circuit has made clear that raising a defense for lack of personal jurisdiction is the prerogative of a named and served defendant. *Anger v. Revco Drug Co.*, 791 F.2d 956 (D.C. Cir. 1986) ("[T]he Federal Rules of Civil Procedure indicate that personal jurisdiction is a matter to be raised by motion or responsive pleading, not by the court *sua sponte*.") The EFF cites to two cases for the proposition that "jurisdiction is always an antecedent question that must be addressed first in a federal court." (ECF No. 24 at 5-6.) A review of these cases, though, quickly reveals that they relate to subject matter jurisdiction, not personal jurisdiction. Plaintiff will assume (charitably) that this was just an oversight on the EFF's part. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998); *Al–Zahrani v. Rodriguez*, No. 10–5393, 2012 WL 539370 (D.C. Cir. Feb. 21, 2012).

6

**B.  The EFF's statements regarding geolocation support this Court's assertion of personal jurisdiction over the putative defendants**

The EFF next argues that Plaintiff could have used geolocation to determine that the Court has personal jurisdiction over only "about twenty of the 1,058 Does in this case…." (*Id.* at 6.) This statement has three problems. First, it implies that Plaintiff is required to establish personal jurisdiction in its complaint. This is not correct. *See Caribbean Broadcasting System*, 148 F.3d at 1090. Second, it assumes that geolocation is a litmus test for personal jurisdiction. This is not correct. Allan Erbsen, *Impersonal Jurisdiction*, 60 Emory L.J. 1, 3 (2010) ("Deciphering the Supreme Court's personal jurisdiction jurisprudence requires navigating inconsistent precedents that obscure vexing constitutional questions behind catchphrases and buzzwords….") Finally, under the particular circumstances of this case, the EFF's statements regarding geolocation establish the propriety of this Court's assertion of personal jurisdiction over the putative defendants.

Take, for example, *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd., et al*, 647 F.2d 200 (D.C. Cir. 1981) [hereinafter *SFW*]. In *SFW*, two German plaintiffs filed a trademark infringement claim against an Australian winery, its Australian subsidiary, a New York importer and a District of Columbia liquor store. *Id.* at 201. The U.S. Court of Appeals of the District of Columbia reversed the district court's dismissal of the Australian defendants for lack of personal jurisdiction. *Id.*

In reaching its determination, the Court engaged in a two-part inquiry: 1) whether the exercise of jurisdiction would violate due process; and 2) whether an applicable rule of competence authorized the district court to hale the Australian defendants into the District of Columbia. *Id.* at 203. For the first question the Court found that the Australian defendants' introduction of their wine into the United States market readily satisfied the Fifth Amendment

Due Process' requirements of minimum contacts with the United States as a whole. *Id.*; *see also United Rope Distributors, Incorporated. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534 (7th Cir. 1991) ("When a national court applies national law, the due process clause requires only that the defendant possess sufficient contacts with the United States.")

With respect to the question of competence, the Court found that the district court could haul the Australian defendants into the District of Columbia under, *inter alia*, subsection (a)(4) of the District of Columbia's long-arm statute, which "provides for suit against a nonresident 'who caus[es] tortious injury in the District of Columbia by an act or omission outside the District' so long as the nonresident 'regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.'" *SFW* at 206. The Court rejected the Australian defendants' argument that revenue from their sales in the District of Columbia was insubstantial. *Id.* While the Court acknowledged that in absolute or percentage terms the Australian defendants' revenues from sales in the District of Columbia—a total of $747.20 over four years—may have been insubstantial, the Circuit Court held that the relevant inquiry is whether the "revenue [from sales in District of Columbia] exceeds the state's per capita share of substantial nationally derived revenue." *Id.* Applying this test, the Circuit Court calculated that the District of Columbia's population comprised approximately .5% of the population of the relevant market and that Australian defendants derived 1.3% of their revenue from the District of Columbia. *Id.* at 206 n 14, 15. Because the District of Columbia's share of nationally derived revenue exceeded its proportionate share of the population, the Circuit Court held that the requirements of subsection (a)(4) were satisfied with respect to the Australian defendants. *Id.* at 206.

If the EFF's statements are accurate, then under *SFW* personal jurisdiction over non-resident Doe Defendants would be proper in this case. According to the EFF, "inexpensive geolocation can likely identify the physical location of the computer associated with an Internet Protocol address with very high accuracy." (ECF No. 24 at 1.) Further, the EFF states that "approximately 20 of the 1,058 Doe Defendants 'are found in this District.'" (*Id.*) The first prong of the *SFW* inquiry is whether the putative defendants have minimum contacts with the United States as a whole. *SFW* at 203. The EFF does not appear to dispute that the Does are located in the United States, so the due process prong of the *SFW* test is satisfied.

The competence prong is satisfied under subsection (a)(4) if a putative defendant caused tortious injury in the District of Columbia and did "something more." *Id.* at 206. According to *SFW*, the "something more" aspect is satisfied if a disproportionate amount of the putative Defendants in the swarm are located in the District of Columbia, regardless of whether in absolute or percentage terms the number of Does is insubstantial. *Id.* According to the EFF, the Doe Defendants in this case are located "across the country." (ECF No. 24 at 12.) If the population of the United States is 311 million and the population of the District of Columbia is 618,000, then the District of Columbia represents approximately .2% of the United States population.[1] According to the EFF, 20 of the 1000 defendants—or 2% of the swarm—are located in the District of Columbia. (ECF No. 24 at 1.) Thus, as in *SFW*, a disproportionate amount of tortious injury took place in the District of Columbia, satisfying the "something more" aspect of subsection (a)(4) and the competence prong in general. Ten times more infringing activity occurred in the District than its proportionate share of the population.

---

[1] U.S. Census Bureau, http://quickfacts.census.gov/qfd/states/11000.html (last visited Mar. 21, 2012); (*see also* ECF No. 24-1 ¶ 28.)

To the extent that the EFF accurately describes geolocation, the Doe Defendants can hardly argue that they could not foresee being hauled into the District of Columbia. The EFF's technologist claims that geolocation is ubiquitous, accurate and inexpensive. (ECF No. 24-1 ¶¶ 2, 22-25.) BitTorrent software displays a list of IP addresses involved in the swarm. (*See* screenshot of BitTorrent software display, attached hereto as Exhibit A.) If the EFF is correct, then the Doe Defendants could have used geolocation to determine that they were unlawfully distributing a disproportionate amount of data to and from the District of Columbia. (*Id.*) As the EFF suggests, willful blindness is not a defense. (ECF No. 24 at 7.)

The basis for personal jurisdiction is stronger in this case than it was in *SFW*. In *SFW*, the Australian defendants shipped their wine into the State of New York. *SFW* at 202. Their distributor then distributed the wine throughout the Eastern United States, including into the District of Columbia. *Id.* Here, the non-resident Doe Defendants distributed illegal copies of Plaintiff's work directly into the District of Columbia instead of through a distributor intermediary. Ostensibly, direct distribution into a forum creates a stronger case for personal jurisdiction than indirect distribution. Regardless, Plaintiff is prepared to brief multiple overlapping theories of personal jurisdiction on a properly-raised motion to dismiss for lack of personal jurisdiction brought by an actual party to the case.

### C.  Plaintiff is not arguing that the use of BitTorrent, without more, confers nationwide jurisdiction

The EFF's arguments regarding nationwide jurisdiction employ the straw man rhetorical device. (ECF No. 24 at 7.) Plaintiff is not arguing that the mere use of BitTorrent, without more, allows any federal court to exercise jurisdiction over a defendant. For example, if no members of the swarm or a disproportionately low number of members of the swarm were located in the

District of Columbia, then personal jurisdiction may be more difficult to establish in response to properly raised motion to dismiss.

The EFF revives its attempt to persuade the Court to raise the issue of personal jurisdiction *sua sponte*, citing to *Buchanan v. Manley*, 145 F.3d 386 (D.C. Cir. 1998). However, *Buchanan* stands for the proposition that a district court many not raise the issue of personal jurisdiction *sua sponte*. *Id.* at 387-88 ("As *Anger* makes clear, the district court erred by *sua sponte* dismissing Buchanan's complaint [on the sole ground that the court lacks personal jurisdiction over the defendants or that venue is improper].")

### D.  The EFF's rebuttals to Plaintiff's "new jurisdictional arguments" are not supported by authority

The EFF rebuts Plaintiff's argument that jurisdiction can be achieved through waiver by conceding the point, but arguing that "that says nothing about whether AF Holdings has offered a good faith basis for jurisdiction at outset, as it is required to do." (ECF No. 24 at 11.) If it is true that Plaintiff is not required to establish personal jurisdiction in its complaint, as this Circuit's precedent makes clear, then the basis of the EFF's rebuttal to Plaintiff's argument disappears. *Caribbean Broadcasting System*, 148 F.3d at 1090 ("To be sure, [the plaintiff] had no obligation to make specific allegations relevant to personal jurisdiction in its complaint because lack of personal jurisdiction is an affirmative defense and so must be raised by the defendant.")

The EFF's next rebuttal is aimed at Plaintiff's argument that place of residency is not a dispositive indicator of amenability to personal jurisdiction. (ECF No. 24 at 11.) The EFF states that "if such sheer speculation sufficed, anyone could be sued in any court in the nation, and forced to retain counsel to bring the dispute to the proper arena." (*Id.* at 11-12.) There are two problems with the EFF's rebuttal. First, a defendant may always challenge personal jurisdiction in a local collateral proceeding. *Ellis v. Fortune Seas Ltd.*, 175 F.R.D. 308, 311 (S.D. Ind. 1997).

Second, the EFF's rebuttal is premised on the assumption that a plaintiff is required to establish personal jurisdiction in its complaint, which is incorrect. *Caribbean Broadcasting System*, 148 F.3d at 1090.

The EFF's final rebuttal is aimed at Plaintiff's argument that the subscriber information is relevant regardless of whether the Court ultimately exercises jurisdiction over the subscribers. (ECF No. 13 at 12-13.) The EFF takes two shots at this argument. (ECF No. 24 at 11-12.) First, the EFF claims that the argument is "sheer speculation." (*Id.*) However, the EFF does not describe on what basis they believe the question of relevancy is speculative. (*Id.*) It hardly seems speculative to state that a joint tortfeasor's testimony on the issues of liability and damages will meet the definition of relevancy. Second, the EFF appears to claim that Plaintiff must file a separate motion for discovery of any Doe Defendants who may challenge personal jurisdiction. (ECF No. 24 at 12.) This claim is premised on a misstatement of Plaintiff's argument. Plaintiff is not arguing that the only relevancy of the putative Defendants' identities is the testimony they can provide against the joint tortfeasors. Instead, Plaintiff is merely pointing out that the identities would have relevancy even if a given putative Defendant successfully challenges this Court's exercise of jurisdiction.

## III.    Venue

In this case, the questions of personal jurisdiction and venue are coextensive. *See Columbia Pictures Television v. Krypton Broad. Of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), rev'd on other grounds, *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998); *see also Milwaukee Concrete Studios v. Fjeld Manufacturing Co.*, 8 F.3d 441, 445-47 (7th Cir. 1993). Accordingly, the EFF does not raise any new arguments in its venue section. (ECF No. 24 at 12-13.)

IV.   **Joinder**

The United States Supreme Court has instructed district courts to construe the rules of joinder liberally in order to prevent multiple lawsuits, stating that the joinder of parties is highly encouraged. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."); *Lane v. Tschetter*, No. 05-1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007) (the requirements for permissive joinder are "liberally construed in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive determination of the action.") The overwhelming majority of district courts nationwide in similar BitTorrent copyright infringement lawsuits have followed the Supreme Court's mandate. *See First Time Videos, LLC, v. Does 1-76*, 11-3831 (N.D. Ill. Aug. 16, 2011), ECF No. 38 at *10 ("[I]n any event, findings of misjoinder in such cases are rare. The overwhelming majority of courts have denied as premature motions to sever prior to discovery."); *Imperial Enterprises, Inc. v. Does 1-3,145*, No. 11-0529 (D.D.C. Aug. 30, 2011), ECF No. 43 at *3 ("With regard to the putative defendants' misjoinder argument, the undersigned agrees for several reasons with the other members of this Court that the standard for permissive joinder under Federal Rule of Civil Procedure 20(a)(2) has been satisfied.").

This section consists of two parts. Part I demonstrates that Plaintiff's allegations exhaustively satisfy the Fed. R. Civ. P. 20(a)(2) pleading requirements for permissive joinder. Part II explains that the courts that have found misjoinder at this early stage of the litigation are in the minority and that their reasoning is not consistent with the liberal principles of joinder.

**A. Plaintiff's allegations exhaustively satisfy the Fed. R. Civ. P. 20(a)(2) pleading requirements for permissive joinder**

Joinder of defendants in one action is permitted if: 1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and 2) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2). Further, "[i]n addition to the two requirements of Rule 20 (a)(2), the Court … also considers whether joinder would prejudice any party or result in needless delay." *Call of the Wild Movie*, 770 F.Supp.2d at 342.

**1. Same transaction, occurrence or series of transactions or occurrences**

Claims arise out of the "same transaction or occurrence" if the claims asserted against joinder parties are "logically related." *Disparte v. Corporate Exec. Bd.,* 223 F.R.D. 7, 10 (D.D.C.2004); *Call of the Wild Movie*, 770 F.Supp.2d at 342. Plaintiff's claims share a logical relationship. Here, the logical relationship is that the Doe Defendants comprised and participated in the same group of infringers. In particular, Plaintiff explains how the Defendants must have collaborated together in order to infringe on Plaintiff's copyrighted work. (Compl., ECF No. 1 ¶¶ 5-6.) Plaintiff further explains that every time a Defendant downloads the copyrighted file, they automatically become a source of the file for subsequent Defendants. (*Id.* ¶ 6.) These allegations establish a logical relationship among Plaintiff's claims. *Call of the Wild Movie*, 770 F.Supp.2d at 343 (finding plaintiffs' allegations that: 1) the Doe defendant(s) used BitTorrent; 2) BitTorrent "makes every downloader also an uploader,"; and 3) any peer who has completed a download "is automatically a source for the subsequent peer" to be sufficient to make claims against defendant(s) "logically related.").[2]

---

[2] Some courts have seized upon the fact that Doe Defendants *may* have participated in the swarm at different dates and times to justify their severance decision. However, the Supreme Court has rejected the notion that all "transactions and occurrences" must occur contemporaneously. *Moore v. New York Cotton*

14

Although the putative Defendants in this action—when they are identified, named and served with process—may be able to rebut Plaintiff's allegations, Plaintiff has sufficiently alleged that its claims against the Defendants potentially stem from the same transaction or occurrence. *See Voltage Pictures, LLC v. Does 1-5,000*, No. 10-0873, 2011 WL 1807438 (D.D.C. May 12, 2011) ("While the putative defendants may be able to rebut these allegations at a later date, at this procedural juncture the plaintiff has sufficiently alleged that its claims against the putative defendants potentially stem from the same transaction or occurrence, and are logically related.").

### 2.   Question of law or fact common to all defendants

As to the second prong of 20(a)(2), this suit involves questions of law and fact that are common to all defendant(s). Doe Defendants also share the same questions of law with respect to their copyright infringement, including, but not limited to:

> (A) Whether "copying" has occurred within the meaning of the Copyright Act;
> (B) Whether entering a BitTorrent swarm constitutes a willful act of infringement; and
> (C) Whether, and to what extent, Plaintiff has been damaged by the Doe Defendants' conduct.

Further, this suit involves common questions of fact. By way of example, the methods used "to investigate, uncover, and collect evidence about any infringing activity will be the same as to each Doe Defendant." *First Time Videos, LLC v. Does 1-500*, No. 10-5254, 2011 WL 3498227, at *2 (N.D. Ill. Aug. 9, 2011). Although each putative Defendant may later present different factual and substantive legal defenses, "that does not defeat, at this stage of the proceedings, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B)." *Call of the Wild Movie*, 770 F. Supp. 2d at 344.

---

*Exchange*, 270 U.S. 593, 610 (1926) ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.").

### 3.   Avoiding prejudice and needless delay

At this procedural juncture, joinder will help to avoid prejudice and needless delay for the only party currently in the case, namely Plaintiff. *Call of the Wild Movie*, 770 F. Supp. 2d 332; *First Time Videos, LLC v. Does 1-500*, No. 10-6254 (N.D. Ill. Aug. 9, 2011), ECF No. 151 at *20 ("joinder at this stage is consistent with fairness to the parties and in the interest of convenience and judicial economy . . . .") Some courts have severed BitTorrent copyright infringement cases at the identification discovery stage of the litigation on the ground of conjectural unmanageability. *See, e.g. Boy Racer v. Does 2-52*, 2011 U.S. Dist. Lexis 86746, at *4 (N.D. Cal.) (speculating that "each defendant also will likely have a different defense.") However, such severance is improper at this stage where neither Plaintiff nor the Court even knows how many defendants will actually be served with process. By way of example, in a BitTorrent copyright infringement case filed in the Northern District of Illinois against 28 doe defendant(s), *each* IP address turned out to be associated with the *same* individual. *See First Time Videos, LLC, v. Does 1-28*, No. 11 C 2982 (N.D. Ill. Sept. 26, 2011), ECF No. 15. Had the court in *First Time Videos* severed the case before the plaintiff had completed early discovery, the plaintiff would have unwittingly filed 28 separate copyright infringement actions against the same anonymous individual. This would have resulted in much prejudice and delay.

### B.   The majority view on joinder at the identifying discovery phase of BitTorrent copyright infringement litigation is consistent with the spirit and letter of Fed. R. Civ. P. 20

The cases cited by EFF in support of their misjoinder argument are not applicable to the present case because they materially distinguishable. The decisions in *BMG Music v. Does 1-203*, No. 04-650, 2004 WL 953888 at *1 (E.D. Pa. Apr. 2, 2004), *Laface Records, LLC v. Does 1-38*, 2008 U.S. Dist. LEXIS 14544 (E.D.N.C. 2008), *BMG Music v. Does 1-4*, 2006 U.S. Dist. LEXIS 53237, No. 06-01579 (N.D. Cal. 2006), and *Twentieth Century Fox Film Corp., et al., v.*

*Does 1-12*, No. 04-04862 (N.D. Cal. Nov. 16, 2004), all cited by EFF (ECF No. 24 at 14),

involve different file transfer protocols, different pleadings and different procedural contexts.

Indeed, the plaintiffs in those cases did not allege any collaboration among the defendants, much

less infringement of the *same copyrighted work*. For example, in *BMG Music v. Does 1-4*, Doe

#2 was alleged to have infringed on recordings by MC Lyte, LL Cool J, Mariah Carey and Busta

Rhymes, while Doe #3 was alleged to have infringed on recordings by Ideal, Kelly Price, Mary J.

Blige, Pink, SWV and Usher—no overlap whatsoever. Complaint for Copyright Infringement,

Exhibit A, No. 3:06-cv-01579, ECF No. 1 (alleging only that the defendants committed

violations of the same law by the same means.). Further, the copyrights to the various recordings

were held by a variety of recording companies. *Id*. This stands in stark contrast to Plaintiff's

pleading where it is alleged that Defendants violated a *single* copyright work, belonging to a

*single* Plaintiff, and that the infringers *actually interacted with each other* in a single BitTorrent

swarm. (ECF No. 1.)

     The cases cited by the EFF are further distinguishable because they all involved the

FastTrack, and not the BitTorrent, protocol. Unlike the BitTorrent protocol, FastTrack never had

swarms that required the cooperation and concerted action of many users; it only had individual

file transfers.  Therefore, the plaintiffs in the cases cited by the EFF could only allege violations

of the same law by using the same means. *See, e.g.*, Complaint for Copyright Infringement, ¶ 20,

*LaFace Records*, No. 07-cv-00298, 2007 WL 4717470 (Aug. 8, 2007) ("[E]ach Defendant is

alleged to have committed violations of the same law (e.g., copyright law), by committing the

same acts (e.g., the downloading and distribution of copyrighted sound recordings owned by

Plaintiffs), and by using the same means (e.g., a file-sharing network) that each Defendant

accessed via the same ISP.") Plaintiff's counsel has yet to encounter a severance decision that

addressed the material differences between the allegations in the series of cases cited by the EFF

and the allegations in BitTorrent copyright infringement lawsuits. The cases cited by the EFF in

support of their arguments are neither persuasive nor applicable here.

### C. Courts that have found misjoinder relied on case authority not applicable to the present case and have imposed unduly rigorous joinder pleading requirements to BitTorrent copyright infringement lawsuits

Of the few cases involving severance decisions in BitTorrent copyright infringement

litigation, most have been based on unduly rigorous joinder pleading requirements. For example,

in some decisions courts have indicated that they would require a plaintiff to provide evidence

(at the pleading stage) of actual data transfers among the putative defendants before allowing

joinder. *See, e.g.*, *MCGIP, LLC v. Does 1-149*, 2011 U.S. Dist. Lexis 108109, at *7 (N.D. Cal.)

(finding misjoinder where the plaintiff "has failed to show that any of the 149 Doe defendants

actually exchanged any piece of the seed file with one another."). This standard is unduly

rigorous. According to the Supreme Court, Plaintiff merely needs to show *some* degree of factual

commonality—a rather low hurdle in light of liberal construction afforded to joinder—not map

out in specific detail each interaction among the various defendants. *See United States v.*

*Mississippi*, 380 U.S. 128, 142 (1965) (reversing district court's severance of a defendants where

plaintiff alleged that "registers had acted and were continuing to act as part of a state-wide

system designed to [discriminate].") In a similar fashion, Plaintiff alleged, *inter alia*, that the

putative defendants acted and are continuing to act as part of a system designed to infringe on

one of its copyrighted works. (*See* Compl., ECF No. 1.) The Supreme Court did not require the

plaintiff in *United States v. Mississippi* to catalog each specific interaction among the defendants.

Nor should Plaintiff be required to do so.

## V.  <u>First Amendment</u>

The EFF's First Amendment argument is predicated on convincing this federal Court to ignore the Supremacy Clause of the U.S. Constitution. Specifically, the EFF urges the Court to replace the five-part test from *Sony Music Entm't v. Does 1-40*, 326 F.Supp.2d 556, 564-55 (S.D.N.Y. 2004) with the test outlined in *Dendrite Intern., Inc. v. Doe No. 3*, 775 A.2d 756, 765–66 (N.J. Super. Ct. App. Div. 2001). What the EFF does not tell the Court is that the *Dendrite* test was decided under the New Jersey State Constitution. As the *Dendrite* court itself points out, the right to free speech under the New Jersey Constitution is broader than the First Amendment right against governmental abridgment of speech. 775 A.2d at 765–66. Under the New Jersey State Constitution, the "State right of free speech is protected not only from abridgment by government, but also from unreasonably restrictive and oppressive conduct by private entities." *Id.* (quoting *New Jersey Coalition Against War in the Middle East v. J.M.B. Realty*, 650 A.2d 757, 771 (N.J. 1994)).

Not surprisingly, despite being hailed as a "leading case" by the EFF (ECF No. 24 at 18), the EFF is unable to cite to a single instance of its application in this Circuit. (*See generally id.*) In fact, in the only decision cited to by the EFF for the proposition that courts in this District apply the *Dendrite* test, the Court expressly declined to apply *any* standard. *Sinclair v. TubeSockTedD,* 596 F. Supp. 2d 128, 132 (D.D.C. 2009) ("[t]he Court need not resolve here the precise standard appropriate for determining whether disclosure of anonymous Internet speakers is warranted.") This Court has previously rejected the EFF's request to adopt the *Dendrite* standard. *Call of the Wild Movie*, 770 F.Supp.2d at 350 n 7. The EFF offers no reason to reverse course.

## VI.    <u>Immediate Appeal</u>

The EFF argues that immediate appeal is appropriate. (ECF No. 24 at 19-22.) However, the EFF's application of the legal standard for deciding whether interlocutory appeal is appropriate appears to miss the point that the only outstanding motions in this case are a motion to quash and a motion to compel. (ECF Nos. 7, 8.)  Issues of personal jurisdiction and joinder will only become ripe for adjudication once a named and served defendant raises a defense. *Imperial Enterprises, Inc. v. Does 1-3,145*, No. 11-0529 (D.D.C. Aug. 30, 2011), ECF No. 43 at *8 ("with regard to the putative defendants' jurisdictional, venue, and merits arguments, these positions are without merit because the putative defendants are not named as defendants in this lawsuit, and they may never be named as defendants in this lawsuit."). Until that time, the only relevant issue is whether an ISP has standing to raise personal jurisdiction and joinder defenses on behalf of its subscribers. (ECF No. 13.) Neither the EFF nor the ISPs have been able to point to any difference of opinion nationwide on that issue. (ECF Nos. 8, 12, 21, 26.) As with the ISPs, the EFF simply seeks to win through delay. As time passes, critical forensic information on the various putative Defendants' computers will be destroyed. When this information is destroyed, Plaintiff will lose its opportunity to prove its copyright infringement claims.

## <u>CONCLUSION</u>

No objector in this case disputes whether Plaintiff's copyright infringement claims are meritorious. Moreover, no objector even disputes whether copyright infringement is happening on a massive scale. Plaintiff has not asked the Court to pass judgment on the putative defendants. Instead, Plaintiff is simply trying to find out who infringed on its copyright so that it may move beyond this most preliminary stage of the litigation.

The EFF appears in this case because they are adamantly opposed to copyright laws. Its filing represents a tactic in their broader offensive against copyright enforcement efforts. The EFF is entitled to have an anti-copyright political agenda, but this agenda does not entitle them to usurp the litigation prerogative of the Doe Defendants.

The ISPs appear in this case because it is cheaper and safer for them to be obstructive. By obstructing this Court's order (and similar orders of courts nationwide) the ISPs keep their subscribers happy and continue collecting subscription payments.

Ultimately, however, the motivations of the EFF, the ISPs and even Plaintiff are not important. What is important is the law. The Court is being asked whether the law permits a third-party deponent to object to a valid subpoena on grounds having absolutely no relation to Rule 45. Further, the Court is being asked whether fundamental notions of Due Process allow the the ISPs and the EFF to usurp the litigation prerogative of the putative Defendants. Finally, the Court is being asked whether an undue burden claim requires more than simply repeating the words "undue" and "burden." The answers to these questions seem obvious. No one has presented a valid basis under the law for allowing the ISPs to avoid compliance with Plaintiff's subpoenas.

[intentionally left blank]

Respectfully submitted,

AF Holdings LLC

**DATED**: March 23, 2012

By: /s/ Paul A. Duffy
Paul A. Duffy, Esq. (D.C. Bar Number: IL0014)
Prenda Law Inc.
161 N. Clark St., Suite 3200
Chicago, IL 60601
Telephone: (312) 880-9160
Facsimile:   (312) 893-5677
E-mail: paduffy@wefightpiracy.com
*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 23, 2012, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system.

_/s/ Paul A. Duffy_
PAUL A. DUFFY