UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AF HOLDINGS LLC,

Plaintiff,

v.

DOES 1 – 1,058,

Defendants.

Civil Action No. 12-0048 (BAH)
Judge Beryl A. Howell

## MEMORANDUM OPINION

As in numerous other cases pending in this and other jurisdictions across the country, this case involves a copyright owner's effort to protect a copyrighted work from unknown individuals, who are allegedly illegally copying and distributing the work on the Internet. Plaintiff AF Holdings LLC ("AF Holdings") alleges that 1,058 unknown individuals used a peer-to-peer file-sharing application, called BitTorrent, on their computers to download and distribute the plaintiff's movie, *Popular Demand. See generally* Compl., ECF No. 1.  In support of the Complaint, the plaintiff listed the Internet Protocol ("IP") addresses assigned to the computers allegedly engaged in the unauthorized copying and distribution of the plaintiff's copyrighted movie.  Compl., Ex. A. ("Listed IP Addresses").  Upon authorization from the Court, pursuant to Rule 26(d)(1) of the Federal Rules of Civil Procedure, to seek discovery prior to a conference of the parties otherwise required by Rule 26(f), the plaintiff issued subpoenas to Internet Service Providers ("ISPs") to obtain limited identifying information about the ISPs' customers whose computers were assigned the Listed IP Addresses.  Pending before the Court are two motions: the plaintiff's motion to compel ISP Comcast Cable Communications, LLC ("Comcast") to comply with the plaintiff's subpoena, and a motion to quash the plaintiff's subpoenas filed by four other ISPs:  Bright House Networks, LLC; Cox Communications, Inc.; SBC Internet

Services, Inc., d/b/a AT&T Internet Services; and Verizon Online, LLC (collectively "Movant ISPs").  All of the ISPs argue that the plaintiff's subpoenas should be quashed because the plaintiff's Complaint is procedurally defective.  The Court disagrees.  Consequently, the plaintiff's motion to compel Comcast to comply with the plaintiff's subpoena is GRANTED, and the Movant ISPs' motion to quash the plaintiff's subpoenas is DENIED.  The Movant ISPs further request, in the event the Court requires compliance with the plaintiff's subpoenas, that the Court certify an immediate appeal of the order denying the Movant ISPs' Motion to Quash.  This request is GRANTED.

## I.     BACKGROUND

On January 11, 2012, plaintiff AF Holdings filed a complaint against 1,058 unknown individuals who allegedly used a file-sharing protocol called BitTorrent to infringe illegally the plaintiff's copyright in the motion picture *Popular Demand*.  Compl. ¶¶ 3, 5.  These unknown customers are identified only by the IP addresses assigned by the ISPs to their computers.  *See id.* ¶ 11.  In order to identify these unknown individuals – a prerequisite to determining whether to name them as defendants and proceed with a lawsuit against them – the plaintiff moved for leave to issue subpoenas to ISPs to obtain limited identifying information for the customers associated with the Listed IP Addresses.  Mot. for Leave to Take Discovery Prior to Rule 26(f) Conference, ECF No. 4.  The Court granted this motion, authorizing the plaintiff to obtain "limited information sufficient to identify only the putative Defendants listed in Exhibit A to the Complaint," which included the "name, current and permanent address, telephone number, e-mail address, and Media Access Control (MAC) Address" associated with each Listed IP Address.  Order Granting Pl.'s Mot. Leave to take Expedited Discovery, ECF No. 5 at 1.  The Court's Order further directed the ISPs to provide their customers with a Court-directed notice prior to releasing the affected customers' personal information to the plaintiff.  *Id.* at 2, App. A.

Despite the Court's January 30, 2012 Order authorizing the plaintiff to issue subpoenas to ISPs, Comcast refuses to produce the requested information "[w]ithout a valid court order that recognizes that [the Court] will ultimately have jurisdiction over the unnamed subscribers, [and] whether they may be properly joined."[1]  Pl.'s Mot. Compel Comcast, ECF No. 7, Ex. B, Comcast Objection Letter dated February 16, 2012, at 3.  Comcast's refusal to comply with the subpoena prompted the plaintiff to file a motion to compel, pursuant to Federal Rule of Civil Procedure 45(c)(2)(B)(i), seeking an order directing Comcast to comply with the plaintiff's subpoena for identifying information for the customers using the 400 Listed IP Addresses serviced by Comcast.  Pl.'s Mot. Compel Comcast, ECF No. 7.

Subsequently, the Movant ISPs filed a joint motion to quash the subpoenas directed to them pursuant to the January 30, 2012 Order.  Movant ISPs' Mot. Quash, ECF No. 8.  The Movant ISPs assert that the plaintiff's subpoenas should be quashed, pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iv), because they impose an "undue burden" upon them.  *See* Mem. Supp. Movant ISPs' Mot. Quash, ECF No. 8, at 4-5.  Specifically, the Movant ISPs argue that the "John Does" associated with the Listed IP Addresses are improperly joined in one lawsuit and that "[p]ersonal jurisdiction and venue do not exist in this district over the vast majority of the targeted Does." *Id*. at 1-2.  Thus, because the plaintiff's "underlying action is procedurally defective or Defendants are not subject to suit here," the Movant ISPs argue that "any burden put upon a third-party to identify Defendants is an *undue* burden." *Id.* at 4.

The Movant ISPs recognize that this Court previously denied motions to quash filed by ISPs in other cases involving allegations of illegal infringement of copyrighted works by unknown individuals using a BitTorrent protocol.  *See Call of the Wild Movie, LLC v. DOES 1-*

---

[1] Comcast also apparently refused to comply with the subpoena due to an issue over "inadequate assurance of payment," but that issue was resolved prior to the filing of the plaintiff's motion to compel.  Pl.'s Mot. Compel Comcast, ECF No. 7, at 1.

*1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011) (consolidated opinion denying motions to quash and modify subpoenas that were issued in *Call of the Wild Movie, LLC v. Does 1-1,062*, No. 10-cv-455; *Maverick Entertainment Group, Inc. v. Does 1-4,350*, No. 10-cv-569; and *Donkeyball Movie, LLC v. Does* 1-171, No. 10-cv-1520).  In those cases, this Court explained that considerations of personal jurisdiction and joinder are premature when discovery is sought before the plaintiff has named a defendant and the discovery is targeted to identify unknown individuals associated with the IP addresses for computers, which were used to engage in allegedly illegal infringing activity.  In the event of a consistent ruling in the instant case, the Movant ISPs further request "an order certifying the significant and recurring issues presented here for appeal pursuant to 28 U.S.C. § 1292(b), so that litigants, the ISPs, and the courts may move closer to uniform treatment and disposition" of similar copyright infringement cases. Mem. Supp. Movant ISPs' Mot. Quash, ECF No. 8, at 2.

Following the filing of the plaintiff's motion to compel and the Movant ISPs' motion to quash, the Electronic Frontier Foundation, American Civil Liberties Union Foundation, and American Civil Liberties Union of the Nation's Capital were permitted to file a brief as amici curiae in support of the Movant ISPs' motion to quash.  Minute Order dated Mar. 15, 2012; Mot. Leave to File Brief as Amici Curiae, ECF No. 17.  Like the Movant ISPs and Comcast, amici argue that the plaintiff's instant lawsuit is procedurally defective because the Court most likely lacks personal jurisdiction over a majority of the individuals associated with the Listed IP Addresses, and because the "John Does" associated with the Listed IP Addresses are improperly joined in one action.  *See generally* Brief of Amici Curiae, ECF No. 24.  These defects, according to amici, require the Court to quash the plaintiff's subpoenas.  As an alternative, amici join in the Movant ISPs' request that the Court "certify an immediate appeal."  *Id*. at 2.

Upon consideration of the arguments presented at the motions hearing held on April 27, 2012, the legal memoranda submitted in support and in opposition to the pending motions, the associated exhibits and declarations, as well as the applicable law, the Court concludes that the ISPs' objections to the plaintiff's subpoenas have no merit. As explained in previous decisions issued by this Court, consideration of personal jurisdiction and joinder of unknown individuals, who are not yet named defendants in this case, is premature and, indeed, inappropriate. In circumstances where the plaintiff knows only the IP addresses associated with computers being used allegedly to infringe its copyright, the plaintiff is entitled to a period of discovery to obtain information to identify the ISPs' customers who may be using those computers in order to determine whether to name those individuals as defendants. The plaintiff's subpoenas do not impose an undue burden upon the ISPs, and, consequently, the ISPs must produce the information requested by the plaintiff. The plaintiff's motion to compel Comcast to comply with the plaintiff's subpoena is therefore GRANTED and the Movant ISPs' motion to quash is DENIED.

That said, the Court recognizes that other Judges on this Court have reached different conclusions with respect to the legal questions posed by the ISPs, and that the resolution of these legal questions materially affects resolution of this case. Accordingly, pursuant to 28 U.S.C. § 1292(b), the Court certifies the Order accompanying this Memorandum Opinion for immediate interlocutory appeal.

## II.    STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide a broad scope for discovery in civil actions, permitting a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," which matter expressly includes "the identity and location of persons who know of any discoverable matter." FED. R. CIV. P. 26(b)(1). Further, for good cause, the

court is authorized to order discovery of any matter relevant to the subject matter of the action

that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The

scope of discovery under Rule 26 permits a party to obtain "discoverable matter" relevant to its

claims, irrespective of the location of such evidence. *Id.* Indeed, issues regarding the location

and possession of the sought-after "discoverable matter" is only pertinent to ascertain the

appropriate mechanism a party must use to obtain it. *See* FED. R. CIV. P. 34 (a)-(b) (delineating

procedure to produce or inspect, *inter alia*, documentary or electronically stored information, or

tangible items from a party); FED. R. CIV. P. 34(c) (stating that a non-party may be compelled to

produce documents and tangible things pursuant to Rule 45); FED. R. CIV. P. 45(a)(2)

(delineating the appropriate court from which to obtain a subpoena); FED. R. CIV. P. 45 (b)(2)

(delineating the procedure by which to serve a subpoena outside the district in which the

underlying lawsuit is located).  The Court must, however, limit discovery if, *inter alia*, "the

burden or expense of the proposed discovery outweighs its likely benefit, considering the needs

of the case, the amount in controversy, the parties' resources, the importance of the issues at

stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P.

26(b)(2)(C)(iii).

    If the sought-after "discoverable matter" is in the custody of a non-party, the party

seeking discovery may obtain a subpoena for the evidence pursuant to Federal Rule of Civil

Procedure 45.  FED. R. CIV. P. 34(c).  The same broad scope of discovery set out in Rule 26

applies to the discovery that may be sought pursuant to Rule 45.  *See Watts v. S.E.C.*, 482 F.3d

501, 507 (D.C. Cir. 2007); Advisory Committee Note on 1946 Amendments to FED. R. CIV. P.

45 ("The added last sentence of amended [Rule 45](d)(1) properly gives the subpoena for

documents or tangible things the same scope as provided in Rule 26(b).").  The Court must quash

a subpoena issued to a non-party, however, if the subpoena subjects the non-party to an undue

burden or expense. FED. R. CIV. P. 45(c).  The individual or entity seeking relief from subpoena

compliance bears the burden of demonstrating that a subpoena should be modified or quashed.

*See Linder v. Dep't of Def.*, 133 F.3d 17, 24 (D.C. Cir. 1998); *In re Micron Tech., Inc. Sec.*

*Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010).  Limiting discovery and quashing subpoenas, however,

"goes against courts' general preference for a broad scope of discovery." *N. Carolina Right to*

*Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005) (citations omitted).

　　　　When evaluating whether the burden of subpoena compliance is "undue," the court

balances the burden on the recipient of the subpoena, the relevance of the information sought to

the claims or defenses at issue in the lawsuit, the scope or breadth of the discovery request, and

the party's need for the information.  *See id.*; *Linder*, 133 F.3d at 24 ("Whether a burdensome

subpoena is reasonable must be determined according to the facts of the case, such as the party's

need for the documents and the nature and importance of the litigation.") (citation and internal

quotation marks omitted).  The "undue burden" test also requires the court to be "generally

sensitive to the costs imposed on third-parties." *In re Micron Tech.*, 264 F.R.D. at 9 (citation and

internal quotation marks omitted).

## III.　　DISCUSSION

　　　　The plaintiff's motion to compel Comcast to comply with the plaintiff's subpoena and the

Movant ISPs' motion to quash the plaintiff's subpoenas raise identical legal issues.  Both

Comcast and the Movant ISPs, in addition to amici, urge the Court to revisit its previous rulings

that considerations of personal jurisdiction and joinder do not operate to block compliance with

subpoenas by copyright owners seeking limited identifying information for unknown individuals

associated with IP addresses for computers allegedly being used for infringing activity.  As

explained below, the Court reaffirms its previous decision that the legal issues of personal

jurisdiction and joinder of unknown persons who may be, but are not yet, named as defendants,

are not ripe for consideration.  The ISPs' reliance on these possible defenses as a shield to

forestall the plaintiff from obtaining discovery about the customers using the Listed IP Addresses

serviced by the ISPs is unavailing.  If any of these unknown individuals are named as defendants,

they may respond by asserting any of the defenses available pursuant to Federal Rule of Civil

Procedure 12(b).  At this procedural juncture, however, these defenses are purely speculative.

The ISPs' customers, who are unknown to the plaintiff and not named as defendants in this

action, have no obligation to appear, respond, or defend themselves against any of the plaintiff's

allegations.  The Court also concludes that any defense of improper venue is also premature for

consideration and does not excuse subpoena compliance.

Prior to discussing the issues of venue and personal jurisdiction, the Court briefly reviews

two preliminary matters:  the context in which the ISPs make their argument that "any burden"

placed upon them to identify their customers, who are allegedly infringing the plaintiff's

copyright, is undue; and the plaintiff's claim that the ISPs lack standing to contest subpoena

compliance on the grounds asserted.

### A.   STATUTORY BACKGROUND

Nearly twenty years prior to the instant lawsuit, in 1993, President Clinton established the

Information Infrastructure Task Force ("IITF") in response to the rise and growing prominence

of the Internet.  In an effort to better understand the Internet's effect on the economy and existing

legal structures, the Task Force formed a working group chaired by the Assistant Secretary of

Commerce and Commissioner of Patents and Trademarks to examine the Internet's implications

for intellectual property rights and recommend appropriate changes to U.S. intellectual property

law and policy.  *See* Bruce A. Lehman, THE REPORT OF THE WORKING GROUP ON INTELLECTUAL

PROPERTY RIGHTS, INTELLECTUAL PROPERTY AND THE NATIONAL INFORMATION

INFRASTRUCTURE ("White Paper") 2 (Sept. 1995).  Even at that time, when the Internet was

considered an emerging technology, the liability of ISPs for infringement occurring on the

Internet arose as a critical issue.  The potential exposure under then-existing copyright law of

ISPs for infringing activity by their customers was cited as potentially chilling the robust growth

of the Internet.  *See id.* at 115-16.  The working group established by the IITF counseled against

limiting the liability of ISPs, arguing that these service providers should not be encouraged to

remain ignorant of the use of their services for illegal infringing activity by their customers.  *See*

*id.* at 122.  Indeed, in a September 1995 White Paper, the working group asserted that it would

be "at best – premature to reduce the liability of any type of [such] service providers," cautioning

that "[i]t would be unfair – and set a dangerous precedent – to allow one class or distributors to

self-determine their liability by refusing to take responsibility.  This would encourage intentional

and willful ignorance."  *Id.*

Three years following issuance of the IITF working group's White Paper, in 1998

Congress enacted the Digital Millennium Copyright Act ("DMCA"), which was intended to

foster the development of electronic commerce and communication and bring U.S. copyright law

into the digital age.  *See* S. REP. NO. 105-190, at 1-9 (1998); 144 CONG. REC. S12, 376 (Oct. 12,

1998).  The DMCA reflected a carefully balanced compromise between those who believed that

ISPs should be exposed to potential liability for infringement occurring through use of their

services, and those who believed such liability would stifle the growth of the Internet.[2]  The

---

[2] The Senate Report explained,

> [d]ue to the ease with which digital works can be copied and distributed worldwide virtually instantaneously, copyright owners will hesitate to make their works readily available on the Internet without reasonable assurance that they will be protected against massive piracy. Legislation implementing the treaties provides this protection and creates the legal platform for launching the global digital on-line marketplace for copyrighted works.  It will facilitate making available quickly and conveniently via the Internet the movies, music, software, and literary works that are the fruit of American creative genius.  It will also encourage the continued growth of the existing off-line global marketplace for copyrighted works in digital format by setting strong international copyright standards.

DMCA resolved this legal and policy dispute by limiting the liability of ISPs for infringing activity occurring over their networks, while providing mechanisms for copyright owners to protect their copyrighted works with assistance from ISPs when specific evidence of infringing activity was identified. *See* Cong. Rec. S11, 890 (Oct. 8, 1998) (DMCA co-sponsor Senator Patrick Leahy stating that Title II of the DMCA "is intended to preserve incentives for online service providers and copyright owners to cooperate to detect and address copyright infringements that occur in the digital networked environment."); H.R. Rep. No. 105-796, Comm. on Conf., 72 (1998); *see also ALS Scan, Inc. v. RemarQ Cmtys., Inc.*, 239 F.3d 619, 625 (4th Cir. 2001) ("The DMCA was enacted both to preserve copyright enforcement on the Internet and to provide immunity to service providers from copyright infringement liability for 'passive,' 'automatic' actions in which a service provider's system engages through a technological process initiated by another without the knowledge of the service provider.").

Title II of the DMCA, captioned the "Online Copyright Infringement Liability Limitation Act," created "safe harbors" to protect qualifying ISPs from monetary damages for direct, vicarious, and contributory liability associated with the infringing activity of their customers. These liability limitations were counter-balanced in the DMCA by, *inter alia*, a provision authorizing a copyright owner to obtain subpoenas from federal courts directing ISPs to disclose the identity of their customers allegedly engaging in infringing activity. Specifically, section 512(h) of the DMCA provided that, upon meeting certain conditions,[3] "[a] copyright owner or a

---

At the same time, without clarification of their liability, service providers may hesitate to make the necessary investment in the expansion of the speed and capacity of the Internet. . . . In short, by limiting the liability of service providers, the DMCA ensures that the efficiency of the Internet will continue to improve and that the variety and quality of services on the Internet will continue to expand.

S. Rep. No. 105-190, at 8.

[3] Section 512(h) requires that the subpoena request contain a proposed subpoena, notification information subject to subsection (c)(3)(A), including "[i]dentification of the copyrighted work claimed to have been infringed," and "a

person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection." 17 U.S.C. § 512(h)(1).  The ISP was required, upon receipt of a DMCA subpoena, to disclose "expeditiously . . . the information required by the subpoena, notwithstanding any other provision of law and regardless of whether the service provider responds to the notification." *Id*. § 512(h)(5).

This DMCA subpoena provision set forth in section 512(h) was an important "self-help" tool for copyright owners to obtain from the ISPs limited information about the ISPs' customers about whom the copyright owner had a good-faith belief predicated on specific information were using the ISPs' services to engage in infringing activity.  As the text of the statute made clear, a copyright owner could obtain subpoenas from the clerk of *any* district court, irrespective of the potential location of the alleged infringers, and irrespective of the venue of the copyright owner's possible lawsuit against those persons illegally distributing its protected work.  The statute provided guidance that "unless otherwise provided, the court should look to the provisions of the Federal Rules of Civil Procedure governing the issuance, service, and enforcement of a subpoena duces tecum." *Id*. § 512(h)(6).

The DMCA subpoena provision subsequently came under judicial scrutiny.  In *Recording Industry Association of America, Inc. v. Verizon Internet Services*, Inc., 351 F.3d 1229 (D.C. Cir. 2003), and *In re Charter Communications, Inc., Subpoena Enforcement Matter*, 393 F.3d 771 (8th Cir. 2005), the D.C. Circuit and the Eighth Circuit concluded that section 512(h) "does not allow a copyright owner to request a subpoena for an ISP which merely acts as a conduit for data

---

sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title."  17 U.S.C. § 512(h)(2)(A)-(C).  As summarized in the House Commerce Committee Report for the DMCA, "[u]nder this procedure, the copyright owner or agent files three documents with the clerk of any Federal district court . . . .  The issuing of the order should be a ministerial function performed quickly for this provision to have its intended effect."  H.R. REP. NO. 105-551, Pt. 2, Comm. on Commerce, 59-60 (1998).

transferred between two internet users." *In re Charter*, 393 F.3d at 776; *see also Verizon*, 351 F.3d at 1231. Instead, the Circuit Courts construed the statute to permit use of the subpoena authority only when "an ISP [is] engaged in storing on its servers material that is infringing or the subject of infringing activity." *Verizon*, 351 F.3d at 1233. According to the D.C. Circuit's and Eighth Circuit's interpretations of section 512(h), copyright holders attempting to identify persons infringing their copyrights using peer-to-peer file sharing programs – such as BitTorrent in the instant case – could not utilize the subpoena provision created in the DMCA to obtain identifying information from ISPs. *See Verizon*, 351 F.3d 1229 (vacating district court's order enforcing subpoenas issued to ISP for the names of two customers allegedly using a peer-to-peer file-sharing program to illegally copy and distribute copyrighted material); *In re Charter*, 393 F.3d 771 (vacating district court's order denying motion to quash subpoena issued to ISP for the names of customers allegedly using a peer-to-peer filesharing program to illegally copy and distribute copyrighted material).[4]

Judge Diana Murphy noted in her dissent in *In re Charter* that the D.C. Circuit and Eighth Circuit decisions limiting the scope of section 512(h)'s subpoena provision "ha[d] wide-reaching ramifications, because as a practical matter, copyright owners cannot deter unlawful peer-to-peer file transfers unless they can learn the identities of persons engaged in that activity." *Id.* at 775 n.3 (Murphy, J., dissenting). After these decisions, "copyright holders [were] left to file John Doe lawsuits to protect themselves from infringement by subscribers of conduit ISPs . . . , instead of availing themselves of the mechanism Congress provided in the DMCA . . . ." *Id.* at

---

[4] The Eighth Circuit also noted, without resolving, since the case was decided on statutory construction grounds, that the DMCA subpoena provision posed a constitutional issue in permitting the clerk of the court to exercise judicial power by reviewing the sufficiency of the subpoena request and authorizing the issuance of the subpoena, in the absence of an actual case or controversy. *In re Charter*, 393 F.3d at 777-78 ("[T]his provision *may* unconstitutionally invade the power of the judiciary by creating a statutory framework pursuant to which Congress, via statute, compels a clerk of court to issue a subpoena, thereby invoking the court's power.").

782 (Murphy, J., dissenting).  Judge Murphy specifically commented on the unraveling of the compromises struck in the DMCA, explaining that "ISPs were only shielded from monetary and injunctive liability in exchange for their assistance in identifying subscribers who engage in acts of piracy over their networks and in removing or disabling access of infringers to protected works when technically possible," and that limiting the scope of section 512(h)'s subpoena provision "denies copyright holders the ability to obtain identification of those subscribers who purloin protected materials through § 512(a) conduit ISPs.  This interpretation also shields conduit ISPs from liability without requiring their assistance in protecting copyrights."  *Id*.  In short, after *Verizon* and *In re Charter*, ISPs faced fewer statutory responsibilities to aid in the identification of alleged copyright infringers and combat infringement occurring through the use of their services, yet continued to enjoy the shield from liability under the remaining provisions of the DMCA.

Following *Verizon* and *In re Charter*, as Judge Murphy noted, the only mechanism for copyright owners, such as the plaintiff in the instant case, to obtain identifying information for the unknown persons, who are allegedly illegally downloading and distributing a copyrighted work using a peer-to-peer file sharing program, is to initiate a so-called "John Doe" lawsuit.  The plaintiff must next obtain permission from the court for pre-litigation discovery, then issue subpoenas to the ISPs for the needed identifying information for the customers assigned the IP addresses for the computers being used to engage in the allegedly infringing activity.

While the ISPs assert that they are burdened by the number of pending copyright infringement actions and associated requests for identifying information for their customers, the plaintiff aptly states that "[w]ithout a large and growing problem of copyright infringement, there

could not be an increasing level of copyright infringement litigation."[5]  Pl.'s Mem. in Response

to Amici Brief, ECF No. 27, at 2.  Indeed, the plaintiff contends, without refutation by the ISPs,

that infringement occurring on the Internet through peer-to-peer file-sharing technology has risen

exponentially, and the instant lawsuit is an attempt by the plaintiff to "salvage the value of its

copyright."  Compl. ¶ 8; *see also* Pl.'s Response to Amici Brief, at 2 (citing *Metro-Goldwyn-*

*Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 928-29 (2005) (referencing the increased use

of file-sharing software to illegally download copyrighted works)).  The plaintiff, however,

cannot salvage the value of its copyright without assistance from the ISPs because there is no

way for the plaintiff to identify the unknown individuals referenced in the Complaint without

responses to the subpoenas by the ISPs.  Now, fourteen years after the DMCA effectively limited

the ISPs' liability for copyright infringement in exchange for their cooperation in identifying

persons involved in infringing activity through the use of their services, the ISPs object to

providing such information, arguing that "any burden" placed upon them for information is

undue.

## B.    STANDING

Prior to reaching the Movant ISPs' arguments regarding personal jurisdiction and joinder,

the Court must address the plaintiff's contention that the ISPs lack standing to assert these

defenses.  The plaintiff is correct that lack of personal jurisdiction and misjoinder are not

delineated under Federal Rule of Civil Procedure 45 as bases to quash a subpoena issued to a

third-party.  Indeed, third-parties cannot assert these defenses as a basis to dismiss the underlying

---

[5] The plaintiff's estimates regarding the amount of online infringing activity and the economic harm resulting from such activity is corroborated by a recent government report.  *See* U.S. GOV'T ACCOUNTABILITY OFFICE, GAO-10-423, INTELLECTUAL PROPERTY:  OBSERVATIONS ON EFFORTS TO QUANTIFY THE ECONOMIC EFFECTS OF COUNTERFEIT AND PIRATED GOODS 23-24 (2010) (estimating that U.S. economy annually loses $58 billion, over 370,000 jobs, and $2.6 billion in tax revenue as a result of copyright infringement over the Internet) (citing Stephen E. Siwek, THE TRUE COST OF COPYRIGHT INDUSTRY PIRACY TO THE U.S. ECONOMY, Institute for Policy Innovation (IPI), IPI Center for Technology Freedom, Policy Report 189 (Oct. 2007)).

action because, if either of these flaws did exist in the underlying action, they must be raised, and may be waived, by named defendants.  *See* FED. R. CIV. P. 12(b)(2) (lack of personal jurisdiction must be asserted in a responsive pleading); FED. R. CIV. P. 21 ("Misjoinder of parties is not a ground for dismissing an action . . . .").

The Movant ISPs do not, however, seek to dismiss the plaintiff's lawsuit for lack of jurisdiction and improper joinder.  Rather, they assert that these alleged deficiencies in the plaintiff's Complaint are relevant to the Court's analysis, pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iv), of whether the plaintiff's subpoenas subject the ISPs to an "undue burden."  Movant ISPs' Reply in Supp. of Mot. to Quash ("Movant ISP's Reply"), ECF No. 26, at 2.  The ISPs contend that the Court should quash the subpoenas issued to the ISPs because the plaintiff's underlying lawsuit is defective and thus "*any* burden" to produce information in this case is "undue" under Federal Rule of Civil Procedure 45(c).  *Id*. at 3.  According to the ISPs, the plaintiff "lacks the requisite 'good faith belief that . . . discovery will enable it to show that the court has personal jurisdiction' over the Doe defendants" and the putative defendants ultimately cannot be tried together in this case because of misjoinder.  *Id*. at 7.  Consequently, "the sought-after jurisdictional discovery is not likely to lead to a defendant being served in this lawsuit."  *Id*. at 3.

As discussed below, the Court concludes that the plaintiff's Complaint is not procedurally defective because consideration of personal jurisdiction and joinder are not appropriate at this procedural juncture.  Accordingly, because the Complaint sufficiently alleges *prima facie* allegations of copyright infringement, there are no named defendants in this case, and the plaintiff must obtain information necessary to identify those allegedly infringing its copyright in order to proceed with a lawsuit, the plaintiff's subpoenas to the ISPs are properly issued, and compliance with these subpoenas will not impose an undue burden upon the ISPs.

### C.   THE ISPs HAVE FAILED TO DEMONSTRATE THAT THE PLAINTIFF'S SUBPOENAS SUBJECT THEM TO A UNDUE BURDEN

Despite their reliance on Federal Rule of Civil Procedure 45(c)(3)(A)(iv), which requires the Court to quash a subpoena if it subjects a third-party to an undue burden, the Movant ISPs eschew the text and plain meaning of the Rule by arguing that *any* burden placed upon them in this case is unacceptable.  *See* Mem. Supp. Movant ISPs' Mot. Quash, at 4; Comcast Opp'n Pl.'s Mot. Compel, ECF No. 12, at 3.  Although the Movant ISPs contend that subpoenas from "similar mass 'Doe' defendant actions' . . . have imposed – and continue to pose – a substantial administrative burden on the ISPs," Mem. Supp. Movant ISPs' Mot. Quash, at 4, the Movant ISPs present no evidence to support this claim of hardship.  *See Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995) (stating that "the party seeking to quash a subpoena bears a heavy burden of proof") (citation omitted); *see also In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008) ("When a non-party claims that a subpoena is burdensome and oppressive, the non-party must support its claim by showing how production would be burdensome.").

In support of their Motion to Quash, the Movant ISPs supplied declarations from five individuals,[6] but only two of these declarations – those from the representatives of Cox Communications and Verizon – mention the administrative burden, and that is essentially all they do.  Both of these declarations merely state in conclusory fashion that subpoenas associated with similar copyright infringement cases "have imposed (and continue to impose) a substantial administrative burden . . . ."  *See* Movant ISPs Mot. to Quash, Cadenhead Decl., at 1; *Id.*,

---

[6] The Movant ISPs supplied declarations from Randall J. Cadenhead, Senior Counsel for Cox Communications; Rhonda Compton, an employee in AT&T's Internet Services Legal Compliance group; Tim Frendberg, Senior Director of Voice Services and Internet Security for Bright House Networks, LLC; Sean Moriarty, Manager of IP Legal Compliance for Verizon Online, LLC and Verizon Communications, Inc.; and Bart Huffman, an attorney with Locke Lord LLC, which represents SBC Internet Services, Inc.  *See* Movant ISPs' Mot. Quash, ECF No. 8, Decls. of Cadenhead, Compton, Frendberg, Moriarty, and Huffman.

Moriarty Decl. at 1-2.  These declarants provide no further detail as to Cox's or Verizon's cost of complying with the plaintiff's subpoenas, the time associated with producing the requested information, or the procedure by which the information is obtained and released.  The declarations from AT&T and Bright House Networks do even less, making no mention whatsoever of any burden associated with compliance with the plaintiff's subpoenas.

Given the Movant ISPs' failure to provide any evidentiary support for their claim of undue burden in their moving papers, the Court invited the Movant ISPs and Comcast to present witnesses at the motions hearing.  *See* Minute Order dated Apr. 17, 2012.  The Movant ISPs, however, forfeited the opportunity to present evidence corroborating their alleged burden by choosing instead to present only testimony from a staff technologist of a civil liberties organization.[7]   Consequently, the only evidence before the Court to establish the burden incurred by the Movant ISPs are the declarations originally supplied in support of their motion to quash.  Other than barebones references from two of the four movant ISPs that these subpoenas impose "a substantial administrative burden," the ISPs fail to present any witness or other evidentiary detail to demonstrate a burden to the Court, let alone what steps the ISPs are or could be taking to deter infringing activity on their networks to reduce any burden subpoena compliance engenders.  *See Alberts v. Wheeling Jesuit Univ.,* No. 5:09-CV-109, 2010 WL 1539852, at *8 (N.D. W. Va. Apr. 19, 2010) (ruling that party resisting discovery must show how requested discovery "was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden"); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas,* 262 F.R.D. 293, 300 (S.D.N.Y. 2009) (quoting 9 MOORE'S FEDERAL

---

[7] At the motions hearing, the parties presented testimony from two witnesses: the plaintiff presented a technology consultant and the Movant ISPs presented a senior staff technologist for a non-profit "civil liberties organization working to protect rights in the digital world."  Hearing Tr. (Apr. 27, 2012); Amici Mem. in Supp. Mot. for Leave to File Brief, ECF No. 17, at 1.

PRACTICE ¶ 45.51[4] (3d ed. 2009), for proposition that "[a] party objecting to a subpoena on the ground of undue burden generally must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request"); *In re Urethane Antitrust Litig.,* 261 F.R.D. 570, 575-76 (D. Kan. 2009) ("A party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request. Defendants have provided only conclusory allegations and have not offered any detailed explanation, affidavit, or other evidence demonstrating that they will suffer undue burden and expense by complying with the discovery." (internal footnote omitted)).

Rather, the Movant ISPs' declarations make clear that the administrative burden incurred by the ISPs in responding to the plaintiff's subpoenas is minimal.  As the plaintiff notes, "[b]y the [Movant ISPs'] own sworn admission, the information requested in the subpoenas is currently sitting on the desks of Mr. Cadenhead, Ms. Compton, Mr. Frendberg and Mr. Moriarty. (Decl. of Randall Cadenhead, ECF No. 8-3 ¶¶ 3-4 (explaining that he identified the "mailing and billing address for [the 110] subscribers."); Decl. of Rhonda Compton, ECF No. 8-5 ¶ 4 (explaining that she performed a "routine search of AT&T's systems" for every fifth IP address and "determine[d] the Internet subscriber for the listed IP address at the specified date and time . . ."); Decl. of Tim Frendberg, ECF No. 8-7 ¶¶ 2-3 (explaining that he determined the "service address" for all 30 subscribers); Decl. of Sean Moriarty, ECF No. 8-9 ¶ 3 (explaining that he determined the "mailing or billing address for these [188] subscribers . . ."))."  Pl.'s Opp'n Movant ISPs' Mot. Quash, ECF No. 13, at 6-7.[8]  Despite the fact that the Movant ISPs have already located the requested information, they urge the Court to quash the plaintiff's subpoenas because of misjoinder and lack of personal jurisdiction.  This argument is erroneous.

[8] The Movant ISPs' declarations attest that nearly all of the IP addresses identified in the Complaint are associated with customers residing outside of the District of Columbia but, as explained below, since none of these customers is yet named as a defendant, residence outside this jurisdiction is irrelevant at this procedural juncture.

### D.        CONSIDERATION OF JOINDER IS PREMATURE

The Movant ISPs argue that the IP addresses listed in the plaintiff's Complaint are misjoined because the unknown individuals assigned the Listed IP Addresses are alleged to have infringed the plaintiff's copyrighted movie over a four-month period, which is "irreconcilable with Plaintiff's assertion that joinder . . . is proper due to the 'same series of transactions.'" Mem. Supp. Movant ISPs' Mot. Quash, ECF No. 8, at 2.  The Movant ISPs further contend that the Court should reconsider its previous ruling that joinder need not be considered at this procedural juncture because the plaintiff's "unbroken practice" of declining to sue individuals by name "precludes consideration of joinder at a later time and weighs heavily in favor of addressing Rule 20's requirements at the outset." *Id*.  These arguments are not persuasive.

### 1.        Legal Standard

Pursuant to Federal Rule of Civil Procedure 20, defendants may be joined in a single action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  FED. R. CIV. P. 20(a)(2).  "[P]arties are misjoined when the preconditions of permissive joinder set forth in Rule 20(a) have not been satisfied." *Disparte v. Corporate Exec. Bd.,* 223 F.R.D. 7, 12 (D.D.C. 2004) (citation omitted).

The purpose of joinder under Rule 20 is "to promote trial convenience and expedite the final resolution of disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss of time to the court as well as the litigants appearing before it." *W. Coast Prods., Inc. v. Does 1-5,829*, 275 F.R.D. 9, 15 (D.D.C. 2011) (quoting *M.K. v. Tenet,* 216 F.R.D. 133, 137 (D.D.C. 2002)).  The two prongs of Rule 20(a) are thus "liberally construed in the interest of convenience and judicial economy . . . in a manner that will secure the just, speedy, and

inexpensive determination of the action." *Spaeth v. Mich. State Univ. Coll. of Law*, No. 11-cv-1376, 2012 WL 517162, at *2 (D.D.C. Feb. 17, 2012) (quoting *Davidson v. District of Columbia,* 736 F. Supp. 2d 115, 119 (D.D.C. 2010)).  Indeed, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; [and] joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

Federal Rule of Civil Procedure 21 states that "[m]isjoinder of parties is not a ground for dismissing an action" and improper joinder may be remedied by "drop[ping]" a party and severing the claim against that party.  FED. R. CIV. P. 21 ("On motion or on its own, the Court may at any time, on just terms, add or drop a party.").  The remedy for misjoinder therefore creates separate actions containing the same claims against the dropped defendant.  *See Bailey v. Fulwood*, 780 F. Supp. 2d 20, 26 (D.D.C. 2011); *In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1376 (J.P.M.L. 2003) ("[S]everance of claims under Rule 21 results in the creation of separate actions.").  The Court may exercise discretion regarding the proper time to sever parties, and this determination includes consideration of judicial economy and efficiency.  *See Disparte*, 223 F.R.D. at 10 (permissive joinder under Federal Rule 20 is designed "to promote trial convenience and expedite the resolution of lawsuits") (quoting *Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139, 142 (N.D.N.Y. 1999)).

Given that joinder and severance are interrelated, courts have read Rule 21 in conjunction with Rule 42(b), which allows the court to sever claims in order to avoid prejudice to any party. *Tenet*, 216 F.R.D. at 138; *see also* FED. R. CIV. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.").  Consequently, in addition to the two requirements of Rule 20(a)(2), courts also consider whether joinder would prejudice any party or

result in needless delay.  *See Lane v. Tschetter*, No. 05-cv-1414, 2007 WL 2007493, at *7

(D.D.C. July 10, 2007); *Tenet*, 216 F.R.D. at 138.

In the instant case, the plaintiff has met all the requirements for permissive joinder under

Federal Rule of Civil Procedure 20(a)(2):  the plaintiff's claims against the unknown individuals

associated with the Listed IP Addresses "aris[e] out of the same transaction, occurrence, or series

of transactions or occurrences" and there are common questions of law and fact relating to the

claims against them. The Court additionally sees no prejudice to these individuals.  Rather,

joinder of the claims against the unknown individuals associated with the Listed IP Addresses at

this procedural juncture presents the most efficient mechanism for the plaintiff to obtain the

identifying information required to evaluate the claims against each individual, protect its

copyrighted work, and for judicial review of the plaintiff's claims.

### 2.    Same Transaction, Occurrence, or Series of Transactions or Occurrences

The first requirement for permissive joinder under Rule 20(a)(2) is that the plaintiff's

claims against the defendants must arise "out of the same transaction, occurrence, or series of

transactions or occurrences."  FED. R. CIV. P. 20(a)(2)(A).  This essentially requires claims

asserted against joined parties to be "logically related."  *Disparte*, 223 F.R.D. at 10.  This is a

flexible test, and courts seek the "broadest possible scope of action."  *Lane*, 2007 WL 2007493,

at *7 (quoting *Gibbs*, 383 U.S. at 724).

The Movant ISPs assert that the Listed IP Addresses are not part of the same transaction

or series of transactions.  According to them, the "wide range of dates and times over a four-

month period" during which the alleged infringing activity took place is "fatally inconsistent

with Plaintiff's assertion that joinder of all 1,058 Defendants is proper" and it does not follow

that users who "shared excerpts of the same film days, weeks, or months apart" are part of the "same series."  Mem. Supp. Movant ISPs' Mot. Quash, ECF No. 8, at 9-10.  This is incorrect.

The plaintiff's Complaint alleges that the unknown individuals illegally infringed the plaintiff's copyright by downloading and distributing the movie *Popular Demand* using a file-sharing protocol called BitTorrent.  This technology allows users to download files through a "piecemeal system with multiple pieces of data coming from peer members [ ] usually referred to as a 'swarm.'"  Compl. ¶ 5.  When using BitTorrent, "any seed peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a source for the subsequent peer so long as that first seed peer is online at the time the subsequent peer downloads a file."  *Id.* ¶ 6.

Based on these allegations in the Complaint, the plaintiff's claims against the unknown individuals infringing its copyright are logically related.  The plaintiff alleges that each unknown individual used the BitTorrent protocol and exchanged bits of the plaintiff's motion picture. Thus, each unknown individual is a possible source and may be responsible for distributing the movie to the other unknown individuals, who are also using the same file-sharing protocol to copy the identical copyrighted material.  *See Disparte*, 223 F.R.D. at 10 (to satisfy Rule 20(a) claims must be "logically related," and this test is "flexible").  Although some IP addresses listed in the Complaint are identified as infringing the plaintiff's copyright four months apart, at this stage there is no basis to rebut the plaintiff's claims that the Listed IP Addresses were, at least potentially, part of the same swarm and provided or shared pieces of the plaintiff's copyrighted work.  *See W. Coast Prods., Inc.*, 275 F.R.D. at 15; *Call of the Wild*, 770 F. Supp. 2d at 343.   If the plaintiff chooses to proceed against those allegedly infringing its copyright after it obtains identifying information, the named defendants may be able to rebut these allegations.  At the pleading stage, however, the plaintiff has sufficiently alleged that its claims against the

defendants potentially stem from the same transaction or occurrence and are logically related. *See Arista Records LLC v. Does 1-19,* 551 F. Supp. 2d 1, 11 (D.D.C. 2011) ("While the Court notes that the remedy for improper joinder is severance and not dismissal, . . . the Court also finds that this inquiry is premature without first knowing Defendants' identities and the actual facts and circumstances associated with Defendants' conduct."); *see also Call of the Wild*, 770 F. Supp. 2d at 343 (concluding that "at this nascent stage of the case, the plaintiffs have sufficiently alleged that the infringing activity at issue in each of the cases may involve multiple computers, based in various jurisdictions, which are using the BitTorrent protocol to make available for sharing the same copyrighted content").

### 3. Question of Law or Fact Common to All Potential Defendants

The second requirement for permissive joinder under Rule 20(a)(2) requires the plaintiff's claims to contain a common question of law or fact. FED. R. CIV. P. 20(a)(2)(B); *see also Disparte*, 223 F.R.D. at 11. This requirement is easily met. For each defendant ultimately named, the plaintiff is required to establish the validity of its copyright and the infringement of the exclusive rights reserved to the plaintiff as the copyright holder. Additionally, the plaintiff must prove that each individual named as a defendant used the same BitTorrent file-sharing technology to infringe the plaintiff's copyright in the same work. Moreover, factual issues related to how BitTorrent works and the methods used by the plaintiff to investigate, uncover, and collect evidence about the infringing activity will be common to each individual.[9] At this procedural juncture, the claims against the unknown individuals infringing the plaintiff's copyright are identical. The commonality in facts and legal claims support joinder under Rule

---

[9] To the extent that additional issues may be raised as to whether the defendants must be part of the same swarm, the plaintiff has sufficiently alleged commonality in the factual underpinnings of the claim to support joinder. *See* Compl. ¶¶ 5-6; *see also* Hearing Tr. at 76-77 (Apr. 27, 2012) (EFF's expert stating that individuals will be part of the same swarm "if the user has the file available for sharing and has the [BitTorrent] application continuing to be open and connected that it will be shared with other people even if the user is doing something else [on his/her computer]").

20(a)(2)(B).

### 4.      Prejudice to Any Party or Needless Delay

In addition to the requirements of Rule 20(a)(2), the Court must also inquire whether joinder will prejudice any party or cause needless delay.  At this stage in the proceedings, the Court concludes that it will not.

The unknown individuals alleged to have infringed the plaintiff's copyright are not prejudiced by joinder.  These individuals are identified only by the IP address assigned to the computers found by the plaintiff being used for allegedly infringing activity, and they are not named as defendants in this case.  Given that the plaintiff has not named or asserted claims against the individuals associated with the Listed IP Addresses, these unknown individuals have no obligation to respond to the Complaint or assert a defense.  If the plaintiff chooses to name as a defendant any of these unknown individuals – after obtaining their information and evaluating the viability of a lawsuit – the defendants may then be able to demonstrate prejudice by joinder with others accused of similar activity.  Until that time, these individuals can demonstrate no legally cognizable harm by virtue of the plaintiff filing a lawsuit against "John Does."

While the unknown individuals who are referenced as "John Does" in the Complaint suffer no prejudice, joinder at this stage in the proceedings is the single, most efficient mechanism available for the plaintiff to obtain information to identify those allegedly illegally downloading and distributing its movie.  Severing the Doe defendants would essentially require the plaintiff to file 1,058 separate cases, pay separate filing fees, and obtain 1,058 separate subpoenas for each of the Listed IP Addresses.  This burden for the plaintiff – not to mention the judicial system – would significantly frustrate the plaintiff's efforts to identify and seek a remedy from those engaging in the alleged infringing activity.  Moreover, such an outcome would certainly not be in the "interest of convenience and judicial economy," or "secure the just,

speedy, and inexpensive determination of th[e] action." *Lane*, 2007 WL 2007493, at *7

(declining to sever defendants where "parties joined for the time being promotes more efficient

case management and discovery" and no party was prejudiced by joinder).[10]

The Movant ISPs "recognize" that this Court has previously found to be premature

consideration of the joinder issue before defendants are formally named and brought into this

case, but nonetheless urge the Court to reconsider.  Specifically, the Movant ISPs argue that

plaintiff's counsel "moves from court to court seeking authorization to serve subpoenas for the

broadest number of subscribers – imposing ever-increasing burdens on the ISPs – without using

the information gathered for the purpose of litigating any case on its merits."  Mem. Supp.

Movant ISPs' Mot. Quash, ECF No. 8, at 11-12.  This strategy, according to the Movant ISPs,

"effectively precludes consideration of joinder at a later point in the proceedings . . . [and]

ensures . . . [that] the court will never have the opportunity to evaluate joinder."  *Id.* at 11

(quoting *McGIP, LLC v. Does*, No. 11-cv-2331, 2011 U.S. Dist. LEXIS 108109, at *10 (N.D.

Cal. Sept. 16, 2011) and *Arista Records, LLC v. Does*, No. 1-07-cv-2828, 2008 U.S. Dist. LEXIS

90183, at *17 (N.D. Ohio Nov. 3, 2008)).

Although the plaintiff objects to this characterization of its litigation strategy, even

assuming, *arguendo*, that the Movant ISPs' contentions are correct, it would not alter the Court's

conclusion that joinder is proper at this time.  The plaintiff has set forth cognizable claims of

copyright infringement against the unknown individuals identified only by the Listed IP

Addresses in the Complaint.  As explained above, the Court has evaluated whether joinder is

proper and has concluded that these individuals are not only properly joined under Federal Rule

of Civil Procedure 20, but also face no prejudice by joinder at this stage in the proceedings

---

[10] The Movant ISPs acknowledged that the plaintiff would not be able to protect its copyright if the Court were to sever the unknown defendants in this action due to the cost of filing an individual lawsuit for each of the thousands of IP addresses identified as being used for allegedly online infringing activity.  Hearing Tr. at 127-28 (Apr. 27, 2012).

because they have no obligation to identify themselves or to respond to the Complaint.  While the Movant ISPs criticize plaintiff's counsel for not asserting claims against named defendants, the plaintiff has no obligation to do so.  At this stage, the plaintiff is attempting to identify those infringing its copyright so that it may investigate the feasibility of proceeding in lawsuits against them.  That the plaintiff chooses, after obtaining identifying information, to pursue settlement or to drop its claims altogether is of no consequence to the Court.  The plaintiff has sufficiently pled allegations of copyright infringement and has a right to name or decline to assert claims against defendants whose identities and other relevant circumstances become known to the plaintiff.  *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005) ("In general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties.") (quoting 16 MOORE'S FEDERAL PRACTICE § 107.14[2][c], p. 107-67 (3d ed. 2005)).

At this procedural juncture, the plaintiff has met the requirements of permissive joinder under Rule 20(a)(2).  The unknown individuals referenced in the Complaint are not prejudiced by joinder, and severance would render it impossible for the plaintiff to protect its copyright.  Courts are instructed to "'entertain[] the broadest possible scope of action consistent with fairness to the parties.'"  *Lane*, 2007 WL 2007493, at *7 (quoting *Gibbs*, 383 U.S. at 724).  Joinder at this juncture not only promotes judicial efficiency, but is the only way for the plaintiff to protect the rights afforded to it as a copyright owner.  The Court therefore declines to sever into separate suits each Listed IP Address assigned to a computer used by the ISPs' customers and allegedly engaged in infringing activity.

### E. EVALUATING PERSONAL JURISDICTION AND VENUE IS PREMATURE

The ISPs argue that the plaintiff's subpoenas should be quashed because the Court lacks personal jurisdiction over the individuals associated with the IP addresses listed in the Complaint.  The ISPs further contend that "[f]or the same reasons that personal jurisdiction is lacking[,] . . . venue is improper under the governing venue statute, 28 U.S.C. § 1400(a), which requires that all defendants must be subject to suit in this district."  Mem Supp. Movant ISPs' Mot. Quash, ECF No. 8, at 9.   For the reasons explained below, the Court disagrees.   At this procedural juncture, evaluating potential jurisdictional or improper venue defenses, which may ultimately be waived by any future defendants, is premature.

#### 1. Personal Jurisdiction is Not Relevant at this Procedural Juncture

The ISPs specifically contend that the plaintiff's subpoenas are "inappropriate because the vast majority of these 'Does' have no connection to this forum and thus could not be sued here even if, *arguendo*, Plaintiff were to use the information it seeks from the ISPs to name Defendants and then to attempt to serve them."  *Id*.  They state that "the inclusion of thousands of Defendants in a single copyright action does not satisfy the demands of personal jurisdiction," and therefore the plaintiff's request for information to identify the unknown individuals infringing its copyright "imposes an undue burden upon the ISPs without a corresponding benefit to the justice system."  *Id*. at 7.  As stated in the Court's previous opinions, however, personal jurisdiction is not relevant when there are no named defendants in the case.  This is true for three reasons.

First, the plaintiff correctly notes that it need not establish personal jurisdiction when filing a Complaint.  Federal Rule of Civil Procedure 8(a)(1) requires a pleading to contain "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has

jurisdiction and the claim needs no new jurisdictional support."   For purposes of Rule 8, "jurisdiction" refers to subject matter jurisdiction.  2 MOORE'S FEDERAL PRACTICE ¶ 8.03[1] (3d ed. 2007).  There is no requirement that a complaint allege a basis for personal jurisdiction over a defendant.  *See* 4 Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1067.6 (3d ed. 2007) (collecting cases and noting that "strictly speaking, under Federal Rule 8(a) plaintiffs are not required to plead the basis for personal jurisdiction over defendants"); *accord Stirling Homex Corp. v. Homasote Co.,* 437 F.2d 87, 88 (2d Cir. 1971) (noting that Rule 8(a)'s "term 'jurisdiction' . . . refers to subject matter jurisdiction rather than personal jurisdiction."); *Polar Molecular Corp. v. Amway Corp.*, No. 1:07-cv-460, 2007 WL 3473112, at *8 (W.D. Mich. Nov. 14, 2007); *D'Addario v. Geller*, 264 F. Supp. 2d 367, 390 n.29 (E.D. Va. 2003); *Gray v. Lewis & Clark Expeditions, Inc.*, 12 F. Supp. 2d 993, 995 (D. Neb. 1998); *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474-75 (D. Del. 1995); *Curran Co. v. Imedco GmbH,* No. 91-C-7938, 1992 WL 370237, at *2 (N.D. Ill. Dec. 3, 1992); *Dirks v. Carnival Cruise Lines* 642 F. Supp. 971, 973 (D. Kan. 1986); *In re Enron Corp.*, 316 B.R. 434, 439 (Bankr. S.D.N.Y. 2004).  The plaintiff need only establish personal jurisdiction after it has been raised and contested by a defendant through a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(2).  *See, e.g., Hagen v. U-Haul Co. of Tenn.*, 613 F. Supp. 2d 986, 1001 (W.D. Tenn. 2009) ("The burden of establishing the existence of personal jurisdiction lies with the party asserting such jurisdiction, i.e. the plaintiff. Although, a plaintiff is only required to meet this burden when challenged by a motion under Rule 12(b)(2) . . . .") (internal citation omitted).  There are no named defendants and, consequently, no person with standing to challenge personal jurisdiction before the Court.

Second, it would be premature to consider the exercise of personal jurisdiction over unknown individuals when neither the Court nor the plaintiff is able to evaluate a specific individual's ties to the District of Columbia.  *See, e.g., London-Sire Records, Inc. v. Doe 1*, 542

F. Supp. 2d 153, 180-81 (D. Mass. 2008) (concluding that it is "premature to adjudicate personal jurisdiction" and permitting plaintiff to engage in jurisdictional discovery because "[e]ven taking all of the facts in [the putative defendant's] affidavit as true, it is possible that the Court properly has personal jurisdiction"); *Humane Soc'y of the U.S. v. Amazon.com, Inc.*, No. 07-cv-623, 2007 U.S. Dist. LEXIS 31810, at *10 (D.D.C. May 1, 2007) ("[A] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum") (quoting *Virgin Records Am., Inc. v. Does 1-35,* No. 05-1918, 2006 WL 1028956, at *3 (D.D.C. Apr. 18, 2006)); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d. 556, 567 (S.D.N.Y. 2004) (evaluating personal jurisdiction premature without defendants' identifying information); *Virgin Records,* 2006 WL 1028956, at *3 (rejecting amici's personal jurisdiction arguments since "Defendant's Motion to Quash is without merit [] because it is premature to consider the question of personal jurisdiction in the context of a subpoena directed at determining the *identity* of the Defendant") (citing *Elektra Entm't Grp., Inc. v. Does 1-9*, No. 04-2289, 2004 WL 2095581, at *5 (S.D.N.Y. Sept. 8, 2004)).

The plaintiff here seeks limited discovery to obtain information identifying the unknown individuals allegedly infringing its copyright in order to consider whether to name and serve them as defendants.  The plaintiff certainly cannot anticipate and rebut personal jurisdiction arguments without more information, starting with the names and addresses of the ISPs' customers.  Those customers, when and if named as defendants, may assert a personal jurisdiction defense, and the plaintiff may be able to counter such defense to establish personal jurisdiction with evidence not yet developed.  For this reason, courts have regularly permitted a discovery period within which a plaintiff may gather evidence to support jurisdiction in cases where a party's contacts with the jurisdiction are unclear and the record before the court is

"plainly inadequate." *See GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, at 1351-52

(D.C. Cir. 2000) (reversing lower court's finding of personal jurisdiction, but stating that "[t]his

court has previously held that if a party demonstrates that it can supplement its jurisdictional

allegations through discovery, then jurisdictional discovery is justified"); *accord Convertino v.*

*U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (stating that "[w]hile the district court

enjoys broad discretion in structuring discovery, summary judgment is premature unless all

parties have had a full opportunity to conduct discovery.   A Rule 56(f) motion requesting time

for additional discovery should be granted almost as a matter of course unless the non-moving

party has not diligently pursued discovery of the evidence.") (internal citations and quotation

marks omitted).   "This Circuit's standard for permitting jurisdictional discovery is quite liberal,"

*Diamond Chem. Co. v. Atofina Chems., Inc.,* 268 F. Supp. 2d 1, 15 (D.D.C. 2003), and

jurisdictional discovery is available when a party has "at least a good faith belief" that it has

personal jurisdiction.   *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080,

1090 (D.C. Cir. 1998).   Courts have permitted discovery even when a party has failed to

establish a *prima facie* case of personal jurisdiction.   *See GTE New Media Servs.*, 199 F.3d at

1351-52 ("[A]s the record now stands, there is absolutely no merit to [plaintiff]'s bold claim that

the parent companies and subsidiaries involved in this lawsuit should be treated identically.

Jurisdictional discovery will help to sort out these matters."); *see also In re Vitamins Antitrust*

*Litig.*, 94 F. Supp. 2d 26, 35 (D.D.C. 2000) (discussing *GTE New Media Servs.* and stating that

"the D.C. Circuit held that although plaintiffs had failed to establish a prima facie case of

personal jurisdiction and the court was unable to tell whether jurisdictional discovery would

assist GTE on this score, plaintiffs were entitled to pursue [discovery].").   In such cases, a party

is entitled to pursue "precisely focused discovery aimed at addressing matters relating to

personal jurisdiction."   *GTE New Media Sers., Inc.*, 199 F.3d at 1352.

Finally, it would be improper for the Court to consider personal jurisdiction at this stage because individuals may choose to waive personal jurisdiction and litigate in this forum.[11]   *See* FED. R. CIV. P. 12(b)(2) (stating that a lack of personal jurisdiction may be asserted as a defense, but it must be asserted in the responsive pleading).   In *Anger v. Revco Drug Co.*, 791 F.2d 956 (D.C. Cir. 1986) (per curiam), the D.C. Circuit admonished that "the Federal Rules of Civil Procedure indicate that personal jurisdiction is a matter to be raised by motion or responsive pleading, not by the court *sua sponte*.   Therefore, before the complaint has been served and a response received, the court is not positioned to determine conclusively whether personal jurisdiction exists."   *Id.* at 958 (reversing district court's *sua sponte* dismissal, pursuant to 28 U.S.C. § 1915(d),[12] of complaint filed *in forma pauperis*); *see also Buchanan v. Manley*, 145 F.3d 386, 387 (D.C. Cir. 1998) (per curiam) (stating that district court's *sua sponte* dismissal of prisoner's complaint for improper venue was harmless error); *W. Coast Prods., Inc.*, 275 F.R.D. at 14 (citing *Anger* and rejecting putative defendants' argument that the plaintiff's subpoenas should be quashed for lack of personal jurisdiction).   The D.C. Circuit concurred with the Third Circuit's conclusion that it is "inappropriate for the trial court to dispose of the case *sua sponte* on an objection to the complaint which would be waived if not raised by the defendant(s) in a timely manner."   *Anger*, 791 F.2d at 958 (quoting *Sinwell v. Shapp*, 536 F.2d 15, 19 (3d Cir. 1976)); *see also Manley*, 145 F.3d at 387.   This is precisely the situation before the Court.

---

[11] For example, in *Third Degree Films, Inc. v. Zwarycz*, No. 11-cv-1833 (D.D.C. 2012), another case before this Court, even before the plaintiff formally named her as a defendant, the defendant voluntarily identified herself as the ISP customer associated with an IP address listed in the complaint as being used to engage in allegedly infringing activity.   *Third Degree Films*, No. 11-cv-1833, ECF No. 18.   The defendant further waived her personal jurisdiction defense by filing an Answer and asserted counterclaims against the plaintiff.   *Id.*   Following a brief period of discovery, the plaintiff voluntarily dismissed its case against the defendant with prejudice, *id.*, Pl.'s Stip. of Dismissal, ECF No. 59, since a digital forensic examination of the defendant's computer "found no evidence of BitTorrent on Zwarycz laptop," and the plaintiff was "unable to investigate the events in Zwarycz's household" to establish who was using the computer to engage in allegedly illegal downloads and distribution of the copyright work.   *Id.*, Pl.'s Rule 41 Mot. to Dismiss, ECF No. 56 at 2.

[12] In 1996, Congress amended 28 U.S.C. § 1915 and, *inter alia*, redesignated subsection (d) as subsection (e).

The ISPs acknowledge that "the Defendants 'could consent' to jurisdiction," but argue that "as a practical matter, the 1,000-plus Does will not be named as Defendants or served here— and thus, the proper scope of this lawsuit and the third-party discovery sought for it must be addressed now, or never."  Movant ISPs' Reply, ECF No. 26, at 6.  This argument lacks merit.

The plaintiff's subpoenas seek only information to identify those infringing its copyright and potentially name defendants.  The Movant ISPs assert that because the plaintiff may not name any defendants in this case, the plaintiff's request for identifying information "imposes an undue burden upon the ISPs without a corresponding benefit to the justice system."  Mem. Supp. Movant ISPs' Mot. Quash, ECF No. 8, at 7.  This statement is both overly simplistic and incorrect.   Upon receipt of the identifying information sought in the subpoenas, the plaintiff is entitled to seek settlement with these individuals, or decide that pursuing a lawsuit against particular defendants is no longer feasible or cost-effective.  Either course selected by the plaintiff would give the copyright owner the opportunity to effectuate its statutorily protected rights and thereby serves our system of justice.

Furthermore, the ISPs' contention that the Court should examine personal jurisdiction at this stage because the "proper scope" of the plaintiff's action must be "addressed now or never" is inaccurate.  The ISPs do not dispute that the plaintiff has set forth cognizable claims of copyright infringement against the unknown individuals associated with the Listed IP Addresses. *See generally* Hearing Tr. at 101 (Apr. 27, 2012).  As explained above, the Court has determined that joinder of these unknown individuals is appropriate at this stage while the plaintiff obtains information to identify and consider naming defendants.  Contrary to the Movant ISPs' assertion, the Court has already evaluated the scope of this case and concluded that it is proper.

## 2.        Venue is Not Relevant at this Procedural Juncture

The venue statute for copyright actions, 28 U.S.C. § 1400(a), differs from the general

venue statute, 28 U.S.C. § 1391(b), for federal question actions.  Specifically, venue for

copyright infringement suits is limited to districts "in which the defendant or his agent resides or

may be found."  28 U.S.C. § 1400(a).  An individual "resides" for venue purposes in the district

of his domicile.  17 MOORE'S FEDERAL PRACTICE, § 110.39[2], at 110-76 (3d ed. 2011).  A

defendant is "found" for venue purposes where he is subject to personal jurisdiction.  *Id.; see

also DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 22 (D.D.C. 2002) (where court has

personal jurisdiction over defendant, "venue is proper pursuant to § 1400(a)"); *Mullis v. Wright*,

No. 89-cv-2379, 1990 U.S. Dist. LEXIS 1706, at *9 (D.D.C. Feb. 9, 1990) ("Courts have

construed this provision [§ 1400(a)] to mean that defendants can be 'found' in districts where

personal jurisdiction over the defendants exists."); *Malibu Media, LLC v. Doe*, No. 12-cv-1061,

2012 U.S. Dist. LEXIS 99148, at *10 (S.D. Cal. July 17, 2012) (citing *Brayton Purcell LLP v.

Recordon & Recordon*, 606 F.3d 1124, 1126 (9th Cir. 2010) ("This circuit interprets [28 U.S.C. §

1400(a)] to allow venue in any judicial district where, if treated as a separate state, the defendant

would be subject to personal jurisdiction.")).  The same analysis that leads this Court to conclude

that evaluating personal jurisdiction is premature before unknown defendants are identified and

named applies with equal force to consideration of venue.

> **3.**     **The Plaintiff is Not Required to Utilize "Geolocation Tools" to
> Establish Personal Jurisdiction or Venue Prior to Obtaining
> Jurisdictional Discovery**

The ISPs contend that to obtain early discovery before naming defendants, the plaintiff

must be required to utilize "geolocation services" to ensure that only those IP addresses located

in the Court's general vicinity are the subject of subpoenas for identifying information and that

the Court will be able to exercise personal jurisdiction over the ISPs' customers whose

computers are assigned those IP addresses.  They urge this Court to follow rulings of other

Judges, who have "reversed course from earlier rulings that had permitted broad discovery from

the ISPs, based in part on the recognition that 'geolocation services . . . are generally available to the public to derive the approximate location of the IP addresses identified for each putative defendant' and thus could be used to limit the scope of mass Doe actions to comport with personal jurisdictional standards—as well as to permit greater judicial oversight."  Movant ISPs' Reply, ECF No. 26, at 4 (quoting *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 40 (D.D.C. 2011)).  This Court does not agree that the plaintiff must use geolocation tools in order to establish a basis for jurisdictional discovery or to establish venue.

In support of their argument that the plaintiff should be required to utilize geolocation tools to establish a basis for jurisdictional discovery and to establish proper venue, the ISPs rely on *Nu Image, Inc.*, 799 F. Supp. 2d at 37.  In *Nu Image*, like the case before this Court, the plaintiff identified the IP addresses of unknown computer users who were allegedly illegally distributing a copyrighted work using BitTorrent.  Relying on the venue provision of the Copyright Act, 28 U.S.C. § 1400(a), and the District of Columbia's long-arm statute, D.C. CODE § 13-423, the Court restricted the plaintiff's subpoenas for identifying information to only those IP addresses that would "likely" be associated with individuals residing in the District of Columbia.  *Nu Image*, 799 F. Supp. 2d at 40.  The Court concluded that Section 1400(a), read in conjunction with D.C.'s long-arm statute, permitted the exercise of personal jurisdiction over a nonresident defendant in a copyright infringement action only if the defendant "causes tortious injury in the District of Columbia."  *Id.* at 37-38 (citing D.C. CODE § 13-423(a)(3)-(4)).[13]  The

---

[13] To determine the location of the tortious injury, the Court in *Nu Image* discussed *Penguin Group (USA), Inc. v. Am. Buddha*, 640 F.3d 497, 500-01 (2d Cir. 2011), which held that under New York's long-arm statute the situs of the injury in a copyright infringement action is the location of the copyright holder, and *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004), which held that for purposes of jurisdiction the site of economic injury may be the location of the "original events that caused the alleged injury." *Nu Image*, 799 F. Supp. 2d at 38-39.  The Court in *Nu Image* concluded, however, that "[s]ince it appears that Plaintiff could not establish personal jurisdiction under either test, [it] need not (and therefore does not) reach a holding as to whether the *American Buddha* or the *Helmer* test applies to the District of Columbia's long-arm statute in internet piracy copyright infringement actions." *Id.* at 40 n.6.

Court concluded that the plaintiff did not have a "threshold good faith showing" that the defendants caused tortious injury in this district or that the putative defendants could be found in the District of Columbia. *Id.* at 41. The Court further held that "the Plaintiff has a good faith basis to believe a putative defendant may be a District of Columbia resident if a geolocation service places his/her IP address within the District of Columbia, or within a city located within 30 miles of the District of Columbia." *Id.*

This Court respectfully disagrees with the holding in *Nu Image.* As stated above, the plaintiff is not required to plead personal jurisdiction in its Complaint and must only demonstrate that the Court has personal jurisdiction over a defendant once that defendant has asserted lack of personal jurisdiction as a defense pursuant to Federal Rule of Civil Procedure 12(b)(2). This is also true for venue, which need not be pled in a Complaint and is waived if not asserted by a defendant in its responsive pleading. *See* FED. R. CIV. P. 8; FED. R. CIV. P. 12(b)(3); *see also Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 793 n.30 (1985) ("Venue provisions come into play only after jurisdiction has been established and concern the place where judicial authority may be exercised; rather than relating to the power of a court, venue relates to the convenience of litigants and as such is subject to their disposition.") (internal quotation marks and citations omitted); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939) ("[T]he locality of a law suit – the place where judicial authority may be exercised – though defined by legislation relates to the convenience of litigants and as such is subject to their disposition."); *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 951 (1st Cir. 1984) ("Venue, though a statutory requirement, is based on Congress' decision concerning where a case *should* be heard. It is a privilege given to the defendant primarily as a matter of convenience and is not based on an inherent power of a particular court over the parties."); 5 FED. PRAC. & PROC. CIV. § 1206 (3d ed.) ("It should be emphasized that Rule 8(a)(1) only deals

with subject matter jurisdiction.  Thus, allegations showing that the suit is brought in a district of proper venue are not required.  Improper venue is a defense that is waived by the defendant if he fails to assert it by pre-answer motion or in the answer.").

Even if the plaintiff were required to demonstrate personal jurisdiction or proper venue in the absence of a Rule 12(b) motion, the Movant ISPs and amici acknowledge that publicly available geolocation lookup tools are not fully accurate.[14]  Hearing Tr. at 67 (Apr. 27, 2012) (Movant ISPs' expert stating the geolocation tools "mak[e] an estimate of where the connection associated with that IP number is likely to be"); Brief of Amici Curiae, at 6-7 (stating that a service that provides "on-demand geolocation service for $8 per 1,000 addresses . . . was audited independently by PriceWaterhouse Coopers in 2011 and found to be between 95.5% and 96.1% accurate at identifying in which U.S. state a given IP address is located").  In any event, the use of geolocation services would not resolve the often complex mix of legal and factual matters that must be considered in evaluating the propriety of exercising personal jurisdiction.  Consequently, the Court still would be unable to properly evaluate jurisdictional arguments or venue until the putative defendants are properly identified and named.  *See Sony,* 326 F. Supp. 2d. at 567-68 ("Assuming personal jurisdiction were proper to consider at this juncture, the [publicly available IP lookup] techniques suggested by amici, at best, suggest the mere 'likelihood' that a number of defendants are located [outside this jurisdiction].  This, however, does not resolve whether personal jurisdiction would be proper.").

The Movant ISPs argue that the plaintiff cannot establish a "good faith belief" that personal jurisdiction exists over the unknown individuals without use of geolocation tools, but this Court does not agree.  By setting forth *prima facie* allegations of copyright infringement

---

[14] Amici contend that "where geolocation using current technology does not identify the correct state, it is likely accurate to within one city away from a user's actual location."  Brief of Amici Curiae, at 7.  Such error may make little difference in less congested regions of the country but "one city away" from the District of Columbia may place an IP address in either the Northern District of Virginia or in the District of Maryland.

predicated upon capture of the Listed IP Addresses engaged in allegedly infringing activity, the

plaintiff has met its burden and is entitled to a period of discovery to identify the customers to

whom the ISPs assigned the Listed IP Addresses.  Indeed, it is virtually impossible for the

plaintiff to allege in good faith a basis for personal jurisdiction or venue when it does not know

the names and addresses of the unknown individuals.

For these reasons, the Court reaffirms its holding in other cases that evaluating personal

jurisdiction is premature because "the Court and parties are in no position yet to evaluate each

putative defendant's specific connection with this jurisdiction." *Call of the Wild*, 770 F. Supp.

2d at 348.  As noted, evaluating venue is premature for the same reasons.

## IV.    CERTIFICATE OF APPEALABILITY

As explained above, the Court concludes that the Movant ISPs' motion to quash the

plaintiff's subpoenas is without merit.  The Movant ISPs state that if the Court were to deny their

motion, they request an order "certifying the significant and recurring issues presented here for

appeal pursuant to 28 U.S.C. § 1292(b), so that litigants, the ISPs, and the courts may move

closer to uniform treatment and disposition of these many cases."  Mem. Supp. Movant ISPs'

Mot. Quash, ECF No. 8, at 2.  Upon consideration of the legal questions presented in the instant

motion to quash, as well as the division in opinion among Judges on this Court when presented

with cases claiming online alleged copyright infringement against unknown individuals, the

Court grants the Movant ISPs' request and certifies for interlocutory appeal denial of the Movant

ISPs' motion to quash the plaintiff's subpoenas.

### A.    Legal Standard

A district court may certify an interlocutory order for immediate appeal if "such order

involves a controlling question of law as to which there is substantial ground for difference of

opinion and . . . an immediate appeal from the order may materially advance the ultimate

termination of the litigation." 28 U.S.C. § 1292(b).  Whether to allow an interlocutory appeal of a non-final order is left to the discretion of the district court.  *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995).  Although courts have discretion, certification of an issue for interlocutory appeal "is granted rarely and only under exceptional circumstances."  *Arias v. Dyncorp*, Nos. 01-cv-1908, 07-cv-1042, 2012 WL 1383116, at *5 (D.D.C. Mar. 28, 2012) (quoting *Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 54 (D.D.C. 2009); *see also Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1265 (D.C. Cir. 2008).  The party seeking interlocutory appeal bears the burden of persuading the Court that "circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."  *In re Vitamins Antitrust Litig.*, No. 99-cv-197, 2000 WL 33142129, at *1 (D.D.C. 2000).  Indeed, the party seeking appeal "must meet a high standard to overcome the strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals."  *Arias*, 2012 WL 1383116, at *5 (quoting *Graham v. Mukasey*, 608 F. Supp. 2d 56, 57 (D.D.C. 2009)); *see also Tolson v. United States*, 732 F.2d 998, 1001-02 (D.C. Cir. 1984).

Section 1292(b) creates a three-part test for certification that requires the party seeking an interlocutory appeal to show: (1) that the order involves a controlling question of law, (2) as to which a substantial ground for difference of opinion exists, and (3) that an immediate appeal would materially advance the disposition of the litigation.  *See Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*, 840 F. Supp. 2d 52, 55 (D.D.C. 2012); *APCC Servs., Inc. v. AT&T Corp.*, 297 F. Supp. 2d 101, 104 (D.D.C. 2003).  The Movant ISPs have met these requirements.

**B.** **Denial of the ISPs' Motion to Quash Involves Resolution of a Controlling Question of Law**

A "controlling question of law" under section 1292(b) "is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *Feinman v. FBI*, No. 09-cv-2047, 2010 WL 962188, at *1 (D.D.C. Mar. 15, 2010) (quoting *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002)).  "The resolution of an issue need not necessarily terminate an action in order to be 'controlling,' but instead may involve a procedural determination that may significantly impact the action." *APCC Servs.*, 297 F. Supp. 2d at 105 (citing *In re The Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (a "controlling question of law" includes procedural determination affecting the conduct of an action); *Judicial Watch*, 233 F. Supp. 2d at 19  (a question of law can be controlling if it determines the outcome "or even the future course of the litigation")); *see also* 16 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE, § 3930 ("A steadily growing number of decisions . . . have accepted the better view that a question is controlling . . . if interlocutory reversal might save time for the district court, and time and expense for the litigants.").  The impact that the appeal will have on other cases is also a factor supporting a conclusion that the question is controlling.  *APCC Servs.*, 297 F. Supp. 2d at 105 (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990); *Brown v. Bullock*, 294 F.2d 415, 417 (2d Cir. 1961) (leave to appeal granted in part because the "determination was likely to have precedential value for a large number of other suits")); *DeVittorio v. Hall,* No. 07-cv-0812, 2008 WL 273981, at *2 (S.D.N.Y. Jan. 29, 2008) (a question is "controlling" if it substantially affects a large number of cases); *Genentech, Inc. v. Novo Nordisk A/S*, 907 F. Supp. 97, 99 (S.D.N.Y. 1995) (same).

In this case, the Court agrees with the Movant ISPs that the legal questions regarding

joinder, personal jurisdiction, and venue are controlling questions of law.  Indeed, reversal of this

Court's Order would drastically effect the scope of the plaintiff's instant action because, as amici

note, "[i]f the appeals court determines that joinder of all 1,058 Defendants was improper, many

of the putative defendants would be severed.  If the appeals court finds that personal jurisdiction

is lacking, the defendants will be dismissed.  Both scenarios materially affect the outcome."

Brief of Amici Curiae, ECF No. 24, at 20.  Moreover, a decision by the D.C. Circuit on the legal

questions presented in the ISPs' motion would conclusively resolve these issues in the other

cases pending in this jurisdiction involving allegations of online copyright infringement by

unknown individuals.

### C.       Grounds Exist for a Difference of Opinion on the Issues Presented in the ISPs' Motion

Section 1492(b) further provides that to obtain certification of an interlocutory order for

appeal, there must exist a substantial ground for difference of opinion on the controlling question

of law.  A substantial ground for difference of opinion is often established when there are

conflicting decisions by other courts.  *See APCC Servs.,* 297 F. Supp. 2d at 107; *see also In re*

*Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 212 F. Supp. 2d 903, 909-10 (S.D. Ind.

2002) (certification is appropriate where other courts have adopted conflicting positions

regarding the issue of law proposed for certification).  This requirement is met.

Judges on this Court have reached different conclusions on the propriety and scope of

early discovery by copyright owners to obtain identifying information about the unknown

individuals believed to be engaged in infringing activity.  *Compare Call of the Wild Movie, LLC*

*v. Does 1–1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011) (Howell, J.) (denying motions to quash

subpoena because consideration of joinder and personal jurisdiction was premature); *W. Coast*

*Prods., Inc. v. Does 1-5829*, 275 F.R.D. 9 (D.D.C. 2011) (Kollar-Kotelly, J.) (same); *Imperial Enters., Inc. v. Does 1-3,145*, No. 11-cv-0529 (D.D.C. Aug. 30, 2011), ECF No. 43 (Walton, J.) (same) *with Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34 (D.D.C. 2011) (Wilkins, J.) (denying plaintiff's motion for expedited discovery because plaintiff failed to utilize geolocation services to demonstrate personal jurisdiction and venue); *W. Coast Prods., Inc. v. Does 1-1911*, No. 11-cv-1687 (D.D.C. Oct. 25, 2011), ECF No. 7 (Jackson, J.) (same); *People Pictures LLC v. Grp. of Participants in Filesharing Swarm Identified by Hash: 43F4CFD05C115EE5887F680B0-CA73B1BA18B434A*, No. 11-1968, 2011 WL 6758462 (D.D.C. Dec. 23, 2011) (Facciola, M.J.) (same).  The Movant ISPs allege that the split of authority in this district has led plaintiff's counsel to "forum-shop" for "favorable judicial assignments."  Mem. Supp. Movant ISPs' Mot. Quash, ECF No. 8, at 21.  The Court declines to comment on this allegation, but recognizes that due to the divergence of opinion in this jurisdiction, the potential for forum-shopping exists.  Given the substantial difference of opinion among judges in this jurisdiction, resolution by the D.C. Circuit of the legal issues presented in the Movant ISPs' Motion to Quash would promote uniformity in the manner in which such cases are handled.  *See generally Arias*, *2012 WL 1383116*, at *5 (denying certification for appeal because the defendants failed to identify "any split in this district or this circuit regarding any controlling issue of law") (internal citations and quotation marks omitted).

### D.  An Immediate Appeal Would Materially Advance the Disposition of the Litigation

Finally, Section 1492(b) provides that certification of an interlocutory order for appeal is appropriate if an immediate appeal will materially advance disposition of the litigation.  The Court believes that it will.  The plaintiff's requested discovery for identifying information for the unknown individuals referenced in the Complaint is essential to its case because there is no other

mechanism for the plaintiff to identify those infringing its copyright.  If the Court's ruling is reversed, the plaintiff's subpoenas would be quashed and its period of expedited discovery would be terminated.  The plaintiff would not be able to identify and name defendants and this action would essentially come to a close.  *See APCC Servs.*, 297 F. Supp. 2d at 109 (certifying appeal because "[a]n immediate appeal would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's rulings are reversed").

In sum, the Court concludes that the requirements of Section 1292(b) are satisfied.  Due to the divergence of opinion on the legal issues presented in Movant ISPs' Motion to Quash, together with the effect of this Court's conclusions on the remainder of this case, the Court's denial of the motion to quash is an interlocutory order suitable for certification for appeal.[15]  Accordingly, the Movant ISPs' request for certification for interlocutory appeal pursuant to Section 1292(b) will be granted.

## V.    CONCLUSION

For the reasons explained above, the Movant ISPs' Motion to Quash is DENIED, and the plaintiff's Motion to Compel Comcast to comply with the plaintiff's subpoena is GRANTED.  An Order consistent with this Memorandum Opinion will be entered.  The Movant ISPs' request that the Court certify the Court's denial of the Movant ISPs' Motion to Quash, pursuant to 28 U.S.C. § 1292(b), for interlocutory appeal is granted.

**DATED:  AUGUST 6, 2012**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge

---

[15] The plaintiff strenuously objects to certification of an interlocutory appeal since this will further delay this lawsuit and the instant effort to protect the plaintiff's movie.  Pl.'s Opp'n Movant ISPs' Mot. Quash, ECF No. 13, at 18. The ISPs have assured the Court that the information responsive to the subpoenas is being preserved, however, so the plaintiff will not be significantly prejudiced by the delay engendered by grant of the Movant ISPs' request for certification.  *See* Hearing Tr. at 109 (Apr. 27, 2012).